PC Scan

RECEIVED AK

9/30/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

[If you need additional space for ANY section, please attach an additional sheet and reference that section ]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**1:21-cv-05148**
**Judge Virginia M. Kendall**
**Magistrate Judge M. David Weisman**
**PC2**
**DIRECT**

WENDELL E. WEAVER # R47387

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.                              Case No: _____
                                 (To be supplied by the Clerk of this Court)

DR. MARLENE HENZIE

COLLIEGEIAL; DR. GARCIA;

WEXFORD HEALTH SOURCES, INC.;

DR. WILLIAMS; DR. O.; DR. E;
                    (CORRECTIONAL)
DR. HELEN BRUCKNER; PLACEMENT OFFICER MS. MARKS;

GHALIAH OBAISI / SALEH OBAISI; SGT. MARKS, PLACEMENT OFFICER;
(Enter above the full name of ALL   WARDEN GOMEZ; ASST. WARDEN WILLIAMS; WARDEN ASST.
defendants in this action. <u>Do not</u>   MS. TARA HUNTER; JOHN DOE; JANE DOE, CORRECTIONAL
use "et al.")                                                              OFFICER(S)

**CHECK ONE ONLY:**

✓        **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
         **U.S. Code** (state, county, or municipal defendants)

_____   **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
         **28 SECTION 1331 U.S. Code** (federal defendants)

_____   **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section ]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**I. Plaintiff(s):**

A. Name: WENDELL E. WEAVER

B. List all aliases: N/A

C. Prisoner identification number: R47387

D. Place of present confinement: STATEVILLE CORRECTIONAL CENTER

E. Address: 16830 S. BROADWAY P.O. BOX 112 JOLIET, IL 60434

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

**II. Defendant(s):**

(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A. Defendant: DR. MARLENE HENZIE

Title: MEDICAL DIRECTOR - DOCTOR

Place of Employment: STATEVILLE CORRECTIONAL CENTER / WEXFORD

B. Defendant: DR. GARCIA ; - DOCTOR -

Title: COLLEGIAL UNIT

Place of Employment: STATEVILLE / WEXFORD

C. Defendant: DR. WILLIAMS

Title: NURSE PRACTIONER / ASST. DOCTOR

Place of Employment: WEXFORD / STATEVILLE CORRECTIONAL CENTER /

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

II. DEFEDANT(S);

D. DEFENDANT: DR. O

TITLE: MEDICAL DIRECTOR / DOCTOR

PLACEMENT OF EMPLOYMENT: WEXFORD / STATEVILLE
CORRECTIONAL CENTER

E. DEFENDANT: DR. E

TITLE: MEDICAL DIRECTOR / DOCTOR

PLACEMENT OF EMPLOYMENT: STATEVILLE CORRECT-
- IONAL CENTER / WEXFORD

F. DEFENDANT: DR. HELEN BRUCKNER

TITLE: NURSE PRACTIONER / DOCTOR

PLACEMENT OF EMPLOYMENT: WEXFORD / STATE-
VILLE CORRECTIONAL CENTER

G. DEFENDANT: DR. OBAISI

TITLE: MEDICAL DIRECTOR / DOCTOR

PLACEMENT OF EMPLOYMENT: WEXFORD / STATEVILLE
CORRECTIONAL CENTER

H. DEFENDANT: WARDEN GOMEZ

TITLE: WARDEN
PLACEMENT OF EMPLOYMENT: STATEVILLE C.C,

I. DEFENDANT: ASST. WARDEN WILLIAMS

TITLE: ASST. WARDEN

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C,

( 2 cont )

II. DEFENDANT(S): TARA HUNTER

J. DEFENDANT: TARA HUNTER

TITLE: ASST. TOO THE WARDEN GOMEZ

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C,

K. DEFENDANT: MS. MARKS

TITLE: SGT. / PLACEMENT OFFICER

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C.

L. DEFENDANT: JOHN DOE

TITLE: CORRECTIONAL OFFICER (ASST. WARDEN

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C.

M. DEFENDANT: JANE DOE

TITLE: CORRECTIONAL OFFICER (ASST. WARDEN / MEDICAL STAFF /

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C.

N. DEFENDANT: JOHN DOE

TITLE: ACTING SGT.

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C.

(2 cont)

II: DEFENDANT(S):

O. DEFENDANT: WEY FORD HEALTH SOURCES, INC,

TITLE: HEALTH CARE PROVIDER FOR ILLINOIS PRISON(S)

PLACEMENT OF EMPLOYMENT: STATEVILLE C. C,

( 2. CON'T)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: __WEAVER V. MARTIJA, ET AL, N.D. ILL, 16-C-940033__

B. Approximate date of filing lawsuit: __SEPTEMBER 30, 2016 /__

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: __WENDELL E. WEAVER__

D. List all defendants: __DR. OBAISI, WARDEN LAMB, DR. A. MARTIJA, OFFICER CHAVEZ, SGT. BUCKLEY, MED TECH "BOBBY"__

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): __NORTHERN DISTRICT FEDERAL COURT__

F. Name of judge to whom case was assigned: __VIRGINIA KENDALL__

G. Basic claim made: __DELIBERATE INDIFFERENCE FOR MEDICAL/DRUG FOR PINKY FINGER DISLOCATION__

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): __SETTLEMENT__

I. Approximate date of disposition: __JANUARY 2020__

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. LIST ALL LAWSUITS YOU (and your CO-PLAINTIFFS, IF ANY) HAVE FILED IN ANY STATE OR FEDERAL COURT IN THE UNITED STATES:

A. NAME OF CASE AND DOCKET NUMBER: WENDELL WEAVER V. DR. J. MITCHELL, DR. BROWN, DR. JANE DOE 15-CV-02950

B. APPROXIMATE DATE OF FILING LAWSUIT: MARCH 31, 2015

C. LIST ALL PLAINTIFFS (IF YOU HAD CO-PLAINTIFFS), INCLUDING ANY ALIASES: WENDELL WEAVER -

D. LIST ALL DEFENDANTS: DR. J. MITCHELL, DR. BROWN, DR. JANE DOE, R. PFISTER

E. COURT IN WHICH THE LAWSUIT WAS FILED (IF FEDERAL COURT NAME THE DISTRICT: IF STATE COURT, NAME THE COUNTY): U.S. DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

F. NAME OF JUDGE TO WHOM CASE ASSIGNED: VIRGINIA M. KENDALL

G. BASIC CLAIM MADE: DELIBERATE INDIFFERENCE TO DENTAL NEEDS / TREATMENT

H. DISPOSITION OF THIS CASE (FOR EXAMPLE: WAS THE CASE DISMISSED? WAS IT APPEALED? IS IT STILL PENDING? (LOST AT TRIAL WITH JURY)

I. APPROXIMATE DATE OF DISPOSITION: (FEBRUARY 2019)

(3 CONT)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV.    **Statement of Claim:**

State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including names, dates, and places.  **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

1.) BACK IN 2015, ON AUGUST 05 THE PLAINTIFF FINGER WAS DISLOCATED DURING A BASKET BALL GAME AT STATEVILLE C.C. ON AUGUST 29, 2015 HE HAD HIS FIRST SURGERY TO SET HIS FINGER BACK IN PLACE. IN OR AROUND MID-OCTOBER 2015 HE HAD A SECOND SURGERY TO GET THE PIN REMOVED FROM HIS FINGER TOO HOLD THE BONE IN PLACE. ON OR AROUND DECEMBER 29, 2015 THE DR. WHO PERFORMED BOTH SURGERIES (DR. FANTOS) RECOMMENDED A THIRD SURGERY TO REMOVE THE BUILDUP ON AND AROUND THE BONE OF THE SURGERY TO FREE IT UP OF CARTILAGE ETC. and IMPROVE MOBILITY AND FUNCTION, BUT TOO NO AVAIL. STATEVILLE "COLLEGIAL DOCTORS" DENIED THE REQUEST. SINCE THEN THE PLAINTIFF HAS BEEN COMPLAIN ABOUT CONSISTANT PAIN AND LACK OF MOBILITY AND FUNCTION, SO HE WAS SENT TOO U.I.C. HOSPITAL ON DECEMBER 12, 2018, DR. ALFONSO MEJIA MD. RECOMMENDED THE THIRD SURGERY AGAIN, AND SET UP A SURGERY DATE AND GAVE ME THE DIRECTION AND SOLUTION TO USE ON THE DAY OF THE SURGERY BUT THAT DAY NEVER CAME, BECAUSE DR. HENZE AND DR. GARCIA (COLLEGIAL UNIT) IN THE MEDICAL DENIED IT, SAYING THEY WERE GOING WITH SOME ALTERNATIVE TREATMENT; THAT THE

4                                          Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

PLAINTIFF NEVER RECEIVED! THE PLAINTIFF HAS STILL BEEN IN PAIN AND HIS FUNCTION AND MOBILITY IS LITTLE TOO NONE! DR. ALFONSO MEJIA, MD FROM U.I.C HOSPITAL ALSO NOTED: THIS THIRD SURGERY WAS "MEDICALLY NECESSARY" TOO STOP THE PAIN AND GET SOME "FUNCTION AND MOBILITY" AND DR. HENZE AND DR. GARCIA (COLLEGIAL UNIT) PREVENTED THIS SURGERY TOO SAVE "WEXFORD" MONEY AND GET A BONUS / KICK BACK FOR SAVING THEM (WEXFORD MONEY) TO THIS DAY THEY (STATEVILLE) IS DOING NOTHING FOR MY PAIN OR FUNCTION / MOBILITY, BESIDES A FEW PAIN PILLS FOR OTHER ISSUE(S) THAT WILL FOLLOW AND CLAIM THEY SHOULD HELP MY FINGER ASS WELL, BUT THEY DONT..... THE PLAINTIFF WAS ALSO DIAGNOSE (2) WITH "SLEEP APNEA" WHERE HE STOP BREATHING DURING HIS SLEEP BY THE DOCTORS AT U.I.C BACK IN 2018, AND RECOMMEND A C-PAC MACHINE, BUT TO NO AVAIL, DR. HENZE AND DR. GARCIA (COLLEGIAL) ONCE AGAIN DENIED THAT REQUEST, COMPLETELY DISREGARDING "U.I.C" HOSPITAL INSTRUCTION / TREATMENT OF PLAINTIFF WHO CONTINUE TOO SUFFER FROM THIS "SLEEP APNEA" TO GET BONUSES AND KICK BACK FROM WEXFORD PATTERN AND (3) PRACTICE(S) TOO SAVE MONEY AND CUT COST! THE PLAINTIFF HAS BEEN COMPLAINING ABOUT HIS SHOULDER(S) BOTH AND KNEE(S) BOTH FOR AS LONG AS "2017" COULD BE LONGER TO MULTIPLE DOCTORS HERE AT STATEVILLE, BUT TO NO AVAIL, EVEN ABOUT HIS RIGHT ARM and RIGHT ELBOW; FROM THE DECEASED DR. OBAISI; DR. WILLIAMS WHO TOLD PLAINTIFF HE HAS "BONE SPURS" BUT DID NOTHING FOR OR ABOUT THEM; DR. E· DR O; DR. HENZE, DR. HELEN BRUCKLER; WHO TOLD PLAINTIFF "HE WALKING JUST FINE TO HER" AND REFUSED TOO TALK OR TREAT HIS KNEE / SHOULDER PAIN, BUT ACTUALLY TRIED TOO TAKE HIS PAIN MEDICATION (AWAY) FROM HIM, SEE NEXT PAGE OF FACTS → 5A

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV.     STATEMENT OF CLAIM - CON'T

IN JANUARY OF 2018 THE PETITIONER/PLAINTIFF SEEN DR. WILLIAM ABOUT THE CROOKED FOREARM AND BICEP MUSCLE BECAUSE IT LOOKED DEFORMED AND WAS SENT TOO ST. JOSEPH HOSPITAL FOR TREATMENT, AN X-RAYS AND SENT ME BACK TOO STATEVILLE, NOT CHECKING THE MUSCLE OR TO SEE IF THE MUSCLE HAD A TEAR ETC. OVER THE FOLLOWIN MONTH(S) AND BEFORE HIS SYMTOMS NEVER IMPROVED WITH THE RIGHT ARM AND DEFORMITY AND MUSCLE, AND EVEN BEFORE THIS INCIDENT DR. WILLIAMS SEEN PLAINTIFF FOR HIS SHOULDER(S) AND KNEE(S) BACK IN 2017 WHEN SHE INFORMED PLAINTIFF (HE) HAD BONES SPURS, BUT DID NOTHING FOR HIM NOR PRESCRIBE ANY MEDICATION FOR SUCH CONDITION(S). ON MARCH 15, 2018 PLAINTIFF SEEN DR. E, THE MEDICAL DIRECTOR AT THAT TIME, AND HE EXAMINED MY ARM, KNEE(S) SHOULDER(S) AND SAID HE WAS GOING TOO PUT ME IN FOR SOMETHING, BUT NOTHING EVER CAME ABOUT FROM THAT VISIT? PLAINTIFF INJURIE(S) NEVER IMPROVED AN HE CONSISTANTLY WROTE LETTER(S) AND GRIEVANCE REGARDING THE ABOVE MEDICAL CONDITIONS BUT TO NO AVAIL. ON JUNE 05, 2018 THE PLAINTIFF WAS SEEN BY AN DR. O ABOUT HIS SHOULDER(S) AND KNEE PROBLEMS AND ARM AND TORN MUSCLE, ETC. HE SAID PLAINTIFF WOULD BE GOING OUT SOON, JUST BE PATIENT AND DEAL WITH THE PAIN LIKE A MAN, AND TOLD PLAINTIFF TO LEAVE WITHOUT GIVING HIM NOTHING FOR THE PAIN AND HIS SYMTOMS, HE ALSO KNEW OF THE INJURY BECAUSE HE REVIEWED AND TALK TOO PLAINTIFF ABOUT THE ULTRA SOUND/X RAYS, ETC. PLAINTIFF ALSO TOLD COUNSELOR (HIS) WINTERS ABOUT THE LACK OF MEDICAL TREATMENT HE WAS RECEIVING AND SHE SAID SHE WOULD NOTE THAT ON MARCH 24, 2017, BUT NOTHING EVER CAME OF THIS. BACK IN DECEMBER 2015 PLAINTIFF EVEN TALKED TO AND COMPLAINED TOO DR. OBASI ABOUT THE POPPING SOUNDS IN HIS KNEE(S) AND SHOULDER(S) AND HE DOCUMENTED THIS BUT NO ONE DID NOTHING FOR ME OR ALL THE COMPLAINTS AND AND PAIN PLAINTIFF BEEN IN FOR YEARS. HE ACTUALLY SAID THE X RAYS SHOWS NOTHING AND I ASK FOR AN MRI AND HE SAID NO WAY THAT'S TOO EX-
-PENSIVE! AGAIN CUTTING CORNERS TOO SAVE HIM AND WEXFORD MONEY

(5A)

SO ON FEBRUARY 10, 2018 PLAINTIFF PUT IN A SAW A NURSE BY THE NAME of PAGE (MEDTECH) WHO SAID COMPLAINING IS NOT GOING TOO GET YOU IN ANY SOONER, SO YOU CAN STOP WITH THE COMPLAINTS, AND WALK OFF FROM ME! PLAINTIFF SEEN DR. OBAISI ON NUMEROUS OCCASSION SINCE 2015 INCLUDING DECEMBER 13, 2017 and COMPLAINED ABOUT HOW MUCH PAIN I WAS IN AND HE NOTED IN THE CHARTS BUT DID NOTHING FOR ME BUT CONSISTANT "SPIN" ME, AND TOLD ME TOO LEAVE, DURING THIS TIME ONLY THING WAS DONE FOR ME BY OBAISI WAS SOME CLOTH KNEE STABILIZERS AND A FEW TYLENOL THAT'S IT! Auh, YEAH HE ALSO GAVE ME SOME MUSCLE RUB FOR THE KNEE(S) AND SHOULDER(S) PAIN. THEY (U.I.C.) ALSO GAVE ME A STEROID SHOT IN ONE OF MY SHOULDER(S) BUT DIDN'T DO NOTHING FOR MY PAIN THIS WAS BACK IN 2017/2018, BUT SINCE THEN NOTHING BEEN DONE W/ MY SHOULDERS ETC, PLAINTIFF BEEN DEALING WITH THESE SHOULDERS, KNEES, ARM BICEP ISSUE FOR YEARS, AND THEY STARTED GETTING SO BAD HE STARTED TELLING (AND TALKING TOO WARDEN THE PLAINTIFF SPOKE PERSONALLY TO ASSISTANT WARDEN D. WILLIAMS ABOUT THE ISSUES BACK IN "2018" HE SAID HE WAS GOING TOO TALK TOO SOMEONE BUT to NO AVAIL NO ONE STILL DIDN'T DO NOTHING FOR MY ISSUES (AND PAIN, I ALSO TOLD MR. WILLIAMS ABOUT THE CPAC MACHINE U.I.C. WANTED ME TOO GET TO HELP WITH THE SLEEP APNEA, BUT to NO AVAIL, MR. WILLIAMS DIDN'T DO ANYTHING FOR MY SITUATION, I TOLD HIM ABOUT MY U.I.C. WRIT AND NEVER SEEN THE MEDICAL DIRECTOR ABOUT THE NEW RECOMMENDATION FROM U.I.C, HE SAID HE WILL CHECK INTO IT, BUT NO ONE EVER CALLED ME. MEDICAL DIRECTOR DR. HENZE FINALLY SENT PLAINTIFF, OUT FOR A CT / MRI ON SHOULDERS AND RIGHT ARM SOME TIME IN 2019 AROUND FEBRUARY, AND IT CONFIRMED A TORN RIGHT ROTATOR CUFF, AND TORN BICEPS TENDONITIS, ETC, AND A LITTLE WHILE AFTER, THE PLAINTIFF RECEIVED AN MRI ON HIS RIGHT KNEE, AND WAS CONFIRMED HAS A TORN MINISMYGK, WHICH BEEN THE SOURCE

OF PLAINTIFF PAIN AND SUFFERING DATING ALL THE WAY BACK UNTIL AT LEAST "2015". AND MS. HENZE KNOWN OF THESE RESULTS AS LEAST SINCE "2019" AND DID ABSOLUTE
—LY NOTHING FOR THE PLAINTIFF, BUT GIVE A FEW PAIN PILLS AND CLOTH KNEE THINGS, WHICH DOES NOTHING FOR THE PAIN AS PLAINTIFF TOLD HER ON NUMEROUS OCCASSIONS. PLAINTIFF HAS BEEN LIVING ON 9 AND 10 GALLERYS —THE HIGH GALLERY(S) FOR YEARS UNTIL RECENTLY WHEN HE COULD'NT CLIMB THE STAIRS NO MORE, AFTER THE RESULTS FROM THE M.R.I WAS SENT BACK TOO STATEVILLE FROM U.I.C, SO IT WAS IN MY MEDICAL FILES, SO I SIGN UP FOR SICK CALL AGAIN AND WAS SEEN BY DR. HELEN BRUCKNER, and TOLD HER ABOUT THE PAIN I WAS IN AND SHE SAID THAT'S NOT HER PROBLEM, AND SHE CAN'T MAKE MY LIFE PAIN FREE, AND I TOLD HER THE TYLENOL 3 I WAS TAKING FOR SOMETHING ELSE WAS NOT WORKING FOR MY KNEE (SHOULDER AND ARM PAIN, SHE SAID I'M LUCKY TOO BE GETTING THAT AND TOLD ME TOO LEAVE. I ASK HER CAN SHE GIVE ME SOME STRONGER MEDICINE FOR MY PAIN, AND TOLD HER ABOUT MY M.R.I AND THE DAMAGE, BUT SHE JUST IGNORED WHAT I WAS TELLING HER, I'M SURE SHE SEEN MY RESULTS BECAUSE SHE WAS LOOKING AT MY FILES. SO I WAS FRUSTRATED BY MY LACK OF TREATMENT THAT I CAUGHT WARDEN GOMEZ, ASST WARDEN WILLIAMS, AND THE WARDEN ASST. TARA HUNTER ON 6 GALLERY SOME TIME IN EARLY /MID 2020 AND TOLD THEM ABOUT THE EXCRUCIATING PAIN I BEEN IN FOR YEARS, 2nd TIME TALKING TO ASST. WARDEN WILLIAMS, AND HIS ASST. HUNTER AND THEY PROMISE ME THEY WAS GOING TOO GET ME SOME MEDICAL TREAT—
—MENT, BUT NOTHING AGAIN HAPPEN, I EVEN SHOWED THEM HOW SWOLE MY KNEE WAS, MY CELLMATE (WALLS) CAN ATTEST TOO THESE FACTS AS WELL. TO THIS DAY, I HAVEN'T SEEN NO ONE ABOUT THESE ISSUES, EVEN AFTER THE M.R.I'S ?
(6A)
⇒ 7

IV. STATEMENT OF CLAIM CONT.

I'M IN SEVERE PAIN, EVERYTIME I MOVE MY RIGHT KNEE AND MY SHOULDER AND ARM BEEN IN PAIN SO LONG, I CAN'T EXPLAIN THE PAIN NOW, IT JUST HURT CONSISTANTLY 24 HOURS A DAY, I TELL THE MED TECHY'S AND THE DOCTERS AND IT JUST FALL ON DEAF EARS? ONE OF THE NURSE'S BY THE NAME "TINA" TOLD ME TOO WRITE A GRIEVANCE, and I TOLD HER I HAVE WRITTEN TONS OF GRIEVANCES THEY DON'T GET NOTHING DONE AROUND HERE, MY FEAR MY KNEE AND SHOULDER IS WORSTER NOW, THEN IT WAS YEARS AGO, DUE TOO THE (LACK OF TREATMENT) MED TECH TINA EVEN ADMITTED THE MEDICAL UNIT WAS TREATING US BOGGISH, SO

4.) IN OR AROUND SEPTEMBER OF 2020, I STARTED WRITING THE HEALTH CARE DIRECTLY "TO WHOM IT CONCERN" AND TELLING EVERY "MED TECH" I SEEN MY KNEE(S) WAS STARTING TOO GIVE OUT, AND ME CLIMBING UP TOO THE TOP BUNK WAS STARTING TOO BE PAINFUL AND CHALLENGING AND I TOLD L.T. ANDERSON ABOUT THIS, I ALSO MENTION TOO ALL OF THE ABOVE, THAT CELLS WERE OPEN ON (LOWER GALLERY) IN THE HOUSING UNIT I WAS CURRENTLY LIVING IN (C HOUSE) WHICH WOULD HELP ME WIT THE PAIN, INSTEAD OF LIVING ON 6TH GALLEY, CLIMBING ALL THEM STAIR(S) AND CLIMBING TOO GET IN THE TOP BUNK SO THE SECURITY STAFF - LT. ANDERSON SAID YOU NEED A MEDICAL PERMIT TOO GET MOVED DOWN STAIRS, SO I STARTED WRITING EVERY DAY AND NIGHT AND TELL THE "MED TECH'(S) TOO GET ME IN TOO (SEE) THE DOCTOR SO I COULD GET A LOW GALLERY/LOW BUNK PERMIT; A LITTLE WHILE LATER, WITHOUT SEEING A DOCTOR, A PERMIT CAME THRU THE MAIL, BUT THEY NEVER MOVED ME DOWN STAIRS, SO I START COMPLAINING TOO THE SECURITY STAFF, ABOUT THEM NOT HONORING MY MEDICAL PERMIT(S)

(7.)

IV.   STATEMENT

SO ON OR AROUND SEPTEMBER 24, 2020, I SPOKE TOO THE ACTING SGT. OF CHOUSE, THE UNIT I BEEN LIVING IN FOR A FEW YEARS (GOOD HOUSING UNIT) "LOW AGGRESSION" NO PROBLEMS OR TROUBLE, ETC. AND TOLD HIM ABOUT MY MEDICAL PERMIT(S) AND HOW THEY WERE VIO- - LATING MY RIGHTS, NOT RESPECTING MY MEDICAL CONDITION(S) ETC. SO HE STORMED OFF SAYING HE GOING TO TELL PLACEMENT OFFICER (SGT. MARKS) WHAT I SAID; A HOUR OR SO LATER HE CAME BACK SAYING, I'm MOVING TOO E-HOUSE THE WORST/EST HOUSE IN STATEVILLE, AND A (HIGHER AGGRESSION HOUSE) THAT'S (NASTY AND VIOLENT) THEY DID THIS ON SOME (RETALIATION) STUFF, BECAUS OF ME COMPLAINING ABOUT THEM NOT HONORING MY MEDICAL CONDITION(S) AND PERMITS? WHAT OTHER REASON WOULD THEY DO THIS, WHEN CELLS WERE OPEN IN (CHOUSE) ON LOWER GALLERY(S ESPECIALLY 2 GALLERY WHERE, I NEED IT TOO BE (NO STAIRS) TO CLIMB TOO GET TO MY CELL), NOT TOO MENTION ME HAVING A (LOW AGGRESSION LEVEL) THE EHOUSE CELL THEY MOVE ME TOO WAS 123; IT HAD BLACK MOLD ON THE WALL, THE WATER DIDN'T WORK, AND ROACHES, AND SPIDERS, ANT(S) ETC. WAS ALL OVER THAT CELL, ALL BECAUSE I WANTED TO MOVE ON A LOWER GALLERY DUE TOO MY CONDITIONS AND PERMIT(S) TOO BE RESPECTED AND HONORED, TO HELP ALLEVIATE SOME OF THIS PAIN, I BEEN EXPERIENCING FOR MANY YEARS AROUND HERE. THIS BLACK MOLD IN THAT CELL IN E- HOUSE COULD HAVE CONTRIBUTED TOO MY ILLNESSES, I'm EXPERIENC - ING RIGHT NOW ON SOMETHING UNRELATED TOO THIS LAW SUIT! (SHORTNESS OF BREATH) (HEAD ACHES) CHEST PAIN(S) BLURRY VISION) ETC. LT. NORMAN OF EHOUSE, AND SGT/LT. MILSAP CON ATTEST TOO THE MOLD ON THE WALL, BECAUSE THEY GAVE ME SOME BLEACH AND DISINFECT TO TRY AND GET IT OFF THE WALL, PLUS I WROTE NUMEROUS GRIEVANCES, AND TALK TO MY THEN COUNSELOR SCOTT ABOUT IT, AND HE SAID HE CAN'T DO NOTHING ABOUT THE MOVE OR THE BLACK MOLD, BUT DOCUMENT IT ON MY GRIEVANCES, SAME ABOUT MY MEDICAL ISSUE(S), MY CURRENT COUNSELOR MS. DIXON HAS TOLD ME THE SAME THING, ABOUT MEDICAL HELP. I WROTE PLACEMENT OFFICER SGT. MS, MARKS TOO MOVE BACK TOO CHOUS SO I'm FORCE TOO FILE THIS LAW SUIT TOO GET ME SOME MEDICAL ON NUMEROUS OCCASSION, BUT TOO NO AVAIL, SHE NEVER WROTE ME BACK OR SAID WITH SHE MOVED ME TOO (7A) BEGIN WITH WHEN SHE HAD CELL OPEN IN CHOUSE

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**V.    Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes. WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTER JUDGEMENT GRANTING PLAINTIFF: A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATED PLAINTIFF RIGHTS UNDER THE CONSTETUTIONS AND LAWS OF THE UNITED STATES, COMPENSATORY DAMAGES IN THE AMOUNT OF $250,000.⁰⁰ AGAINST EACH DEFENDANT, AND INJUNCTIVE RELIEF, SURGERY ON MY LEFT PINKY FINGER, SURGERY ON MY RIGHT SHOULDER / ARM ELBOW / REPAIR my TORN MUNTSMEKTS IN RIGHT KNEE, AND TORN ROTAIOR CUFF, BICEPS

**VI.**    The plaintiff demands that the case be tried by a jury.    ☑ YES    ☐ NO

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this ___15ᵗʰ___ day of __AUGUST__, 20_21_

_____
_Wendell Weaver_
(Signature of plaintiff or plaintiffs)

_____
WENDELL  WEAVER
(Print name)

_____
R47387
(I.D. Number)

_____
16830 S. BROADWAY ST. ROUTE 53
OOLEET, IL 60434
(Address)

Revised 9/2007
[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

B624

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE**

| Date: SEPT 12, 2017 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |
|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE O.C. |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ ADA Disability Accommodation

☑ Staff Conduct    ☐ Dietary    ☑ Medical Treatment    ☐ HIPAA

☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator    ☐ Other (specify):

RECEIVED
STATEVILLE C.C.
SEP 1 4 2017

☐ Disciplinary Report: _____ / _____ / _____
         Date of Report      Facility where issued

RECEIVED
STATEVILLE C.C.
SEP 2 2 2017
GRIEV #5547

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

    Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
    Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
    Chief Administrative Officer, only if EMERGENCY grievance.
    Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
    administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
    Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information
for each person involved):

ON SEPTEMBER 07, 2017 THE ABOVE OFFENDER PUT HIS
NAME ON THE SICK CALL LIST, THE NEXT DAY "LYDIA" CAME
OVER TOO SEE ME, and I TOLD HER THAT MY "FINGER"
(LEFT PINKY) THE "SURGERY FINGER" HAS BEEN BOTHER
ME IN (EXTREME PAIN) I TOLD HER I NEED PAIN
MAD'S and SHE TOLD ME I'M SCHEDULE TO SEE THE
"MEDICAL DIRECTOR" OBAII FOR TUESDAY SEPT 12, 2017
BUT TO "NO AVAIL" THEY DIDN'T CALL / OR SEE ME, I
ALSO TOLD HER ABOUT MY LOWER BACK PAIN, and
                        (OUTSIDE) FOR M.R.I.

**Relief Requested:** GET ME TO A DOCTOR AND SEND ME SOME
PAIN MEDICATION AND SEE WHY I GOT KICKED OUT
OF "PHYSICAL THERAPY" FOR LEGAL CALLS, VISTS, LIBRARY

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ Offender's Signature       R47387    9, 12, 17
                                                ID#        Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

| Date Received: 9 / 16 / 17 | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: a copy of this grievance has been forwarded to the H.C.U.
for review and response, the original to the Grievance Office. You
dont have to send your copy to neither the H.C.U. or Grievance office.
You will receive a final response from the Grievance Office when
the H.C.U responds to same. J. Butler-

_____     T. Butler-Winker    9/16/17
Print Counselor's Name            Counselor's Signature      Date of Response

---

**EMERGENCY REVIEW**

| Date Received: 9 / 14 / 17 | Is this determined to be of an emergency nature? | ☐ Yes; expedite emergency grievance ☑ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

_____                                                      9 / 14 / 17
Chief Administrative Officer's Signature                                         Date

Distribution: Master File; Offender                  Page 1                            DOC 0046 (8/2012)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
"15"
OFFENDER'S GRIEVANCE (Continued)

(→ PAIN EXCRUCIATING)

(BOTH)
SHOULDERS, ELBOW PAINS ON MY LEFT ARM, AND FINALLY
MY KNEE(S) BOTH OF THEM ARE HURTING... SHE
TOLD ME TO EXPLAIN EVERYTHING TO THE MEDICAL
DIRECTOR, BUT HOW CAN I IF SHE DIDN'T MAKE
ME AN APPOINTMENT? SHE TOLD ME I HAVE ONE
COMING UP TODAY, BUT I DIDN'T GO. I NEED TO
SEE SOMEBODY BECAUSE, I AM IN PAIN, EPECEAVLY
MY PINKY FINGER, PLEASE CALL ME, SOON
AND SEND ME SOME MEDICATION FOR PAIN. SHE ALSO
TOLD ME "HOSEA" THE PHYSICAL THERAPIST KICK ME OUT
BECAUSE, I HAD LEGAL CALLS, VISTS     (THANKS)
ETC. ON THE DAYS HE SCHEDULE, ME,
NOT TO MENTION (LAW-LIBRARY) PLUS MY FINGER
IS IN SO MUCH PAIN I CAN'T DO PHYSICAL THERAPY
FOR THAT ANYHOW! ( THE FINGERS, KNEES & LOWER BACK )
& (ELBOW) (SHOULDERS) NEED MEDICAL TREATMENT / AND M.R.I'S
TOO SEE WHAT'S THE REAL PROBLEM!
          (THURSDAY)
     TODAY IS SEPTEMBER 14, 2017, I GOT MY
GRIEVANCE BACK SAYING IT'S NOT AN EMERGENCY SO
THEY SENT IT BACK, TO CNO'T FROM THE ORIGINAL
GRIEVANCE ABOVE, I DID SEE THE MEDICAL DIRECTOR
YESTERDAY ( WEDNESDAY SEPT 13, 2017, AND EXPLAIN
MY (PAIN) and EVERYTHING I EXPLAIN TO "LYDIA"
and HE STILL DIDN'T GIVE ME NOTHING FOR PAIN?
HE ORDERED SOME MORE KNEE BRACES / NOT BRACES
BUT SOME CLOTH KNEE STABILIZERS I GUESS,
WHICH DON'T DO NOTHING FOR THE PAIN IN MY
KNEES, ( NO PAIN MEDS) PLUS MY FINGER
IS / AND HAS BEEN IN EXCRUCIATING PAIN
SINCE MY SURGERY BACK IN (2015) MY LOWER
BACK IS KILLING ME AND MY ELBOW, HE (SHOULDERS)
ORDERED SOME (MUSCLE RUB) AND TOLD
ME TOO USE THAT, and HE'LL SEE ME
IN (6) MONTHS I'LL BE DEAD IN
SIX MONTHS W/ THE PAIN I'M IN,
PLEASE DO SOMETHING ABOUT THIS.
HE ALSO ORDER ME AN BACK STABILIZER, BUT THIS NOT
GOING TO DO NOTHING FOR PAIN ...      — THANKS —


     P.S. I HAVENT HAD NO PAIN MEDS FOR MY
     FINGER, SINCE THE POST SURGERY P A FEW WEEKS
     AFTER THE FACT, BACK IN 2015

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

B024

| Date: 10-17-17 | Offender: (Please Print) WENDELL WEAVER | ID #: R47387 |
|---|---|---|
| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: | STATEVILLE C.C. |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Disciplinary Report: _____
  Date of Report _____
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify): _____
  Facility where issued _____

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

RECEIVED
STATEVILLE C.C.
NOV 09 2017
GRIEVANCE DEPARTMENT
BY: 324

Summary of Grievance (Provide information including a description of what happened, and when and where it happened, and the name or identifying information for each person involved): ON TODAYS DATE,

THE ABOVE OFFENDER SAW DR. OBAISI, FOR A FOLLOW UP "I GUESS OR FOR AN UNRELATED ISSUE, WHEN THE ABOVE OFFENDER TOLD HIM THE "MUSCLE RUB", KNEE CLOTH STABILIZER" and BACK SUPPORT WASN'T HELPING MY PAIN/ and STUTTERS, MY SHOULDERS ARE POPPING /and IS "BONE ON BONE" SAME WITH my KNEES THEY ARE POPPING MAKING NOISE'S. PAIN HAS BEEN DOING THIS FOR SOME YEARS NOW, and EVERYTIME I TELL DR. OBAISI, HE DOES NOTHING! HE GAVE ME SOME TYLENOLS, FOR PAIN IN MY SWOLLEN FINGER THAT HAS —

Relief Requested: GIVE ME STRONG PAIN MEDS, GET ME TO A BONE SPECIALIST /AND OR M.R.I TO SEE THE REAL PROBLEM WITH my SHOULDER(S), KNEE(S), ELBOW, AND LOWER BACK PAIN

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _[signature]_ | R47387 | 10, 17, 17 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 11 / 16 / 17

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of this grievance has been forwarded to the HCU for review and response and a copy to the Grievance Office. There is no need to send your copy to the Grievance or HCU. You will receive a final response from the Grievance Office when the HCU responds.

| T. Butler-Winters | J. Butler | 11, 25, 17 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: 11 / 14 / 17

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| _[signature]_ | 11 14 17 |
|---|---|
| Chief Administrative Officer's Signature | Date |

Distribution: Master File; Offender      Page 1      DOC 0046 (8/2012)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

BEING KILLING ME TO SAY THE LEAST, THE SHOULDERS
ARE POPPING "BONE ON BONE PAIN" THE LOWER BACK
PAIN, AND THE POPPING "BONE ON BONE" KNEE(S)
PAIN, WHICH DOES (NOTHING FOR THE PAIN)
MY ELBOW "LEFT ARM" IS ALSO PAINING, THE
TYLENOLS ARE NOT HELPING, I NEED TO SEE
A BONE DOCTOR TO SEE WHY IS MY BONES
POPPING AND IN SO MUCH PAIN, MY BLOOD PRESSURE
CHECKS HAS BEEN HIGH DUE TO THIS EXTREME PAIN
I'm IN.! PLEASE DO SOMETHING ABOUT THIS, I TELL
THE MED TECH'S THIS EVERYTIME THEY CHECK MY BLOOD
PRESSURE (WHICH IS EVERYDAY) BUT TO NO AVAIL.
PLEASE HELP ME. DR. OBAISI TOLD ME THAT'S ALL THE MEDS—
—CAME HE WAS GOING TO GIVE ME. AND HAVE A NICE DAY!
and THERE NOTHING ELSE THAT CAN BE DONE FOR MY SURGERY
PINKEY FINGER / NOR THE PAIN.

                              (AND A) "BED"
        RELIEF REQUEST; NEW MATTRESS, MAY
could HELP my LOWER BACK PAIN.

R024

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: DEC, 18, 2017 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |
|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property  ☐ Mail Handling  ☐ Restoration of Good Time  ☐ ADA Disability Accommodation
☑ Staff Conduct  ☐ Dietary  ☑ Medical Treatment  ☐ HIPAA
☐ Transfer Denial by Facility  ☐ Transfer Denial by Transfer Coordinator  ☐ Other (specify): _____

☐ Disciplinary Report: _____     _____
                              Date of Report              Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification. RECEIVED STATEVILLE C.C.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to: JAN 2 4 2018
    Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
    Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
    Chief Administrative Officer, only if EMERGENCY grievance.
    Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
    administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
    Administrative Officer.

1801 ... RTMENT
BY:

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information
for each person involved):

ON DECEMBER 01, 2017, I SEEN DR. WILLIAMS about my
SHOULDER(S), KNEE(S), FINGER, LOWER BACK PAIN, and
LEFT ELBOW PAIN... IN REVIEWING MY CHART(S) X-RAYS
ETC. SHE INFORMED ME I HAD SOMETHING CALLED "BONE
SPURS" and THIS COULD BE a REASON FOR MY PAIN. I
NEVER WAS TOLD BY "NO ONE" — MEDICAL PERSONAL —
ABOUT THIS. DR. OBAISI NEVER, EVER mentioned THIS TOO
ME (AFTER YEARS OF ME COMPLAINING ABOUT ALL THIS
PAIN I HAVE BEEN IN. SO SHE RECommended me BACK →

Relief Requested:  HELP ME FIND OUT WHATS WRONG, and HAVING ALL
THIS PAIN, and see IF THESE "BONE SPURS" THE PROBLEM THRU
and M.R.I OR WHATEVER TO DETERMINED THE PROBLEM(S).

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ Offender's Signature          R47387          12, 18, 17
                                                    ID#                Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 2, 7, 18     ☐ Send directly to Grievance Officer     ☐ Outside jurisdiction of this facility. Send to
                                                                         Administrative Review Board, P.O. Box 19277,
                                                                         Springfield, IL 62794-9277

Response: A copy of this grievance has been forwarded to the HCU for
review and response and the original to the Grievance office. There is
no need to send your copy to the Grievance Office as HCU you
will receive a final response from Grievance Office when HCU responds
to same.

T. Butler-Winters          J. Butler - W          2, 7, 18
Print Counselor's Name          Counselor's Signature          Date of Response

---

**EMERGENCY REVIEW**

Date Received: 1, 24, 18     Is this determined to be of an emergency nature?  ☐ Yes; expedite emergency grievance
                                                                                ☑ No; an emergency is not substantiated.
                                                                                Offender should submit this grievance
                                                                                in the normal manner.

Randy Pfister          1, 24, 18
Chief Administrative Officer's Signature          Date

Distribution: Master File; Offender          Page 1          DOC 0046 (8/2012)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS

OFFENDER'S GRIEVANCE (Continued)

Back to the medical director DR. OBAISI, on December 13, 2017 I seen Dr. OBAISI and explain my excruciating pain. In. my shoulder(s) knees, and lower back, finger, and left elbow, plus what DR. WILLIAMS told me, about the "bone spurs" he told me I was going back out to U.I.C. for my finger, but he can't do nothing for my other conditions. I even showed him how I could barely raise my arm(s) to "chest level" and how much pain I was in and how long I been dealing with these problems. He ask me how long, I told him, it's on the "med-ical chart's" dating back at least 6-7 years ago,... so he gave me some more pills (indome-thacin) and told me to have a "nice day". Before I left his office, I ask him when I go to U.I.C. can he put in that (appointment) they see me for my other issue(s) he said he could'nt do that because WEX-FORD haven't approved me for that /or them issues. So I said can I talk to them about my other issues, he said "BROTHER this is a FREE country" and said you can leave now. On December 14, 2017, I went to U.I.C. for my "finger" and the Dr. there told me, he can't do nothing for finger (my) mobility / but for the pain, and this not 100% to stop my pain but it may help, he could "fuse the bones together" but it would not guarantee the pain would subside. this might be something I have to live with.... then I told them about my other issue(s) shoulder(s) the "popping" I been experience, my knee(s) the popping and pain I'm in, my left elbow and how it' hurts, how i'm unable to sleep, and my lower back pain, the same thing I been complaining to DR. OBAISI about. the popping the Dr. at U.I.C. said could be serious, so she put in a referral to see another bone doctor for my shoulder(s) and knee(s), (and sent it to STATEVILLE) plus out, they did'nt mention my lower back pain,... I'm worried that my shoulder(s) knee(s) been out of wack, (for) so long I may need a surgery / or (have) permanately damage which may effect my "range (and mobility" (my) due to Dr. OBAISI delay in treat-ment like my finger did ! Can some body please help me and do something about this.. (please)

RESPECTFULLY,

Wendell Weaver

-THANKS-

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE



| Date: Jan 29, 2018 | Offender: (Please Print) WENDELL WEAVER | | ID#: R47387 |
|---|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

| ☐ Personal Property | ☐ Mail Handling | ☐ Restoration of Good Time | ☐ ADA Disability Accommodation |
|---|---|---|---|
| ☑ Staff Conduct | ☐ Dietary | ☑ Medical Treatment | ☐ HIPAA |
| ☐ Transfer Denial by Facility | ☐ Transfer Denial by Transfer Coordinator | | ☐ Other (specify) _____ |

☐ Disciplinary Report: ____/____/____
          Date of Report                   Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

RECEIVED
STATEVILLE
FEB 20 2018
GRIEVANCE DEPARTMENT
BY: _____

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON DECEMBER 29 OR THE 28TH OF 2017, THE ABOVE OFFENDER WAS SEEN BY "MEDICAL DIRECTOR DR. E. FROM A FOLLOW UP AT U.I.C. HOSPITAL VISIT, and WAS TOLD BY THE OFFENDER WHAT THE DR.S (DOCTORS) AT U.I.C. SAID IN REGARDS TO MY FINGER, SHOULDER(S) and KNEE(S) ABOUT THEY RECOMMEND I SEE ONE OF THEY "ORTHO" BONE SPECIALIST" (BONE DOCTOR IN REGARDING MY CHRONIC PAIN and POPPING IN MY SHOULDER(S) KNEE(S) LEFT ELBOW), THEY SENT STATEVILLE A →

Relief Requested: FIND OUT WHY I'm IN SO MUCH PAIN and WHY MY KNEE(S) SWELLING UP? and POPPING SAME WITH MY SHOULDER(S) and ELBOW, and LOWER BACK.

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Wendl_ _mm_        # R47387     1.29.18
    Offender's Signature                         ID#           Date

(Continue on reverse side if necessary)

---

| | Counselor's Response (if applicable) | |
|---|---|---|
| Date Received: ____/____/____ | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: _____

_____

_____

_____

_____

Print Counselor's Name             Counselor's Signature             Date of Response

---

| | EMERGENCY REVIEW | |
|---|---|---|
| Date Received: 2.22.18 | Is this determined to be of an emergency nature? | ☐ Yes; expedite emergency grievance ☑ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |

_Walter Nichol_                            2.22.18
Chief Administrative Officer's Signature                Date

Distribution: Master File; Offender             Page 1             DOC 0046 (8/2012)

REFERRAL FOR SUCH ON THAT SAME DAY
+ RETURNED ON DECEMBER 14TH 2017 WHICH
DR. E DISCUSS WITH ME, and SAID HE WAS
GOING TO PUT IN HIS REFERRAL TOO WEXFORD
TO SEE IF THEY WOULD APPROVE ME. + GOT A
GRIEVANCE BACK YESTERDAY, SAYING I'm APPROVE
TO SEE U.I.C. BONE SPECIALIST BUT THAT WAS
IT. SEE, GRIEVANCE # 324 DATED 1-25-18 I'm
IN EXCRUCIATING PAIN AS I WRITE THIS GRIEVANCE
and HAVE BEEN FOR THE PAST THREE (3) YEARS OR
LONGER, I KNOW SOMETHING IS WRONG WITH
my SHOULDER (s) and KNEE (s) DUE TOO THE
PAIN and POPPING SOUND'S. CAN SOME ONE
PLEASE TELL ME WHY I HAVEN'T RECEIVED
ANY HELP IN THIS REGARD? EVERY TIME
+ WALK FOR A LONG PERIOD OF TIME OR
STAND ON MY FEET MY KNEE (s) SWELL UP.
MY ARMS CAN'T GO ABOVE MY CHEST LEVEL.
IT'S HARD FOR ME TOO WASH UP and USE
THE REST ROOM, OR EVEN SLEEP MY LOWER
BACK IS KILLING ME. THE MED's THEY HAVE
GIVING ME DOES NOTHING FOR THE PAIN
PLEASE HELP ME.

P.S. I'm AFRAID                    — THANKS—
MY SHOULDER (s) and
KNEE (s) BONE, TENDON WILL NEED
SURGERY DUE TO THE NEGLECT THE
MEDICAL DEPARTMENT BEEN INFLICTING
ON ME, WITH IGNORING MY COMPLAINTS and PAIN.

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE** B604

| Date: 3-9-2018 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ ADA Disability Accommodation
☑ Staff Conduct        ☐ Dietary          ☑ Medical Treatment            ☐ HIPAA
☐ Transfer Denial by Facility  ☐ Transfer Denial by Transfer Coordinator  ☐ Other (specify):

☐ Disciplinary Report: ____/____/____    Date of Report    Facility where issued

RECEIVED STATEVILLE C.C. APR 06 2018 GRIEVANCE DEPARTMENT BY: _____

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

RECEIVED STATEVILLE C.C. MAR 2 2 2018 COUNSELING DEPARTMENT BY: _____

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

IN JANUARY 2018, THE ABOVE OFFENDER HURT HIS RIGHT ARM [FORE-ARM - AND - RIGHT BICEP] DURING A BASKETBALL GAME. DR. WILLIAMS SEEN THE OFFENDER A FEW HOURS LATER AND NOTICE THE CROOKED FORE ARM AND BICEP MUSCLE LOOKED DEFORMED, SO SHE SENT THE OFFENDER OUT TOO ST. JOSEPH HOSPITAL IN JOLIET, THEY DID X-RAYS ON THE BONES AND SAID THEY WERE NEGATIVE AND SENT ME BACK TOO STATEVILLE, NOT CHECKING THE MUSCLES OR TOO SEE IF ANY MUSCLE HAD

**Relief Requested:** PAIN MEDS FOR MY ARM - AND - SEND ME TOO SEE WHY MY ARM - BICEP IS HURTING AND DEFORM, MY SHOULDERS, KNEES(S) LOWER BACK PAIN - LEFT ELBOW - AND NEW BLOOD PRESSURE MEDS, AND WHY IT'S HIGH!

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_(signature)_ Offender's Signature    R47387    3, 19, 18
                                       ID#        Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 4, 19, 18    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of this grievance has been forwarded to the H.C.U for review and response and the original to the grievance officer. You don't need to send your copy to the H.C.U or grievance officer. You will receive a final response when the H.C.U responds to same.

T. Buffer-Winters    _(signature)_ J. Butler    4, 19, 18
Print Counselor's Name    Counselor's Signature    Date of Response

---

**EMERGENCY REVIEW**

Date Received: 4, 4, 18    Is this determined to be of an emergency nature?

☐ Yes; expedite emergency grievance
☑ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_(signature)_ Chief Administrative Officer's Signature    5, 8, 18    Date

Distribution: Master File; Offender    Page 1    DOC 0046 (8/2012)

Printed on Recycled Paper

B624

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 07-05-2018 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |
|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |
|---|---|

RECEIVED
STATEVILLE C.C.
2018
GRIEVANCE DEPARTMENT
BY: _____ 4899

**NATURE OF GRIEVANCE:**

☐ Personal Property   ☐ Mail Handling   ☐ Restoration of Good Time   ☐ ADA Disability Accommodation
☒ Staff Conduct   ☐ Dietary   ☒ Medical Treatment   ☐ HIPAA
☐ Transfer Denial by Facility   ☐ Transfer Denial by Transfer Coordinator   ☐ Other (specify): _____

☐ Disciplinary Report: _____ / _____   Facility where issued
                        Date of Report

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

IN EARLY JANUARY 2018 THE ABOVE OFFENDER INJURED HIS RIGHT ARM / (TORE) BICEP MUSCLE DURING a BASKET BALL GAME, a FEW MONTHS AGO, THE ABOVE OFFENDER HAD AN "ULTRA SOUND" WHICH CONFIRM THE ABOVE INJURY. DR. O SAID THE ABOVE OFFENDER WILL BE GOING TOO SEE AN OUTSIDE DOCTOR, BECAUSE OF THIS INJURY, PAIN, THIS OFFENDER IS SUFFERING FROM, THIS INJURY IS AFFECTING THE OFFENDER DAY 2 DAY ACTIVITIES, SUCH AS BRUSHING HIS TEETH, WASHING HIS BODY, "WASHING" HIS CLOTHES, GROOMING →

**Relief Requested:** GET ME TO THE OUTSIDE HOSPITAL A.S.A.P. BECAUSE my "ARM (muscle)" SITUATION IS GETTING WORSTER and WORSTER TO THE POINT MY ARM IS STARTING TO GIVE OUT ON ME? PAINING

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ (Offender's Signature)   R47387 (ID#)   07, 05, 2018 (Date)

(Continue on reverse side if necessary)

---

**Counselor's Response** (if applicable)

| Date Received: 7, 15, 18 | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

**Response:** A copy of this grievance has been forwarded to the HCU for review and response and the original grievance has been forwarded to the grievance office. There is no need to send your copy to the grievance officer or HCU. You will receive a final response when the HCU responds.

M Les
Print Counselor's Name

M Sq
Counselor's Signature

7, 17, 18
Date of Response

---

**EMERGENCY REVIEW**

| Date Received: >1/11/18 | Is this determined to be of an emergency nature? | ☐ Yes; expedite emergency grievance ☒ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

_____ Chief Administrative Officer's Signature

_____ 1/11/18 Date

Distribution: Master File; Offender          Page 1          DOC 0046 (8/2012)
Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

ETCREA. BECAUSE ITS ARM GIVES OUT, and TIRED OUT and EVERYTIME HE BEND HIM ARM IT "HURTS" EVEN WRITING THIS GRIEVANCE More "HURTS LIKE HELL"! I'm CONCERN WITH THIS "DELAY" IN SENDING ME TOO THE HOSPITAL MAY LEAD TO PERMANATTLY DAMAGING MY ARM / MUSCLE (TISSUE) ETC. and I HAVE TOO DEAL WITH THIS FOR THE REST OF MY LIFE... DR. O TOLD ME I WAS SCHEDULE TOO GO OUT / OR APPROVE, MY QUESTION IS WHEN? BEFORE IT'S TOO LATE, and MY ARM BECOME USE-- LESS! PLEASE FIND OUT WAS GOING ON WITH THIS SITUATION.

THANK YOU IN ADVANCE

Printed on Recycled Paper

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

B624

| Date: 07-06-2018 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |
|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ ADA Disability Accommodation
☒ Staff Conduct    ☐ Dietary    ☒ Medical Treatment    ☐ HIPAA
☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator    ☒ Other (specify): RECEIVED STATEVILLE C.C.

☐ Disciplinary Report: _____
        Date of Report         Facility where issued

JUL 17 2018
GRIEVANCE DEPARTMENT

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

RECEIVED

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

    Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
    Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
    Chief Administrative Officer, only if EMERGENCY grievance.
    Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
    administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
    Administrative Officer.

500
C.C.

JUL 26 2018

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON TO-DAY'S DATE THE ABOVE OFFENDER WAS GIVEN AN APPOINTMENT TO SEE PHYSICAL THERAPIST "HOSEA" FROM A REFERRAL FROM DR. WILLIAMS BACK IN FEBRUARY 2018 (5) MONTH'S AGO FOR MY INJURED RIGHT ARM (I.D.R.) (BICEP, ETC. FROM THE JANUARY 2018 BASKETBALL GAME, (SEE 7-05-2018 GRIEVANCE.) DR. WIL-IAMS REFERRED THIS TREATMENT BEFORE MY "ULTRA-SOUND" WAS TAKEN BACK IN MAY (OR JUNE (td.) I SAW DR. O AFTER HE REVIEWED THE ULTRASOUND, and

**Relief Requested:** GET ANOTHER PHYSICAL THERAPIST TO HELP and ASSIST "HOSEA" - BECAUSE (5) MONTH'S DELAY CAN BE FATAL / CRUCIAL BECAUSE of HIS BACK LOG - GET ME OUT TO THE PT, BECAUSE IT'S BEEN →

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Wendell Weaver_        R47387    07/06/18
Offender's Signature           ID#      Date

*(Continue on reverse side if necessary)*

---

| **Counselor's Response (if applicable)** |
|---|

| Date Received: 7 , 31 , 18 | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

**Response:** _A copy of your grievance has been forwarded to the HCU for review and response and the original has been forwarded to the Grievance Office. Do not send your copy to the HCU or the Grievance Officer. You will receive a final response when the HCU responds._

_M Les_         _M Les_      7 , 31 , 18
Print Counselor's Name      Counselor's Signature     Date of Response

---

| **EMERGENCY REVIEW** |
|---|

| Date Received: 7 , 24 , 18 | Is this determined to be of an emergency nature? | ☐ Yes; expedite emergency grievance ☒ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

_Walter Nicholson_ (DW)          7 , 24 , 18
Chief Administrative Officer's Signature        Date

Distribution: Master File; Offender           Page 1          DOC 0046
                           Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

Recommended I SEE AN OUTSIDE DOCTOR, FOR THEIR ASSESSTMENT(S). SO THE REFFERAL DR. WILLIAMS SUGGESTED IS PREMATURE, SINCE SHE DIDN'T SEE THE ULTRA SOUND SO SHE COULD'NT POSSIBLY KNOW THE SEVERITY OF THIS INJURY, SO I DON'T WANT TO INJURED MY ARM WORSTDE THEN IT IS ALREADY, IT'S LIKE PUTTING THE CART BEFORE THE HORSES, THIS INJURY MAY NEED SURGERY, SO WHY WOULD SHE SUGGEST PHYSICAL THERAPY BEFORE SEEING WHAT THIS OUTSIDE, DR./OR HOSPITAL WILL SUGGEST. PHYSICAL THERAPIST "MOSEA" SAID HE'S BACK-UP WITH OVER 80 GUYS and TMT'S WHY IT TOOK HIM SO LONG TOO CALL ME OVER (5) MONTHS IS TOO LONG TO BE WAITING FOR PHYSI - CAL THERAPY. WE NEED ANOTHER PHYSICAL THERAPIST THESE DELAY'S CAN REALLY HURT ONE CHANCE OF GETTING THIER MOBILITY BACK, And IMPROVING THIER CHANCES AFTER SURGERY OF GAINING SUCCESS IN PHYSICAL THERAPY, PLEASE LOOK INTO THIS MATTER AS SOON AS POSSIBLE.
                                      — THANKS —

RELIEF REQUESTED: IT'S ALREADY BEEN (6) MONTHS SINCE THIS INJURY And I AM IN PAIN, and my ARM GIVESOUT and HURT EVERYTIME I BEND IT PHYSICAL THERAPY (0) THIS SINCE WILL BE SOOOO PAINFUL. PLEASE CHECK INTO THIS FOR ME, WHY I HAVENT BEEN OUT YET, TOO SEE IF PHYSICAL THERAPY IS NEEDED, BECAUSE DR. O WHO SAW THE ULTRA — — SOUND DIDNT RECOMMEND THIS COURSE OF TREATMENT, DR. WILLIAMS SUGGESTED BEFORE THE "ULTRA - SOUND"!

B624

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE**

| Date: DEC 02, 2018 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |
|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify):

RECEIVED STATEVILLE C.C.
DEC 17 2018
7443

- [ ] Disciplinary Report: _____ / _____ / _____
      Date of Report     Facility where issued

GRIEVANCE DEPARTMENT BY:

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

THE ABOVE OFFENDER HAS BEEN SCHEDULE TO SEE THE MEDICAL DIRECTOR ON FOUR DIFFERENT OCCASSIONS SINCE I CAME BACK FROM MY U.I.C. MEDICAL WRIT FROM THE OUTSIDE HOSPITAL, BUT TO NO AVAIL. I'M ALWAYS GETTING RESCHEDULE. U.I.C. DOCTOR'S PRESCRIBE NEW MEDICINES AND RECOMM -ENDATIONS, EVEN AN SURGERY ON MY LEFT PINKY FINGER FOR THE PAIN & LIMITED MOBILITY BUT TOO NO AVAIL, U.I.C. EVEN GAVE ME THE SOLUTION 2nd —

Relief Requested: SEND ME BACK OUT FOR MY SURGERY ON MY FINGER, FOLLOW U.I.C. DOCTORS ORDERS AND RECOMMENDATION(S) KEEP / SEND A JOURNAL OF MY BLOOD PRESSURE 2 U.I.C.

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _(signature)_ | R47387 | 12, 02, 18 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 1, 11, 19

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of your grievance has been forwarded to the HCU by the Grievance Office for review and response by the Medical staff. You will receive a final response when the HCU responds to same.

| C. Franklin ccII | C Franklin | 1, 18, 19 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: 12, 19, 18

Is this determined to be of an emergency nature?

- [ ] Yes; expedite emergency grievance
- [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

RECEIVED STATEVILLE C.C.
DEC 24 2018

RECEIVED JAN 11 2019 GRIEVANCE DEPARTMENT

| _Walter Nicholson_ | 12, 19, 18 |
|---|---|
| Chief Administrative Officer's Signature | Date |

Distribution: Master File; Offender

Page 1

DOC 0046 (8/2012)

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

INSTRUCTION THE NIGHT BEFORE THE SURGERY BUT I STILL HAVEN'T BEEN BACK OUT? I'AM IN PAIN - PLUS U.I.C. WANTED ME TO BE TREATED FOR MY "SLEEP APNEA" WHICH IS AFFECTING MY "HEART CONDITION" BUT TO NO AVAIL! THEY U.I.C. EVEN SAID THIS CONDITION CAN EFFECT MY BLOOD PRESSURE, THAT'S WHY IT'S SO HIGH, FINALLY I HAVE BEEN TO U.I.C. CARDIOLOGIST 4 TIMES AND EACH TIME THEY WANTED TO SEE MY DAILY BLOOD PRESSURE CHECKS - JOURNALS - BUT TO NO AVAIL, PLEASE FOLLOW U.I.C. ORDER(S) I ALSO RAN OUT OF MY BLOOD PRESSURE MEDS (NORVASC) THEY STILL HAVEN'T RENEWED THEM THANKS "2 WEEKS AGO" PLUS I WAS SCHEDULE TO GO OUT FOR MY TORN BICEPS IN RIGHT ARM BUT WENT TO U.I.C. FOR S.T. BUT THEY SEEN ME FOR MY FURTHER SURGERY, SO I STILL DIDN'T SEE NO ONE FOR MY TORN BICEP, PLUS MY KNEE(S) AND SHOULDER(S) BOTH ARE STILL IN EXCRUCIATING PAIN - AFTER GETTING THE STEROID(OR) WHATEVER THE NAME OF THE SHOT THEY GAVE ME IN MY SHOULDER(S)(2) WI C A WHILE BACK. I BEEN HAVING HEADACHE(S) AGAIN I THINK THIS HAS SOMETHING TOO DUE WITH MY PAIN (AND HIGH-PRESSURE) PLEASE CALL ME.

(THANKS AGAIN)

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

B1624

| Date: DEC 12, 2018 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |

**NATURE OF GRIEVANCE:**

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ ADA Disability Accommodation
☑ Staff Conduct ☐ Dietary ☑ Medical Treatment ☐ HIPAA
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator ☐ Other (specify):

☐ Disciplinary Report: ____/____/____
　　　　　　　　　　　Date of Report　　　　　　　　Facility where issued

OFFICIAL I.D
STATEVILLE C.C.
DEC 17 2018
7441a
GRIEVANCE DEPARTMENT
BY:

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON TODAYS DATE THE ABOVE OFFENDER WAS SEEN AT SICK CALL ABOUT THE PAIN IN MY LEFT PINKY FINGER - AND WAS INFORMED THE RECOMMENDED 3RD SURGERY BY U.I.C. WAS DENIED BY "COLLEGE" THE MEDICAL PERSONEL at STATEVILLE FOR UNKNOWN REASONS. I BEEN COMPLAINING ABOUT THIS PAIN, LACK MOBILITY and MOVEMENT SINCE MY LAST SURGERY BACK IN 2016 ALSO THE DOCTORS AT U.I.C. TOLD ME THIS SURGERY WOULD BENEFIT ME. CO JEFFERSON

Relief Requested: SEND ME BACK TO U.I.C. FOR THIS 3RD SURGERY, TO END THIS PAIN AND GET MY MOBILITY BACK, AND MOVEMENT. . . . . .

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Wendell Weaver / Offender's Signature 　E47387 ID# 　12, 12, 18 Date

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: 1, 11, 19
☐ Send directly to Grievance Officer ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of your grievance has been forwarded to the HCU by the Grievance Office for review and response by the Medical staff. You will receive a final response when the HCU responds to same.

C. FRANKLIN CCII Print Counselor's Name 　C. Franklin Counselor's Signature 　RECEIVED Date of Response

MAY 17 2019

**EMERGENCY REVIEW**

Date Received: 12, 19, 18
Is this determined to be of an emergency nature? ☐ Yes; expedite emergency grievance ☑ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Walter Nicholson (sw) Chief Administrative Officer's Signature 　12, 19, 18 Date

RECEIVED STATEVILLE C.C. JAN 11 2019 GRIEVANCE

ADMINISTRATIVE REVIEW BOARD

Distribution: Master File; Offender 　Page 1 　DOC 0046 (8/2012)

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

AND C.O. QUARALS WAS ALSO IN THE ROOM WITH
ME WHEN THE DOCTORS TOLD ME THIS AND SENT
THE RECOMMENDATION(S) BACK TO STATEVILLE, BUT TOO
NO AVAIL! NOW I'M STILL IN PAIN, AND LACK
OF MOBILITY, AND I GUESS THE MEDICAL PERSONNEL
DOESN'T CARE! PLEASE DO SOMETHING ABOUT THIS
PLEASE,........., I HAVE TOLD MY COUNSELOR MR.
SHERMIN ABOUT THIS AND MY PAIN AND — THANKS —
STILL NOTHING HAPPEN I DON'T KNOW WHAT
ELSE TO DO?



Housing Unit: E123  Bed #: BOTTOM

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: OCT. 01, 2020 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |
| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. | |

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ ADA Disability Accommodation
☑ Staff Conduct    ☐ Dietary    ☑ Medical Treatment    ☐ HIPAA
☐ Transfer Denial by Facility    ☐ Other (specify):

☐ Disciplinary Report: _____ / _____ / _____
       Date of Report             Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
     Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     Chief Administrative Officer, only if EMERGENCY grievance.
     Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from
     another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information
for each person involved):

ON THE ABOVE DATE, THE ABOVE OFFENDER WAS SEEN BY A "FEMALE"
DOCTOR TODAY AFTER BEING RESCHEDULE ABOUT 6 TIMES, I TOLD
HER ABOUT THE "EXCRUCIATING" PAIN I BEEN IN FOR THE
PAST YEAR OR SO! AND THAT THE TYLENOLS-3's THEY BEEN
GIVING ME WAS SOMETHING TOO MAKE ME SICK AND WAS
"INEFFECTIVE" TOWARD MY PAIN! I TOLD HER ABOUT MY (FEEL)
"CRONIC" KNEE PAIN AND THAT I BELIEVE MY PROBLEM
IS A "TORN ACL / OR TENDON" DUE TOO THE POP P / SNAP
SOUND IT MADE DURING A BASKETBALL GAME A FEW YEARS →

Relief Requested: GIVE ME TRAMADOL(S) MEDICATION / OR SOMETHING
"EQUIVALENT" FOR MY POINTS FINGER PAIN, KNEE, SHOULDER / ELBOW PAIN
SEND ME OUT FOR MY M.R.I ON MY KNEE, SHOULDER & ELBOWS & MY 3RD SURGERY!
AND GIVE ME MEDICATION FOR MY M.R.I FUN ELBS

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

☐ Check if this is NOT an emergency grievance.

_[signature]_ Offender's Signature      R47387      ID#      10, 01, 2020    Date

(Continue on reverse side if necessary)

STATEVILLE C.C.
OCT 8 2020
GRIEVANCE DEPARTMENT
RECEIVED
STATEVILLE C.C.
DEC 9 2020
GRIEVANCE DEPARTMENT

---

**Counselor's Response (if applicable)**

Date Received: _____ / _____ / _____    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to
Administrative Review Board, P.O. Box 19277,
Springfield, IL 62794-9277

Response: _____

Print Counselor's Name      Counselor's Signature      Date

RECEIVED
JUN 0 1 2021
ADMINISTRATIVE REVIEW BOARD

---

**EMERGENCY REVIEW**

Date Received: 11 H - , 2020    Is this determined to be of an emergency nature?
☐ Yes; expedite emergency grievance
☑ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_[signature]_ Chief Administrative Officer's Signature      11 / 4 , 2020    Date

EARLIER, "SHE TOLD ME SHE can't MAKE my LIFE my
PAIN FREE" And EITHER I TAKE THE TYLENOL 3's.
OR GET REGULAR TYLENOL's, etc. I TOLD HER THE OTHER
PAIN MEDICINE I WAS GETTING WAS more HELPFUL
OR "BENEFICIAL" (THE TRAMADOLS) But SHE SAID IT can't
GET THEM (NO MORE) and OFFER something WEAKER
THAN I WAS ALREADY ON (Some REGULAR TYLENOLS)
VERSUS (TYLENOLS 3); And LEFT IT AT (TAKE IT
OR LEAVE IT) I ALSO TOLD THER ABOUT my "NAIL"
(FUNGUS) ON my TOE NAILS SPREADING TOO my FINGER
NAIL'S, And SHE BLEW THAT OFF AS UN important
(my NAILS ARE HURTING AT WELL DUE TOO THIS IN-
-FECTION) I HAD THIS FOR ABOUT 7-8 YEARS
NOW, WITH LITTLE TOO NO MEDICINE AT ALL.,
SO IT'S GETTING WORSTER ) I BROUGHT UP
my 3RD SURGERY - ON my PINKY FINGER - THAT
WAS DENIED BY COUNTERING (And SONATA/ILLS) SHE
SAID SHE DID'N'T WANT TOO HEAR IT, and IT'S UN-
IMPORTANT! SAME WITH my M.R.I ON my
RIGHT SHOULDER And ELBOW, and my KNEE (RT.), that
I KEEP complaining ABOUT — SHE SAID
THERE "NOTHING" SHE CAN DO FOR ME RIGHT
NOW ? I TOLD. HER I WAS IN "EXCRUCIATING
PAIN 10-20 TIMES And SHE SAID, IT'S
"NOTHING" SHE COULD DO FOR ME and
THEN TOLD ME TOO LEAVE, WITHOUT
TELLING WAS SHE GOING TOO CONTINUE
TOO GIVE ME (NEW MEDICATION) FOR my
PAIN (OR DO ANYTHING FOR my NAIL
FUNGUS OR my ELBOW And SHOULDER,
AND KNEE, SO I'm JUST IN LIMBO and
PAIN WONDERING WHAT'S GOING TOO
HAPPEN? CAN someone DO something
ABOUT THIS PLEASE — I'm HURTING
RIGHT NOW) !
        I ALSO TOLD HER ABOUT THE "MRI" I WENT FOR
ON my ARM and SHOULDER, BUT DR. HENZIE (THE MEDICAL
DIRECTOR) WAS GOING TOO PUT ME IN FOR SEDATION
AND SEND ME BACK, BUT TO NO AVAIL) BECAUSE
I HAVE (CLAUSTROPHOBIA) And I COULD'n't STAY IN
THERE ! (THE MACHINE) ! THAT WAS ALMOST (2) YEARS
AGO, OR CLOSE TOO IT ? SAME W/ my 3RD. SURGERY ON
my PINKY FINGER TOO REMOVE THE BLOOD UP ON THE BONE

THE NURSE WHO TOOK my VITALS, ALSO commented on my "HIGH BLOOD
PRESSURE" And I ASE COULD IT B.C HIGH BECAUSE OF PAIN AND
SHE SAID YES ! my ANKLES ARE ALSO SWOLE, SHE LOOKED/AND FELT

I HAVE TALKED "PERSONALLY" TO ASST. WARDEN
WILLIAMS, WARDEN "GOMEZ" AND HIS
ASST. MS. HUNTER/TARR BUT TO NO-
AVAIL. I TALKED TOO ALL OF THEM ABOUT THE
PAIN I'M IN, "THE LACK OF MEDICAL TREATMENT,
THE RESCHEDULING OVER AND OVER AGAIN —
THE "EXCRUCIATING PAIN — MY PINKY FINGER, MY
RIGHT KNEE (I BARELY CAN STAND ON) MY SHOULDER
(RIGHT AND RIGHT ELBOW AND DEFORMITY OF MY
RIGHT BICEP) ? I SHOWED THEM MY "INJURY"
MY (SWOLE KNEE) MY DEFORMED RIGHT MUSCLE
MY THICK DISCOLORED TOE NAILS, TOO SHOW
AND PROVE TOO THEM I'M NOT JOKING OR
PLAYING GAMES W/ THE MEDICAL STAFF
HERE ! I TALKED TO SEVERAL NURSES MEN
AND WOMEN, ONE NAME (TINA) TOLD ME
TOO WRITE A GRIEVANCE BECAUSE THE
MEDICAL SUPERIORS ARE BOGGISH (AND WRONG
HOW THEY ARE TREATING US ! I'M COMPLAINING
TOO EVERY NURSE, COUNSELOR, AND STAFF MEMBER
AND IT'S CONSISTANTLY FALLING ON DEAF EARS !
I EVEN TALKED TOO E-HOUSE COUNSELOR
(SCOTT) AND HE SAID HE CAN'T DO NOTHING ABOUT
(IT (YESTERDAY (SEPT 30, 2020) — THE PLACEMENT
OFFICER (MS. MARKS) MOVE ME TOO E-HOUSE
(THE WORST/BEST CELL HOUSE IN STATEVILLE) BECAUSE I ASK TOO MANY
TOO IN PEOPLE ASK HER TOO MOVE ME DOWN STATE
IN (C-HOUSE) 4 BETTER HOUSE THEN (C-HOUSE
WHEN SHE HAD CELLS OPEN DOWN STAIRS IN
(C-HOUSE) E-HOUSE WAS BUT SHE MOVED ME TOO FULL OF MOLD AND
ROACHES) SHE DONE THIS OUT OF "SPITE", THEN
I'M TRYING TOO GET "MEDICAL TREATMENT"?
THE CELL I'M IN THE E-123 IS FULL OF MOLD
I EVEN TALKED TOO SEVERAL LT. AND SGT.
FOR BLEACH AND CLEANING MATERIAL. LT.
MILSAP GAVE ME BLEACH, AND SEEN THE
MOLD HIS SELF, LT. NORMAN ALSO SEEN
THE MOLD, I ALSO SHOWED THIS ONE
NURSE (FEMALE) I'LL GET HER NAME LATER
AND SHOWED AND TOLD HER ABOUT THE MOLD
BUT TOO NO-AVAIL. — PLACEMENT OFFICER
MARKS, JEOPERDIZING MY HEALTH W/ MOVING
ME IN THIS NASTY (CELL) HOUSE —E-HOUSE —AND IN THIS
MOLDED, ROACH INFECTED CELL — ALL BECAUSE I WAS TRYING TOO
GET MY PROPER MEDICAL TREATMENT, I TOLD WARDEN GOMEZ
WROTE GRIEVANCE(S) AND NOTHING HAPPEN, IT JUST

STATEVILLE C.C.
OCT 06 2020

E 123

Housing Unit: Bed # BOTTOM

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

Date: 9-25-2020

Offender: (Please Print) WENDELL WEAVER

ID#: R47387

Present Facility: STATEVILLE C.C.

Facility where grievance issue occurred: STATEVILLE C.C.

RECEIVED
STATEVILLE C.C.
JAN 15 2021
GRIEVANCE DEPARTMENT
BY:

**NATURE OF GRIEVANCE:**

☐ Personal Property
☑ Staff Conduct
☐ Transfer Denial by Facility

☐ Mail Handling
☐ Dietary
☐ Other (specify):

☐ Restoration of Good Time
☑ Medical Treatment

☐ ADA Disability Accommodation
☐ HIPAA

☐ Disciplinary Report: ____/____/____
Date of Report                    Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

THE ABOVE OFFENDER WAS ISSUED THRU THE MAIL"
BECAUSE STATEVILLE MEDICAL UNIT KEEP RESCHEDU-
LING MY APPOINTMENT TOO SEE THE DOCTOR, "A LOW
BUNK / LOW GALLERY" PERMIT, TOO BE MOVED TOO
A LOWER GALLERY BUT TOO THE BULLET IN MY KNEE/
AND ARM MOVING/ AND GIVING ME UNBEARABLE PAIN
AND THE MEDICINE THEY GIVING ME IS NOT HELP
- ING AT ALL ! SO I TALKED TO SGT, CLARK AND
LT, HARRIS AND THEY BUT "BLEW" ME OFF ABOUT

Relief Requested: GET IN TOO SEE A DOCTOR A.S.A.P. GET
ME SOME STRONGER PAIN MEDS, BUT MOST IMPORTANTLY
PUT ME BACK ON "C-HOUSE" WHERE I BEEN FOR THE LAST YEAR

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

☐ Check if this is NOT an emergency grievance.

Wendell Weaver
Offender's Signature

R47387
ID#

9, 25, 2020
Date

RECEIVE
STATEVILLE
DEC 15 2020
GRIEVANCE DEPARTMENT
BY:

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: ____/____/____

☐ Send directly to Grievance Officer

☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277.

Response: _____

Print Counselor's Name          Counselor's Signature          Date of Response

**EMERGENCY REVIEW**

Date Received: 11 / 4 / 2020

Is this determined to be of an emergency nature?    ☐ Yes; expedite emergency grievance
☑ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

David Gomez (by)
Chief Administrative Officer's Signature

11 / 4 / 2020
Date

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE (Continued)**

MOVING ME DOWN STAIRS and RESPECTING my PERMIT(S) SO THE NEXT DAY I SPOKE TOO THE ACTING SGT OF C-HOUSE on SEPT 24, 2020, and TOLD him ABOUT my PERMITS, HE can PLACEMENT ms. MARKS ABOUT SOME LAW SUIT(S) I supposedly SAID TOO him, And ms. MARKS TOLD him SHE got SOMETHING FOR ME, And TOLD him don TELL ME SHE GOT SOMETHING FOR ME AND TO PACK UP SHE MOVING ME TOO "E-HOUSE" CELL 123, WHEN C-HOUSE HAD OPEN CELLS ON 4 GALLERY AND 2 GALLERY! SHE MOVED ME TOO A "HIGH AGGRESSIN HOUSE, WHEN my AGGRESSION LEVEL IS SUPER LOW! WHAT OTHER REASON WOULD SHE DO THIS, but AS PUNISHMENT? THIS E-HOUSE CELL, IS NASTY and HAVE "BLACK MOLD" ON THE BACK WALL, THE WATER DON'T WORK, And ROACHES and ANT (S) INSECTS IS ALL OVER THE PLACE! ALL BECAUSE I WANTED TOO MOVE ON A LOWER GALLERY DUE TO my MEDICAL PERMITS? THIS IS "UNFAIR" AND A VIOLATION OF my CONSTITUTIONAL RIGHTS — RETALIATION — FOR ME WANTING STATEVILLE SECURITY TOO FOLLOW THE MEDICAL DOCTOR'S ORDER ! TOO HELP ALLEVIATE SOME OF THIS PAIN I'm EXPERIENCING! SOMEONE NEEDS OUT STOP THIS UNETICAL BEHAVIOR AROUND HERE AND START HOLDING THESE PEOPLE (S) ACCOUNTABLE.....

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO COMMITTED PERSON'S GRIEVANCE**

BL024

| Grievance Officer's Report |
|---|

**Date Received:** 11/28/17          **Date of Review:** 1/25/18          Grievance # 324

**Committed Person:** Wendell Weaver          ID #: R47387

**Nature of Grievance:** Medical Treatment

**Facts Reviewed:** Grievant claims on a grievance dated 10/17/17 that he was seen by Dr. Obaisi on 10/17/17. Offender claims that he told Dr. Obaisi the muscle rub, knee cloth stabilizer and back support were not helping his pain. Offender also claims that his knees and sholders are 'popping.' Offender claims that he was prescribed Tylenol for pain in his finger on which he had surgery. Offender also claims that he is experiencing pain in his lower back, left elbow, high blood pressure and needs to see a bone specialist.

**Grievance Officer finds** according to Health Care Unit staff "After reviewing offender's medical record. He has been seen regarding his issues several times. He was seen by Dr. Obaisi on 12/13/17 blood work (came back within normal limits) ordered and medication change. Follow up in 2 weeks. He was seen by Dr. Sood 12/27/17 no change in medication, referred to UIC. He does have an approved appointment to UIC Ortho.

*This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.*

**Recommendation:**          **Denied as grievant appears to be receiving medical care at this time.**

David Mansfield, CCII
Print Grievance Officer's Name                              Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Date Received:** 1/26/18          ☑ I concur          ☐ I do not concur          ☐ Remand

**Comments:**

Chief Administrative Officer's Signature                              1/26/18
Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Committed Person's Signature          R47389          2/14/18
ID#          Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO COMMITTED PERSON'S GRIEVANCE**

B624

| Grievance Officer's Report |
|---|

Date Received: 4/30/18          Date of Review: 1/11/19          Grievance # 2864

Committed Person: Wendell Weaver          ID #: R47387

Nature of Grievance: Medical Treatment

**Facts Reviewed:** Grievant claims on a grievance written 3/9/18 that he wants proper care for an injury to his arms from playing basketball.

Grievance Officer finds that per Medical Staff, "After reviewing the offender's medical record Offender Wendell seen in HCU 3/15/18 new order for ultrasound of right bicep, blood pressure daily x5 days, and EKG. Offender informed to call med tech with any issues. 5/2/18 ultrasound done. 6/5/18 seen Dr. Okezie referred to UIC orthopedic for right bicep with blood pressure daily x 2 weeks. Physical Therapy pending. Offender follows UIC cardio. If offender has any more issues he should follow the proper sick call procedures including the copay."

*This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.*

**Recommendation:**          **Grievance is MOOT as grievant appears to be receiving medical care at this time.**

Anna McBee, CCII _____          _____
Print Grievance Officer's Name          Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

Date Received: 1-28-19     ☑ I concur     ☐ I do not concur     ☐ Remand

Comments:

_____          1-28-19
Chief Administrative Officer's Signature          Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____          R47387          1-20-19
Committed Person's Signature          ID#          Date

ILLINOIS DEPARTMENT OF CORRECTIONS
RESPONSE TO OFFENDER'S GRIEVANCE

B624

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 12/17/2018 | Date of Review: 04/09/2019 | Grievance # (optional): 7446 |
| Offender: Wendell Weaver | | ID#: R47387 |

**Nature of Grievance:**

Medical Treatment

**Facts Reviewed:**

Facts Reviewed: Grievant claims on a grievance written 12/12/18 that he wants to return to UIC for the pain in his finger.

Per Medical Staff, "Inmate was seen at UIC for ORIF right 5th finger. Inmate received blood pressure pills (Norvasc & Coreg on 3/7/18, HCTZ on 3/13 and Minoxidil on 3/18). Collegial approval for cardio follow up, MRI of C Spine and neurosurgery. The inmate's medical issues are being addressed. Inmate's CPAP machine was denied. Inmate had an MRI of right elbow and PT was recommended."

This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.

**Recommendation:**

Grievance is MOOT.

Anna McBee
_____
Print Grievance Officer's Name
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

_____
Grievance Officer's Signature

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 4-12-19 | ☒ I concur  ☐ I do not concur  ☐ Remand | |

**Action Taken:**

_____
Chief Administrative Officer's Signature

4-12-19
Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand that this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

_____
Offender's Signature

R47387
ID#

5-4-19
Date

C 655 B624

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

| Grievance Officer's Report | | |
|---|---|---|

Date Received: 01/11/2019    Date of Review: 08/17/2020    Grievance # (optional): 7443

Offender: Wendell Weaver    ID#: R47387

**Nature of Grievance:**

Medical Treatment

**Facts Reviewed:**

Facts Reviewed: Grievant claims on a grievance written 12/2/18 that he has not seen the doctor since he came back from UIC Medical Writ. He wants to be seen, sent back out for his surgery on his finger, and his medical journal sent to UIC.

Grievance Officer finds that per D. Williams, Assistant Warden, with information supplied by Medical Staff/Medical Records: "Inmate saw the medical director on 12/21/2018. Orders made. Alternate treatment plan to treat finger onsite on 11/6/18. Inmate prescribed pain medication on 12/20/2018. Prescribed pain mediation on 12/20/2018. Pain medication increased on 12/21/18. Referral submitted on 12/21/2018 for CPAP machine. Per note dated 1/25/19 CPAP machine not warranted. Blood pressure monitored in HTN clinic.. Went to RNSC on 12/12/2018 for missing medication. Order resubmitted to pharmacy on 12/12/2018 for Norvasc. Approved to go to UIC ortho on 12/26/2018 to have shoulder and knee evaluated. Seen on 2/15/2019 by UIC ortho for RUE torn tendon CT of right shoulder completed on 11/25/19. Inmate ordered PT for right knee and ordered and renewed pain medications. No documentation of seeking medical care for headaches. (con't next page)

**Recommendation:**

Grievance is MOOT.

Anna McBee

Print Grievance Officer's Name    Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|

Date Received: 9-3-2020    ☒ I concur    ☐ I do not concur    ☐ Remand

Action Taken:

Donald Young    9-2-2020

Chief Administrative Officer's Signature    Date

| Offender's Appeal To The Director | | |
|---|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

Offender's Signature    ID#: R47387    Date: 9-16-2020

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO OFFENDER'S GRIEVANCE (Continued)

Medical Concerns are to be directed to the cell house Nurse who will evaluate offender for treatment or refer him if appropriate. Alternatively, the offender may send a "Medical Request Slip" to Health Care requesting medical services.

This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.

C 246

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO OFFENDER'S GRIEVANCE

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 12/09/2020 | Date of Review: 04/21/2021 | Grievance # (optional): 2829 |
| Offender: Wendell Weaver | | ID#: R47387 |

**Nature of Grievance:**

Medical - Medical Treatment

**Facts Reviewed:**

Grievant claims on a grievance written on 10/1/2020 that the Tylenol 3 is not helping with his pain. Grievant also states he would like another MRI for his shoulder and treatment for his nail fungus.

Grievance officer finds per Lilybeth Segarro, Director of Nursing:
"Inmate is now on Tramadol and Naproxen. Inmate is currently housed in C-house.

For MRI, Inmate wrote that when Dr. Henze explained the procedure, he rejected because "I have claustrophobia and I couldn't stay in there! (the machine)"

No meds for nail fungus"

Medical concerns are to be directed to the cell house Nurse who will evaluate offender for treatment or refer him if appropriate. Alternatively, the offender may send a "Medical Request" slip to Health Care requesting medical services."

This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.

**Recommendation:**

Grievance is moot.

A. Gomez CCII

Print Grievance Officer's Name                 Grievance Officer's Signature
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 4/30/21 | ☑ I concur ☐ I do not concur ☐ Remand | |

**Action Taken:**

RECEIVED

JUN 01 2021

ADMINISTRATIVE
REVIEW BOARD

David Gomez

Chief Administrative Officer's Signature                 4/30/21
                                                          Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

Offender's Signature          R47387          5/21/2021
                              ID#             Date

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO OFFENDER'S GRIEVANCE

C246

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 01/15/2021 | Date of Review: 07/10/2021 | Grievance # (optional): 2821 |
| Offender: Wendell Weaver | | ID#: R47387 |

**Nature of Grievance:**

Medical – Medical Treatment
Classification – Cell Placement

**Facts Reviewed:**

Grievant claims on a grievance written on 9/25/2020 that he was placed in E house by placement out of retaliation and that he would like stronger pain medication.

Grievance officer finds per ~~Lucosita Galinda, HCUA,~~ Lilybeth Segarra Director of Nursing 4th
"Inmate is back in C-house, C246

He has seen the doctor; will see a doctor in AM.

On strong pain medication Tramadol"

Medical concerns are to be directed to the cell house Nurse who will evaluate offender for treatment or refer him if appropriate. Alternatively, the offender may send a "Medical Request" slip to Health Care requesting medical services."

This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.

**Recommendation:**

Grievance is mixed. Medical is moot; classification is denied.

| A. Gomez CCII | |
|---|---|
| Print Grievance Officer's Name | Grievance Officer's Signature |
| (Attach a copy of Offender's Grievance, including counselor's response if applicable) | |

| Chief Administrative Officer's Response | | | |
|---|---|---|---|
| Date Received: 7/27/21 | ☑ I concur | ☐ I do not concur | ☐ Remand |

**Action Taken:**

| | | |
|---|---|---|
| Chief Administrative Officer's Signature | | 7/27/21 |
| | | Date |

| Offender's Appeal To The Director | |
|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

| | | |
|---|---|---|
| Offender's Signature | ID# R47387 | 8/3/2021 Date |

Bruce Rauner
Governor



John Baldwin
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Offender: _Weaver, Wendell_          Date: _2/28/18_

ID#: _R47387_

Facility: _Stateville_

This is in response to your grievance received on _2/22/18_. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: _10/17/17_   Grievance Number: _324_   Griev Loc: _Stateville_

- [ ] Transfer denied by the Facility
- [ ] Dietary
- [ ] Personal Property
- [ ] Mailroom/Publications
- [ ] Assignment (job, cell)
- [ ] Commissary / Trust Fund
- [ ] Conditions (cell conditions, cleaning supplies, etc.)
- [ ] Disciplinary Report: Dated: ___ Incident # ___
- [x] Other _Medical - treatment for back, knees & shoulder_

Based on a review of all available information, this office has determined your grievance to be:

- [ ] Affirmed, Warden ___ is advised to provide a written response of corrective action to this office by ___.
- [ ] Denied, in accordance with DR504F, this is an administrative decision.
- [x] Denied, this office finds the issue was appropriately addressed by the facility Administration.
- [ ] Other:

- [ ] Denied as the facility is following the procedures outlined in DR525.
- [ ] Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.
- [ ] Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

FOR THE BOARD: _Debbie Knauer_                CONCURRED: _John R. Baldwin_
Debbie Knauer                                              John R. Baldwin
Administrative Review Board                                Acting Director

CC: Warden _Stateville_ Correctional Center
_Weaver_, ID# _R47387_

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

www.illinois.gov/idoc

J.B. Pritzker
Governor



John Baldwin
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court. P.O. Box 19277 • Springfield. IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Offender: _Weaver, Wendell_

ID#: _R47387_

Facility: _Stateville_

Date: _1/17/19_

This is in response to your grievance received on _12/3/18_. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: _7/6/15_   Grievance Number: _4844 & 5008_   Griev Loc: _Stateville_

- ☐ Transfer denied by the Facility
- ☐ Dietary _____
- ☐ Personal Property _____
- ☐ Mailroom/Publications _____
- ☐ Assignment (job, cell) _____
- ☐ Commissary / Trust Fund _____
- ☐ Conditions (cell conditions, cleaning supplies, etc.) _____
- ☐ Disciplinary Report: Dated: _____ Incident # _____
- ☒ Other _Medical - treatment for injured right arm_

Based on a review of all available information, this office has determined your grievance to be:

- ☐ Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____
- ☐ Denied, in accordance with DR504F, this is an administrative decision.
- ☒ Denied, this office finds the issue was appropriately addressed by the facility Administration.
- ☐ Other: _Offender seen at UIC Ortho 7/20/18._

- ☐ Denied as the facility is following the procedures outlined in DR525.
- ☐ Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.
- ☐ Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

FOR THE BOARD: _Debbie Knauer_
Debbie Knauer
Administrative Review Board

CONCURRED: _John R. Baldwin_
John R. Baldwin
Acting Director

CC: Warden, _Stateville_ Correctional Center
_Weaver_ , ID# _R47387_

Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.

www.illinois.gov/idoc

ILLINOIS DEPARTMENT OF CORRECTIONS

**Administrative Review Board**
**Return of Grievance or Correspondence**

B624

Offender: _Weaver_ _Wendell_ _M_ _B47387_
              Last Name        First Name        MI        ID#

Facility: _Stateville_

☐ Grievance: Facility Grievance # (if applicable) _2864_ Dated: _1/28/19_ or ☐ Correspondence: Dated: _____
Received: _2/22/19_ Regarding: _Medical - treatment for arm injury_
            Date

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☐ Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.

☐ Provide dates when incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board
                    Office of Inmate Issues
                    1301 Concordia Court, Springfield, IL 62794-9277

**Misdirected:**

☐ Contact your correctional counselor or Field Services regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns in a letter to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

**No further redress:**

☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Administrative Transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.

☒ This office previously addressed this issue on _1/17/19_ _GRV#4899+5008_
                                                    Date

☐ No justification provided for additional consideration.

**Other** (specify): _____

Completed by: _Debbie Knauer_          _Debbie Knauer_          _3/4/19_
                Print Name                  Signature              Date

Distribution: Offender
              Inmate Issues                Printed on Recycled Paper              DOC 0070 (Rev.5/2017)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Administrative Review Board**
**Return of Grievance or Correspondence**

Offender: _Weaver_ _Wendell_ _R47387_
Last Name        First Name        MI        ID#

Facility: _Stateville_

☐ Grievance: Facility Grievance # (if applicable) _7446_ Dated: _4/12/19_ or ☐ Correspondence: Dated: _____

Received: _5/17/19_ Regarding: _Medical - treatment for pinky 12/12/18_
Date

The attached grievance or correspondence is being returned for the following reasons:

---

**Additional information required:**

☐ Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.

☐ Provide dates when incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board, Office of Inmate Issues, 1301 Concordia Court, Springfield, IL 62794-9277

---

**Misdirected:**

☐ Contact your correctional counselor or Field Services regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns in a letter to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

---

**No further redress:**

☐ Award of Earned Discretionary Sentence Credit is a discretionary administrative decision; therefore, this issue will not be addressed further.

☐ Administrative transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☒ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____
Date

☐ No justification provided for additional consideration.

---

**Other** (specify): _____

Completed by: _Debbie Knauer_ _Debbie Knauer_ _5/21/19_
Print Name        Signature        Date

Distribution: Offender
       Inmate Issues        *Printed on Recycled Paper*        DOC 0070 (Rev. 3/2018)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Administrative Review Board**
**Return of Grievance or Correspondence**

Offender: _Weaver_ _Wendell_ _R47387_
Last Name        First Name        MI        ID#

Facility: _Stateville_

☐ Grievance: Facility Grievance # (if applicable) _7443_ Dated: _9/27/2020_ or ☐ Correspondence: Dated: _____

Received: _9/21/2020_ Regarding: _has not been seen by MD since ULC visit; pinky_
Date        _sleep apnea, HBP_

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☐ Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.

☐ Provide dates when incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:
Administrative Review Board, Office of Inmate Issues, 1301 Concordia Court, Springfield, IL 62794-9277

**Misdirected:**

☐ Contact your correctional counselor or Field Services regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns in a letter to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

**No further redress:**

☐ Award of Earned Discretionary Sentence Credit is a discretionary administrative decision; therefore, this issue will not be addressed further.

☐ Administrative transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☐ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____
Date

☐ No justification provided for additional consideration.

Other (specify): _Offender fails to provide any dates of these issues_
_therefore unable to address_

Completed by: _Debbie Knauer_      _Debbie Knauer_      _3/24/21_
Print Name        Signature        Date

Distribution:   Offender           *Printed on Recycled Paper*           DOC 0070 (Rev. 3/2018)
            Inmate Issues

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
## Return of Grievance or Correspondence

Offender:  WEAVER                          WENDELL                                  R47387
              Last Name                   First Name                   MI            ID#

Facility:  STATEVILLE CC

☒ Grievance: Facility Grievance # (if applicable) 2829          Dated: 10/1/2020          or ☐ Correspondence: Dated: _____

Received: 6/1/2021          Regarding: STAFF CONDUCT 10/01/2020
      Date

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☐ Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.

☐ Provide dates when incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:
Administrative Review Board, Office of Inmate Issues, 1301 Concordia Court, Springfield, IL 62794-9277

**Misdirected:**

☐ Contact your correctional counselor or Field Services regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns in a letter to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

**No further redress:**

☐ Award of Earned Discretionary Sentence Credit is a discretionary administrative decision; therefore, this issue will not be addressed further.

☐ Administrative transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☒ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____
                                      Date

☐ No justification provided for additional consideration.

**Other** (specify): PAST TIME FRAME    OFFENDER GRIEVANCE FORM WAS REVISED 1/2020 PLEASE ENSURE YOU ARE USING THE MOST RECENT FORM WHEN FILING GRIEVANCES.

Completed by:  WM Jordan                          _WM Jordan (signature)_               9/3/2021
                  Print Name                          Signature                          Date

# UNIVERSITY OF ILLINOIS
## Hospital & Health Sciences System
--- Changing medicine. For good. -------- · · ·

rtment of Orthopaedics OCC
W. Taylor, Room 2A M/C 743
go, IL 60612-7342
e: 312-996-1300
312-996-8814

*Seven*
*205-223-4757*
*Yo pops said he on*
*lockdown. tell yo mom*
*he love her & tell*
*the princess Happy*
*Birthday. I love*
*You. I'll call*
*when I come*
*off*

## PRE-OPERATIVE BODY WASH INSTRUCTIONS

### Night Before Surgery:

1. Shower With Regular Soap And Water As You Normally Would.

2. Turn Water Off And Do Not Dry Off. Pour 1 Cap Full Of **ECOLAB Chlorhexidine Gluconate 4 % Solution**, Provided By APEC Center Or Your Clinic, Onto A Washcloth Or Sponge. Apply To Entire Front And Back Of Your Body From Chin To Toes. Do Not Apply To Face. Do Not Introduce Into Vaginal or Rectum.

3. Without Rinsing, Repeat Step #2. Wait Two Minutes And Rinse Off The Solution

4. Pat Body Dry With A Clean Towel. **DO NOT RUB**.

5. Do Not Apply Deodorant, Lotions, Or Perfumes After The Wash

## MORNING OF SURGERY:

1. Repeat Steps 1-5. By This Time, You Should Have Washed Yourself Four Times And The Bottle Of ECOLAB Chlorhexidine Gluconate 4% Solution Is Empty.

## ADDITIONAL INSTRUCTIONS:

Do Not Shave Or Apply Hair Removal Cream The Night Before Or the Morning Of Surgery.

Remove All Jewelry And All Body Piercing Before The Shower. Leave All Jewelry Body Piercing Off Until After Surgery.



# Preparing for Surgery: Taking Your Medications

1. Some medication may cause bleeding problems during surgery and need to be **Stopped 7-10** days before surgery: <u>aspirin products</u>, <u>NSAIDS</u> (used for pain and arthritis), <u>blood thinners</u>, some <u>herbal preparations</u>, and <u>fish oil</u>.

## Aspirin Products

| | | |
|---|---|---|
| Alka-Seltzer | Ascripin | Ecotrin |
| Anacin | Bayer | Empirin |
| A.S.A. | Bufferin | Excedrin |

## NSAIDS (Non-Steroidal Anti-inflamatory Drugs)

| Generic: | Brand | Generic: | Brand |
|---|---|---|---|
| Celecoxib: | Celebrex | Nabumetone: | Relafen |
| Diclofenac: | Voltaren, Arthrotec | Naproxen: | Naprosyn, Aleve, Anaprox |
| Ibuprofen: | Motrin, Advil | Oxaprozin: | Daypro |
| Indomethacin: | Indocin | Piroxicam: | Feldene |
| Ketoprofen: | Orudis | Sulinac: | Clinoril |
| Ketorolac: | Toradol | Meloxicam: | Mobic |

## Anticoagulants (Blood Thinners)

### YOU MUST TALK WITH YOUR PRIMARY CARE DOCTORS FOR CLEARANCE BEFORE STOPPING THESE MEDICINES!

| Generic: | Brand | Generic: | Brand |
|---|---|---|---|
| Clopidrogrel: | Plavix | Dalteparin: | Fragmin |
| Dipyridamole: | Persantine, Aggrenox | Rivaroxaban: | Xarelto |
| Ticlopidine: | Ticlid | | |
| Warfain: | Coumadin | | |

## Others

| Generic: | Brand |
|---|---|
| Phentermine | Qsymia |

## REMEMBER: THE DAY OF SURGERY

2. If you are taking medicine for your heart, blood pressure, breathing, seizures, or other conditions, Please continue to take you medicine as prescribed. You may take these medicines with a sip of water on the day of surgery.

**DO NOT TAKE** the Day of Surgery: Pills for diabetes, diuretics (water pill), vitamins, or herbal medicines.

If you have any questions, contact you doctor or nurse.

Completed by: Vanessa Howard, MSN, RN, Surgical coordinator
Reference: UIC Department of Anesthesiology Guidelines                    Revised 11/10/11

JUNE 22, 2021

DEAR MS. DIXON, THIS IS WENDELL WEAVER #R47387 C-246, I'm HAVING A PROBLEM W/ THE COURT ABOUT A "DEADLINE". CAN YOU PLEASE GET ME A PRINT OUT FOR THE MONTH OF MAY 2021 FOR ALL MY "LEGAL" MAIL I SENT OUT? FOR THAT MONTH; THANK YOU IN ADVANCE.

SINCERELY
WEAVER
#R47387
C-246

You must submit a voucher w/ this legal card request

P.S. I DIDN'T UNDERSTAND WHO YOU TOLD ME TOO SEND THIS TOO? CAN YOU SEND IT WHERE IT NEEDS TOO GO FOR ME — thanks

SEPTEMBER 22, 20

RE: MEDICAL PERMIT/
"LOW BUNK & LOW GALLERY"

L.T. ANDERSON, MY NAME IS WENDELL WEAVER # R47387 C-655, I RECEIVED (2) MEDICAL PERMIT(s) IN THE MAIL A FEW WEEKS AGO, FOR LOW BUNK & LOW GALLERY DATED 9-16-2020. I TALKED TO THE "NURSE" LAST NIGHT And SHE TOLD ME TOO TELL/ OR TALK TOO YOU, THEY DON'T DO NOTHING ELSE BUT ISSUED THE PERMIT(s), SO I WROTE PLACEMENT And EXPLAIN TO THEM, IT'S A BOTTOM BUNK CELL OPEN IN "241", MY REASON FOR GETTING THESE PERMIT(s) IS BECAUSE, THE BULLET(s) IN MY KNEE And ARM ARE MOVING/OR IS "BOTHERING ME", I STAY IN "EXCRUCIATING PAIN"; (ESPECIALLY CLIMBING THESE STAIR(S) And GETTING INTO THE "TOP BUNK"! I DON'T KNOW HOW LONG YOU GUYS HAVE TOO MOVE ME DOWN STAIRS? BUT "241" IS OPEN RIGHT NOW! SO CAN YOU CALL "PLEASE" PLACEMENT And LET THEM KNOW And I "SHOWED" "THAT" YOU MY "NEW" PERMITS TOO GET ME "MOVED DOWN" IMMEDIATELY, BEFORE THEY PUT SOMEONE "ELSE" IN THERE, THANK YOU IN ADVANCE SIR . . . . . . .

SINCERELY,
WENDELL WEAVER
# R47387 C655

# Illinois Department of Corrections
## Low Bunk Permit



Facility: _STA_     Date: _9/14/20_

Inmate Name: _Weaver, Wendall_     IDOC#: _R 47387_

**Absolute Criteria for Low Bunk Permit:**

☐ Seizure Disorder

☐ Wheelchair (Permanent/Temporary)

☐ Crutches (Permanent/Temporary)

☐ Amputee (Lower Extremity/Upper Extremity)

☐ Sling

**Physician Discretion Criteria for Low Bunk Permit (Functional Mobility/PT Evaluation Required):**

__ Age >=65 with diagnosis of DJD

__ BMI >=35

__ Neuromuscular Disease (i.e. MS, CVA)

☒ back, knee, shoulder

☐ Blindness (by request)

Expiration Date: _3/14/2021_

Next Appointment Date:

Ordering MD: _MHerrens_ (print) _MHerrens_ (signature)    Date: _9/14/20_

Notice given to HCUA by _Suscete (print) (print)_ _(signature)_    Date: _9/14/20_

Notice given to Placement Office by: _N. Bailie (print)_ _(signature)_    Date: _9-16-2020_

*Distribution: Offender*
*Offender Medical File*
*Placement*
*Offender 360*
*Living Unit Lieutenant*
*Assistant Warden of Operations*

*Printed on Recycled Paper*     SIA 0254 (Effective 3/2018)

# Illinois Department of Corrections
## Low Gallery Permit

**Facility:** _____     **Date:** _____

**Inmate Name:** _____     **IDOC#:** _____

**Absolute Criteria for Low Gallery Permit:**

- ☐ Wheelchair (Permanent/**Temporary**)

- ☐ Crutches (Permanent/**Temporary**)

- ☐ Amputee (Lower Extremity/**Upper Extremity**)

**Physician Discretion Criteria for Low Gallery Permit (Functional Mobility/PT Evaluation Required):**

___ Age >=65 with diagnosis of DJD

___ Neuromuscular Disease (i.e. MS, CVA)

☐ Blindness (by request)

**Expiration Date:** _____

**Next Appointment Date:**

**Ordering MD:** _____ (print) _____ (signature)     Date: _____

**Notice given to HCUA by:** _____ (print) _____ (signature)     Date: _____

**Notice given to Placement Office by:** _____ (print) _____ (signature)  Date: _____

Distribution: Offender
Offender Medical File
Placement
Offender 360
Living Unit Lieutenant
Assistant Warden of Operations

**Printed on Recycled Paper**

6 40 55 (Effective 3/2018)

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | R47387 | **Counseling Date** | 02/20/18 13:17:47:283 |
| **Offender Name** | WEAVER, WENDELL | **Type** | Collateral |
| **Current Admit Date** | 10/11/2005 | **Method** | Other |
| **MSR Date** | 12/03/2043 | **Location** | STA  UNIT B |
| **HSE/GAL/CELL** | B -06-24 | **Staff**  UNASSIGNED STAFF | |

RECEIPT OF EMERGENCY GRIEVANCE ON _2/20/18__ CONCERNING _MEDICAL TREATMENT__.
THIS GRIEVANCE HAS BEEN ASSIGNED GRIEVANCE #_2266__.

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | R47387 | **Counseling Date** | 01/25/18 08:46:47:990 |
| **Offender Name** | WEAVER, WENDELL | **Type** | Collateral |
| **Current Admit Date** | 10/11/2005 | **Method** | Other |
| **MSR Date** | 12/03/2043 | **Location** | STA  UNIT B |
| **HSE/GAL/CELL** | B -06-24 | **Staff** UNASSIGNED STAFF | |

RECEIPT OF EMERGENCY GRIEVANCE ON _1/23/18__ CONCERNING _BONE SPURS__. THIS GRIEVANCE HAS BEEN ASSIGNED GRIEVANCE #_1801__.

**Print Date** 1/25/2018

J.B. Pritzker
Governor



Rob Jeffreys
Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Name: *Weaver, Wendell*　　　　　　　　　　　　　　　　*8/12/21*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Date

ID#: *R47387*

Facility: *Stateville*

This is in response to your grievance received on ___*8/6/21*___. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: *9/25/2020* Grievance Number: *2821* Griev Loc: *Stateville*

- [ ] Transfer denied by the Facility
- [ ] Dietary
- [ ] Personal Property
- [ ] Mailroom/Publications
- [x] Assignment (job/cell)
- [ ] Commissary / Trust Fund
- [ ] Conditions (cell conditions, cleaning supplies, etc.)
- [ ] Disciplinary Report: Dated: _____ Incident # _____
- [x] Other *Pain medication*

Based on a review of all available information, this office has determined your grievance to be:

- [ ] Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____
- [ ] Denied, in accordance with DR504F, this is an administrative decision.
- [ ] Denied, this office finds the issue was appropriately addressed by the facility Administration.
- [ ] Denied as the facility is following the procedures outlined in DR525.
- [ ] Denied as procedures were followed in accordance with DR 420 for removal/denial from/for an assignment.
- [ ] Denied as this office finds no violation of the grievant's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offense cited in the report was committed.
- [ ] Other: *Moot, grievants pain medication has been changed and he had been moved to C-House.*

FOR THE BOARD: *Debbie Knauer*　　　　　CONCURRED: *Rob Jeffreys edos*
　　Debbie Knauer　　　　　　　　　　　　　　　　　　　Rob Jeffreys
　Administrative Review Board　　　　　　　　　　　　　　Director

CC: Warden, *Stateville* Correctional Center
　　*Weaver*, ID# *R47387*

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| R47387 | WEAVER | WENDELL | 1/12/2021 | PARIS-V-SHERIFF OF COOK COUNTY ATTICUS A | PO BOX 64053 | ST PAUL | MN |
| R47387 | WEAVER | WENDELL | 3/13/2021 | ATTORNEY COLLIN D RAY | 2001 ROSS AVENUE STE 2100 | DALLAS | TX |
| R47387 | WEAVER | WENDELL | 4/8/2021 | ATTORNEY COLLIN D RAY | 2001 ROSS AVENUE STE 2100 | DALLAS | TX |
| R47387 | WEAVER | WENDELL | 5/3/2021 | ATTORNEY COLLIN D RAY | 2001 ROSS AVENUE STE 2100 | DALLAS | TX |
| R47387 | WEAVER | WENDELL | 5/12/2021 | ATTORNEY COLLIN D RAY | 2001 ROSS AVENUE STE 2100 | DALLAS | TX |
| R47387 | WEAVER | WENDELL | 5/25/2021 | ADMINISTRATIVE REVIEW BOARD | PO BOX 19277 | SPRINGFIELD | IL |
| R47387 | WEAVER | WENDELL | 6/22/2021 | JOSEPH L COHEN | 321 N CLARK STREET STE 1600 | CHICAGO | IL |
| R47387 | WEAVER | WENDELL | 6/23/2021 | OFFICE OF THE US DISTRICT COURT CLERK | 219 S DEARBORN ST | CHICAGO | IL |
| R47387 | WEAVER | WENDELL | 6/30/2021 | LAW OFFICES OF JEFFERY M LEVING LTD | 19 SOUTH LASALLE STREET STE 450 | CHICAGO | IL |

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WENDELL WEAVER,                    )
                                   )
            Plaintiff,             )
                                   )
       vs.                         )     16-cv-09400
                                   )
DR. A. MARTIJA, et. al.,           )
                                   )
            Defendants.            )


            The deposition of ALFONSO MEJIA, M.D.,

called by the Defendant for examination pursuant to

notice and pursuant to the Rules of Civil Procedure

for the United States District Courts pertaining to

the taking of depositions, taken before Patricia S.

Mann, CSR, RPR, License No. 084-001853, a notary

public in and for the County of Cook and State of

Illinois, at Room E-270, 835 South Wolcott Avenue,

Chicago, Illinois, on Wednesday, April 3, 2019, at

hour of 3:15 p.m.




Reported for
MAGNA LEGAL SERVICES, by:
Patricia S. Mann, CSR, RPR.
License No. 084-001853



Page 2

```
 1   APPEARANCES:
 2     FOX ROTHSCHILD, L.L.P.,
         321 North Clark Street, Suite 800,
 3       Chicago, Illinois, 60654,
         csanfelippo@foxrothschild.com,
 4       (312) 541-0151, by:
         MS. CHRISTINA M. SANFELIPPO,
 5
         appeared on behalf of the Plaintiff;
 6
 7     CASSIDAY SCHADE, L.L.P.,
         222 West Adams Street, Suite 2900,
 8       Chicago, Illinois, 60606,
         jmaruna@cassiday.com,
 9       (312) 641-3100, by:
         MR. JAMES F. MARUNA,
10
         appeared on behalf of the Defendants,
11       Dr. Martija and Dr. Obasi;
12
       OFFICE OF THE ILLINOIS ATTORNEY GENERAL,
13       100 West Randolph Street, 13th Floor,
         Chicago, Illinois, 60601,
14       nstaley@atg.state.il.us,
         (312) 714-3588, by:
15     MR. NICHOLAS S. STALEY,
16       appeared on behalf of the Defendants,
         John Baldwin, Nicholas Lamb and Randy
17       Pfister;
18
       LAW OFFICES OF EDWARD J. KOZEL,
19       333 South Wabash Avenue, 25th Floor,
         Chicago, Illinois, 60604,
20       ruwan.perera@cna.com,
         (312) 822-5612, by:
21     MR. RUWAN C. PERERA,
22       appeared on behalf of the Defendant,
         Jose Becerra.
23
24         * * * * *
```

Page 3

```
 1              I N D E X
 2   Examination                    Page
 3     By Ms. Sanfelippo              4
 4     By Mr. Maruna                 42
 5     By Mr. Staley                 47
 6
 7   Exhibits                       Page
 8     Deposition Exhibit
 9     No. 1                         6
10     No. 2                        21
11     No. 3                        32
12     No. 4                        34
13     No. 5                        39
14     No. 6                        39
15
         * * * * *
```

Page 4

```
 1         ALFONSO MEJIA, M.D.,
 2   having been first duly sworn, was examined and
 3   testified as follows:
 4         DIRECT EXAMINATION
 5   BY MS. SANFELIPPO:
 6     Q.  Good afternoon.  Could you please state
 7   and spell your name for the record?
 8     A.  My name is Alfonso Mejia, my last name is
 9   M-e-j-i-a.
10     Q.  Okay.  My name is Christina Sanfelippo,
11   my firm was appointed by the Court to represent the
12   Prisoner Wendell Weaver in this matter.
13         Have you been deposed before?
14     A.  Yes.
15     Q.  How many times about?
16     A.  I do treating physician, so it's a few
17   times a year.
18     Q.  Okay.  Have you given any trial
19   testimony?
20     A.  Twice.
21     Q.  Okay.  And what were those cases?
22     A.  One was a lady who broke her ankle and
23   sued the City, and one was a gentleman who was
24   assaulted and died and I was a witness at his
```

Page 5

```
 1   killer's murder trial.
 2     Q.  Okay.  Thank you.  So since you've done
 3   this a few times already, I'll go over the rules
 4   quickly just to make sure we have a clean record.
 5   I'm going to ask you a series of questions and if
 6   you could please allow me to finish my question
 7   before providing the answer, that will help out the
 8   Court Reporter a lot.
 9         Also, please try to provide verbal
10   responses and avoid uh-huhs or something similar
11   like that so that the Court Reporter can adequately
12   transcribe your responses.  If I use the wrong term,
13   please let me know.  I'm a lawyer that doesn't do
14   medical-related work, so if I get something wrong,
15   I want to make sure the record is clear.
16         And also if you at any time need a
17   break, please feel free to let us know, I would only
18   ask that you finish answering my question before we
19   take the break, all right?
20     A.  Yes.
21     Q.  Okay.  Did you review any documents in
22   preparation for today's deposition?
23     A.  I scanned through the chart that was
24   mailed to me, this seems to be the same as the one
```



2 (Pages 2 to 5)

Page 6

1    that was mailed to me. I found only a few pages of
2    my clinic notes, there was a lot of other material
3    in here.
4        Q. Okay. Then we can get started talking
5    about your education, job experience. You handed
6    me your c.v., is this your current c.v.?
7        A. More or less, yes.
8        Q. Okay. This is the only copy that we have,
9    so I think I'll just walk through it and we can mark
10   it as an exhibit.
11       A. Okay.
12       Q. Okay. So it says here that you went to
13   medical school at the University of Illinois College
14   of Medicine in Chicago?
15       A. Yes.
16       Q. Okay. You graduated in 1990. After
17   graduation, where did you work?
18       A. You can't really work, you have to finish
19   training. So I did my residency in orthopedics at
20   the University of Illinois, I subsequently did a
21   fellowship in hand surgery at Louisville in the
22   Kleinert Institute. I returned to Chicago in 1996.
23   I got board certified the first time in '99, I've
24   been -- I've recertified twice and I'm now on

Page 7

1    examiner for the board.
2        Q. Okay. Great. So what is your current
3    title at UIC?
4        A. I am the Vice Head of the Department of
5    Orthopedic Surgery, I am the program director for
6    the residency. And I'm in charge of education, so
7    that includes not only our residents, but we have
8    a sports fellow that I oversee and medical students
9    that rotate with us.
10       Q. And you're also a practicing physician?
11       A. Yes.
12       Q. Is that included in that title?
13       A. So you can't teach medicine without
14   practicing.
15       Q. Okay.
16       A. It's not like other professions,
17   everyone who teaches medicine is practicing,
18   otherwise it's an experiential experience. So I
19   see patients in the clinic, I do surgery, I see
20   patients on the floor, I see patients in the
21   emergency room.
22       Q. Okay. Is there any sort of classroom
23   component to your job?
24       A. Yes. So we have a core lecture series

Page 8

1    that's four hours every Wednesday -- in fact, I'll
2    be starting at four, we go 4:00 to 8:00 p.m. --
3    and so I oversee that and I lecture in that
4    occasionally. And then we also have some journal
5    clubs that take place mostly dedicated to hand for
6    the ones I participate.
7        Q. Okay. Can you explain for me what an
8    orthopedic surgeon does?
9        A. Just sits around. Well, it's a physician
10   that takes care of the musculoskeletal system, so
11   we take care of bones, joints, muscles. As a hand
12   surgeon, it also tends to include nerves a lot. So
13   the reason hand is a subspecialty from orthopedics
14   is because hand structures are so tightly contingent
15   on each other, that before there was a subspecialty
16   of that, oftentimes you needed an orthopedic
17   surgeon, a neurosurgeon and a plastic surgeon to
18   take care of things.
19       So hand surgery subspecializes in
20   taking care of all components of the hand; but the
21   orthopedic surgeons in general will take care of
22   bones, the joints, tendons, et cetera.
23       Q. Okay.
24       A. We basically stop at the neck, we don't

Page 9

1    do any type of facial fracture or anything like
2    that.
3        Q. Okay. So did you -- is residency where
4    you gained your specialty, is that how you get a
5    specialty?
6        A. Yes. So when you graduate from medical
7    school, regardless of what you're going into, you
8    have to do a residency to practice in the United
9    States. So if you were going into internal
10   medicine, pediatrics, psychiatry, you'll do a
11   residency, and when you finish the residency, at
12   that point, you're eligible to practice, but then
13   you still have to go through a Board process.
14       Q. Okay. What sort of training did you
15   receive in residency?
16       A. Orthopedic surgery.
17       Q. How long was the residency?
18       A. It's five years, orthopedics is five
19   years, almost universally five years. There are
20   some programs that are six years that they have a
21   year of research, some programs are six years. If
22   they have an integrative fellowship, for example,
23   Brown, everyone does a trauma fellowship at the end
24   of it, so theirs is a little bit longer.



Page 10

1       Q.   Is each year in residency different, do
2 you focus on a different part of your specialty?
3       A.   You have to fill rotations. So I've run
4 the residency now, I can tell you how we run it
5 now. If you ask me how mine was run, that's over
6 20 years, I really -- I couldn't give you any
7 specifics.
8       We do rotate through different
9 specialties. For example, the way the residency is
10 run is you have an integrated intern year, they have
11 six months of orthopedics, six months of specialty
12 which is divided into two between surgery and
13 affiliated things -- so, for example, my residents
14 do vascular surgery, trauma surgery, plastic
15 surgery as their surgical components; as their
16 affiliated components, they do emergency room,
17 rehabilitation and musculoskeletal radiology.
18       That's changed over time. When I
19 was a resident, it was mostly a general surgery
20 internship, you know, so I rotated through vascular
21 surgery, surgical oncology, pediatric surgery,
22 things like that. And then the PGY-2 to PGY-5
23 year are rotations.
24       So the residency I run is structured

Page 11

1 that you tend to repeat rotations from the PGY-2
2 year again in the four or five year so you work on
3 trauma as a junior and a senior, you work on joints
4 as a junior and senior. Some subspecialties, you'll
5 only touch on during the fourth year like sports
6 and pediatrics tends to be smattered throughout,
7 but you're going through rotations both as a junior
8 and senior to get a different experience. We had a
9 similar structure when I was a resident, but, again,
10 that's -- you know, I can't give you specific
11 rotations.
12       Q.   Okay. So specific to dislocations, what
13 sort of specialized training did you get in order
14 to be able to treat those during your residency?
15       A.   That's integral to orthopedics, fractures
16 and dislocations, we're taking care of that every
17 single day throughout the entire training and for
18 our practice, that is what we're dealing with, is
19 fractures and dislocations.
20       Q.   Okay. Prior to your residency in med
21 school, did you have any sort of experience with
22 dislocations?
23       A.   Specifically dislocations -- so when you
24 go through med school, the first two years are basic

Page 12

1 science and then the second two years are clinical,
2 and so the third year tends to be core rotations,
3 general surgery, medicine, pediatrics, psychiatry,
4 OB-gyny, that has changed to some extent over
5 time.
6       And then the fourth year tended to
7 be month-long rotations of subspecialty, so, for
8 example, I did orthopedics early on because I was
9 going to go into orthopedics and you need to have
10 had experience with orthopedics to apply through
11 the whole process.
12       Other things that I did were
13 intensive care unit, neurology, things like that.
14 Like, again, I can't remember specifics. That's
15 changed a little bit in -- so I've been very
16 involved in education, I've been on the Council of
17 Education of the American Academy of Orthopaedic
18 Surgery, I sit on the Curriculum Committee at the
19 University, and so I was implemental -- I redesigned
20 the fourth year for this school. So now we do
21 tracks, sort of akin to concentrations in college.
22 So we have three tracks for medical students now,
23 one track is surgical, one track is nonsurgical,
24 and one is hospital based, so that would be

Page 13

1 radiology, emergency room, heme, things like that,
2 so --
3       Q.   Okay. Your specific experience.
4       A.   I rotated in orthopedics and if I saw a
5 dislocation, I can't remember, but that's -- it's
6 -- dislocations is something we take care of every
7 single day, that's what we do.
8       Q.   Okay. I guess I'm trying to understand
9 if prior to your experience and residency in any of
10 those rotations you had experience with
11 dislocations?
12       A.   I'm sure I did.
13       Q.   Okay. Can you walk me through your
14 typical process for diagnosing a patient?
15       A.   With what?
16       Q.   When you walk into a room, you don't --
17 what is the first thing you do with your patient?
18       A.   Introduce myself.
19       Q.   Okay. What's the second thing you do?
20       A.   So it's -- you're going to take a history,
21 you're going to do a physical examination and you're
22 going to order corresponding supporting studies
23 whether that be blood work or imaging.
24       Q.   Okay. Is that process different depending



Page 14

1   on what the complaint is from the patient?
2       A.  You're always going to start with a
3   history and then you're going to do a physical
4   examination to support that and then you're going
5   to get supporting data through imaging.  The only
6   time it would be different -- and I'm not being
7   flippant -- is if the patient's unconscious when I
8   can't take a history, for example, when I take care
9   of trauma patients, then I start with the physical
10  and imaging.
11      Q.  Okay.  So how about if you are examining
12  a patient that has complained about a dislocation,
13  what -- do you then take a physical examination of
14  the patient?
15      A.  Yes.
16      Q.  Right away?
17      A.  Yes.
18      Q.  And then what is your next step after
19  physical examination?
20      A.  If I'm suspecting a dislocation, it would
21  be imaging and I would take an X-ray.
22      Q.  Do you take the X-rays on-site here?
23      A.  Yes.
24      Q.  And are you able to read them right away

Page 15

1   or do you have to wait for the results to come back,
2   how does that work?
3       A.  I see them right away.
4       Q.  Is there a computer monitor?
5       A.  It's a PACS System, P-A-C-S.  So it's
6   X-rays taken, it's immediately sent back to -- as
7   soon as the image is available in the system, it's
8   available for me to view on a computer that's
9   designated for X-rays in our office.
10      Q.  And then when you see the image and
11  you've identified a dislocation, what happens
12  next?
13      A.  It depends on what kind of dislocation
14  it is, it depends on the joint, it depends on the
15  severity where it's something that we'll attempt a
16  closed reduction in the office or it needs a closed
17  reduction in the operating room or it will need an
18  open reduction.
19      Q.  What's the difference between a closed
20  reduction and open reduction?
21      A.  An open reduction, you're cutting the
22  skin and getting down to the joint and manipulate
23  it directly; where in a closed reduction, you're
24  manipulating by moving the extremity without cutting

Page 16

1   the skin.
2       Q.  If you determine that a closed reduction
3   is needed without surgery, what is your next step?
4       A.  It depends on what joint we're talking
5   about.
6       Q.  Okay.  If it was a finger.
7       A.  We would locally anesthetize the finger
8   and attempt a reduction.
9       Q.  And that would be shortly after
10  diagnosing?
11      A.  Yes.
12      Q.  Okay.  And what about for -- you said
13  there was a closed reduction with surgery or --
14      A.  So, for example, let's say it's a shoulder
15  dislocation.  You know a shoulder dislocation, you
16  can't just anesthetize locally, you can you can
17  inject a joint with fluid, with lidocaine or
18  Marcaine; but oftentimes if it's someone who is
19  very muscular, that will be difficult, so you can
20  try sedation which would be something we would do
21  in the emergency room rather than in the office.
22      But if I still can't get in with
23  sedation, I need him more relaxed and he'll have to
24  undergo general anesthesia so he has no muscle tone

Page 17

1   so I can overpower him; because, basically, I have
2   to be stronger than him to get it in.  And I cheat
3   a little bit by just tiring instead of jerking or
4   pulling, but still in someone who is very, very
5   muscular or depends on how it's been dislocated,
6   I may need this person to be anesthetized and
7   that would be a closed reduction in the operating
8   room.
9       Q.  Okay.  And so then the third option, the
10  open reduction, can you walk us through that?
11      A.  If I still -- if you still can't get it
12  in, you'd have to think that either, one, it's just
13  not possible to reduce it closed because of how
14  tight it is or that there's interposed tissue.  For
15  example, something that's common in the hand would
16  be that some tissue gets interposed where no matter
17  how much I pull, there's something stuck in the
18  joint that needs to be extracted so I can reduce it
19  and that would need to be extracted so I can reduce
20  it, and that would need to be done in an open
21  fashion.
22      Q.  Okay.  How many times have you performed
23  surgery over your career, if you could estimate?
24      A.  10,000 times, 12,000 times.



Page 18

1     Q.  And under what circumstances -- is surgery
2   typically a last resort for you?
3     A.  No.
4     Q.  No?
5     A.  It depends, again, on the injury.  Some
6   injuries require surgery -- forgive me, the question
7   is a little bit vague.
8     Q.  No, that's totally fair.  I guess I'm
9   trying to figure out if there was an alternative
10  option to surgery and both options could come to
11  the same result, would you choose the nonsurgical
12  option over the surgical option?
13    A.  Absolutely, if they're equivalent.
14    Q.  Okay.
15    A.  Obviously, nonsurgical is always
16  preferred.  But when you say "last resort", some
17  things by face value, this needs surgery, it's
18  impossible to treat this closed effectively or the
19  results closed will be substandard.  An example,
20  a displaced fracture of the forearm, both bones in
21  the forearm are broken in an adult, has to be
22  treated with surgery.  You can treat it in a cast
23  if you can manage to line it up, but it would have
24  to be in a cast so long that they would get

Page 19

1   stiffness.  So that's -- the phrase is it's a
2   fracture of necessity, I see the X-ray, I know I
3   have to do surgery.
4     Q.  Okay.  How many interactions do you have
5   with IDOC inmates?
6     A.  That's -- you know, that's -- I would say
7   probably between 100 -- 100 and 200 a year, you
8   know, it's generally a couple a week.
9     Q.  And how do you come to see these inmates?
10    A.  They come to the clinic.
11    Q.  They come to the clinic.  Is it -- are
12  you the person that schedules their appointments?
13    A.  No.
14    Q.  Do you know who does?
15    A.  The scheduling desk.
16    Q.  Okay.  How does the -- do you have any
17  knowledge as to how the clinic interacts with the
18  prisons?
19    A.  Not initially.  The only time -- so once
20  a patient is seeing me, I will recommend how
21  frequently they need to see them -- when I see them
22  next, but I'm not scheduling for someone coming in
23  to see me.
24    Q.  Okay, okay.  Does the fact that someone

Page 20

1   is an inmate have any sort of effect on your
2   treatment plan?
3     A.  Absolutely not.
4     Q.  Okay.  Do you feel like your treatment
5   plans for inmates are generally followed?
6     MR. MARUNA:  Objection, form, vague.
7     THE WITNESS:  What do you mean specifically?
8     MS. SANFELIPPO:  Q.  So if you recommend a
9   treatment for an inmate, do you feel more often
10  than not that the follow-up treatment is done for
11  the inmate?
12    MR. MARUNA:  Same objections.
13    MR. PERERA:  Join.
14    THE WITNESS:  A.  It depends what we're talking
15  about.  For example, I do have a perception,
16  although I could not quantify it, that it's more
17  difficult for me to get occupational therapy or
18  physical therapy for my prisoner patients than for
19  patients who can go to therapy themselves.  That is
20  my impression, but I couldn't quantify that.
21    MS. SANFELIPPO:  Q.  Are you familiar with the
22  inmate Wendell Weaver?
23    A.  Just from this chart, I don't have a
24  strong independent recollection.

Page 21

1     Q.  Based on your independent recollection,
2   could you tell us the last time you saw him or
3   not?
4     A.  No, not without looking at the chart.
5     MS. SANFELIPPO:  Okay, no problem.  So I want
6   to hand you what I will mark as Exhibit 2.
7       (Deposition Exhibit Number 2 was
8         marked for identification as
9         requested.)
10    MS. SANFELIPPO:  Q.  I'm going to hand you
11  what's marked as Exhibit 2.  Is this -- looking at
12  page 160 --
13    A.  Yes.
14    Q.  Okay -- is this a note that you prepared
15  based on a visit that Wendell Weaver had with you?
16    A.  Yes.  When you say -- this is, I see --
17  I see everyone, I examine everyone, I see them with
18  residents and then the resident dictates the note,
19  but then I sign the note.
20        This note was written by Chris
21  Patel, who currently is a PGY-5.  He's actually our
22  education chief resident, he's a very good
23  resident.  But then I go over this note and make
24  sure it's -- I agree with the body of it, but he



Page 22

1  dictated it.
2      Q.  Okay.  And -- but you were the attending?
3      A.  I am the attending.
4      Q.  Okay.  Is this the document that either
5  UIC or you on behalf of UIC would ordinarily and
6  regularly maintain in the usual course of providing
7  medical treatment to a patient?
8      A.  The medical record stays with the
9  University, yes.
10     Q.  Okay.  Is this true for all your
11 orthopedic notes?
12     A.  What?
13     Q.  That you create a note like this.
14     A.  Well, I work at the University of
15 Illinois, I also have -- work with residents at
16 Weiss and I also work at NorthShore University.
17 So there is always a note in the electronic record,
18 but they're not always the same.  For example, This
19 system is Cerner, NorthShore uses EPIC, so they're
20 not exactly the same.
21     Q.  So specific to UIC?
22     A.  Yes.
23     Q.  Okay.  Generally, are these notes
24 generally created at or around the time of the visit

Page 23

1  with the patient?
2      A.  Usually the same day as the visit.
3      Q.  And do they generally contain all of the
4  observations made during the patient visit?
5      A.  If that's -- that's difficult to say.
6  They contain pertinent data, all the observations
7  is -- that would be --
8      Q.  Very long?
9      A.  -- like the rise and fall of Rome.
10     Q.  Okay.  So when it says "signed
11 information" at the top and your name -- I'm looking
12 on 160, "signed information, Mejia, Alfonso"?
13     A.  Yeah.
14     Q.  So that's your verification of the
15 contents that you agree with --
16     A.  Yes.
17     Q.  Okay, perfect.  So looking at this, this
18 visit was on March 30th of 2017.  Do you recall how
19 Mr. Weaver came to see you on this date?
20     A.  No.
21     Q.  Okay.  Would it help if I gave you a
22 minute to look over the report?
23     A.  I don't understand the question how he
24 came to see me.  Like I said, I don't schedule

Page 24

1  patients, and so basically he would appear on my
2  schedule and I see everyone on the schedule, but
3  I don't initiate his coming to the clinic.
4      Q.  Okay.  Can you tell me about the
5  examination of Mr. Weaver on March 30th with respect
6  to his left pinky finger?
7      A.  So his left small finger was tender, both
8  at the tip and middle of it.  The DIP joint is the
9  tip -- closest to the tip and the PIP joint is the
10 joint in the middle.  He had at the DIP about 30
11 degrees of motion and the PIP was stuck in flexion
12 about 20 degrees, but had almost no motion.  His
13 sensation was intact and there was good blood flow
14 to the finger.
15     Q.  Okay.  And did he report to you that
16 there was previously a dislocation at the PIP
17 joint?
18     A.  He said he had sustained it during
19 basketball.
20     Q.  Okay.  So in the surgical history note,
21 is that something that you rely on the patient to
22 share with you or do you get that information from
23 somewhere else?
24     A.  You said surgical history note?

Page 25

1      Q.  I'm looking at the bottom of 160, it says
2  "past surgical history".
3      A.  Yes, we rely on the patient.
4      Q.  Okay.  Does this type -- does the
5  dislocation of the PIP joint in your experience
6  always require or often require surgery to repair?
7      A.  Almost nothing in medicine is always.  As
8  far as how often it requires repair, I would say a
9  significant number require surgery.
10     Q.  Okay.
11     A.  By the way, where it says "past surgical
12 history", there's a typo, it says "left small finger
13 DIP reduction repair", that's PIP, so that's a typo,
14 that should be PIP instead of DIP.
15     Q.  Okay.  How often have you performed this
16 procedure, the PIP reduction and repair?
17     A.  I don't know, I probably do -- they come
18 in waves.  Probably do like half a dozen a year, so
19 probably -- over the course of my career, probably
20 about 120, something like that.  That's a rough
21 estimate.
22     Q.  Okay.  And how often have you seen a
23 dislocation of this nature?
24     A.  Probably three times that, you know.

Page 26

1      Q.  Three times that, okay.
2      A.  Yeah.
3      Q.  So it looks like on the next page there
4  was also a note about imaging towards the bottom of
5  161?
6      A.  Yes.
7      Q.  So is it fair to say that the X-rays were
8  taken on this date, 3-30?
9      A.  Yes.
10     Q.  Okay.  Did you review the X-rays?
11     A.  Yes.
12     Q.  Can you tell us about your observations?
13     A.  So there was arthritis of the PIP joint,
14  there were some suture anchors in the base
15  of the middle phalanx and this note says it's
16  malunion of the volar plate as appreciated, but
17  malunion would imply that it's a fracture and I
18  think that there can be some overgrowth of bone
19  there.  I did take a look at his X-rays just so I
20  could refresh my mind, I saw the X-ray from this
21  date earlier today.
22     Q.  Okay.  And so can we -- can you explain
23  "suture anchor" to me?
24     A.  So sometimes you want to anchor a soft

Page 27

1  tissue to a bone whether it be to a volar plate
2  like this nature or a ligament, and there's small
3  screws that you can screw into the bone that have
4  an eyelet at the trailing end and have suture that
5  then you can use to attach soft tissue to the
6  bone.
7      Q.  Okay.  And is it common that you need to
8  use those suture anchors in fingers?
9      A.  Well, you said "need to".  There's a lot
10  of different ways to do things.
11     Q.  Okay.
12     A.  So there's advantages and disadvantages
13  to everything.  I tend to -- I don't do this surgery
14  with suture anchors.  That's not because there's
15  something wrong with a suture anchor, but it's my
16  preference -- because he does have two suture
17  anchors, by the way, and they're small.  And that
18  is a small amount of real estate and you can
19  actually fracture into the joint or fracture a
20  bone.  So I prefer to drill with a needle and
21  attach through the bone on top, tying it on top.
22  So it's a similar mechanism, but I don't use suture
23  anchors for this, I do do them routinely for other
24  things.

Page 28

1      Q.  Okay.  Can you explain the malunion, you
2  said that might be a reference to bony material?
3      A.  So when you look at the joint, you know,
4  joints should lie like spoons in a drawer, nestled.
5  And when you look at the middle phalanx which is
6  the middle bone in the finger closer to the tip as
7  far as this joint -- excuse me.
8          (After a brief interruption, the
9          deposition was resumed as follows:)
10  THE WITNESS:  A.  so the middle phalanx is
11  closer to the PIP and the proximal phalanx is up
12  on the other side of the joint.  The proximal
13  phalanx is sort of like the end of a sphere and
14  that's cupped by the base of the middle phalanx.
15  If you look at his X-ray from that day, this seems
16  to be opened up more, it's more flattened, the
17  curvature is a little bit less deep and that can be
18  from the way it's healing, the injury or just that
19  he grew a little extra bone spur that makes it look
20  like that.
21     MS. SANFELIPPO:  Q.  Okay.  And what were your
22  conclusions from your reading of the image?
23     A.  Well, the principle thing I'm looking
24  for on the image is to see if the joint is reduced,

Page 29

1  which it is.  One reason he can have stiffness is if
2  the joint is not reduced.  If it's not reduced, it's
3  going to be stepped off and then he can't glide
4  around, he'll hinge, so that leads to a lot of
5  stiffness.  So I was trying to see if that was the
6  problem.  If that was the problem, that's something
7  we can try to address.  If that is not the problem
8  and he's as stiff as he is, there's some releases we
9  can do, but it's unlikely he's going to get much
10  motion in his joint.
11     Q.  Okay.  Can you tell me what your diagnosis
12  was on this visit?
13     A.  So for the left small finger, he was
14  status post dislocation with some arthritis and a
15  stiff -- post-traumatic stiffness.  So we discussed
16  with him that he really had two options, he can try
17  some therapy to see if that would improve motion or
18  we felt the most reliable thing as far as if he had
19  a lot of pain would be to fuse it.  Fusing does two
20  things, one, if he's having pain when it's attempted
21  to move, it can take that away, and also it can
22  place it in a more functional position.
23          If I recall his X-ray, he's pretty
24  extended, he's pretty straight and that's not a



Page 30

1 great position for fusion or for stiffness of that
2 finger. We tend to put in a little bit of arc, you
3 know, your resting posture is an arcade. So
4 starting from the index finger and working your way
5 to the small finger, if you do fuse it, you place
6 it in increasing amounts of flexion because that
7 reproduces more of a normal grip.
8     Q. Okay. Can you walk me through what
9 observations factored into your diagnosis of
10 post-traumatic arthritis?
11     A. The way the X-ray looked. You'll have
12 some degree of loss of joint space coupled with the
13 fact that we know he had a dislocation.
14     Q. Any other observations?
15     A. Not really.
16     Q. Okay. How common is it for a 42-year-old
17 to have that form of arthritis in his finger?
18     A. Age has nothing to do with this, this is
19 post-traumatic, so it has to do with his injury,
20 it's not degenerative joint disease --
21     Q. Okay.
22     A. -- which is wear-and-tear arthritis of
23 old age.
24     Q. Is it common for people to have that sort

Page 31

1 of arthritis after a trauma?
2     A. Anytime you have an injury to a joint,
3 you can have arthritis and that's variable and
4 sometimes it's symptomatic and sometimes it's not.
5     Q. Can you explain that?
6     A. For example, if you look at distal radius
7 fractures, fractures of the wrist, oftentimes they
8 go into the joint. When a fracture goes into the
9 joint, it will disrupt the cartilage and so
10 oftentimes it's -- even if it's relatively well
11 aligned on X-ray, there can be a little bit of
12 unevenness, the cartilage will wear unevenly which
13 is what arthritis is.
14     But in the wrist, even though a large
15 number of people -- and the fingers to some extent
16 would be the same -- a large number of people can
17 have changes you can see on X-ray, they're not
18 necessarily painful. Certainly not as much as they
19 would be in a knee or hip because these are weight-
20 bearing joints.
21     Q. Okay. So, ultimately, I believe was it
22 Mr. Weaver that chose to proceed with therapy?
23     A. I think we've been focusing on his left
24 small finger, but I think he had -- his right index

Page 32

1 finger was bothering him, so we proceeded with
2 focusing on treating that because that was a more
3 addressable problem.
4     Q. There was a cyst on the right finger --
5     A. Yes.
6     Q. -- correct. And I believe you removed
7 it?
8     A. Yes.
9     MS. SANFELIPPO: Okay. Then why don't we move
10 on to the next -- I'm going to hand you what I'll
11 ask the Court Reporter to mark as Exhibit 3.
12     (Deposition Exhibit Number 3 was
13         marked for identification as
14         requested.)
15     MS. SANFELIPPO: Q. Okay. Should be page
16 152.
17     A. Uh-huh.
18     Q. Okay. Is this -- is this an orthopedic
19 note prepared based on a visit that Wendell Weaver
20 had with you on December 14th of 2017?
21     A. Yes.
22     Q. Okay. Can you tell me about your
23 examination of Mr. Weaver on this date?
24     A. Well, he was here mostly for a post-op

Page 33

1 for having the index finger mass excision and that
2 was doing well. As far as his left small finger,
3 we felt that he had arthritis, it was unlikely we
4 could increase his motion and we recommended a
5 fusion and he didn't want to do that. So we gave
6 him a follow-up as-needed appointment as far as the
7 fusion.
8     Q. I'm sorry, what page are you looking at?
9     A. 153.
10     Q. Okay. And there's also a note for
11 imaging. Do you know if new X-rays were taken on
12 this date or did you review old ones?
13     A. This sounds like it's the old ones.
14     Q. Okay. So why did you -- can we go over
15 what caused you to suggest that treatment plan on
16 this date?
17     A. As far as fusion?
18     Q. Yes.
19     A. He has arthritis of his joint and the PIP
20 joint doesn't do well as far as -- if the complaint
21 is stiffness, for some joints, you can do some
22 releases, you can release scar tissue, you can
23 release capsule. That's true of the neighboring
24 joint, the MCP joint which is the knuckle joint,



Page 34

1  that does very well with that, the PIP doesn't.
2      So if he doesn't have motion, he has
3  a painful joint and we can't improve motion, the way
4  to get rid of that pain would be to fuse it in a
5  more functional position.
6      Q.  Okay.  Then I just want to make sure
7  there's nothing else that I want to ask you on this
8  page.
9          Is there anything in your notes to
10  suggest that there was a change in his condition
11  between this date and the last note that we just
12  discussed, that was about nine months older?
13      A.  As far as his finger?
14      Q.  Yes.
15      A.  No, I don't think so.
16      MS. SANFELIPPO:  Okay.  Okay.  Then I'm going
17  to move on to the next one.  I'm going to ask the
18  Court Reporter to mark this as Exhibit 4.
19          (Deposition Exhibit Number 4 was
20          marked for identification as
21          requested.)
22      MS. SANFELIPPO:  Q.  Okay.  This should be page
23  144.  Starting off, is this an orthopedic note that
24  you prepared based on a visit with Wendell Weaver

Page 35

1  on November 1st of 2018?
2      A.  No, this is a nursing note.
3      Q.  Oh, I'm sorry.  Can you flip to page 146,
4  it's in that packet that I handed you.
5      MR. MARUNA:  I don't think you've got 144 and
6  145.
7      MS. SANFELIPPO:  I'm not sure why she made the
8  copies this way.  Okay -- so you have 144, 145,
9  here's 146, 147, 148.  And here's these as well.
10  So that should be -- so that should be all part of
11  the same exhibit.
12      THE WITNESS:  Okay.
13      MS. SANFELIPPO:  It should be one, two, three,
14  four, five pages.
15      MR. STALEY:  So 43 through 48?
16      MS. SANFELIPPO:  No, actually, 43 will be
17  another exhibit.
18      MR. MARUNA:  Okay, 144 through 148 is Exhibit
19  4?
20      MS. SANFELIPPO:  Yes.
21      Q.  So if you could look at page 146.  Is
22  this your orthopedic note?
23      A.  Yes.
24      Q.  Okay.  Can you tell me about your

Page 36

1  examination of Mr. Weaver on this date?
2      A.  So he still had a very stiff finger.  He
3  had good motion at the knuckle, the MCP joint, but
4  he doesn't have very good motion and we discussed --
5  he was still having pain and stiffness and certainly
6  a stiff joint is a painful joint.  We had talked
7  about therapy, we had talked about fusion.  He
8  didn't want those.  He wanted to try to attempt to
9  obtain some motion, so we talked about attempting
10  the capsular release and tenolysis or freeing up
11  the tendons surrounding.  But we explained to him
12  that the amount of motion gained might be so limited
13  that we might need to proceed with articular fusion.
14  So certainly the most reliable thing for him would
15  be a fusion and that's what we discussed several
16  times.
17      Q.  Okay.
18      A.  But, obviously, he has autonomy, if he
19  doesn't want to have a fusion and he wants to try
20  something short of that, we can try the tenolysis,
21  but we discussed with him that he'll be lucky if he
22  gets a lot of motion here.
23      Q.  Okay.  Going back to the observations,
24  the physical examination section, you noted mild

Page 37

1  swelling over the MCP joint on the left finger,
2  page 147.
3      A.  Uh-huh.
4      Q.  Can you explain that?
5      A.  He has -- the rest of the finger is stiff,
6  this joint may take up more stress than usual than
7  a normal hand.
8      Q.  Okay.  Just so to explain it in laymen's
9  terms, because one joint can't do much, the other
10  one is overcompensating, is that fair?
11      A.  To some extent.
12      Q.  Okay.  And then did the rest of the
13  physical examination change much from the last
14  time you had seen him about a year prior to your
15  knowledge?
16      A.  It doesn't seem so.  The tip of his finger
17  seems more stiff than previously, so I think the
18  finger is stiffer than it was before.
19      Q.  All right.  What about the range of
20  motion, what did you observe?
21      A.  The range of motion, that's what I mean
22  by stiffer, the range of motion is less and that's
23  what means he's stiffer.
24      Q.  So what was your diagnosis on this date?



Page 38

1    A.  He has degenerative changes and post-
2  traumatic stiffness after a finger dislocation.
3    Q.  Okay.  So that was the same as it was
4  previously or did it change at all?
5    A.  No, it's the same.
6    Q.  Okay.  I don't believe there was any
7  images reviewed at this session with Mr. Weaver, so
8  can you just summarize for me what observations
9  factored into the diagnosis?
10    A.  Well, we know his history, we know he
11  dislocated his finger.  It's been stiff now for
12  years, so we've offered him fusion and he doesn't
13  want fusion, but he continues to say it's painful,
14  so we're offering an attempt at loosening it up,
15  although it's not likely to be that effective.
16    Q.  Okay.  So you did ultimately, though,
17  schedule a surgery for Mr. Weaver?
18    A.  It was attempted to schedule it says here,
19  I'm not sure if we were -- I'm not sure why it says
20  "tentative".  Tentative date is December 7th
21  scheduled for day of surgery.
22    MS. SANFELIPPO:  Okay.  I think we're all set
23  with that exhibit then.  I accidentally already
24  gave you the last one, it's 143 -- it should be

Page 39

1  after the last page.
2    THE WITNESS:  I have 144, 145, 146, 147 and
3  148.
4    MR. STALEY:  Is that the end of the last
5  exhibit that starts with 146?
6    MS. SANFELIPPO:  Do you guys have --
7    MR. MARUNA:  Yeah, I have it.
8    MS. SANFELIPPO:  So she can just mark it as an
9  exhibit.
10       (Deposition Exhibit Numbers 5 and 6
11        were marked for identification as
12        requested.)
13    MS. SANFELIPPO:  Q.  Okay.  Now, I know this
14  isn't your note exactly, it's an RN note, but are
15  you familiar with this document at all?
16    A.  I've never seen this specifically, but
17  I can tell what it is, Lorna is our surgical
18  scheduler.
19    Q.  Okay.  And what does the note say?
20    A.  "This writer received a message from
21  Stateville stating that the capsular release is
22  denied for this patient, to please cancel the
23  surgery.  He would be treated on-site."
24    Q.  Do you have any knowledge as to whether

Page 40

1  or what sort of on-site treatment Mr. Weaver was to
2  receive?
3    A.  No.
4    Q.  Okay.  Were you contacted directly about
5  the fact that the surgery was scheduled -- that you
6  had scheduled was cancelled?
7    A.  They would have -- it would have appeared
8  on surgical scheduling as him being cancelled, but
9  I did not see this particular sentence before.
10    Q.  Okay.  Can you recall any other instances
11  of inmates that you had scheduled to undergo
12  surgery, that that surgery had subsequently been
13  cancelled?
14    A.  Yes.
15    Q.  Do you know about how many?
16    A.  No.
17    Q.  Okay.  Did you at the end of all of your
18  treatments with Mr. Weaver send copies of your notes
19  back with him to the prison?
20    A.  There's a form that comes with them that
21  we fill out as far as what our intentions and plan
22  is.  So, for example, from the previous visit, it
23  would have been that we were planning on doing this
24  particular surgery.  It's a form that gets filled

Page 41

1  out and then handed back to them and the guards
2  take it back.
3    Q.  Okay.  So, ultimately, did you -- I know
4  that we talked about patient autonomy and Mr. Weaver
5  was not interested in having his finger fused, but
6  would you have proceeded with the release had there
7  been no way it would help him in any way?
8    MR. MARUNA:  Objection, form of the question,
9  vague.
10    THE WITNESS:  A.  So as we discussed in the
11  note, the expectation of gains here is pretty
12  limited for capsular release, especially for a
13  small finger.  This is a bad joint as far as doing
14  a capsular release and it's a bad finger.  When we
15  have rest every day, the small finger is in a
16  pre-flexed posture, you're not moving it, it's easy
17  to bypass it.
18    So, for example, I would be -- the
19  PIP is always going to be a problem.  I was more
20  confident that he's going to get significant motion
21  of an index finger, it's easier to focus on using
22  that and manipulating it than the pinky that it
23  really to some extent sort of like be ignored in
24  most manipulation.  So expectations for me for a



Page 42

1 capsular release with him were pretty limited.
2 MS. SANFELIPPO: Okay. Then I think I'm all
3 done with my questions, if anyone else has any.
4 MR. MARUNA: Yeah, I'm going to have just --
5 actually when I say a few, I actually do mean a few
6 for the first time in my life.
7 I introduced myself earlier, I
8 represent the late Dr. Obasi and Dr. Martija in
9 this case. Thank you for your time again today,
10 Doctor.
11 EXAMINATION
12 BY MR. MARUNA:
13 Q. You used the term post-traumatic
14 arthritis. I just want to be clear, what causes
15 post-traumatic arthritis in a finger dislocation?
16 A. It can be any number of things, it can be
17 the initial injury, it can be a step-off if there's
18 a fracture associated with it, it can be
19 inflammation or infection if it's an open
20 dislocation.
21 Q. And the idea is once that occurs, then
22 you're going to develop some sort of arthritis in
23 the joint, correct?
24 A. Once what occurs?

Page 43

1 Q. Sure. Once there's trauma to the joint,
2 there's going to be development of post-traumatic
3 arthritis, correct?
4 A. Not always. It's certainly more
5 frequently once you've had injury, but not everyone
6 who has a dislocation is going to get arthritis.
7 Q. This patient, though, does demonstrate
8 post-traumatic arthritis, correct?
9 A. Yes.
10 Q. It's not degenerative arthritis or DJD,
11 correct?
12 A. That's correct.
13 Q. Now, I just want to be clear on a couple
14 questions here. These may seem very basic, so just
15 bear with me here.
16 We discussed X-rays inside the
17 hospital. When you as the orthopedic surgeon put
18 an order in for an X-ray, do you wheel the patient
19 down to imaging and stick him in the X-ray
20 machine?
21 A. No.
22 Q. Does someone else do that?
23 A. Most of my patients are ambulatory, so
24 no one is being wheeled, they're walking over.

Page 44

1 Specifically with a prisoner, when they come in, if
2 we are getting new X-rays, the guards escort them
3 over.
4 Q. My point is, I guess, as the physician
5 ordering the imaging, you don't actually carry out
6 the logistics of securing the image, someone else
7 down the line in the medical system here at UIC
8 does that, correct?
9 A. For the most part. So if I'm ordering a
10 formal X-ray, yes. We also have a fluoroscan in
11 our office which, obviously, we have it because
12 we're orthopedics and most offices wouldn't. In
13 the fluoroscan, I am taking the image myself.
14 Q. Let's assume a regular plain X-ray of a
15 finger, for example.
16 A. I'm ordering it and they're going to
17 X-ray, and I'm not putting them in the machine.
18 Q. And your expectation then as the doctor
19 would be that your order is carried out, correct?
20 A. Yes.
21 Q. And if there's something wrong with
22 securing that X-ray, you would expect someone to
23 notify you there was a problem, correct?
24 A. Yes.

Page 45

1 Q. You don't walk down to the X-ray and say,
2 hey, guys, did you X-ray Patient Smith today, do
3 you?
4 A. The way you phrased the question, if I'm
5 in the clinic and I just sent you to X-ray and you
6 haven't come back, I will go over and ask what's
7 the problem, why haven't you returned to my office.
8 Because I'm sending you to X-ray -- I'm sending you
9 to X-ray one of two ways, I'm sending you to X-ray
10 and you need to return so I can see the X-ray that
11 way, or I'm sending you for X-rays on the way out,
12 and that means you're going to X-ray and then you're
13 leaving.
14 So, for example, if I'm treating
15 some kind of wear-and-tear arthritis and I want --
16 I've decided to do surgery, we're going to do
17 surgery regardless, but I want new X-rays for the
18 surgical date, I might complete the surgical packet,
19 send you to X-ray to get X-rays on the way out that
20 then will be available for me in the computer on
21 the day of surgery. But if I'm treating a fracture,
22 generally I'm sending you to X-ray and waiting for
23 you to come back. If you don't come back, then I'll
24 go find out what happened because sometimes people

Page 46

1 have misunderstood and left from X-ray.
2    Q. But the expectation is when you put in
3 an order for an X-ray, you expect the people in
4 the imaging department to provide that X-ray,
5 correct?
6    A. Yes.
7    Q. And I also want to ask about medications
8 as well.
9      When you place an order for a
10 medication for a patient, let's assume they're
11 in-patient in this case, that they're in the
12 hospital, do you physically hand the medication to
13 the patient or does someone in the pharmacy or
14 medical technician handle that?
15    A. I don't give anyone medication directly.
16    Q. And, again, your expectation would be when
17 you put in a medical order, that it's carried out,
18 correct?
19    A. Yes.
20    MR. MARUNA: Nothing further. Thank you for
21 your time.
22    MR. STALEY: I just have this one question.
23
24

Page 47

1      EXAMINATION
2 BY MR. STALEY:
3    Q. The capsular release that was -- surgery
4 that was scheduled, that wasn't a medically
5 necessary treatment, was it?
6    A. Well, if it wasn't medically necessary,
7 we wouldn't do anything. We're giving him an
8 option like we talked about, he's having pain, he
9 wants more motion, we can't really resolve these
10 two because of this, so I do think it is medically
11 necessary.
12    Q. There were alternative treatments
13 available that you could have done, though?
14    A. The fusion.
15    MR. STALEY: All right. Nothing further.
16    MR. PERERA: No questions.
17    MS. SANFELIPPO: Thank you very much, Doctor.
18    THE WITNESS: Waive signature.
19      * * * * *
20
21
22
23
24

Page 48

STATE OF ILLINOIS )
    ) SS.
COUNTY OF COOK )

  I, PATRICIA S. MANN, CSR, RPR, a certified
shorthand reporter in the State of Illinois, do
hereby certify that ALFONSO MEJIA, M.D., was by me
first duly sworn to testify to the truth, and that
the above matter was recorded stenographically by me
and reduced to writing by me.

  I FURTHER CERTIFY that the foregoing transcript
of the said matter is a true, correct and complete
transcript of the testimony given by the said
witness at the time and place specified herein
before.

  I FURTHER CERTIFY that I am not a relative or
employee of any of the parties, nor a relative or
employee of the attorneys of record or financially
interested directly or indirectly in this action.

  IN WITNESS WHEREOF, I have hereunto set my hand
and affixed my seal of office at Chicago, Illinois,
this 20th day of April, 2019.

Patricia S. Mann
Certified Shorthand Reporter
License No. 084-001853

MAGNA
LEGAL SERVICES

**A**

able 11:14 14:24
Absolutely 18:13 20:3
Academy 12:17
accidentally 38:23
action 48:17
Adams 2:7
address 29:7
addressable 32:3
adequately 5:11
adult 18:21
advantages 27:12
affiliated 10:13,16
affixed 48:19
afternoon 4:6
age 30:18,23
agree 21:24 23:15
akin 12:21
al 1:6
Alfonso 1:9 4:1,8 23:12 48:5
aligned 31:11
allow 5:6
alternative 18:9 47:12
ambulatory 43:23
American 12:17
amount 27:18 36:12
amounts 30:6
anchor 26:23,24 27:15
anchors 26:14 27:8 27:14,17,23
anesthesia 16:24
anesthetize 16:7,16
anesthetized 17:6
ankle 4:22
answer 5:7
answering 5:18
Anytime 31:2
appear 24:1
APPEARANCES 2:1

appeared 2:5,10,16 2:22 40:7
apply 12:10
appointed 4:11
appointment 33:6
appointments 19:12
appreciated 26:16
April 1:17 48:20
arc 30:2
arcade 30:3
arthritis 26:13 29:14 30:10,17,22 31:1,3,13 33:3,19 42:14,15,22 43:3 43:6,8,10 45:15
articular 36:13
assaulted 4:24
associated 42:18
assume 44:14 46:10
as-needed 33:6
attach 27:5,21
attempt 15:15 16:8 36:8 38:14
attempted 29:20 38:18
attempting 36:9
attending 22:2,3
ATTORNEY 2:12
attorneys 48:16
autonomy 36:18 41:4
available 15:7,8 45:20 47:13
Avenue 1:16 2:19
avoid 5:10

**B**

back 15:1,6 36:23 40:19 41:1,2 45:6 45:23,23
bad 41:13,14
Baldwin 2:16
base 26:14 28:14
based 12:24 21:1 21:15 32:19 34:24

basic 11:24 43:14
basically 8:24 17:1 24:1
basketball 24:19
bear 43:15
bearing 31:20
Becerra 2:22
behalf 2:5,10,16,22 22:5
believe 31:21 32:6 38:6
bit 9:24 12:15 17:3 18:7 28:17 30:2 31:11
blood 13:23 24:13
board 6:23 7:1 9:13
body 21:24
bone 26:18 27:1,3,6 27:20,21 28:6,19
bones 8:11,22 18:20
bony 28:2
bothering 32:1
bottom 25:1 26:4
break 5:17,19
brief 28:8
broke 4:22
broken 18:21
Brown 9:23
bypass 41:17

**C**

C 2:21
called 1:10
cancel 39:22
cancelled 40:6,8,13 39:21 41:12,14 42:1 47:3
capsular 36:10
capsule 33:23
care 8:10,11,18,20 8:21 11:16 12:13 13:6 14:8
career 17:23 25:19
carried 44:19 46:17
carry 44:5

cartilage 31:9,12
case 42:9 46:11
cases 4:21
CASSIDAY 2:7
cast 18:22,24
caused 33:15
causes 42:14
Cerner 22:19
certainly 31:18 36:5,14 43:4
certified 6:23 48:3 48:23
certify 48:5,9,14
cetera 8:22
change 34:10 37:13 38:4
changed 10:18 12:4 12:15
changes 31:17 38:1
charge 7:6
chart 5:23 20:23 21:4
cheat 17:2
Chicago 1:17 2:3,8 2:13,19 6:14,22 48:19
chief 21:22
choose 18:11
chose 31:22
Chris 21:20
Christina 2:4 4:10
circumstances 18:1
City 4:23
Civil 1:11
Clark 2:2
classroom 7:22
clean 5:4
clear 5:15 42:14 43:13
clinic 6:2 7:19 19:10,11,17 24:3 45:5
clinical 12:1
closed 15:16,16,19 15:23 16:2,13 17:7,13 18:18,19

closer 28:6,11
closest 24:9
clubs 8:5
college 6:13 12:21
come 15:1 18:10 19:9,10,11 25:17 44:1 45:6,23,23
comes 40:20
coming 19:22 24:3
Committee 12:18
common 17:15 27:7 30:16,24
complained 14:12
complaint 14:1 33:20
complete 45:18 48:10
component 7:23
components 8:20 10:15,16
computer 15:4,8 45:20
concentrations 12:21
conclusions 28:22
condition 34:10
confident 41:20
contacted 40:4
contain 23:3,6
contents 23:15
contingent 8:14
continues 38:13
Cook 1:15 48:2
copies 35:8 40:18
copy 6:8
core 7:24 12:2
correct 32:6 42:23 43:3,8,11,12 44:8 44:19,23 46:5,18 48:10
corresponding 13:22
Council 12:16
County 1:15 48:2
couple 19:8 43:13
coupled 30:12



MAGNA
LEGAL SERVICES

course 22:6 25:19
Court 1:1 4:11 5:8
   5:11 32:11 34:18
Courts 1:12
create 22:13
created 22:24
csanfelippo@fox...
   2:3
CSR 1:14,23 48:3
cupped 28:14
current 6:6 7:2
currently 21:21
Curriculum 12:18
curvature 28:17
cutting 15:21,24
cyst 32:4
c.v 6:6,6

**D**

D 3:1
data 14:5 23:6
date 23:19 26:8,21
   32:23 33:12,16
   34:11 36:1 37:24
   38:20 45:18
day 11:17 13:7 23:2
   28:15 38:21 41:15
   45:21 48:20
dealing 11:18
December 32:20
   38:20
decided 45:16
dedicated 8:5
deep 28:17
Defendant 1:10
   2:22
Defendants 1:7
   2:10,16
degenerative 30:20
   38:1 43:10
degree 30:12
degrees 24:11,12
demonstrate 43:7
denied 39:22
department 7:4
   46:4

depending 13:24
depends 15:13,14
   15:14 16:4 17:5
   18:5 20:14
deposed 4:13
deposition 1:9 3:7
   5:22 21:7 28:9
   32:12 34:19 39:10
depositions 1:13
designated 15:9
desk 19:15
determine 16:2
develop 42:22
development 43:2
diagnosing 13:14
   16:10
diagnosis 29:11
   30:9 37:24 38:9
dictated 22:1
dictates 21:18
died 4:24
difference 15:19
different 10:1,2,8
   11:8 13:24 14:6
   27:10
difficult 16:19
   20:17 23:5
DIP 24:8,10 25:13
   25:14
DIRECT 4:4
directly 15:23 40:4
   46:15 48:17
director 7:5
disadvantages
   27:12
discussed 29:15
   34:12 36:4,15,21
   41:10 43:16
disease 30:20
dislocated 17:5
   38:11
dislocation 13:5
   14:12,20 15:11,13
   16:15,15 24:16
   25:5,23 29:14
   30:13 38:2 42:15

42:20 43:6
dislocations 11:12
   11:16,19,22,23
   13:6,11
displaced 18:20
disrupt 31:9
distal 31:6
District 1:1,1,12
divided 10:12
DIVISION 1:2
DJD 43:10
doctor 42:10 44:18
   47:17
document 22:4
   39:15
documents 5:21
doing 33:2 40:23
   41:13
dozen 25:18
Dr 1:6 2:11,11 42:8
   42:8
drawer 28:4
drill 27:20
duly 4:2 48:6

**E**

E 3:1
earlier 26:21 42:7
early 12:8
easier 41:21
EASTERN 1:2
easy 41:16
education 6:5 7:6
   12:16,17 21:22
EDWARD 2:18
effect 20:1
effective 38:15
effectively 18:18
either 17:12 22:4
electronic 22:17
eligible 9:12
emergency 7:21
   10:16 13:1 16:21
employee 48:15,16
entire 11:17
EPIC 22:19

equivalent 18:13
escort 44:2
especially 41:12
estate 27:18
estimate 17:23
   25:21
et 1:6 8:22
exactly 22:20 39:14
examination 1:10
   3:2 4:4 13:21 14:4
   14:13,19 24:5
   32:23 36:1,24
   37:13 42:11 47:1
examine 21:17
examined 4:2
examiner 7:1
examining 14:11
example 9:22 10:9
   10:13 12:8 14:8
   16:14 17:15 18:19
   20:15 22:18 31:6
   40:22 41:18 44:15
   45:14
excision 33:1
excuse 28:7
exhibit 3:7 6:10
   21:6,7,11 32:11
   32:12 34:18,19
   35:11,17,18 38:23
   39:5,9,10
Exhibits 3:6
expect 44:22 46:3
expectation 41:11
   44:18 46:2,16
expectations 41:24
experience 6:5 7:18
   11:8,21 12:10
   13:3,9,10 25:5
experiential 7:18
explain 8:7 26:22
   28:1 31:5 37:4,8
explained 36:11
extended 29:24
extent 12:4 31:15
   37:11 41:23
extra 28:19

extracted 17:18,19
extremity 15:24
eyelet 27:4
E-270 1:16

**F**

F 2:9
face 18:17
facial 9:1
fact 8:1 19:24 30:13
   40:5
factored 30:9 38:9
fair 18:8 26:7 37:10
fall 23:9
familiar 20:21
   39:15
far 25:8 28:7 29:18
   33:2,6,17,20
   34:13 40:21 41:13
fashion 17:21
feel 5:17 20:4,9
fellow 7:8
fellowship 6:21
   9:22,23
felt 29:18 33:3
figure 18:9
fill 10:3 40:21
filled 40:24
financially 48:16
find 45:24
finger 16:6,7 24:6,7
   24:14 25:12 28:6
   29:13 30:2,4,5,17
   31:24 32:1,4 33:1
   33:2 34:13 36:2
   37:1,5,16,18 38:2
   38:11 41:5,13,14
   41:15,21 42:15
   44:15
fingers 27:8 31:15
finish 5:6,18 6:18
   9:11
firm 4:11
first 4:2 6:23 11:24
   13:17 42:6 48:6
five 9:18,18,19 11:2



35:14
flattened 28:16
flexion 24:11 30:6
flip 35:3
flippant 14:7
floor 2:13,19 7:20
flow 24:13
fluid 16:17
fluoroscan 44:10
  44:13
focus 10:2 41:21
focusing 31:23 32:2
followed 20:5
follows 4:3 28:9
follow-up 20:10
  33:6
forearm 18:20,21
foregoing 48:9
forgive 18:6
form 20:6 30:17
  40:20,24 41:8
formal 44:10
found 6:1
four 8:1,2 11:2
  35:14
fourth 11:5 12:6,20
FOX 2:2
fracture 9:1 18:20
  19:2 26:17 27:19
  27:19 31:8 42:18
  45:21
fractures 11:15,19
  31:7,7
free 5:17
freeing 36:10
frequently 19:21
  43:5
functional 29:22
  34:5
further 46:20 47:15
  48:9,14
fuse 29:19 30:5
  34:4
fused 41:5
Fusing 29:19
fusion 30:1 33:5,7

**G**
gained 9:4 36:12
gains 41:11
general 2:12 8:21
  10:19 12:3 16:24
generally 19:8 20:5
  22:23,24 23:3
  45:22
gentleman 4:23
getting 15:22 44:2
give 10:6 11:10
  46:15
given 4:18 48:11
giving 47:7
glide 29:3
go 5:3 8:2 9:13
  11:24 12:9 20:19
  21:23 31:8 33:14
  45:6,24
goes 31:8
going 5:5 9:7,9 11:7
  12:9 13:20,21,22
  14:2,3,4 21:10
  29:3,9 32:10
  34:16,17 36:23
  41:19,20 42:4,22
  43:2,6 44:16
  45:12,16
good 4:6 21:22
  24:13 36:3,4
graduate 9:6
graduated 6:16
graduation 6:17
great 7:2 30:1
grew 28:19
grip 30:7
guards 41:1 44:2
guess 13:8 18:8
  44:4
guys 39:6 45:2

**H**

33:17 36:7,13,15
  36:19 38:12,13
  47:14

half 25:18
hand 6:21 8:5,11
  8:13,14,19,20
  17:15 21:6,10
  32:10 37:7 46:12
  48:18
handed 6:5 35:4
  41:1
handle 46:14
happened 45:24
happens 15:11
Head 7:4
healing 28:18
help 5:7 23:21 41:7
heme 13:1
hereunto 48:18
hey 45:2
he'll 16:23 29:4
  36:21
hinge 29:4
hip 31:19
history 13:20 14:3
  14:8 24:20,24
  25:2,12 38:10
hospital 12:24
  43:17 46:12
hour 1:18
hours 8:1

**I**
idea 42:21
identification 21:8
  32:13 34:20 39:11
identified 15:11
IDOC 19:5
ignored 41:23
Illinois 1:1,16,17
  2:3,8,12,13,19
  6:13,20 22:15
  48:1,4,19
image 15:7,10
  28:22,24 44:6,13
images 38:7
imaging 13:23 14:5
  14:10,21 26:4
  33:11 43:19 44:5

46:4
immediately 15:6
implemental 12:19
imply 26:17
impossible 18:18
impression 20:20
improve 29:17 34:3
include 8:12
included 7:12
includes 7:7
increase 33:4
increasing 30:6
independent 20:24
  21:1
index 30:4 31:24
  33:1 41:21
indirectly 48:17
infection 42:19
inflammation
  42:19
information 23:11
  23:12 24:22
initial 42:17
initially 19:19
initiate 24:3
inject 16:17
injuries 18:6
injury 18:5 28:18
  30:19 31:2 42:17
  43:5
inmate 20:1,9,11
  20:22
inmates 19:5,9 20:5
  40:11
inside 43:16
instances 40:10
Institute 6:22
intact 24:13
integral 11:15
integrated 10:10
integrative 9:22
intensive 12:13
intentions 40:21
interactions 19:4
interacts 19:17
interested 41:5

48:17
intern 10:10
internal 9:9
internship 10:20
interposed 17:14
  17:16
interruption 28:8
Introduce 13:18
introduced 42:7
involved 13:16
in-patient 46:11

**J**
J 2:18
JAMES 2:9
jerking 17:3
jmaruna@cassid...
  2:8
job 6:5 7:23
John 2:16
Join 20:13
joint 15:14,22 16:4
  16:17 17:18 24:8
  24:9,10,17 25:5
  26:13 27:19 28:3
  28:7,12,24 29:2
  29:10 30:12,20
  31:2,8,9 33:19,20
  33:24,24,24 34:3
  36:3,6,6 37:1,6,9
  41:13 42:23 43:1
joints 8:11,22 11:3
  28:4 31:20 33:21
Jose 2:22
journal 8:4
junior 11:3,4,7

**K**
killer's 5:1
kind 15:13 45:15
Kleinert 6:22
knee 31:19
know 5:13,17 10:20
  11:10 16:15 19:2
  19:6,8,14 25:17
  25:24 28:3 30:3



30:13 33:11 38:10
38:10 39:13 40:15
41:3
**knowledge** 19:17
37:15 39:24
**knuckle** 33:24 36:3
**KOZEL** 2:18

---

**L**

**lady** 4:22
**Lamb** 2:16
**large** 31:14,16
**late** 42:8
**LAW** 2:18
**lawyer** 5:13
**laymen's** 37:8
**leads** 29:4
**leaving** 45:13
**lecture** 7:24 8:3
**left** 24:6,7 25:12
29:13 31:23 33:2
37:1 46:1
**LEGAL** 1:23
**let's** 16:14 44:14
46:10
**License** 1:14,24
48:24
**lidocaine** 16:17
**lie** 28:4
**life** 42:6
**ligament** 27:2
**limited** 36:12 41:12
42:1
**line** 18:23 44:7
**little** 9:24 12:15
17:3 18:7 28:17
28:19 30:2 31:11
**locally** 16:7,16
**logistics** 44:6
**long** 9:17 18:24
23:8
**longer** 9:24
**look** 23:22 26:19
28:3,5,15,19 31:6
35:21
**looked** 30:11

**looking** 21:4,11
23:11,17 25:1
28:23 33:8
**looks** 26:3
**loosening** 38:14
**Lorna** 39:17
**loss** 30:12
**lot** 5:8 6:2 8:12
27:9 29:4,19
36:22
**Louisville** 6:21
**lucky** 36:21
**L.L.P** 2:2,7

---

**M**

**M** 2:4
**machine** 43:20
44:17
**MAGNA** 1:23
**mailed** 5:24 6:1
**maintain** 22:6
**malunion** 26:16,17
28:1
**manage** 18:23
**manipulate** 15:22
**manipulating**
15:24 41:22
**manipulation**
41:24
**Mann** 1:14,23 48:3
**Marcaine** 16:18
**March** 23:18 24:5
**mark** 6:9 21:6
32:11 34:18 39:8
**marked** 21:8,11
32:13 34:20 39:11
**Martija** 1:6 2:11
42:8
**Maruna** 2:9 3:4
20:6,12 35:5,18
39:7 41:8 42:4,12
46:20
**mass** 33:1
**material** 6:2 28:2
**matter** 4:12 17:16
48:7,10

**MCP** 33:24 36:3
37:1
**mean** 20:7 37:21
42:5
**means** 37:23 45:12
**mechanism** 27:22
**med** 11:20,24
**medical** 6:13 7:8
9:6 12:22 22:7,8
44:7 46:14,17
**medically** 47:4,6,10
**medical-related**
5:14
**medication** 46:10
46:12,15
**medications** 46:7
**medicine** 6:14 7:13
7:17 9:10 12:3
25:7
**Mejia** 1:9 4:1,8
23:12 48:5
**message** 39:20
**middle** 24:8,10
26:15 28:5,6,10
28:14
**mild** 36:24
**mind** 26:20
**mine** 10:5
**minute** 23:22
**misunderstood**
46:1
**monitor** 15:4
**months** 10:11,11
34:12
**month-long** 12:7
**motion** 24:11,12
29:10,17 33:4
34:2,3 36:3,4,9,12
36:22 37:20,21,22
41:20 47:9
**move** 29:21 32:9
34:17
**moving** 15:24
41:16
**murder** 5:1
**muscle** 16:24

**muscles** 8:11
**muscular** 16:19
17:5
**musculoskeletal**
8:10 10:17
**M-e-j-i-a** 4:9
**M.D** 1:9 4:1 48:5

---

**N**

**N** 3:1
**name** 4:7,8,8,10
23:11
**nature** 25:23 27:2
**necessarily** 31:18
**necessary** 47:5,6,11
**necessity** 19:2
**neck** 8:24
**need** 5:16 12:9
15:17 16:23 17:6
17:19,20 19:21
27:7,9 36:13
45:10
**needed** 8:16 16:3
**needle** 27:20
**needs** 15:16 17:18
18:17
**neighboring** 33:23
**nerves** 8:12
**nestled** 28:4
**neurology** 12:13
**neurosurgeon** 8:17
**never** 39:16
**new** 33:11 44:2
45:17
**Nicholas** 2:15,16
**nine** 34:12
**nonsurgical** 12:23
18:11,15
**normal** 30:7 37:7
**North** 2:2
**NORTHERN** 1:1
**NorthShore** 22:16
22:19
**notary** 1:14
**note** 21:14,18,19,20
21:23 22:13,17

24:20,24 26:4,15
32:19 33:10 34:11
34:23 35:2,22
39:14,14,19 41:11
**noted** 36:24
**notes** 6:2 22:11,23
34:9 40:18
**notice** 1:11
**notify** 44:23
**November** 35:1
**nstaley@atg.stat...**
2:14
**number** 21:7 25:9
31:15,16 32:12
34:19 42:16
**Numbers** 39:10
**nursing** 35:2

---

**O**

**Obasi** 2:11 42:8
**Objection** 20:6
41:8
**objections** 20:12
**observations** 23:4,6
26:12 30:9,14
36:23 38:8
**observe** 37:20
**obtain** 36:9
**obviously** 18:15
36:18 44:11
**OB-gyny** 12:4
**occasionally** 8:4
**occupational** 20:17
**occurs** 42:21,24
**offered** 38:12
**offering** 38:14
**office** 2:12 15:9,16
16:21 44:11 45:7
48:19
**offices** 2:18 44:12
**oftentimes** 8:16
16:18 31:7,10
**Oh** 35:3
**okay** 4:10,18,21 5:2
5:21 6:4,8,11,12
6:16 7:2,15,22 8:7



8:23 9:3,14 11:12
11:20 13:3,8,13
13:19,24 14:11
16:6,12 17:9,22
18:14 19:4,16,24
19:24 20:4 21:5
21:14 22:2,4,10
22:23 23:10,17,21
24:4,15,20 25:4
25:10,15,22 26:1
26:10,22 27:7,11
28:1,21 29:11
30:8,16,21 31:21
32:9,15,18,22
33:10,14 34:6,16
34:16,22 35:8,12
35:18,24 36:17,23
37:8,12 38:3,6,16
38:22 39:13,19
40:4,10,17 41:3
42:2
old 30:23 33:12,13
older 34:12
once 19:19 42:21
42:24 43:1,5
oncology 10:21
ones 8:6 33:12,13
on-site 14:22 39:23
40:1
open 15:18,20,21
17:10,20 42:19
opened 28:16
operating 15:17
17:7
option 17:9 18:10
18:12,12 47:8
options 18:10 29:16
order 11:13 13:22
43:18 44:19 46:3
46:9,17
ordering 44:5,9,16
ordinarily 22:5
Orthopaedic 12:17
orthopedic 7:5 8:8
8:16,21 9:16
22:11 32:18 34:23

35:22 43:17
orthopedics 6:19
8:13 9:18 10:11
11:15 12:8,9,10
13:4 44:12
overcompensating
37:10
overgrowth 26:18
overpower 17:1
oversee 7:8 8:3

**P**
packet 35:4 45:18
PACS 15:5
page 3:2,6 21:12
26:3 32:15 33:8
34:8,22 35:3,21
37:2 39:1
pages 6:1 35:14
pain 29:19,20 34:4
36:5 47:8
painful 31:18 34:3
36:6 38:13
part 10:2 35:10
44:9
participate 8:6
particular 40:9,24
parties 48:15
Patel 21:21
patient 13:14,17
14:1,12,14 19:20
22:7 23:1,4 24:21
25:3 39:22 41:4
43:7,18 45:2
46:10,13
patients 7:19,20,20
14:9 20:18,19
24:1 43:23
patient's 14:7
Patricia 1:13,23
48:3
pediatric 10:21
pediatrics 9:10
11:6 12:3
people 30:24 31:15
31:16 45:24 46:3

perception 20:15
PERERA 2:21
20:13 47:16
perfect 23:17
performed 17:22
25:15
person 17:6 19:12
pertaining 1:12
pertinent 23:6
Pfister 2:17
PGY-2 10:22 11:1
PGY-5 10:22 21:21
phalanx 26:15 28:5
28:10,11,13,14
pharmacy 46:13
phrase 19:1
phrased 45:4
physical 13:21 14:3
14:9,13,19 20:18
36:24 37:13
physically 46:12
physician 4:16 7:10
8:9 44:4
pinky 24:6 41:22
PIP 24:9,11,16 25:5
25:13,14,16 26:13
28:11 33:19 34:1
41:19
place 8:5 26:14
29:22 30:5 46:9
48:12
plain 44:14
Plaintiff 1:4 2:5
plan 20:2 33:15
40:21
planning 40:23
plans 20:5
plastic 8:17 10:14
plate 26:16 27:1
please 4:6 5:6,9,13
5:17 39:22
point 9:12 44:4
position 29:22 30:1
34:5
possible 17:13
post 29:14 38:1

posture 30:3 41:16
post-op 32:24
post-traumatic
29:15 30:10,19
42:13,15 43:2,8
practice 9:8,12
11:18
practicing 7:10,14
7:17
prefer 27:20
preference 27:16
preferred 18:16
preparation 5:22
prepared 21:14
32:19 34:24
pretty 29:23,24
41:11 42:1
previous 40:22
previously 24:16
37:17 38:4
pre-flexed 41:16
principle 28:23
prior 11:20 13:9
37:14
prison 40:19
prisoner 4:12 20:18
44:1
prisons 19:18
probably 19:7
25:17,18,19,19,24
problem 21:5 29:6
29:6,7 32:3 41:19
44:23 45:7
procedure 1:11
25:16
proceed 31:22
36:13
proceeded 32:1
41:6
process 9:13 12:11
13:14,24
professions 7:16
program 7:5
programs 9:20,21
provide 5:9 46:4
providing 5:7 22:6

proximal 28:11,12
psychiatry 9:10
12:3
public 1:15
pull 17:17
pulling 17:4
pursuant 1:10,11
put 30:2 43:17 46:2
46:17
putting 44:17
P-A-C-S 15:5
p.m 1:18 8:2

**Q**
quantify 20:16,20
question 5:6,18
18:6 23:23 41:8
45:4 46:22
questions 5:5 42:3
43:14 47:16
quickly 5:4

**R**
radiology 10:17
13:1
radius 31:6
Randolph 2:13
Randy 2:16
range 37:19,21,22
read 14:24
reading 28:22
real 27:18
really 6:18 10:6
29:16 30:15 41:23
47:9
reason 8:13 29:1
recall 23:18 29:23
40:10
receive 9:15 40:2
received 39:20
recertified 6:24
recollection 20:24
21:1
recommend 19:20
20:8
recommended 33:4



**record** 4:7 5:4,15
  22:8,17 48:16
**recorded** 48:7
**redesigned** 12:19
**reduce** 17:13,18,19
**reduced** 28:24 29:2
  29:2 48:8
**reduction** 15:16,17
  15:18,20,20,21,23
  16:2,8,13 17:7,10
  25:13,16
**reference** 28:2
**refresh** 26:20
**regardless** 9:7
  45:17
**regular** 44:14
**regularly** 22:6
**rehabilitation**
  10:17
**relative** 48:14,15
**relatively** 31:10
**relaxed** 16:23
**release** 33:22,23
  36:10 39:21 41:6
  41:12,14 42:1
  47:3
**releases** 29:8 33:22
**reliable** 29:18
  36:14
**rely** 24:21 25:3
**remember** 12:14
  13:5
**removed** 32:6
**repair** 25:6,8,13,16
**repeat** 11:1
**report** 23:22 24:15
**Reported** 1:22
**reporter** 5:8,11
  32:11 34:18 48:4
  48:23
**represent** 4:11 42:8
**reproduces** 30:7
**requested** 21:9
  32:14 34:21 39:12
**require** 18:6 25:6,6
  25:9

**requires** 25:8
**research** 9:21
**residency** 6:19 7:6
  9:3,8,11,11,15,17
  10:1,4,9,24 11:14
  11:20 13:9
**resident** 10:19 11:9
  21:18,22,23
**residents** 7:7 10:13
  21:18 22:15
**resolve** 47:9
**resort** 18:2,16
**respect** 24:5
**responses** 5:10,12
**rest** 37:5,12 41:15
**resting** 30:3
**result** 18:11
**results** 15:1 18:19
**resumed** 28:9
**return** 45:10
**returned** 6:22 45:7
**review** 5:21 26:10
  33:12
**reviewed** 38:7
**rid** 34:4
**right** 5:19 14:16,24
  15:3 31:24 32:4
  37:19 47:15
**rise** 23:9
**RN** 39:14
**Rome** 23:9
**room** 1:16 7:21
  10:16 13:1,16
  15:17 16:21 17:8
**rotate** 7:9 10:8
**rotated** 10:20 13:4
**rotations** 10:3,23
  11:1,7,11 12:2,7
  13:10
**ROTHSCHILD**
  2:2
**rough** 25:20
**routinely** 27:23
**RPR** 1:14,23 48:3
**rules** 1:11 5:3
**run** 10:3,4,5,10,24

**RUWAN** 2:21
**ruwan.perera@c...**
  2:20

---

**S**

**S** 1:13,23 2:15 48:3
**Sanfelippo** 2:4 3:3
  4:5,10 20:8,21
  21:5,10 28:21
  32:9,15 34:16,22
  35:7,13,16,20
  38:22 39:6,8,13
  42:2 47:17
**saw** 13:4 21:2 26:20
**says** 6:12 23:10
  25:1,11,12 26:15
  38:18,19
**scanned** 5:23
**scar** 33:22
**SCHADE** 2:7
**schedule** 23:24
  24:2,2 38:17,18
**scheduled** 38:21
  40:5,6,11 47:4
**scheduler** 39:18
**schedules** 19:12
**scheduling** 19:15
  19:22 40:8
**school** 6:13 9:7
  11:21,24 12:20
**science** 12:1
**screw** 27:3
**screws** 27:3
**seal** 48:19
**second** 12:1 13:19
**section** 36:24
**securing** 44:6,22
**sedation** 16:20,23
**see** 7:19,19,20 15:3
  15:10 19:2,9,21
  19:21,23 21:16,17
  21:17 23:19,24
  24:2 28:24 29:5
  29:17 31:17 40:9
  45:10
**seeing** 19:20

**seen** 25:22 37:14
  39:16
**send** 40:18 45:19
**sending** 45:8,8,9,11
  45:22
**senior** 11:3,4,8
**sensation** 24:13
**sent** 15:6 45:5
**sentence** 40:9
**series** 5:5 7:24
**SERVICES** 1:23
**session** 38:7
**set** 38:22 48:18
**severity** 15:15
**share** 24:22
**short** 36:20
**shorthand** 48:4,23
**shortly** 16:9
**shoulder** 16:14,15
**side** 28:12
**sign** 21:19
**signature** 47:18
**signed** 23:10,12
**significant** 25:9
  41:20
**similar** 5:10 11:9
  27:22
**single** 11:17 13:7
**sit** 12:18
**sits** 8:9
**six** 9:20,21 10:11
  10:11
**skin** 15:22 16:1
**small** 24:7 25:12
  27:2,17,18 29:13
  30:5 31:24 33:2
  41:13,15
**smattered** 11:6
**Smith** 45:2
**soft** 26:24 27:5
**soon** 15:7
**sorry** 33:8 35:3
**sort** 7:22 9:14
  11:13,21 12:21
  20:1 28:13 30:24
  40:1 41:23 42:22

**sounds** 33:13
**South** 1:16 2:19
**space** 30:12
**specialized** 11:13
**specialties** 10:9
**specialty** 9:4,5 10:2
  10:11
**specific** 11:10,12
  13:3 22:21
**specifically** 11:23
  20:7 39:16 44:1
**specifics** 10:7 12:14
**specified** 48:12
**spell** 4:7
**sphere** 28:13
**spoons** 28:4
**sports** 7:8 11:5
**spur** 28:19
**SS** 48:1
**Staley** 2:15 3:5
  35:15 39:4 46:22
  47:2,15
**start** 14:2,9
**started** 6:4
**starting** 8:2 30:4
  34:23
**starts** 39:5
**state** 1:15 4:6 48:1
  48:4
**States** 1:1,12 9:9
**Stateville** 39:21
**stating** 39:21
**status** 29:14
**stays** 22:8
**stenographically**
  48:7
**step** 14:18 16:3
**stepped** 29:3
**step-off** 42:17
**stick** 43:19
**stiff** 29:8,15 36:2,6
  37:5,17 38:11
**stiffer** 37:18,22,23
**stiffness** 19:1 29:1
  29:5,15 30:1
  33:21 36:5 38:2



stop 8:24
straight 29:24
Street 2:2,7,13
stress 37:6
strong 20:24
stronger 17:2
structure 11:9
structured 10:24
structures 8:14
stuck 17:17 24:11
students 7:8 12:22
studies 13:22
subsequently 6:20
   40:12
subspecializes 8:19
subspecialties 11:4
subspecialty 8:13
   8:15 12:7
substandard 18:19
sued 4:23
suggest 33:15 34:10
Suite 2:2,7
summarize 38:8
support 14:4
supporting 13:22
   14:5
sure 5:4,15 13:12
   21:24 34:6 35:7
   38:19,19 43:1
surgeon 8:8,12,17
   8:17 43:17
surgeons 8:21
surgery 6:21 7:5,19
   8:19 9:16 10:12
   10:14,14,15,19,21
   10:21 12:3,18
   16:3,13 17:23
   18:1,6,10,17,22
   19:3 25:6,9 27:13
   38:17,21 39:23
   40:5,12,12,24
   45:16,17,21 47:3
surgical 10:15,21
   12:23 18:12 24:20
   24:24 25:2,11
   39:17 40:8 45:18

45:18
surrounding 36:11
suspecting 14:20
sustained 24:18
suture 26:14,23
   27:4,8,14,15,16
   27:22
swelling 37:1
sworn 4:2 48:6
symptomatic 31:4
system 8:10 15:5,7
   22:19 44:7

                T
take 5:19 8:5,11,18
   8:21 13:6,20 14:8
   14:8,13,21,22
   26:19 29:21 37:6
   41:2
taken 1:13 15:6
   26:8 33:11
takes 8:10
talked 36:6,7,9
   41:4 47:8
talking 6:4 16:4
   20:14
teach 7:13
teaches 7:17
technician 46:14
tell 10:4 21:2 24:4
   26:12 29:11 32:22
   35:24 39:17
tend 11:1 27:13
   30:2
tended 12:6
tender 24:7
tendons 8:22 36:11
tends 8:12 11:6
   12:2
tenolysis 36:10,20
tentative 38:20,20
term 5:12 42:13
terms 37:9
testified 4:3
testify 48:6
testimony 4:19

48:11
Thank 5:2 42:9
   46:20 47:17
theirs 9:24
therapy 20:17,18
   20:19 29:17 31:22
   36:7
thing 13:17,19
   28:23 29:18 36:14
things 8:18 10:13
   10:22 12:12,13
   13:1 18:17 27:10
   27:24 29:20 42:16
think 6:9 17:12
   26:18 31:23,24
   34:15 35:5 37:17
   38:22 42:2 47:10
third 12:2 17:9
three 12:22 25:24
   26:1 35:13
tight 17:14
tightly 8:14
time 5:16 6:23
   10:18 12:5 14:6
   19:19 21:2 22:24
   37:14 42:6,9
   46:21 48:12
times 4:15,17 5:3
   17:22,24,24 25:24
   26:1 36:16
tip 24:8,9,9 28:6
   37:16
tiring 17:3
tissue 17:14,16 27:1
   27:5 33:22
title 7:3,12
today 26:21 42:9
   45:2
today's 5:22
tone 16:24
top 23:11 27:21,21
totally 18:8
touch 11:5
track 12:23,23
tracks 12:21,22
trailing 27:4

training 6:19 9:14
   11:13,17
transcribe 5:12
transcript 48:9,11
trauma 9:23 10:14
   11:3 14:9 31:1
   43:1
traumatic 38:2
treat 11:14 18:18
   18:22
treated 18:22 39:23
treating 4:16 32:2
   45:14,21
treatment 20:2,4,9
   20:10 22:7 33:15
   40:1 47:5
treatments 40:18
   47:12
trial 4:18 5:1
true 22:10 33:23
   48:10
truth 48:6
try 5:9 16:20 29:7
   29:16 36:8,19,20
trying 13:8 18:9
   29:5
twice 4:20 6:24
two 10:12 11:24
   12:1 27:16 29:16
   29:19 35:13 45:9
   47:10
tying 27:21
type 9:1 25:4
typical 13:14
typically 18:2
typo 25:12,13

                U
Uh-huh 32:17 37:3
uh-huhs 5:10
UIC 7:3 22:5,5,21
   44:7
ultimately 31:21
   38:16 41:3
unconscious 14:7
undergo 16:24

40:11
understand 13:8
   23:23
unevenly 31:12
unevenness 31:12
unit 12:13
United 1:1,12 9:8
universally 9:19
University 6:13,20
   12:19 22:9,14,16
use 5:12 27:5,8,22
uses 22:19
usual 22:6 37:6
Usually 23:2

                V
vague 18:7 20:6
   41:9
value 18:17
variable 31:3
vascular 10:14,20
verbal 5:9
verification 23:14
Vice 7:4
view 15:8
visit 21:15 22:24
   23:2,4,18 29:12
   32:19 34:24 40:22
volar 26:16 27:1
vs 1:5

                W
Wabash 2:19
wait 15:1
waiting 45:22
Waive 47:18
walk 6:9 13:13,16
   17:10 30:8 45:1
walking 43:24
want 5:15 21:5
   26:24 33:5 34:6,7
   36:8,19 38:13
   42:14 43:13 45:15
   45:17 46:7
wanted 36:8
wants 36:19 47:9


MAGNA
LEGAL SERVICES

**wasn't** 47:4,6
**waves** 25:18
**way** 10:9 25:11
    27:17 28:18 30:4
    30:11 34:3 35:8
    41:7,7 45:4,11,11
    45:19
**ways** 27:10 45:9
**wear** 31:12
**wear-and-tear**
    30:22 45:15
**Weaver** 1:3 4:12
    20:22 21:15 23:19
    24:5 31:22 32:19
    32:23 34:24 36:1
    38:7,17 40:1,18
    41:4
**Wednesday** 1:17
    8:1
**week** 19:8
**weight** 31:19
**Weiss** 22:16
**Wendell** 1:3 4:12
    20:22 21:15 32:19
    34:24
**went** 6:12
**West** 2:7,13
**we'll** 15:15
**we're** 11:16,18 16:4
    20:14 38:14,22
    44:12 45:16 47:7
**we've** 31:23 38:12
**wheel** 43:18
**wheeled** 43:24
**WHEREOF** 48:18
**witness** 4:24 20:7
    20:14 28:10 35:12
    39:2 41:10 47:18
    48:12,18
**Wolcott** 1:16
**work** 5:14 6:17,18
    11:2,3 13:23 15:2
    22:14,15,16
**working** 30:4
**wouldn't** 44:12
    47:7

**wrist** 31:7,14
**writer** 39:20
**writing** 48:8
**written** 21:20
**wrong** 5:12,14
    27:15 44:21

---

**X**

**X** 3:1
**X-ray** 14:21 19:2
    26:20 28:15 29:23
    30:11 31:11,17
    43:18,19 44:10,14
    44:17,22 45:1,2,5
    45:8,9,9,10,12,19
    45:22 46:1,3,4
**X-rays** 14:22 15:6,9
    26:7,10,19 33:11
    43:16 44:2 45:11
    45:17,19

---

**Y**

**Yeah** 23:13 26:2
    39:7 42:4
**year** 4:17 9:21 10:1
    10:10,23 11:2,2,5
    12:2,6,20 19:7
    25:18 37:14
**years** 9:18,19,19,20
    9:21 10:6 11:24
    12:1 38:12

---

**0**

**084-001853** 1:14,24
    48:24

---

**1**

**1** 3:8
**1st** 35:1
**10,000** 17:24
**100** 2:13 19:7,7
**12,000** 17:24
**120** 25:20
**13th** 2:13
**14th** 32:20
**143** 38:24

**144** 34:23 35:5,8,18
    39:2
**145** 35:6,8 39:2
**146** 35:3,9,21 39:2
    39:5
**147** 35:9 37:2 39:2
**148** 35:9,18 39:3
**152** 32:16
**153** 33:9
**16-cv-09400** 1:5
**160** 21:12 23:12
    25:1
**161** 26:5
**1990** 6:16
**1996** 6:22

---

**2**

**2** 3:9 21:6,7,11
**20** 10:6 24:12
**20th** 48:20
**200** 19:7
**2017** 23:18 32:20
**2018** 35:1
**2019** 1:17 48:20
**21** 3:9
**222** 2:7
**25th** 2:19
**2900** 2:7

---

**3**

**3** 1:17 3:10 32:11
    32:12
**3-30** 26:8
**3:15** 1:18
**30** 24:10
**30th** 23:18 24:5
**312** 2:4,9,14,20
**32** 3:10
**321** 2:2
**333** 2:19
**34** 3:11
**39** 3:12,13

---

**4**

**4** 3:3,11 34:18,19
    35:19

**4:00** 8:2
**42** 3:4
**42-year-old** 30:16
**43** 35:15,16
**47** 3:5
**48** 35:15

---

**5**

**5** 3:12 39:10
**541-0151** 2:4

---

**6**

**6** 3:8,13 39:10
**60601** 2:13
**60604** 2:19
**60606** 2:8
**60654** 2:3
**641-3100** 2:9

---

**7**

**7th** 38:20
**714-3588** 2:14

---

**8**

**8:00** 8:2
**800** 2:2
**822-5612** 2:20
**835** 1:16

---

**9**

**99** 6:23





# CURRIVULUM VITAE
# ALFONSO MEJIA, MD-MPH

**WORK ADDRESS**
University of Illinois at Chicago
Department of Orthopaedics (M/C 844)
835 South Wolcott – Suite 270
Chicago, IL 60612-7342
Phone 312-996-7161; Fax 312-996-9025

**PERSONAL**
Birth date: February 3, 1964
Citizenship: United States

**PROFESSIONAL TRAINING**
Kleinert Hand and Microsurgery Fellowship
Hand Surgery Fellowship
Thomas Wolff, MD, Fellowship Director
August 1, 1995 to September 30, 1996

University of Illinois Orthopaedic Surgery Program
Orthopaedic Surgery Residency
Riad Barmada, MD, Chairman
July 1, 1990 to June 30, 1995

**EDUCATION**
University of Illinois College of Medicine, Chicago, Illinois
M.D. Degree, June 1990

University of Illinois School of Public Health, Chicago, Illinois
M.P.H. in Epidemiology, September 1990

University of Michigan
Ann Arbor, Michigan
B.S. in Cellular and Molecular Biology, Microbiology, May 1986

**BOARD CERTIFICATION**
Recertification Combined Orthopaedic Surgery & Certificate of Added
Qualification in Hand Surgery  September  2017

Recertification Combined Orthopaedic Surgery & Certificate of Added
Qualification in Hand Surgery  September  2009

Certificate of Added Qualification in Hand Surgery; August 2000
Board Certified in Orthopaedic Surgery; July 1999
Diplomate of the National Board of Medical Examiners; 1991

## ACADEMIC AFFILIATIONS

Associate Professor of Clinical Orthopedic Surgery
University of Illinois at Chicago
August 2014 to Present

Assistant Professor of Clinical Orthopedic Surgery
University of Illinois at Chicago
January 2002 to August 2014

Assistant Clinical Professor of Orthopedic Surgery
University of Illinois at Chicago
June 1998 to December 2001

Senior Attending Physician, Cook County Hospital, Department of Surgery,
Division of Orthopaedic Surgery, March 1998 to October 2000; September 2005
to September 2010

## PRESENTATIONS

Edit

Alfonso Mejia, Gautam Malhotra, James Heaberlin, Mohammed Saad Malik,
Sapan H. Shah, Dan Rybalko. Local Flaps of the Hand. AAOS Orthopaedic Video
Theater. 2018

Hand and Elbow Injuries. Complex Distal Radius Fractures-New Innovations, 19th
Annual Chicago Trauma Symposium, August 17, 2018.

AAOS Annual Meeting Medical Students' Program, Friday, March 9, 2018, Morial
Convention Center, New Orleans, LA.

AAOS Annual Meeting, March 2018, Morial Convention Center, New Orleans, LA.

The Anesthetic Effectiveness of J-Tip Needle Free Injection System Prior to
Trigger Finger Injection: A Double Blinded, Randomized Clinical Trial
Kush P, Kyle McGillis, Mejia A
72rd ASSH Annual Meeting
San Francisco September 7-9, 2017

Complex Distal Radius Fractures – New Innovations
MEJIA, A
18TH Annual Chicago Trauma Symposium
July 7th 2017

Influence of Carpal Tunnel Pressure on Finger Kinematics: A Biomechanical
Study. *Farid Amirouche*, *Giovanni F. Solitro*, *Olivia Wang*, *Livia Bänninger*, *Kyle
MacGillis, Mark Gonzalez, Alfonso Mejia*
Orthopedic Research Society 2017 Annual meeting.

In Vivo Finger Abduction Comparison of Flexed and Extended Wrist and
Metacarpophalngeal Joints
ePoster presentation

Macgillis K, Le J, Rybalko D, Mejia A
71st Annual Meeting of the ASSH
September 29 October 1 2016
Austin Texas

Carpal Disaster: Damage Control and Solutions An Update
Mejia, A
17th Annual Chicago Trauma Symposium
Chicago, Illinois
August 18th, 2016

Shifting patterns of childhood injury: identifying those at risk as a step toward the
next wave of intervention Danikowicz R, Beck E Mejia A. American Orthopaedic
Association National Conference Seattle WA. June 2016

Hand Surgery Emergent and Urgent Conditions for the Primary Care Physician.
Presentation A Mejia. 2016 Midwest Clinical Conference Chicago
May 21 2016

Predictors of Radial Nerve Position on the Humerus: An MRI-Based Anatomical
Study Poster Presentation Wang O, Mejia A. American Association for Hand
Surgery Annual Meeting Jan 2016 Scottsdale Arizona.

Communicating with the Linguistically Different Patient: effective strategies and
techniques to optimize care Podium Presentation. Bridging the Gap Emerging
Health Issues in Underrepresented Minorities Mejia A. Chicago, Illinois
September 21, 2015

Child Abuse: An Orthopedic Approach. University of Illinois Orthopedic Surgery
Grand Rounds August 9, 2015

Anatomical MRI Study of the Radial Nerve Aranda C, Wang O, Moretti V, Mejia,
A, Mason B National Medical Association Annual Meeting Detroit MI
August 1 2015

Hand Embryology: Processes and Aberrations University of Illinois Orthopedic
Surgery Grand Rounds July 25, 2015

Assessment of Tendon Graft Rings for A2 and A4 Hand Pulley Reconstruction
Soulii L, Gonzalez M, Mejia A, Amirouche F, Solitro GF, Weisburger M

Podium Presentation
ASSH 70th Annual Meeting
Seattle, WA
September 11, 2015

Total Knee Arthroplasty in the Medicaid Population
Mossad D, Schwartz B, Schwartz A, Moretti V and and Mejia A
AAOS Annual Meeting
Las Vegas, Nevada

March 24-28, 2015

Orthopedics-Foot Disorders
Geriatric Updates and Board Review 2014
Mejia, A
University of Illinois at Chicago
Saturday October, 25,2014

Carpal Disaster: Damage Control and Solutions Mejia, A
16th Annual Chicago Trauma Symposium Chicago, Illinois
September 4th, 2014

Sub-Acute Scapholunate Injuries: Reconstruction Mejia, A
16th Annual Chicago Trauma Symposium Chicago, Illinois
September 4th, 2014

Flexor and Extensor Tendon Injuries of the Hand
University of Illinois Orthopedic Surgery Residency Lecture Mejia, A
University of Illinois Wednesday July 23, 2014 Chicago, Illinois

Radiation Exposure to the Orthopaedic surgeon and Efficacy of a Novel
Radiation Attenuation Product. Mayekar E and Mejia A. Southern Orthopaedic
Association Annual Meeting Beaver Creek Colorado. July 19, 2014

Tendon Transfers for Radial Nerve Palsy Mejia, A. University of Illinois
Orthopedic Surgery Grand Rounds. April 26, 2014

Distribution and Growth of Orthopedic Residency Positions in the United States
Moretti V, Mejia A, Mid America Orthopedic Association 32nd Annual Meeting
San Antonio, Texas, April 23-27, 2014

Flexor Tendon Reconstruction: an Update A Mejia. University of Illinois
Orthopedic Surgery Grand Rounds April 5, 2014.

Informed Consent a Case-Based Perspective. University of Illinois Orthopedic
Surgery Residency Program, March 19, 2014.

Evaluation of A2 and A4 hand pulley reconstruction using tendon graft rings.
Amirouche F, Soulii L, Gonzalez M, Solitro G, Mejia A, Weisburger M.
OMTEC, Chicago, IL, 2013.

Metacarpal & Phalangeal Fractures-New Plating Techniques Mejia, A
15th Annual Chicago Trauma Symposium August 1, 2013.

Olecranon Fracture Fixation Mejia, A. 15th Annual Chicago Trauma Symposium
August 1, 2013.

Radial Head Replacement in Complex Radial Head Fractures Mejia, A
15th Annual Chicago Trauma Symposium. August 1, 2013.

The Effect on Pullout Strength after Reinsertion of Non Self Tapping Screws in

Synthetic Bone. Ozoude G, Amirouche F, Mejia A. University of Illinois Senior Resident Thesis Presentation. University of Illinois at Chicago. June 22, 2013

Best Practices: Patient Safety and Quality Improvement Education for Orthopedic Resident, Mejia A. Council of Orthopedic Residency Directors Meeting American Orthopedic Association Annual Meeting Denver, Colorado. June 15, 2013

Distal Radius Fractures. Mejia A. Iowa Orthopaedic Society Spring Meeting Des Moines, Iowa April 12, 2013

Culturally Competent Care an Orthopaedist's Responsibility Iowa Orthopaedic Society. Mejia A. Spring Meeting Des Moines, Iowa April 12, 2013

Advances in Treatment of Dupuytren's Disease and In Dermal Substitution Mejia A. Orthopaedic Technologist Association of Illinois Fall Meeting Chicago, Illinois. October 27, 2012

Culturally Competent Care: An Orthopedic Responsibility. Grand Rounds Mejia A. University of Arkansas Department of Orthopedic Surgery Little Rock, Arkansas. September 26, 2012

Biomechanics of the Boutonniere Deformity. Grau L, Baydoun H, Chen K, Gonzalez , Mejia A, Amirouche F Annual Meeting of ASSH, Chicago IL. September 2-8, 2012

Metacarpal & Phalangeal Fractures- Latest Techniques and Pearls. Alfonso Mejia 14th Annual Chicago Trauma Symposium August 2, 2012

Carpal Scaphoid Fractures-Key Concepts Mark Gonzalez & Alfonso Mejia 14th Annual Chicago Trauma Symposium, August 2, 2012

Triangular Fibrocartilage Injuries: Focus on Foveal Detachment Mejia A. University of Illinois at Chicago, Grand Rounds April 7, 2012

Deactivation of Image-Averaging Increases Clarity in Dynamic Fluoroscopy Smiresh Shah and Alfonso Mejia Combined Meeting of the American and Australian Hand Societies Kauai, Hawaii March 22-25, 2012

Lead Free Attenuation Garment Smiresh Shah and Alfonso Mejia Combined Meeting of the American and Australian Hand Societies Kauai, Hawaii March 22-25, 2012

Falls Across the Continuum of Palliative Care American Association of Hospice and Palliative Care Annual Meeting M Malec, S Levine, A Mejia. Denver, CO March 8, 2012

Effective Communication for All Your Patients Instructional Course, AAOS Annual Meeting McLaurin, Mejia, Bolanos, Peterson. San Francisco, CA February 9, 2012

Radiation Attenuation to Surgeon's Hands Mejia, A, Shah S, Chen K
Scientific Exhibit, AAOS Annual Meeting San Francisco, CA
February, 2012

Flexor Tendon Injuries A Mejia Orthopedic Surgery Grand Rounds, University of
Illinois at Chicago December 3, 2011

Distal Radio-Ulnar Joint Prosthesis for Painful Ulnar Impingement after Ulnar
Head Resection: An Initial Experience Mejia A. Chicago Hand Society Chicago,
Illinois January 19, 2011.

Musculoskeletal Trauma:  A Sports Perspective Mejia A, Hutchinson M
M2 CPC Medical Student Lecture, University of Illinois College of Medicine
September  30, 2010

Care of the Burned Hand Alfonso Mejia, MD-MPH. Orthopedic Surgery Grand
Rounds, University of Illinois at Chicago September 11, 2010

Informed Consent: A Case Based Approach Alfonso Mejia, MD-MPH and Paul
Price JD Stroger Hospital of Cook County, Department of Surgery Meeting
Chicago, Illinois, May 27, 2010

Informed Consent in Orthopaedic Surgery Instructional Course Lecture
Mejia A, Gonzalez M, Goldstein W, and Price P AAOS 2010 Annual
Meeting March 10-15 New Orleans, LA

The mechanics of Locking Plates in Midshaft Femur Fractures, Choi, K. W.,
Amirouche, F., Paik, C, Gonzalez, M., Mejia, A., ORS Annual meeting, 56th
Annual Meeting of the  Orthopaedic Research Society, March 6 - 9 2010, New
Orleans, Louisiana, USA.

Informed Consent in Orthopedic Surgery Mejia A Grand Rapids Orthopedic
Surgery Residency Program, Grand Rounds Grand Rapids, Michigan
November 4, 2009

Distal Radius Fractures Evaluation and Treatment Mejia A. Grand Rapids
Orthopedic Surgery Residency Program, Grand Rounds Grand Rapids, Michigan
November 4, 2009

Cubital Tunnel Release: A Novel Technique Shah S, Baydoun H, Mejia A, and
Gonzalez M. Poster Presentation at AAOS 2010 Annual Meeting New Orleans,
LA

Musculoskeletal Trauma:  A Sports Perspective Mejia A, Hutchinson M

M2 CPC Medical Student Lecture, University of Illinois College of Medicine
October 2, 2009

Distal Radius Fractures Mejia A. 11th Annual Chicago Trauma Symposium July 30, 2009

Carpal Tunnel Syndrome Evaluation and Treatment. Mejia A. Workers Compensation Meeting ATI Bolingbrook, Illinois, February 18, 2009

Informed Consent in Orthopaedic Surgery Mejia A. University of Illinois Orthopaedic Surgery Saturday Morning Conference Grand Rounds January 31, 2009

Functional Capacity Evaluation Mejia A. University of Illinois Orthopaedic Surgery Saturday Morning Conference Grand Rounds November 15, 2008

Avoiding Complications in Hand Surgery Mejia A. Illinois Association of Orthopaedic Surgeons, Fall Meeting Chicago, Illinois. September 27, 2008

Hand Surgery in a County Population: Hand Infections Mejia A. National Medical Association, Annual Meeting, Atlanta, Georgia July 28, 2008

Flexor Tendon Injuries Mejia A. National Medical Association, Annual Meeting, Atlanta, Georgia July 28, 2008

Triangular Fibrocartilage Injuries Mejia A. University of Illinois Orthopaedic Surgery Saturday Morning Conference Grand Rounds. January 5, 2008

Splinting and Casting of the Hand and Wrist Mejia A Orthopaedic Technologist Association of Illinois Fall Meeting Chicago, Illinois. November 17 2007

Proximal Inter-phalangeal Joint Injuries Mejia A. University of Illinois Orthopaedic Surgery Saturday Morning Conference Grand Rounds September 8, 2007

Tendon Injuries Review for Part I of Orthopedics Boards Alfonso Mejia, MD-MPH Osler Institute Review. July 22, 2006 Naperville, Illinois

Hand Fractures Review for Part I of Orthopedics Boards. Alfonso Mejia, MD-MPH Osler Institute Review. July 22, 2006 Naperville, Illinois

Carpal Injuires Review for Part I of Orthopedics Boards. Alfonso Mejia, MD-MPH Osler Institute Review. July 22, 2006 Naperville, Illinois.

Common Conditions in Hand Surgery. Mejia A. Cermak Health Services Grand Rounds January 17, 2006

Musculoskeletal Infections in Pediatric Patients Mejia A. Pediatric Grand Rounds, Illinois Masonic Hospital December 7, 2005

Fragment Specific Fracture Fixation of Distal Radius Fractures Trimed Distal Radius Course Mejia A Valencia, Spain. November 4, 2005

Shock for the Tactical Officer.

Mejia A
TEMS training day for SSERT
Country Club Hills PD, Illinois
September 27, 2004

Hydration for the Tactical Officer Mejia A
TEMS conference of ITOA
Oakbrook, Illinois
May 2004

Biological Weapons: a Primer for Tactical Emergency Medical Support Mejia
A. Illinois Tactical Officers Association Annual Meeting Oakbrook, Illinois.
November 23, 2003.

Injuries of the Upper Extremity Mejia A. Midwest Clinical Conference, Berkheiser
Lecture, Chicago Medical Society Chicago, Illinois. March 2003

Cold Injury for the Tactical Officer.Mejia A. TEMS training day, Tinley Park Police
Department Tinley Park, Illinois. December 16, 2002

Complex Hand Fractures. Mark Gonzalez MD, J Fernandez MD, Alfonso Mejia MD
American Society for Surgery of the Hand. Cancun, Mexico January 2002

Common Hand Problems. Mejia A. Midwest Clinical Conference, Berkheiser
Lecture, Chicago Medical Society February 2001

Agee Endoscopic Carpal Tunnel Release Course. Alfonso Mejia MD and Mark
Gonzalez MD Rosemont, Illinois

Hand Fractures Instructional Course. Mark Gonzalez MD, Alfonso Mejia MD, and
Norman Weinzweig MD

Annual Meeting of The American Hand Association. Scottsdale, Arizona
January 1998

Treatment of Distal Radius Fractures with the Ulson Device. Alfonso Mejia MD,
Amit Gupta MD, Thomas Wolff MD, and Louis Scheker MD Presented at Kleinert
Hand Research Meeting, September 1996

Exhaled Pentane as a Marker for Free Flap Loss in a Rat Model Alfonso Mejia
MD and Mark Gonzalez MD. University of Illinois Orthopaedic Surgery Senior
Thesis June 1995

Posterior Iliopsoas Transfer for Hip Dysplasia in Myeolomeningocele
Alfonso Mejia MD and Edward Abraham MD. Annual Meeting of the
American Academy of Orthopaedic Surgeons New Orleans, Louisiana
February 1994

## PUBLICATIONS:

Mejia A., Bhimani AD, Macrinici V, Ghelani S, Huang EY, Khan NI, Saw TA, Orthopedics. 2018 Sep 17:1-6. Delving Deeper Into Informed Consent: Legal and Ethical Dilemmas of Emergency Consent, Surrogate Consent, and Intraoperative Consultation.

Mejia A, Solitro G, Gonzalez M. Parekh A, Gonzalez E, Amirouche F. Pullout Strength After Multiple Reinsertions in Radial Bone Fixation. Hand (N.Y). 2018, September.

Mejia A, MacGillis KJ, Heaberlin. Clinical Decision Making for a Soft Tissue Hand Mass: When and How to Biopsy. J. Hand Surg. Am.2018, June 13.

Mejia A, Solitro G, Gonzalez E, et al. (2018) Pullout Strength After Multiple Reinsertions in Radial Bone Fixation. Hand (New York, N.Y.).

Mejia A, Mayekar EM, Bayrak A, Shah S. Radiation Exposure to the Orthopaedic Surgeon and Efficacy of a Novel Radiation Attenuation Product. J. Surg Orthopaedic Advance 2017. Winter;26(6):246-249.

Radiation Exposure to the Orhopaedic Surgeon and Efficacy of a Novel Radiation Attenuation Product. Journal of Surgical Orthopaedic Advances. Bayrak A, Shah S, Mayekar E, Mejia A. 2016

Hand Compression Neuropathy: An Assessment Guide
MacGillis K, Mejia A, Siemionov M. Journal of Family Practice. Vol65 No 7 p462-471 July 2016

Comparison of Potential Nerve Scar Agents in the Rat Model
Mossad D, Shah S, Amirouche F, Solitro G, Helder C, Mejia A, Gonzalez M, Kerns J. Journal of Reconstructive Microsurgery Open May 2016

Falling Across the Palliative Care Continuum: Assessment, Prevention, and Management of Consequences. Monica Malec, Stacie Levine, and Alfonso Mejia Journal of Pain and Symptom Management, Volume 43, Issue 2 (Fevruary, 2012), p.357.

Ligamentous and Capsular Injuries to the Metacarpophalangeal Joints of the Hand. Smiresh Shah MD, Fernando Techy MD, Alfonso Mejia, MD-MPH, and Mark Gonzalez MD-MEng. Journal of Surgical Orthopaedic Advances Fall 2012 Volume 21 Number 3, September 2012, p141-146

## BOOK REVIEW:

AAOS, AEMT: Advanced Emergency Care and Transportation of the Sick and Injured, Third Edition, May 15, 2018.

AAOS, Nancy Caroline's Emergency Care in the Streets, 8th Edition. August 15, 2017

MESPLIE, Hand and Wrist Rehabilitation: Theoretical Aspects and Practical Consequences, Doody Publishing, January 27, 2016

TRAIL, Disorders of the Hand - Volume 1: Hand Injuries, Doody Publishing, January 21, 2016

CHUNG, Essentials of Hand Surgery, Doody Publishing, January 21, 2016.

Cheema, Complex Injurie of the Hand, Doody Publishing, August 2014

Ultrasound-guided Management of Hand Fractures, Orthopedics, Karina Paulius, Pirko Maguina, and Alfonso Mejia Volume 31 Number 12 December 2008

Upper Extremity Dog Bite Wounds and Infections. J Surg Orthop Adv (US), Winter 2005 14(4) p181-184. Bach G, Shah NA, Mejia A, *et al*

Surgical Management of Hand and Upper Extremity Infections in Children. *The Growing Hand,* Harcourt Brace Press, 2000. Chapter 99 by Alfonso Mejia MD, Amit Gupta MD, Edward Mah MD

Isolation of the Beta-Subunit of the Chloroplast H+ Translocating ATPase of Spinach Thylokoids. Ingrid Apel BS, Alfonso Mejia, Wayne Frasch PhD. Proceedings of the VII International Congress on Photosynthesis: Vol III, No 1, 1987

## ADMINISTRATIVE

International Paramedic Registry
United States of America Advisory Committee
American Academy of Orthopedic Surgeons Representative
August 2017 to Present

AAOS Board of Counselors
Illinois Representative
March 2017 to present

American Association of Latino Orthopaedic Surgeons (AALOS) President
2017 - present

American Association of Latino Orthopaedic Surgeons (AALOS) – Secretary
2013 – 2017

AOA
Annual Meeting Abstract Review Committee
2015 to 2016

President
Illinois Association of Orthopedic Surgeons
December 2014 to December 2016

AAOS Council on Education
Mastery Model for Attending Education

Chair Work Group
December 2015 to present

AAOS, Diversity Advisory Board Liaison to the Council on Education
March 2014 to 2018

Council of Orthopaedic Residency Directors
Nominating Committee
Member
2013 to 2014

M3/M4 Curriculum Committee
University of Illinois at Chicago
January 2013

AAOS, Washington Health Policy Fellows Selection Committee,
2013

President-Elect
Illinois Association of Orthopedic Surgeons
2012-2013

Committee on CME
Chicago Medical Society
2012-2013

Committee on Public Health
Chicago Medical Society
2012-2013

Committee on Advocacy
Chicago Medical Society
2012-2013

Alternate Delegate
Illinois State Medical Society
2012-2013

Alternate Councilor
Chicago Medical Society
2012-2014

Vice Head, Department of Orthopedic Surgery
University of Illinois at Chicago
June 2011 to present

Vice President, Illinois Association of Orthopedic Surgeons, 2011-2012

AAOS, Washington Health Policy Fellows Selection Committee,
2011

University of Illinois Faculty Advancement Committee Orthopedic Department Liaison, 2011 to Present

Secretary, Illinois Association of Orthopaedic Surgeons, October 2010 to 2011

Diversity Advisory Board Liaison to the Council on Advocacy, AAOS, June 2010 to March 2014

Advisory Committee, Orthopaedic Surgery Department, University of Illinois at Chicago, November 2009 to Present

Curriculum Committee, College of Medicine, University of Illinois at Chicago, September 2009-Present

Regional Representative, Illinois Association of Orthopaedic Surgeons, September 2008 to September 2010

Program Director, University of Illinois Orthopaedic Surgery Residency, March 2007 to Present

Committee on Public Health, Chicago Medical Society, 2007 – 2009

Committee on Continuing Medical Education, Chicago Medical Society, 2007 – 2009

University of Illinois, Committee on Continuing Medical Education, August 2007 – Present

American Academy of Orthopedic Surgeons, Exhibits Committee Member, 2006 to 2010

General Surgery Internal Review, University of Illinois GME, December, 2005

Associate Program Director, University of Illinois Orthopedic Surgery Residency, January 2002 to February 2007

University of Illinois, Committee, Graduate Medical Education, January 2002 to Present

University of Illinois Residency Selection Committee, September 1998 to Present

Pharmacy and Therapeutic Committee at St. Francis Hospital, Blue Island, IL, January 1998 to December 2001

Surgery Quality of Care Committee at St. Francis Hospital, Blue Island, IL, January 1998 to December 2001

Executive Committee, Pronger-Smith Medical Care, January 2000 to December 2001

**LANGUAGES**
Spanish (fluent)

**VOLUNTEER WORK**
Shriners Silver Service (April 1994, 1995, 1997, 1998). Worked as member of a pediatric orthopaedic surgery team in Buga, Columbia providing free medical care to disabled children

Uzbekistan (May 1995). Evaluated orthopaedic surgery department at the Tashme II Hospital in Tashkent Uzbekistan as a member of a joint team from the University of Illinois and USAID

Galens Medical Society, (September 1986 to June 1987). Founder and President. A medical student service organization modeled after a similar organization at the University of Michigan devoted to raising funds and awareness for disabled and disadvantaged children

University of Michigan Hospitals (1985). Volunteer on the Hydrotherapy Unit,

University of Michigan Hospitals (1984). Volunteer on Orthopaedic Surgery floor

Amigos de las Americas (May to August 1983). Assistant Project Director. Worked directly with Peruvian Ministry of Public Health in the implementation of a dental hygiene and eyeglass distribution program in Huaraz, Peru

Amigos de las Americas (May to August 1982). Route Leader. Directed, supplied and coordinated a team of volunteers in a rabies control program in Santo Domingo de los Colorados, Ecuador

Amigos de las Americas (May to August 1981). Volunteer. Worked in child inoculation program in Santo Domingo, Dominican Republic

Amigos de las Americas (May to August 1980). Volunteer. Worked in community hygiene program in rural area of Oaxaca, Mexico

**AWARDS**
Departmental Faculty of the Year (Teaching)

University of Illinois Department of Orthopedic Surgery 2013

Top Doctor in Hand Surgery, Regional; Castle and Connolly, 2011-2014

Intern of the Year, University of Illinois Department of Surgery, 1990

United Way and University of Illinois College of Medicine at Urbana-Champaign Service Award (for work on Galens Medical Society), 1987

Amigos de las Americas Service Award 1981, 1982, 1983

National Merit Scholar Finalist, 1982

Ecuador Ministry of Public Health Recognition Award (for work on rabies control program in the state of Pichincha, Ecuador), 1982

## PROFESSIONAL AFFILIATIONS

American Society of Hand Surgery July 2015 to Present

American Association of Hand Surgery 2014 to present

Mid America Orthopedic Association 2014 to present

Chicago Hand Society, January 2011 to present

American Orthopaedic Association, June 2010 to present

Illinois Association of Orthopaedic Surgeons, 2006 to present

American Academy of Orthopedic Surgeons, Fellow, 1999 to present

Illinois State Medical Society, Member, 1996 to present

Chicago Medical Society, Member, 1996 to present

American Academy of Orthopaedic Surgeons, Candidate Member, 1991 to 1999

## LAW ENFORCEMENT

CONTOMS certification
U.S. Park Police
Alexandria, Virginia
October 15-19, 2012

Basic SWAT School
Instructor, Tactical Emergency Medical Support
June to August 2012
South Suburban Emergency Response Team
NEMRT Accredited

Basic SWAT School
Instructor, Tactical Emergency Medical Support
July to September 2011
South Suburban Emergency Response Team
NEMRT Accredited

Basic SWAT School
Swat Officer Certification
July to September 2010
South Suburban Emergency Response Team
NEMRT Accredited

South Suburban Emergency Response Team
Member February 2000 to Present

Tinley Park Police Department
Reserve Police Officer
November 2001 to Present

HK TEMS Course Basic
Chantilly Virginia
April 16-20 2001

HK TEMS Course Advanced
Chantilly Virginia
November 11-15, 2003

Law Enforcement Officer
Part Time
Illinois Law Enforcement Training and Standards Board Certificate
February 22, 2003

STAR Program
NMERT
Crestwood Illinois
March 09 2002 to March 09 2003

Illinois Tactical Officers Association Member
November 2000 to Present

Posen Police Department
Reserve Officer
Rank Corporal
July 28th, 2015 to Present

Lynwood Police Department
Reserve Officer

Rank Patrolman
Assigned to SSERT as TEMS Physician
January 2013 to September 2014

Tinley Park Police Department
Part Time Reserve Officer
March 2002 to 2013

Calumet Park Police Department
Part Time Auxiliary Police Officer
March 2000 to February 2002

Updated 9/2018



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
*Changing medicine. For good.*

Patient Name: WEAVER, WENDELL          MRN: 31391055
Sex:MALE          DOB: 7/20/1976          Age: 42 years
Discharge Date n/a          Financial Number: n/a

## Orthopedic Notes

Result Type:
Result Date:
Result Status:
Performed Information:
Signed Information:

Orthopedic Note
3/30/2017 00:00 CDT
Auth (Verified)
Mejia MD,Alfonso (3/30/2017 16:52 CDT)
Mejia MD,Alfonso (4/20/2017 13:56 CDT)

**Clinic Progress Note- ATTENDING:.Alfonso Mejia, MD**

University of Illinois Hospital & Health Science Systems

CLINIC NOTE                    PATIENT:  WEAVER, WENDELL

DICT:   KUSHAL PATEL, MD        MRN:  031391055
ATTNG:  ALFONSO MEJIA, MD       DATE OF SERVICE:  03/30/2017

DATE OF BIRTH:  07/20/1976

CHIEF COMPLAINT:  Left small finger and right index finger pain.

HISTORY OF PRESENT ILLNESS: This is a 40-year-old male, who is here for
evaluation of his right index finger pain when bending it and left small
finger stiffness.

In regard to his left small finger stiffness, he sustained a basketball
injury, where he jammed his finger.  It was dislocated at the PIP joint,
however, it took 3 weeks for it to be imaged and then intervention via surgery
was taking place.  The injury occurred on August 5, 2015, and surgery was
August 29, 2015.  He had a couple of sessions of occupational therapy and then
he has continued to have stiffness without improvement as well as pain at the
DIP and PIP joint.

In regard to his right index finger, he has pain at the distal aspect of his
digit.  He just woke up and could not bend it at the DIP without pain.  Denies
any numbness or tingling in the right index finger.

PAST MEDICAL HISTORY:  Hypertension, hyperlipidemia.

PAST SURGICAL HISTORY:  Left small finger PIP reduction and repair of volar
plate.

EXHIBIT
Mejia #2

160



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
— Changing medicine. For good. —

| | |
|---|---|
| Patient Name: WEAVER, WENDELL | MRN: 31391055 |
| Sex:MALE        DOB: 7/20/1976 | Age: 42 years |
| Discharge Date  n/a | Financial Number: n/a |

*Orthopedic Notes*

MEDICATIONS: Amlodipine, carvedilol, hydrochlorothiazide, Zocor, and Pepcid.

ALLERGIES: No known drug allergies.

SOCIAL HISTORY: Denies alcohol, tobacco, illicit drug use. Patient is incarcerated.

FAMILY HISTORY: Noncontributory.

REVIEW OF SYSTEMS: Constitutional: Denies sleeping, weight gain, or fatigue. Eyes: No eye pain, visual changes, or double vision. Head, ear, nose, and throat: Denies any ear pain, drainage, sinus infection, hearing loss or change. Cardiovascular: Denies any chest pain, palpitations, heart murmurs, or fainting. Respiratory: Denies shortness of breath, wheezing, or persistent cough. Gastrointestinal: Denies any abdominal pain, nausea, vomiting, or diarrhea. Genitourinary: Denies any blood in urine, dysuria, or urinary frequency. Skin: Denies any rashes, lesions, or bumps. Hematologic: Denies any easy bruisability, bleeding disorders, or sickle cell. Psych: Denies any anxiety, depression, hallucinations. Allergic: Denies any food allergies, abnormal reactions, or rashes.

PHYSICAL EXAMINATION: Alert and oriented x3, in no acute distress. Nonlabored respiration. Cooperative. Normal affect. He has a regular rate and rhythm palpable by radial pulse. Brisk capillary refill in all digits. He has full range of motion of his wrist and no pain. He has pain of his right index finger over the DIP joint. A cyst is palpable over the dorsal DIP. He has tenderness to palpation and limits his DIP flexion. Left small finger reveals tenderness to palpation at the DIP and PIP joint. He has DIP motion from 0-30 degrees. PIP is stuck in flexion of about 20 degrees with almost zero motion. Sensation is intact to light touch over each digit. Brisk capillary refill is noted.

IMAGING: X-ray imaging of the right index finger today shows some degenerative changes of the DIP with osteophyte formation. A small soft tissue mass is appreciated over the PIP joint. No bony tumors noted. X-ray imaging of the left small finger reveals advanced degenerative changes at the PIP joint and DIP joint. There is a suture anchor at the proximal aspect of the middle phalanx. A malunion of the volar plate is appreciated.

ASSESSMENT/PLAN: This is a 40-year-old male with 2 issues:

University of Illinois Hospital & Health Sciences System

Report Request ID: 37278769
Print Date/Time: 1/8/2019 15:04
CST

Page 161 of 354

161



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
——— Changing medicine. For good. ———

Patient Name: WEAVER, WENDELL          MRN: 31391055
Sex: MALE          DOB: 7/20/1976          Age: 42 years
Discharge Date  n/a          Financial Number:  n/a

### Orthopedic Notes

1. He has left small finger posttraumatic arthritis of the proximal interphalangeal joint and after a likely proximal interphalangeal dorsal dislocation as well as distal interphalangeal joint arthritis. He has 2 options, which include occupational therapy and a proximal interphalangeal plus-minus distal interphalangeal fusion depending on the severity of his pain. We discussed the pros and cons and the patient wished to pursue a course of occupational therapy to see if he can improve his range of motion at the proximal interphalangeal and distal interphalangeal.

2. For the right index finger, we discussed options of leaving it alone or excising this likely mucous cyst. The patient wished to proceed with the excision of mucous cyst as this affects his activities of daily living and causes him significant pain and discomfort. The patient consented to the excision of right index finger distal interphalangeal mucous cyst. Risks, benefits, and alternatives were discussed with the patient.

3. The patient was not given the surgical date, however, it was written down in the paperwork to be April 14, 2017. This will be an outpatient surgery. The patient understood and agreed with the plan. Dr. Mejia saw and evaluated the patient and agrees with the above-mentioned plan.


DD:  03/30/2017 16:52:48
DT:  03/30/2017 17:25:11
KP/MedQ
JOB:  113523/736790290

I was present with resident during the history and exam. I discussed the case with the resident and agree with the findings and plan as documented in the resident's note.

University of Illinois Hospital & Health Sciences System

Page 162 of 354

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
CST

162



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
— Changing medicine. For good. —

Patient Name: WEAVER, WENDELL          MRN: 31391055
Sex: MALE          DOB: 7/20/1976          Age: 42 years
Discharge Date  n/a          Financial Number: n/a

---

### Orthopedic Notes

Result Type:                          Orthopedic Note
Result Date:                          12/14/2017 00:00 CST
Result Status:                        Auth (Verified)
Performed Information:                Mejia MD,Alfonso (12/14/2017 13:04 CST)
Signed Information:                   Mejia MD,Alfonso (12/21/2017 16:08 CST)

**Clinic Progress Note- ATTENDING:.Alfonso Mejia, MD**

University of Illinois Hospital & Health Science Systems

CLINIC NOTE                          PATIENT:  WEAVER, WENDELL

DICT:   KARINA KATCHKO, MD           MRN:  031391055
ATTNG:  ALFONSO MEJIA, MD            DATE OF SERVICE:  12/14/2017

DATE OF BIRTH:  07/20/1976

CHIEF COMPLAINT:  Followup of right index finger dorsal mass excision.  As
well as left small finger pain.

HISTORY OF PRESENT ILLNESS:  Mr. Wendell Weaver is a 41-year-old male who is
here for followup of a right index finger mass removal performed on
04/14/2017.  The official pathology report came back saying that the
fibrocartilaginous tissue was consistent with an osteophyte.  The patient
reports that he has minimal issues with his right index finger, he feels that
it is doing well.

His main concern at this time is that he has left small finger pain.  The
patient reports that in 2015, he dislocated the PIP of this finger, and they
were unable to perform a closed reduction, so he underwent an open reduction
and pinning of his PIP dislocation, at Saint Joseph's Hospital.  The patient
reports ever since this time, he has had small finger pain primarily at the
site of the PIP itself as well as at the MCP joint.

REVIEW OF SYSTEMS:  Negative for nausea, vomiting, fever, chills.

PHYSICAL EXAMINATION:  Patient is alert and oriented x3, in no acute distress.
He has nonlabored respirations.  He appears his stated age.  He is slightly
overweight.  The patient has some tenderness to palpation at the dorsoulnar

---

University of Illinois Hospital & Health Sciences System

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
                                    CST

Page 152 of 354



EXHIBIT
3

152



| | |
|---|---|
| UNIVERSITY OF ILLINOIS | Patient Name: WEAVER, WENDELL    MRN: 31391055 |
| Hospital & Health Sciences System | Sex:MALE    DOB: 7/20/1976    Age: 42 years |
| —— Changing medicine. For good. —— | Discharge Date n/a    Financial Number: n/a |

---

## Orthopedic Notes

aspect of his MCP of the small finger. He does not have any tenderness to palpation at the PIP joint itself, or the A1 pulley. He is unable to make a full fist, given the stiffness at his PIP joint. Some subtle left small finger extensor tendon subluxation is appreciated during range of motion. His sensation is intact to light touch in the median, radial, and ulnar nerve root distributions. His AIN, PIN, and ulnar motor nerve functions are intact.

IMAGING: X-rays were reviewed during the clinic today, they demonstrate some significant posttraumatic arthritis of the PIP joint.

ASSESSMENT AND PLAN: Mr. Wendell Weaver is a 41-year-old male, here for followup of right index finger dorsal mass excision as well as for left small finger pain, status post a PIP dislocation and open reduction.

The patient, at this time, we feel that he has significant arthritis of the PIP joint, and that there is unlikely anything that could be done to help him regain full range of motion of this finger. We recommend that he have a fusion of this PIP joint at some point. The patient is not sure that he would like to schedule something like this, as it would mean a permanent loss of range of motion at this joint.

He can follow up with us on an as-needed basis if he decides he would like to have the fusion.

The patient vocalized an understanding of the above assessment and plan. All his questions were answered during his visit today.

Dr. Mejia was present for the evaluation of this patient and agrees with the above plan.


DD:  12/14/2017 13:04:07
DT:  12/14/2017 13:43:01
KK/MedQ
JOB:  432911/769218868
329~wESQ

I was present with resident during the history and exam. I discussed the case with the resident and agree with the findings and plan as documented in the resident's note.


University of Illinois Hospital & Health Sciences System

Page 153 of 354

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
CST

153



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
Changing medicine. for good.

Patient Name: WEAVER, WENDELL
Sex:MALE          DOB: 7/20/1976
Discharge Date  n/a

MRN: 31391055
Age:  42 years
Financial Number:  n/a

*Orthopedic Notes*

Alfonso Mejia, MD, MPH

*Electronically Signed on 12/21/17 04:08 PM*

*Mejia MD, Alfonso*

University of Illinois Hospital & Health Sciences System

Page 154 of 354

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
CST

154

 UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
———— Changing medicine. For good. ————

Patient Name: WEAVER, WENDELL          MRN: 31391055
Sex: MALE          DOB: 7/20/1976          Age: 42 years
Discharge Date: n/a          Financial Number: n/a

---

*Orthopedic Notes*

---

Result Type:                    Orthopedic Note
Result Date:                    11/1/2018 10:07 CDT
Result Status:                  Auth (Verified)
Performed Information:          Sabella RN,Dulce (11/27/2018 10:24 CST)
Signed Information:             Sabella RN,Dulce (11/27/2018 10:24 CST)

RN meet with patient face to face. <u>Surgery Folder</u> was given guards and faxed to Barbara Johnson at 312-996-1207

The folder includes: *Preparing for Surgery: Taking Your Medication,* and a copy of the *Preparing for Surgery: Taking Your Medication.* RN advised patient to stop any aspirin/aspirin products, NSAIDS, and/or anit-coagulants one week prior to surgery. A copy of the *Pre-Surgery/ Pre-Procedure Shower Instructions* and bottle of <u>Scrub Stat 4%</u> soap were provided to the guards. See under patient education for additional handout given to the patient.

In addition, Barbara Johnson was given a Medical Clearance form for inmate to be evaluated by facility MD. All materials above were faxed to Barbara Johnson including post-op appointment.

Faxed medical clearance form, clinical notes and itineraray to Barb Johnson.

Surgery:  12/07/2018 Left small finger capsilar release and tenolysis 26445

Dx:  Left small finger PIP joint stifness M24.521, M79.645

Attending Physician: Dr. Mejia

APEC appt: 11/19/2018 115pm     ,

Clearances:  Medical clearance needed

pre-op testing ordered: n/a

Total Face to Face time: 10min

PCP at Statesville

Patient telephone: 815-727-3607

**Dulce Sabella RN**
**Staff Nurse**
University of Illinois Hospital & Health Sciences System
Department of Orthopedics

University of Illinois Hospital & Health Sciences System

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
CST



EXHIBIT
4

144



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
——— Changing medicine. For good. ———

| | |
|---|---|
| Patient Name: WEAVER, WENDELL | MRN: 31391055 |
| Sex: MALE    DOB: 7/20/1976 | Age: 42 years |
| Discharge Date  n/a | Financial Number:  n/a |

## Orthopedic Notes

Result Type:
Result Date:
Result Status:
Performed Information:

Signed Information:

Orthopedic Note
11/1/2018 00:00 CDT
Modified
Mejia MD,Alfonso (12/11/2018 10:40 CST); Mejia MD,
Alfonso (11/2/2018 08:34 CDT)
Mejia MD,Alfonso (12/11/2018 10:40 CST); Mejia MD,
Alfonso (12/11/2018 10:39 CST)

**Addendum by Mejia MD, Alfonso on December 11, 2018 10:40 AM**
*Insert Addendum Here:
I was present with resident during the history and exam. I discussed the case with the resident and agree with the findings and plan as documented in the resident's note.

*Electronically Signed on 12/11/18 10:40 AM*

Mejia MD, Alfonso

**Clinic Progress Note- ATTENDING:.Alfonso Mejia, MD**

University of Illinois Hospital & Health Science Systems

CLINIC NOTE                           PATIENT:  WEAVER, WENDELL

DICT:   ARASH REZAEI, MD              MRN:  031391055
ATTNG:  ALFONSO MEJIA, MD            DATE OF SERVICE:  11/01/2018

DATE OF BIRTH:  07/20/1976

CHIEF COMPLAINT:  Left small finger pain.

HISTORY OF PRESENT ILLNESS:  Mr. Wendell is a 42-year-old male, presents to our office for the followup of left small finger pain.  The patient was last seen in our office on 12/14/2017.  The patient reports he had an injury to the left small finger in 2015 for which he underwent an open reduction and internal fixation with pin placement.  Since the day of the surgery, he has not been able to fully bend his left small finger.  He has not been able to make a full fist.  He has some difficulty with daily activities including lifting objects, pushing, and pulling.  The patient endorses he has had physical therapy for the same issue, but he believes physical therapy did not help relieve the symptoms significantly.

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
CST



EXHIBIT
6



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
——— Changing medicine for good. ———

| | |
|---|---|
| Patient Name: WEAVER, WENDELL | MRN: 31391055 |
| Sex:MALE      DOB: 7/20/1976 | Age: 42 years |
| Discharge Date n/a | Financial Number: n/a |

*Orthopedic Notes*

PAST MEDICAL HISTORY: Hypertension, hyperlipidemia, and cardiac arrhythmia.

MEDICATIONS: Losartan and flecainide.

ALLERGIES: No known drug allergies.

PAST SURGICAL HISTORY: Left small finger PIP, ORIF in 2015.

SOCIAL HISTORY: The patient denied tobacco, alcohol, and drug use.

REVIEW OF SYSTEMS: The patient denies fever, chills, nausea, vomiting, diarrhea, constipation, chest pain, shortness of breath, headache, visual changes, hearing loss, easy bleeding, easy bruising, heat or cold intolerance, hematuria hemoptysis, and hematochezia.

PHYSICAL EXAMINATION: General: The patient is alert and oriented x3, not in acute distress, cooperative with the examiner. Mood and affect are appropriate. HEENT: Head is normocephalic, atraumatic. Neck: Supple. No lymphadenopathy. Chest: Nontender to palpation. Nonlabored breathing. Heart: Regular rate and rhythm based on peripheral pulses. Abdomen: Soft, nontender, and nondistended. Musculoskeletal: Exam of the left upper extremity indicates there is mild swelling over the MCP joint of the left small finger. There is some tenderness to palpation at the dorsoulnar aspect of the MCP joint of the small finger. He has mild tenderness to palpation at the PIP joint and at the A1 pulley. He is not able to make a full fist given the stiffness at his PIP joint. The PIP joint range of motion is almost 0. The DIP joint range of motion is about 5 degrees. The MCP joint is about 0-80 degrees. There is some subtle left small finger extensor tendon subluxation appreciated during the range of motion. Sensation is intact to light touch in the median, radial, and ulnar nerve distribution. His AIN, PIN, and ulnar motor nerve functions are intact. Radial pulses are 2+ bilateral and symmetric.

ASSESSMENT AND PLAN: Mr. Wendell is a 42-year-old male who presents to our office for the followup of left small finger pain and stiffness. We explained several options for the patient including continue conservative management with physical therapy and over-the-counter pain medications with range of motion exercises. Also, possible surgery for capsular release and tenolysis of the PIP joints were explained for the patient. Risks and benefits of the surgery including infection, bleeding, damage to the surrounding structures,

University of Illinois Hospital & Health Sciences System

Report Request ID: 37278769
Print Date/Time: 1/8/2019 15:04
CST

Page 147 of 354

147


UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
—— Changing medicine. For good. ——

Patient Name: WEAVER, WENDELL
Sex: MALE   DOB: 7/20/1976
Discharge Date  n/a

MRN: 31391055
Age: 42 years
Financial Number: n/a

## Orthopedic Notes

persistent pain, I explained for the patient in detail. We explained for the patient that after the surgery, the range of motion might be so limited that we might need to go ahead and do articular fusion. The patient at this point is not interested in articular fusion. He decided to go with the surgery option. Package was filled for the patient. A tentative date of December 7th scheduled for the date of surgery. The patient voiced understanding of the above treatment plan. Dr. Mejia formulated the above treatment plan and was present during the evaluation of this patient.

DD:  11/02/2018 08:34:40
DT:  11/02/2018 09:29:32
AR/MedQ
JOB:  938170/812495353

*Insert Addendum Here:
I was present with resident during the history and exam. I discussed the case with the resident and agree with the findings and plan as documented in the resident's note.

*Electronically Signed on 12/11/18 10:39 AM*

Mejia MD, Alfonso

University of Illinois Hospital & Health Sciences System

Page 148 of 354

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04 CST