**PC SCAN**

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**FILED** CR

2/8/2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

WENDELL E. WEAVER

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

DR. MARLENE HENZIE;

DR. GARCIA; COLLIEGIAL UNIT;

WEXFORD HEALTH SOURCES INC;

DR. WILLIAMS; DR. BRUCKNER;

PLACEMENT OFFICER SGT. MARKS;

WARDEN DAVID GOMEZ, ASST. WARDEN WILLIAMS, ASST. WARDEN OSBOURNE;

DR. O; DR. E.

(Enter above the full name of ALL
defendants in this action. __Do not__
use "et al.")

Case No: NO. 21 C 5148

(To be supplied by the Clerk of this Court)

---

CHECK ONE ONLY:          **AMENDED COMPLAINT**

✓          **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
_____          U.S. Code** (state, county, or municipal defendants)

_____          **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
          28 SECTION 1331 U.S. Code** (federal defendants)

_____          **OTHER** (cite statute, if known)

_BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY._

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**I.**   **Plaintiff(s):**

A.   Name: WENDELL E. WEAVER

B.   List all aliases: N/A

C.   Prisoner identification number: R47387

D.   Place of present confinement: STATEVILLE C.C.

E.   Address: 16830 S. BROADWAY P.O. BOX 112  JOLIET, IL 60434

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

**II.**   **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.   Defendant: MARLENE HENZIE

Title: MEDICAL DIRECTOR ; COLLIEGIAL UNIT

Place of Employment: STATEVILLE C.C. / WEXFORD HEALTH

B.   Defendant: DR. GARCIA

Title: DR. GARCIA ; COLLIEGIAL UNIT

Place of Employment: STATEVILLE C.C. / WEXFORD HEALTH

C.   Defendant: DR. WILLIAMS

Title: NURSE PRACTIONER / ASST. DOCTOR

Place of Employment: STATEVILLE C.C. / WEXFORD HEALTH

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

II. DEFENDANT(S)

D. DEFENDANT: DR. BRUCKNER (HELEN)

TITLE: NURSE PRACTIONER / ASST. DOCTOR

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C. / WEXFORD HEALTH


D. DEFENDANT: PLACEMENT OFFICER SGT. MARKS

TITLE: PLACEMENT OFFICER / CORRECTIONAL OFFICER

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C.


D. DEFENDANT: WEXFORD HEALTH SOURCES, INC.

TITLE: HEALTH CARE PROVIDER FOR ILLINOIS PRISON(S)

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C.


D. DEFENDANT: WARDEN GOMEZ

TITLE: WARDEN

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C.


D. DEFENDANT: ASST. WARDEN WILLIAMS

TITLE: ASST. WARDEN

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C.


D. DEFENDANT: ASST. WARDEN OSBOURNE

TITLE: ASST. WARDEN

PLACEMENT OF EMPLOYMENT: STATEVILLE C.C.

( 2. CON'T )

II. DEFENDANT (S)

D. DEFENDANT : DR. OKEZIE

    TITLE : DOCTOR

    PLACEMENT OF Employment : STATE VILLE C.C

D. DEFENDANT : DR. E

    TITLE : DOCTOR

    PLACEMENT OF EMPLOYMENT : STATEVILLE C,C,

(2.) CON'T

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III.    **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.   Name of case and docket number: WEAVER V. MARTIJA, ET al. N.D. ILL. 16-C-940033

B.   Approximate date of filing lawsuit: SEPTEMBER 30, 2016

C.   List all plaintiffs (if you had co-plaintiffs), including any aliases: N/A

D.   List all defendants: DR. OBAISI, WARDEN LAMB, DR. A, MARTIJA, OFFICER CHAVEZ, SGT. BERKLEY, MED TECH "BOBBY"

E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): NORTHEN DISTRICT OF ILLINOIS U.S. DISTRICT CT.

F.   Name of judge to whom case was assigned: VIRGINIA KENDALL

G.   Basic claim made: DELIBERATE INDIFFERENCE TO MEDICAL / DELAY IN TREATMENT FOR FINGER DISLOCATION

H.   Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): SETTLEMENT / NO APPEAL

I.   Approximate date of disposition: JANUARY 2020

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. LIST ALL LAWSUITS YOU (and your CO-PLAINTIFFS, IF ANY) HAVE FILED IN ANY STATE OR FEDERAL COURT IN THE UNITED STATES:

A. NAME OF CASE AND DOCKET NUMBER: WENDELL WEAVER V. DR. J. MITCHELL, DR. BROWN, DR. JANE DOE  15-CV-02950

B. APPROXIMATE DATE OF FILING LAWSUIT: MARCH 31, 2015

C. LIST ALL PLAINTIFFS (IF YOU HAD CO-PLAINTIFFS), INCLUDING ANY ALIASES: WENDELL WEAVER -

D. LIST ALL DEFENDANTS: DR. J. MITCHELL, DR. BROWN, DR. JANE DOE, R. PFISTER

E. COURT IN WHICH THE LAWSUIT WAS FILED (IF FEDERAL COURT, NAME THE DISTRICT; IF STATE COURT, NAME THE COUNTY): U.S. DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

F. NAME OF JUDGE TO WHOM CASE ASSIGNED: VIRGINIA M. KENDALL

G. BASIC CLAIM MADE: DELIBERATE INDIFFERENCE TO DENTAL NEEDS / TREATMENT

H. DISPOSITION OF THIS CASE (FOR EXAMPLE: WAS THE CASE DISMISSED? WAS IT APPEALED? IS IT STILL PENDING? (LOST AT TRIAL WITH JURY), NO APPEAL.

I. APPROXIMATE DATE OF DISPOSITION: (FEBRUARY 2019)

(3 CONT)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## IV. Statement of Claim:

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

1.) BACK IN 2015, ON AUGUST 05 THE PLAINTIFF FINGER WAS DISLOCATED DURING A BASKET BALL GAME AT STATEVILLE C.C. ON AUGUST 29, 2015 HE HAD HIS FIRST SURGERY TO SET HIS FINGER BACK IN PLACE. IN OR AROUND MID-OCTOBER 2015 HE HAD A SECOND SURGERY TO GET THE PIN REMOVED FROM HIS FINGER TOO HOLD THE BONE IN PLACE. ON OR AROUND DECEMBER 29, 2015 THE DR. WHO PERFORMED BOTH SURGERIES (DR. FANTOS) RECOMMENDED A THIRD SURGERY TO REMOVE THE BUILDUP ON AND AROUND THE BONE OF THE SURGERY TO FREE IT UP OF CARTILAGE ETC. AND IMPROVE MOBILITY AND FUNCTION, BUT TOO NO AVAIL. STATEVILLE "COLLEGIAL DOCTORS" DENIED THE REQUEST. SINCE THEN THE PLAINTIFF HAS BEEN COMPLAIN ABOUT CONSISTANT PAIN AND LACK OF MOBILITY AND FUNCTION, SO HE WAS SENT TOO U.I.C. HOSPITAL ON DECEMBER 12, 2018, DR. ALFONSO MEJIA MD. RECOMMENDED THE THIRD SURGERY AGAIN, AND SET UP A SURGERY DATE AND GAVE ME THE DIRECTION AND SOLUTION TO USE ON THE DAY OF THE SURGERY BUT THAT DAY NEVER CAME, BECAUSE DR. HENZE AND DR. GARCIA (COLLEGIAL UNIT) IN THE MEDICAL DENIED IT, SAYING THEY WERE GOING WITH SOME ALTERNATIVE TREATMENT; THAT THE

4

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV.    **Statement of Claim:**

State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including names, dates, and places.  **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

PLAINTIFF NEVER RECEIVED! THE PLAINTIFF HAS STILL BEEN COMPLANING ABOUT THE PAIN AND FUNCTION AND MOBILITY IS LITTLE TOO NONE! DR. ALFONSO MEJIA, MD FROM U.I.C. HOSPITAL ALSO NOTED: THIS 3RD SURGERY WAS "MEDICALLY NECESSARY" TOO STOP THE PAIN AND GET SOME "FUNCTION AND MOBILITY" BACK, BUT DR. HENZIE AND DR. GARCIA (COLLIEGIAL UNIT) PREVENT/ DENIED THIS "MEDICALLY NEEDED" SURGERY TOO SAVE "WEXFORD MONEY" OR AS THEY SAID AN "ALTORNATE TREATMENT" THAT THE PLAINTIFF NEVER RECEIVED TOO THIS DAY? SEE EXHIBIT (1). ATTACHED. ALL THE PLAINTIFF RECEIVED IS A FEW PAIN PILLS FOR OTHER ISSUES THAT WILL FOLLOW AND CLAIM THEY SHOULD HELP MY FINGER AS WELL, BUT THEY DON'T, I GUESS THIS IS / WAS THE "ALTORNATE TREATMENT" THEY DENIED my 3RD SURGERY FOR? Id. (2.) MY SECOND ISSUE IS KNEE(S) my "RIGHT KNEE" SPECIFIC; AND my SHOULDER(S) ALSO THE RIGHT ONE, I BELIEVE THAT HAS THE TORN ROTATOR CUFF, NOT SAYING my LEFT SHOULDER OR my LEFT KNEE DOES'NT POP OR CAUSED PAIN AS WELL, BUT I WANT TOO DEAL WITH

4                                                          Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

THE ONE(S) STATEVILLE MEDICAL DEPARTMENT KNEW OR SHOULD 'VE KNOWN WAS A SERIOUS MEDICAL PROBLEM, BUT DID NOTHING OR THE BARE MINIMUM UNTIL MY CONDITION(S) WORSTEN, LIKE NOW, MY "RIGHT" KNEE IS SO SWOLLEN RIGHT NOW I CAN BARELY WALK, I GOT A LIMP NOW, AND MY RIGHT SHOULDER GET STUCK AND I CAN BARELY RAISE MY RIGHT ARM, IT'S VERY HARD TOO MOVE IT RIGHT NOW, IT'S BOTHERING ME AS I WRITE THIS COMPLAINT. THIS COURT MENTION I RECEIVED SOME MEDICAL TREATMENT FOR THESE ISSUE(S) YES, I DID, BUT IT WAS "INEFFECTIVE" AND THEY (MEDICAL STAFF) KNEW THIS BECAUSE I ALWAYS TOLD THEM AND COMPLAINED ABOUT THESE ISSUE(S) FOR MANY, MANY, YEARS! GOING (BACK) AT LEAST TOO SEPTEMBER 17, "2017" COULD BE LONGER, TOO MULTIPLE DOCTORS HERE AT STATEVILLE C.C., BUT TO NO AVAIL, IT WAS ALWAYS DOWN PLAYED OR OVERLOOKED OR TOLD IT'S OLD AGE, ETC, DR. WILLIAMS TOLD PLAINTIFF HE HAS "BONE SPURS" BUT NEVER TOLD HIM WHAT THAT WAS OR MEANT, BUT DID NOTHING FOR THEM, AND ASSUMING SHE SAID THIS BASED ON X-RAYS, SHE DIDN'T SEE THE "TORN MUNISKIS" OR DEGENERATE OF THE KNEE(S)? MS. WILLIAMS IF SHE DID ANYTHING WAS VERY MINIMUM AND NOW MY RT. KNEE HAS WORSTENING OVER TIMES, DUE TOO HER OVERLOOKING OR DISREGARDING THESE SERIOUS MEDICAL NEEDS,

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV. STATEMENT OF CLAIM : (CONT)

SAME WITH MY SHOULDER'S, ASSUMING SHE WAS BASING HER DECISION BASED ON X-RAY, I HAVE A TORN ROTATOR CUFF, I BEEN WALKING AROUND WITH THIS INJURY FOR YEARS : (SEE MEDICAL RECORDS) STILL NOTHING HAS BEEN DONE ABOUT IT, BESIDE'S A FEW PAIN RELIEVERS, THIS IS A SERIOUS MEDICAL ISSUE, ESPECIALLY THE PAIN IM IN AND BEEN COMPLAINING ABOUT FOR YEARS, SHE DID SEND OR RECOMMEND "PHYSICAL THERAPY" WHICH WAS DELAYED FOR I DON'T KNOW HOW LONG, AND WHEN I DID GO, IT SEEM LIKE IT MADE IT WORST AND I TOLD MS. WILLIAMS THIS AND THAT WAS THAT, SHE NEVER CALLED OR TALKED TOO ME ABOUT MY KNEE OR SHOULDER OR BONE SPURS AGAIN.

THE PLAINTIFF TOOK THESE SAME ISSUE(S) TOO OTHER DOCTOR(S) HERE AT STATEVILLE C.C. SUCH AS DR. E___ / OKEZIE on AND DR. OR AROUND MARCH 15, 2018 / JUNE 5, 2018 WHEN BEEN SEEN ON AN UNRELATED ISSUE, BUT TO NO AVAIL ; AGAIN NOTHING WAS DONE FOR MY RIGHT SHOULDER - TORN ROTATOR CUFF - OR MY RIGHT KNEE "TORN MUNISKIS", "BONE SPURS", DEGINERATE OF THE KNEE"? DR.E TOLD ME IM NOT THERE FOR MY SHOULDER(S) AND KNEE(S) SO HE DON'T WANT DO DISCUSS THEM AND TOLD ME TOO LEAVE, AND HE'LL PUT ME BACK IN TOO SEE HIM OR SOMEONE ELSE. (SEE GRIEVANCE DATED (3-9-2018) AGAIN TWO (2) MORE DOCTORS OVERLOOKING OR DISREGARDING THE MEDICAL FILE / X-RAYS - ROTATOR "TORN" CUFF - RIGHT KNEE TORN MUNISKIS / DEGINERATING KNEE, WHICH SHOULD'VE BEEN RIGHT THERE IN THE FILES AND DID SOMETHING AT THAT TIME TOO PREVENT THE STATE MY ARM AND KNEE IS IN AT THIS TIME, WHICH CLEARLY IS SERIOUS MEDICAL ISSUE(S). THAT NEEDED MEDICAL ATTENTION.

( 5 CONT )

IV. STATEMENT OF CLAIM;

FAST FOWARD A FEW YEARS LATER THE PLANTIFF SEEN DR. MARLENE HIENZEE IN 2019 AROUND FEBRUARY AND WAS SENT TO U.I.C. FOR THE C.T. SCAN/M.R.I. ON MY RIGHT SHOULDER AFTER COMPLAINING TOO HER FOR A WHILE, SOME TIME LATER AND IT WAS CONFIRMED A TORN RIGHT ROTATOR CUFF, AND TORN BICEP TENDONITIS, ETC. WHICH COULD HAVE BEEN DISCOVERED SOONER IF; DR. WILLIAMS, DR. E, DR. O, WOULD'VE SENT ME OUT EARLIER. SO AT THIS TIME I BEEN WALKING AROUND WITH THESE INJURIE(S) AND EXCRUCIATING PAIN FOR AT A MINIMUM OF 2-3 YEAR(S)! HOW IS THIS RIGHT? I'M ALMOST CERTAIN THIS PROBLEM STARTED BACK IN "2015" SO AS STATED IT COULD'VE BEEN LONGER NEED MEDICAL RECORDS TOO CONFIRM. NOW MY ARM IS ALMOST USELESS, BECAUSE OF THESE DELAYS AND DOWN PLAYING MY CONDITION(S).

(JUNE/JULY 2019)

A LITTLE WHILE LATER, THE PLANTIFF WAS SENT TOO GET AN M.R.I ON HIS "RIGHT KNEE" AND AGAIN CONFIRMED THE SOURCE OF THIS PAIN - A "TORN MUNISKIS" AND DEGENERATED KNEE, AFTER YEARS OF "BONE ON BONE" THE POPPING SOUND WAS THE BONE GRINDING ON EACH OTHER, NO DOCTOR AT STATEVILLE NEVER MENTION THIS TOO ME, AND KNEW FULL WELL THIS WAS A SERIOUS MEDICAL PROBLEM THAT CAUSE MY KNEE TOO BE IN IT'S CURRENT STATE BARELY STANDING ON IT, AND HARD FOR ME TOO WALK AND I HAVE A LIMP AND CHALLENGING FOR ME TOO CLIMB STAIRS, ETC, THIS COULD'VE BEEN PREVENTED WITH EARLY DETECTION OR CONFIRMED EARLIER TOO BE EASY CAREFUL OR WHAT EVER SO I WOULDN'T INJURE IT AGAIN OR CONTINUE TOO BE ACTIVE ON IT, AS IT WAS NOT INJURED.

(5) cont

IV. STATEMENT OF CLAIM;

SO AT THE VERY MINIMUM, IT MAKE SINCE WHY MY (RT.) KNEE AND "RIGHT" SHOULDER. IS IN IT'S CURRENT STATE, CRONIC PAIN "24" HOURS A DAY AND LOSING IT'S FUNCTION(S) JUST LIKE MY NEGLECTED PINKY FINGER, UNFORTUNATELY THESE PRISON DOCTOR(S) DON'T OR WON'T DO NOTHING FOR YOU UNLESS YOU FILE A COMPLAINT/LAWSUIT, OR YOUR CONDITION WORSTEN TOO THE "WORST CONDITION" SMATE: LIKE I'M IN NOW. ACTUALLY I JUST WAS SEEN ABOUT MY RIGHT KNEE AT U.I.C, IN JANUARY OF THIS YEAR 2022, ALMOST (6) YEARS AFTER MY FIRST COMPLAINT AND WAS TOLD MY KNEE IS SHOT, AND I MAY NEED A KNEE REPLACEMENT IN THE NEAR FUTURE, AGAIN YEARS OF DELAYED TREATMENT BY THESE PRISON DOCTOR'S, AT OUR EXPG EXSPENCE EXPENCE, THE MEDICAL DIRECTOR MARLENE HENZLE SHOULD HAVE KNOWN AT LEAST WITH SEEING MY X-RAYS/MRI RESULTS I NEEDED IMEDIATE MEDICAL ATTENTION, SO I WON'T WORSTEN MY CONDITION(S), WALKING AROUND, PLAYING BASKETBALL, CLIMBING STAIRS, ETC, ON "A DAMAGED KNEE", INSTEAD I WAS GIVING PAIN PILLS AND TOLD I'M SCHEDULE TOO GO OUT AND SEE SOMEONE FOR YEARS WHILE WORSTENING MY CONDITION, THIS DELAYED TREATMENT IS UNACCEPTABLE! I ALSO FORGOT THEY GAVE ME CLOTH KNEE SLEEVES ·"SHEY IF THAT COUNT FOR ANYTHING, BECAUSE THEY DIDN'T HELP AT ALL! ON OCTOBER 01, 2020, WELL AFTER THE X-RAYS, M.R.I ETC. THE PLAINTIFF SEEN DR. HELEN BRUCKNER, EVEN DOE, I DIDN'T KNOW THE RESULT'S OF SUCH TEST AT THAT POINT SHE HAD MY MEDICAL FILE IN HER HAND, THIS WAS AFTER I

(5) CON'T

IV. STATEMENT OF CLAIM: (cont):

HAD ALREADY BEEN RESCHEDULE ABOUT "6" TIMES, I TOLD DR. HELEN BRUCKNER ABOUT THE EXCRUCIATING PAIN I WAS IN AND HOW THEY STOP GIVING ME TRAMADOLS PAIN MEDICINE FOR TYLENOLS - 3's AND HOW THEY WERE NOT WORKING WELL AND MAKING ME SICK, AND HOW I WAS BARELY WALKING AND HOW W MY RT. KNEE WAS GIVING OUT, AT TIMES ? SHE TOLD ME "YOU WALKING PRETTY GOOD TO ME" I TOLD "HER" I BELIEVE I HAVE A TORN ACL / OR TENDON DUE TOO THE POP / SNAP SOUND IT MADE DURING A BASKETBALL GAME A FEW YEARS EARLIER, I'm NOT SURE AT THIS TIME WAS INDEED I EVEN HAD THE M. R. I, BUT X - RAYS WAS DONE, BUT THE PAIN I WAS IN WAS UNDENIABLE, SHE TOLD ME SHE CAN'T MAKE MY LIFE PAIN FREE AND EITHER I TAKE THE TYLENOL 3's OR GET REGULAR TYLENOL'S, ETC. I TOLD HER THE OTHER MEDICINE (TRAMADOLS) AT LEAST HELPED A LITTLE WITHOUT ME FEELING SICK, SHE SAID I CAN'T GET THEM NO MORE AND ASK ME TOO LEAVE, WITHOUT EXAMINE MY SWOLE RIGHT KNEE OR EXAMING MY RIGHT SHOULDER AFTER ALL THE PAIN I TOLD HER I WAS IN ? SO FED UP ABOUT MY MEDICAL TREATMENT FOR MY KNEE and SHOULDER PAIN AND GOING BACK AND FORTH ON 6 GAUTRY (LIKE 3 FLIGHTS) OF STAIRS, BECAUSE THE DOCTOR(S) NONE OF THEM SEEM NOT TOO BE CARING ABOUT MY DAMAGED KNEE AND SHOULDERS PAIN, I START- -ED LOOKING AND TALKING TOO WARDEN(S) AND COUNSELORS

(15) cont

IV, STATEMENT OF CLAIM;

WHEN THEY MADE THEIR ROUNDS THRU THE CELL HOUSE'S OR IF I CAUGHT THEM GOING ON MY VISIT, I WOULD TALK DIRECTLY TO THEM AND EXPLAIN MY SITUATION AND HOW THE MEDICAL STAFF IS IGNORING MY ISSUE(S) BUT TOO NO AVAIL. FOR EXAMPLE; AROUND APRIL, MAY OF 2020, I TALKED TOO WARDEN WILLIAMS, WARDEN DAVID GOMEZ, HIS ASST. MS. HUNTER/TARR, AND WARDEN OSBOURNE ON MANY OCCASSION(S) ABOUT THE PAIN I'M IN AND THE LACK OF MEDICAL TREATMENT, THE RESCHEDULING OVER AND OVER AGAIN — THE EXCRUCIATING PAIN — I'M IN, SHOWED (THEM) MY STUCK PINKY FINGER, MY SWOLLEN RIGHT KNEE, MY SHOULDER AND HOW IT WAS STIFF AND DEFORMITY OF MY RIGHT BY BICEP, THEY ALL WROTE MY NAME DOWN AND LEFT; I ALSO MENTION CLIMBING THOSE STEPS GOING UP TOO (6) GALLERY WITH MY SWOLLEN RT KNEE WHICH I LIVED AT THAT TIME IN C HOUSE "655". BUT NOTHING EVER HAPPENED OR CHANGED DURING THESE TIMES. SO I CONTINUE TOO PUT IN FOR SICK CALL COMPLAINING TOO EVERY NURSE I SEEN, LESLIE, TINA, ETC, SO TINA TOLD ME TOO WRITE A GRIEVANCE BECAUSE EVEN SHE KNEW THEY WAS DOING US BOGGISH; AROUND JUNE/JULY 2020, THE MEDICAL DEPARTMENT SENT ME A PERMIT (THRU THE MAIL) LOW BUNK/LOW GALLERY TO MOVE DOWN STAIRS ON 1 OR 2 GALLERY BOTH ON GROUND LEVEL DEPENDING ON THE CELL HOUSE YOU LIVE IN, 1 GALLERY IN E-HOUSE AND 2 GALLERY IN C HOUSE. BASICALLY MEANS THE SAME, WHICH THE SECURITY

(5) CONT

IV. STATEMENT OF CLAIM;

STAFF WASN'T "HONORING" OR "RESPECTING", SO I CONTINUE GOING UP AND DOWN THEM STAIRS FOR SHOWER(S) KIOSK (COMMISSARY) ETC. FOR A COUPLE OF MONTHS, UNTIL I STARTED COMPLAINING TO THE UNIT SERGEANT, "LIEUTENANT", AND OFFICER'S ETC, AND I'M SURE GOING BACK AND FORTH UP THEM STAIR WASN'T HELPFUL TOO my KNEE(S), ETC, BUT MOVING ALONG, SO AT THIS TIME AND NOW, I WAS IN SEVERE PAIN, EVERYTIME I MOVED my RIGHT KNEE AND my SHOULDER(S) AND RIGHT ARM IT HURTS LIKE HELL, AND WHEN I TELL MED TECH'S AND DOCTORS THIS IT FALLS ON DEAF EARS. SO AROUND SEPTEMBER OF 2020, I STARTED WRITING THE HEALTH CARE DIRECTLY AND THE WARDEN, ASST. WARDEN, AND COUNSELOR(S), "TO WHOM IT CONCERN" AND TELLING THEM ABOUT my KNEE WAS (RT.) STARTING TOO GIVE OUT AND ME CLIMBING UP TOO THE TOP BUNK WAS STARTING TO BE PAINFUL AND CHALLENGING AND I TOLD L.T. ANDERSON ABOUT THIS ON THE 22nd OF SEPT, 2020, AND TOLD HIM CELLS WAS OPEN ON 2-4 GALLERY LOWER GALLERY(S) AND COULD HE MOVE ME DOWN STAIRS, AND HE SAID HE COULD'NT THAT WAS PLACEMENT JOB, SO I ASK COULD HE CALL PLACEMENT AND HE SAID NO! SO I STARTED COMPLAINING TOO EVERYONE, EVERYDAY ON, I TALKED TO THE ACTING SERGEANT OF C-HOUSE ON SEPTEMBER 23, 2020, CAN'T RECALL HIS NAME, BUT I EXPLAINED EVERYTHING TOO HIM IN DETAIL AND SHOWED HIM my ARM, BICEP, THE STIFFNESS IN my SHOULDER, AND MORE IMPORTANTLY, THE DAMAGED THAT WAS BEING DONE TOO my RIGHT KNEE AND HOW SWOLE IT WAS AT THE TIME AND HOW BAD IT HURTED, HE TOLD ME LET HIM MAKE A FEW PHONE CALLS AND SEE WHAT HE COULD DO, NOTHING CAME OF THIS, SO THE NEXT DAY OR SO

(5) cont'

IV.    STATEMENT

SO ON OR AROUND SEPTEMBER 24, 2020, I SPOKE TOO "ANOTHER" ACTING SGT. OF CHOUSE, THE UNIT I BEEN LIVING IN FOR A FEW YEARS (GOOD HOUSING UNIT) "LOW AGGRESSION" NO PROBLEMS OR TROUBLE, ETC. — UNIT — AND TOLD HIM ABOUT MY MEDICAL PERMIT(S) AND HOW THEY WERE VIO— —LATING MY RIGHTS, NOT RESPECTING MY MEDICAL CONDITION(S) ETC. SO HE STORMED OFF SAYING HE GOING TO TELL PLACEMENT OFFICER (SGT. MARKS) WHAT I SAID; A HOUR OR SO LATER HE CAME BACK SAYING, I'M MOVING TOO E-HOUSE THE WORST/EST HOUSE IN STATEVILLE, AND A (HIGHER AGGRESSION HOUSE) THAT'S (NASTY AND VIOLENT) THEY DID THIS ON SOME (RETALIATION) STUFF, BECAUSE OF ME COMPLAINING ABOUT THEM NOT HONORING MY MEDICAL CONDITION(S) AND PERMITS? WHAT OTHER REASON WOULD THEY DO THIS, WHEN CELLS WERE OPEN IN (CHOUSE) ON LOWER GALLERY(S) ESPECIALLY 2 GALLERY WHERE, I NEED IT TOO BE (NO STAIRS) TO CLIMB TOO GET TO MY CELL), NOT TOO MENTION ME HAVING A (LOW AGGRESSION LEVEL) THE E-HOUSE CELL THEY MOVE ME TOO WAS 123; IT HAD BLACK MOLD ON THE WALL, THE WATER DIDN'T WORK, AND ROACHES, AND SPIDERS, ANT(S) ETC. WAS ALL OVER THAT CELL, ALL BECAUSE I WANTED TO MOVE ON A LOWER GALLERY DUE TOO MY CONDITIONS AND PERMIT(S) TOO BE RESPECTED AND HONORED, TO HELP ALLEVIATE SOME OF THIS PAIN, I BEEN EXPERIENCING FOR MANY YEARS AROUND HERE. THIS BLACK MOLD IN THAT CELL IN E— HOUSE COULD HAVE CONTRIBUTED TOO MY ILLNESSES, I'M EXPERIENC— —ING RIGHT NOW ON SOMETHING UNRELATED TOO THIS LAW SUIT? (SHORTNESS OF BREATH) (HEAD ACHES) CHEST PAIN(S) BLURRY VISION) ETC. LT. NORMAN OF E HOUSE, AND SGT/LT. MILSAP CAN ATTEST TOO THE MOLD ON THE WALL, BECAUSE THEY GAVE ME SOME BLEACH AND DISINFECT TOO TRY AND GET IT OFF THE WALL, PLUS I WROTE NUMEROUS GRIEVANCES, AND TALK TO MY MHP COUNSELOR SCOTT ABOUT IT, AND HE SAID HE CAN'T DO NOTHING ABOUT THE MOVE OR THE BLACK MOLD, BUT DOCUMENT IT ON MY GRIEVANCES, SAME ABOUT MY MEDICAL ISSUE(S), MY CURRENT COUNSELOR MS. DIXON HAS TOLD ME THE SAME THING, ABOUT MEDICAL SO I'M FORCE TOO FILE THIS LAW SUIT TOO GET ME SOME MEDICAL HELP. I WROTE PLACEMENT OFFICER SGT. MS, MARKS TOO MOVE BACK TO CHOUSE ON NUMEROUS OCCASSION, BUT TOO NO AVAIL, SHE NEVER WROTE ME BACK OR SAID WILL SHE MOVE ME TOO (7A) BEGIN WITH WHEN SHE HAD CELL OPEN IN CHOUSE.

IV. STATEMENT OF CLAIM (con't)

AFTER THE MOVE TO E-HOUSE CELL 123, on (OR) AROUND SEPT 30, 2020 THE PLAINTIFF TALKED AGAIN WITH WARDEN RANDO GOMEZ AND OTHERS ABOUT MY MEDICAL ISSUE(S) AND WHY I WAS MOVED FROM C-HOUSE OUT OF RETALIATION, ETC, HE SAID HE WAS GOING TOO LOOK INTO IT, BUT NOTHING CAME OF THIS. I ALSO SHOWED MY "GOMEZ" MY SWOLLEN KNEE AND HE SAID HE WAS GOING TO TALK TOO SOMEONE IN MEDICAL FOR ME TOO BE SEEN BUT I WASN'T SEEN.

SAME WITH ASST. WARDEN WILLIAMS, I ACTUALLY TALKED WITH HIM SEVERAL TIMES ABOUT MY MEDICAL CONDITION AS FAR BACK AS "2019" OR "2018" AROUND JUNE/JULY OF 2018 IN THE HOSPITAL ABOUT HOW THEY WERE CANCELING AND DENYING ME MEDICAL TREATMENT, AND HOW MY ARM, SHOULDER(S) AND KNEE(S) BEEN HURTING AND HOW MY BONE(S) BEEN POPPING IN MY KNEE(S) AND HOW I PUT IN FOR SICK CALL AND THEY NEVER CALL ME, SO HE WROTE MY NAME DOWN AND TOLD ME HE WOULD GET ME IN TOO SEE A DOCTOR, BUT TO NOAVAIL! I SEEN HIM A FEW TIMES AFTER THAT AND TALKED WITH HIM AGAIN BUT AFTER A WHILE I JUST GAVE UP, BECAUSE I WASN'T GETTING ANYWHERE.

WARDEN OSBOURNE, I TALKED TOO HIM IN THE PRISON HOSPITAL ON NUMEROUS OCCASSION AND IN THE CELL HOUSE'S ACTUALLY I JUST TALKED TOO HIM JANUARY 2022, A FEW WEEKS AGO, ABOUT THEM (PLACEMENT) MOVING ME BACK UP STAIR(S) WITH MY CURRENT KNEE PROBLEM:

(5') CON'T

IV. STATEMENT OF CLAIM cont;

AND CURRENT HEALTH ISSUE(S) HE TOLD THE
(KITCHEN FOOD SUPERVISOR) M.S. WILSON TOO WRITE
MY NAME AND NUMBER DOWN AND SEND IT TOO
HIM, BUT TOO NO-AVAIL. I'm STILL ON 3 GALLERY IN
D-HOUSE "1 FLIGHT OF STAIRS" I'm CURRENTLY
CLIMBING. I ALSO TALKED TOO MR. OSBOURNE ON
8-17-21 AND
10-14-21 IN CEE-HOUSE and SHOWED him my SWOLLEN
KNEE DEFORMED ARM AND HOW THE HEALTH CARE
BEEN NOT GIVING ME MEDICAL TREATMENT, ETC. HE
SAID HE WOULD LOOK INTO IT, BUT NOTHING CAME
ABOUT AND NOTHING CHANGED. EVEN CAME TOO A CONFERENCE
MEETING THEY CALLED ME TOO ON 10-25-21 AND EXPLAINED
MY CURRENT MEDICAL ISSUE(S) AND THEY (THE MEDICAL)
STAFF TRYED TOO EXPLAIN THESE DELAYS AND LACK OF TREATMENT
WHICH DON'T HELP MY "TORN ROTATOR CUFF, TORE MUNISMSKIES,
AND "BONE ON BONE" KNEE AND DEFORMED ARM/BICEP,
AND PAIN I'm CURRENTLY IN, MATTER OF FACT THE LAST
(2) DAYS I HAVEN'T RECEIVED MY PAIN MEDICINE
"TRAMADOLS" BECAUSE THE NURSE SAID THEY RAN OUT and
DON'T HAVE ANYMORE _ THE CURRENT PLACEMENT OFFICER
"MAHALIEK" KNOWS ABOUT MY MEDICAL CONDITION SPECIFICALLY
MY "RIGHT KNEE" BECAUSE I NOT ONLY TALKED TOO him ABOUT IT
I SHOWED him BACK IN "NOV/DECEMBER 2021" AND WHEN HE MOVED
ME OUT OF C HOUSE BECAUSE THE CELL FLOODED, HE PUT ME IN D-
HOUSE ON "1 GALLERY", NOW OUT OF THE BLUE HE SENDS ME
UP STAIR(S) RETALIATION, I GUESS! I CAN'T REALLY SAY FOR SURE
BUT IT SURE FEELS LIKE IT, ONLY HE CAN SAY FOR SURE ....

(5) CONT)

IV. STATEMENT OF CLAIM cont

IN SUM, THE PLAINTIFF HAS A TORN ROTATOR CUFF IN HIS RIGHT SHOULDER, AND BONE ON BONE ON HIS RIGHT KNEE (DEGENERATE KNEE PROBLEMS), PLUS A TORN MUNIS-KIS, THAT ALL OF THE ABOVE DEFENDANT'S KNEW OR SHOULD'VE KNOWN BECAUSE THE PLAINTIFF SEEN AND TALK TOO MAJORITY OF THEM FACE 2 FACE, AT THE MINIMUN THE PLAINTIFF BEEN WALKING AROUND IN ALL THIS PAIN FOR AT LEAST "2017" BY 2019, EVERYONE DOCTOR WHO SEEN MY FILE SHOULD'VE SEEN THIS; I STILL HAVE THESE SAME MEDICAL ISSUE(S) TO THIS DAY, AND NOTHING HAS BEEN DONE ABOUT IT? MY RIGHT KNEE IS SHOT, MY RIGHT SHOULDER IS SHOT, DUE TOO STATEVILLE MEDICAL STAFF AND OTHER'S DELAYING TREATMENT FOR MY SERIOUS MEDICAL NEEDS! DUE TOO THIS COURT ORDER, I'm ONLY PROCEEDING ON (2) TWO OF MY (4) ISSUE(S) WHICH IS THE DENIAL OF THE 3RD "MEDICALLY NEEDED" SURGERY FROM DR. MENZIE / DR. GARCIA FOR AN ALTERNATIVE TREATMENT I NEVER RECEIVED, AND STILL IN PAIN (PINKY FINGER) SINCE "2015" AND MY

IV. STATEMENT OF CLAIM CONT

RIGHT SHOULDER TORN ROTATOR CUFF, THAT NOTHING BEEN DONE FOR FOR AT LEAST 2-3 YEARS, (IF NOT LONGER) AND ALONG WITH MY SWOLLEN RIGHT KNEE / TORN MENISKES, NOTHING HAS BEEN DONE FOR AT LEAST THE LAST 3-4 YEARS, THESE ARE SERIOUS MEDICAL ISSUE(S) AND NOW I'M AT A POINT NOW MY SHOULDER(S) AND KNEE(S) CAN BE SHOT, DUE TOO THERE DELAY IN MY TREATMENT(S) MY OTHER (2) ISSUE'S — SLEEP APNEA MACHINE DENTAL, AND MY ARM DEFORMED BICEP WILL BE BROUGHT IN A SEPARATE COMPLAINT DUE TOO THIS COURT ORDER DATED DECEMBER 28, 2021. THIS COURT ALSO NOTES MY ISSUES DATE BACK 5 YEARS OR SO, BUT PRISONER'S ARE NOT ALLOW TOO FILE COMPLAINT(S) WITHOUT EXHAUSTING ALL OUR AVAILABLE ADMINISTRATIVE REMEDIES ; AND UNFORTUANATELY FOR THE PLAINTIFF THIS PROCESS IS INCREDIBLY "SLOW" SOMETIME'S THE GRIEVANCE OFFICER HOLD'S THIS GRIEVANCE "SEVERAL" YEAR'S THEMSELVES JUST TOO SAY "NO" OR NOTHING CAN BE DONE ABOUT YOUR MEDICAL CONDITION(S) AND SO FORTH.

(5) CONT

IV. STATEMENT OF CLAIM cont

ALL THIS DELAY IN TREATMENT AND DENIAL OF SOME OR ALL "MEDICAL TREATMENT" IS PART OF "WEXFORD HEALTH SOURCES INC." PATTERN and PRACTICE ON SAVING money AND GIVING MEDICAL DIRECTOR(S) OF I.D.O.C. FACILITY'S A KICK-BACK OR BONUES FOR SAVING money FOR THEM. THIS IS A VERY DANGEROUS PRACTICE AND US INMATE'S HAS "DIED" AND "SUFFERED" FROM THIS UNLAWFUL ACT.

I FORGOT THE RETALIATION CLAIM WHICH IS AKIN TOO THE "KNEE" ISSUE; SO THIS IS THE 3RD ISSUE IN THIS COMPLAINT IF THE COURT ALLOWS IT; OR I COULD FILE IT WITH THE OTHER ISSUE(S), BUT THEY WILL BE UNRELATED TOO THE MEDICAL ISSUES 1 (SLEEP APNEA) ISSUE AND THE 2 (ARM/BICEP) ISSUE. SO I'M REALLY NOT SURE HOW TOO PROCEED AT THIS POINT?

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## V.     Relief:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes. WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTER JUDGEMENT GRANTING PLAINTIFF: A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HERE IN VIOLATED PLAINTIFF RIGHTS UNDER THE CONSTITUTIONS AND LAWS OF THE UNITED STATES, COMPENSATORY DOMAGES AGAINST EACH DEFENDANT, AND INJUNCTIVE RELIEF, SURGERY ON MY LEFT PINKY FINGER (3RD) IF POSSIBLE, SURGERY ON MY RIGHT SHOULDER REPAIR MY TORN MUNISMIKIS IN RIGHT KNEE AND TORN ROTATOR CUFF.

## VI.     The plaintiff demands that the case be tried by a jury.  ☑ YES  ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this  7TH  day of  FEBRUARY 20 22

_____
(Signature of plaintiff or plaintiffs)

WENDELL  E  WEAVER
(Print name)

R47387
(I.D. Number)

16830 S. BROADWAY ST.  ROUTE 53
JOLIET, IL 60434
(Address)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]     Revised 9/2007

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WENDELL WEAVER,                    )
                                   )
            Plaintiff,             )
                                   )
     vs.                           )      16-cv-09400
                                   )
DR. A. MARTIJA, et. al.,           )
                                   )
            Defendants.            )


     The deposition of ALFONSO MEJIA, M.D.,

called by the Defendant for examination pursuant to

notice and pursuant to the Rules of Civil Procedure

for the United States District Courts pertaining to

the taking of depositions, taken before Patricia S.

Mann, CSR, RPR, License No. 084-001853, a notary

public in and for the County of Cook and State of

Illinois, at Room E-270, 835 South Wolcott Avenue,

Chicago, Illinois, on Wednesday, April 3, 2019, at

hour of 3:15 p.m.


Reported for
MAGNA LEGAL SERVICES, by:
Patricia S. Mann, CSR, RPR.
License No. 084-001853



Page 2

```
1   APPEARANCES:
2       FOX ROTHSCHILD, L.L.P.,
        321 North Clark Street, Suite 800,
3       Chicago, Illinois, 60654,
        csanfelippo@foxrothschild.com,
4       (312) 541-0151, by:
    MS. CHRISTINA M. SANFELIPPO,
5
        appeared on behalf of the Plaintiff;
6
7   CASSIDAY SCHADE, L.L.P.,
        222 West Adams Street, Suite 2900,
8   Chicago, Illinois, 60606,
        jmaruna@cassiday.com,
9       (312) 641-3100, by:
    MR. JAMES F. MARUNA,
10
        appeared on behalf of the Defendants,
11      Dr. Martija and Dr. Obasi;
12
    OFFICE OF THE ILLINOIS ATTORNEY GENERAL,
13      100 West Randolph Street, 13th Floor,
        Chicago, Illinois, 60601,
14      nstaley@atg.state.il.us,
        (312) 714-3588, by:
15  MR. NICHOLAS S. STALEY,
16      appeared on behalf of the Defendants,
        John Baldwin, Nicholas Lamb and Randy
17      Pfister;
18
    LAW OFFICES OF EDWARD J. KOZEL,
19      333 South Wabash Avenue, 25th Floor,
        Chicago, Illinois, 60604,
20      ruwan.perera@cna.com,
        (312) 822-5612, by:
21  MR. RUWAN C. PERERA,
22      appeared on behalf of the Defendant,
        Jose Becerra.
23
24          * * * * *
```

Page 3

```
1               INDEX
2   Examination                 Page
3       By Ms. Sanfelippo          4
4       By Mr. Maruna             42
5       By Mr. Staley             47
6
    Exhibits                    Page
7
    Deposition Exhibit
8
9       No. 1                      6
10
        No. 2                     21
11
        No. 3                     32
12
        No. 4                     34
13
        No. 5                     39
14
        No. 6                     39
15
16          * * * * *
17
18
19
20
21
22
23
24
```

Page 4

```
1           ALFONSO MEJIA, M.D.,
2   having been first duly sworn, was examined and
3   testified as follows:
4           DIRECT EXAMINATION
5   BY MS. SANFELIPPO:
6       Q.  Good afternoon.  Could you please state
7   and spell your name for the record?
8       A.  My name is Alfonso Mejia, my last name is
9   M-e-j-i-a.
10      Q.  Okay.  My name is Christina Sanfelippo,
11  my firm was appointed by the Court to represent the
12  Prisoner Wendell Weaver in this matter.
13          Have you been deposed before?
14      A.  Yes.
15      Q.  How many times about?
16      A.  I do treating physician, so it's a few
17  times a year.
18      Q.  Okay.  Have you given any trial
19  testimony?
20      A.  Twice.
21      Q.  Okay.  And what were those cases?
22      A.  One was a lady who broke her ankle and
23  sued the City, and one was a gentleman who was
24  assaulted and died and I was a witness at his
```

Page 5

```
1   killer's murder trial.
2       Q.  Okay.  Thank you.  So since you've done
3   this a few times already, I'll go over the rules
4   quickly just to make sure we have a clean record.
5   I'm going to ask you a series of questions and if
6   you could please allow me to finish my question
7   before providing the answer, that will help out the
8   Court Reporter a lot.
9           Also, please try to provide verbal
10  responses and avoid uh-huhs or something similar
11  like that so that the Court Reporter can adequately
12  transcribe your responses.  If I use the wrong term,
13  please let me know.  I'm a lawyer that doesn't do
14  medical-related work, so if I get something wrong,
15  I want to make sure the record is clear.
16          And also if you at any time need a
17  break, please feel free to let us know, I would only
18  ask that you finish answering my question before we
19  take the break, all right?
20      A.  Yes.
21      Q.  Okay.  Did you review any documents in
22  preparation for today's deposition?
23      A.  I scanned through the chart that was
24  mailed to me, this seems to be the same as the one
```



Page 6

1  that was mailed to me. I found only a few pages of
2  my clinic notes, there was a lot of other material
3  in here.
4      Q. Okay. Then we can get started talking
5  about your education, job experience. You handed
6  me your c.v., is this your current c.v.?
7      A. More or less, yes.
8      Q. Okay. This is the only copy that we have,
9  so I think I'll just walk through it and we can mark
10 it as an exhibit.
11     A. Okay.
12     Q. Okay. So it says here that you went to
13 medical school at the University of Illinois College
14 of Medicine in Chicago?
15     A. Yes.
16     Q. Okay. You graduated in 1990. After
17 graduation, where did you work?
18     A. You can't really work, you have to finish
19 training. So I did my residency in orthopedics at
20 the University of Illinois, I subsequently did a
21 fellowship in hand surgery at Louisville in the
22 Kleinert Institute. I returned to Chicago in 1996.
23 I got board certified the first time in '99, I've
24 been -- I've recertified twice and I'm now an

Page 7

1  examiner for the board.
2      Q. Okay. Great. So what is your current
3  title at UIC?
4      A. I am the Vice Head of the Department of
5  Orthopedic Surgery, I am the program director for
6  the residency. And I'm in charge of education, so
7  that includes not only our residents, but we have
8  a sports fellow that I oversee and medical students
9  that rotate with us.
10     Q. And you're also a practicing physician?
11     A. Yes.
12     Q. Is that included in that title?
13     A. So you can't teach medicine without
14 practicing.
15     Q. Okay.
16     A. It's not like other professions,
17 everyone who teaches medicine is practicing,
18 otherwise it's an experiential experience. So I
19 see patients in the clinic, I do surgery, I see
20 patients on the floor, I see patients in the
21 emergency room.
22     Q. Okay. Is there any sort of classroom
23 component to your job?
24     A. Yes. So we have a core lecture series

Page 8

1  that's four hours every Wednesday -- in fact, I'll
2  be starting at four, we go 4:00 to 8:00 p.m. --
3  and so I oversee that and I lecture in that
4  occasionally. And then we also have some journal
5  clubs that take place mostly dedicated to hand for
6  the ones I participate.
7      Q. Okay. Can you explain for me what an
8  orthopedic surgeon does?
9      A. Just sits around. Well, it's a physician
10 that takes care of the musculoskeletal system, so
11 we take care of bones, joints, muscles. As a hand
12 surgeon, it also tends to include nerves a lot. So
13 the reason hand is a subspecialty from orthopedics
14 is because hand structures are so tightly contingent
15 on each other, that before there was a subspecialty
16 of that, oftentimes you needed an orthopedic
17 surgeon, a neurosurgeon and a plastic surgeon to
18 take care of things.
19         So hand surgery subspecializes in
20 taking care of all components of the hand; but the
21 orthopedic surgeons in general will take care of
22 bones, the joints, tendons, et cetera.
23     Q. Okay.
24     A. We basically stop at the neck, we don't

Page 9

1  do any type of facial fracture or anything like
2  that.
3      Q. Okay. So did you -- is residency where
4  you gained your specialty, is that how you get a
5  specialty?
6      A. Yes. So when you graduate from medical
7  school, regardless of what you're going into, you
8  have to do a residency to practice in the United
9  States. So if you were going into internal
10 medicine, pediatrics, psychiatry, you'll do a
11 residency, and when you finish the residency, at
12 that point, you're eligible to practice, but then
13 you still have to go through a Board process.
14     Q. Okay. What sort of training did you
15 receive in residency?
16     A. Orthopedic surgery.
17     Q. How long was the residency?
18     A. It's five years, orthopedics is five
19 years, almost universally five years. There are
20 some programs that are six years that they have a
21 year of research, some programs are six years. If
22 they have an integrative fellowship, for example,
23 Brown, everyone does a trauma fellowship at the end
24 of it, so theirs is a little bit longer.



Page 10

1    Q.  Is each year in residency different, do
2  you focus on a different part of your specialty?
3    A.  You have to fill rotations.  So I've run
4  the residency now, I can tell you how we run it
5  now.  If you ask me how mine was run, that's over
6  20 years, I really -- I couldn't give you any
7  specifics.
8        We do rotate through different
9  specialties.  For example, the way the residency is
10  run is you have an integrated intern year, they have
11  six months of orthopedics, six months of specialty
12  which is divided into two between surgery and
13  affiliated things -- so, for example, my residents
14  do vascular surgery, trauma surgery, plastic
15  surgery as their surgical components; as their
16  affiliated components, they do emergency room,
17  rehabilitation and musculoskeletal radiology.
18        That's changed over time.  When I
19  was a resident, it was mostly a general surgery
20  internship, you know, so I rotated through vascular
21  surgery, surgical oncology, pediatric surgery,
22  things like that.  And then the PGY-2 to PGY-5
23  year are rotations.
24        So the residency I run is structured

Page 11

1  that you tend to repeat rotations from the PGY-2
2  year again in the four or five year so you work on
3  trauma as a junior and a senior, you work on joints
4  as a junior and senior.  Some subspecialties, you'll
5  only touch on during the fourth year like sports
6  and pediatrics tends to be smattered throughout,
7  but you're going through rotations both as a junior
8  and senior to get a different experience.  We had a
9  similar structure when I was a resident, but, again,
10  that's -- you know, I can't give you specific
11  rotations.
12    Q.  Okay.  So specific to dislocations, what
13  sort of specialized training did you get in order
14  to be able to treat those during your residency?
15    A.  That's integral to orthopedics, fractures
16  and dislocations, we're taking care of that every
17  single day throughout the entire training and for
18  our practice, that is what we're dealing with, is
19  fractures and dislocations.
20    Q.  Okay.  Prior to your residency in med
21  school, did you have any sort of experience with
22  dislocations?
23    A.  Specifically dislocations -- so when you
24  go through med school, the first two years are basic

Page 12

1  science and then the second two years are clinical,
2  and so the third year tends to be core rotations,
3  general surgery, medicine, pediatrics, psychiatry,
4  OB-gyny, that has changed to some extent over
5  time.
6        And then the fourth year tended to
7  be month-long rotations of subspecialty, so, for
8  example, I did orthopedics early on because I was
9  going to go into orthopedics and you need to have
10  had experience with orthopedics to apply through
11  the whole process.
12        Other things that I did were
13  intensive care unit, neurology, things like that.
14  Like, again, I can't remember specifics.  That's
15  changed a little bit in -- so I've been very
16  involved in education, I've been on the Council of
17  Education of the American Academy of Orthopaedic
18  Surgery, I sit on the Curriculum Committee at the
19  University, and so I was implemental -- I redesigned
20  the fourth year for this school.  So now we do
21  tracks, sort of akin to concentrations in college.
22  So we have three tracks for medical students now,
23  one track is surgical, one track is nonsurgical,
24  and one is hospital based, so that would be

Page 13

1  radiology, emergency room, heme, things like that,
2  so --
3    Q.  Okay.  Your specific experience.
4    A.  I rotated in orthopedics and if I saw a
5  dislocation, I can't remember, but that's -- it's
6  -- dislocations is something we take care of every
7  single day, that's what we do.
8    Q.  Okay.  I guess I'm trying to understand
9  if prior to your experience and residency in any of
10  those rotations you had experience with
11  dislocations?
12    A.  I'm sure I did.
13    Q.  Okay.  Can you walk me through your
14  typical process for diagnosing a patient?
15    A.  With what?
16    Q.  When you walk into a room, you don't --
17  what is the first thing you do with your patient?
18    A.  Introduce myself.
19    Q.  Okay.  What's the second thing you do?
20    A.  So it's -- you're going to take a history,
21  you're going to do a physical examination and you're
22  going to order corresponding supporting studies
23  whether that be blood work or imaging.
24    Q.  Okay.  Is that process different depending



Page 14

1  on what the complaint is from the patient?
2      A.  You're always going to start with a
3  history and then you're going to do a physical
4  examination to support that and then you're going
5  to get supporting data through imaging.  The only
6  time it would be different -- and I'm not being
7  flippant -- is if the patient's unconscious when I
8  can't take a history, for example, when I take care
9  of trauma patients, then I start with the physical
10 and imaging.
11     Q.  Okay.  So how about if you are examining
12 a patient that has complained about a dislocation,
13 what -- do you then take a physical examination of
14 the patient?
15     A.  Yes.
16     Q.  Right away?
17     A.  Yes.
18     Q.  And then what is your next step after
19 physical examination?
20     A.  If I'm suspecting a dislocation, it would
21 be imaging and I would take an X-ray.
22     Q.  Do you take the X-rays on-site here?
23     A.  Yes.
24     Q.  And are you able to read them right away

Page 15

1  or do you have to wait for the results to come back,
2  how does that work?
3      A.  I see them right away.
4      Q.  Is there a computer monitor?
5      A.  It's a PACS System, P-A-C-S.  So it's
6  X-rays taken, it's immediately sent back to -- as
7  soon as the image is available in the system, it's
8  available for me to view on a computer that's
9  designated for X-rays in our office.
10     Q.  And then when you see the image and
11 you've identified a dislocation, what happens
12 next?
13     A.  It depends on what kind of dislocation
14 it is, it depends on the joint, it depends on the
15 severity where it's something that we'll attempt a
16 closed reduction in the office or it needs a closed
17 reduction in the operating room or it will need an
18 open reduction.
19     Q.  What's the difference between a closed
20 reduction and open reduction?
21     A.  An open reduction, you're cutting the
22 skin and getting down to the joint and manipulate
23 it directly; where in a closed reduction, you're
24 manipulating by moving the extremity without cutting

Page 16

1  the skin.
2      Q.  If you determine that a closed reduction
3  is needed without surgery, what is your next step?
4      A.  It depends on what joint we're talking
5  about.
6      Q.  Okay.  If it was a finger.
7      A.  We would locally anesthetize the finger
8  and attempt a reduction.
9      Q.  And that would be shortly after
10 diagnosing?
11     A.  Yes.
12     Q.  Okay.  And what about for -- you said
13 there was a closed reduction with surgery or --
14     A.  So, for example, let's say it's a shoulder
15 dislocation.  You know a shoulder dislocation, you
16 can't just anesthetize locally, you can you can
17 inject a joint with fluid, with lidocaine or
18 Marcaine; but oftentimes if it's someone who is
19 very muscular, that will be difficult, so you can
20 try sedation which would be something we would do
21 in the emergency room rather than in the office.
22     But if I still can't get in with
23 sedation, I need him more relaxed and he'll have to
24 undergo general anesthesia so he has no muscle tone

Page 17

1  so I can overpower him; because, basically, I have
2  to be stronger than him to get it in.  And I cheat
3  a little bit by just tiring instead of jerking or
4  pulling, but still in someone who is very, very
5  muscular or depends on how it's been dislocated,
6  I may need this person to be anesthetized and
7  that would be a closed reduction in the operating
8  room.
9      Q.  Okay.  And so then the third option, the
10 open reduction, can you walk us through that?
11     A.  If I still -- if you still can't get it
12 in, you'd have to think that either, one, it's just
13 not possible to reduce it closed because of how
14 tight it is or that there's interposed tissue.  For
15 example, something that's common in the hand would
16 be that some tissue gets interposed where no matter
17 how much I pull, there's something stuck in the
18 joint that needs to be extracted so I can reduce it
19 and that would need to be extracted so I can reduce
20 it, and that would need to be done in an open
21 fashion.
22     Q.  Okay.  How many times have you performed
23 surgery over your career, if you could estimate?
24     A.  10,000 times, 12,000 times.



Page 18

1  Q. And under what circumstances -- is surgery
2  typically a last resort for you?
3      A. No.
4      Q. No?
5      A. It depends, again, on the injury. Some
6  injuries require surgery -- forgive me, the question
7  is a little bit vague.
8      Q. No, that's totally fair. I guess I'm
9  trying to figure out if there was an alternative
10 option to surgery and both options could come to
11 the same result, would you choose the nonsurgical
12 option over the surgical option?
13     A. Absolutely, if they're equivalent.
14     Q. Okay.
15     A. Obviously, nonsurgical is always
16 preferred. But when you say "last resort", some
17 things by face value, this needs surgery, it's
18 impossible to treat this closed effectively or the
19 results closed will be substandard. An example,
20 a displaced fracture of the forearm, both bones in
21 the forearm are broken in an adult, has to be
22 treated with surgery. You can treat it in a cast
23 if you can manage to line it up, but it would have
24 to be in a cast so long that they would get

Page 19

1  stiffness. So that's -- the phrase is it's a
2  fracture of necessity, I see the X-ray, I know I
3  have to do surgery.
4      Q. Okay. How many interactions do you have
5  with IDOC inmates?
6      A. That's -- you know, that's -- I would say
7  probably between 100 -- 100 and 200 a year, you
8  know, it's generally a couple a week.
9      Q. And how do you come to see these inmates?
10     A. They come to the clinic.
11     Q. They come to the clinic. Is it -- are
12 you the person that schedules their appointments?
13     A. No.
14     Q. Do you know who does?
15     A. The scheduling desk.
16     Q. Okay. How does the -- do you have any
17 knowledge as to how the clinic interacts with the
18 prisons?
19     A. Not initially. The only time -- so once
20 a patient is seeing me, I will recommend how
21 frequently they need to see them -- when I see them
22 next, but I'm not scheduling for someone coming in
23 to see me.
24     Q. Okay, okay. Does the fact that someone

Page 20

1  is an inmate have any sort of effect on your
2  treatment plan?
3      A. Absolutely not.
4      Q. Okay. Do you feel like your treatment
5  plans for inmates are generally followed?
6      MR. MARUNA: Objection, form, vague.
7      THE WITNESS: What do you mean specifically?
8      MS. SANFELIPPO: Q. So if you recommend a
9  treatment for an inmate, do you feel more often
10 than not that the follow-up treatment is done for
11 the inmate?
12     MR. MARUNA: Same objections.
13     MR. PERERA: Join.
14     THE WITNESS: A. It depends what we're talking
15 about. For example, I do have a perception,
16 although I could not quantify it, that it's more
17 difficult for me to get occupational therapy or
18 physical therapy for my prisoner patients than for
19 patients who can go to therapy themselves. That is
20 my impression, but I couldn't quantify that.
21     MS. SANFELIPPO: Q. Are you familiar with the
22 inmate Wendell Weaver?
23     A. Just from this chart, I don't have a
24 strong independent recollection.

Page 21

1      Q. Based on your independent recollection,
2  could you tell us the last time you saw him or
3  not?
4      A. No, not without looking at the chart.
5      MS. SANFELIPPO: Okay, no problem. So I want
6  to hand you what I will mark as Exhibit 2.
7          (Deposition Exhibit Number 2 was
8           marked for identification as
9           requested.)
10     MS. SANFELIPPO: Q. I'm going to hand you
11 what's marked as Exhibit 2. Is this -- looking at
12 page 160 --
13     A. Yes.
14     Q. Okay -- is this a note that you prepared
15 based on a visit that Wendell Weaver had with you?
16     A. Yes. When you say -- this is, I see --
17 I see everyone, I examine everyone, I see them with
18 residents and then the resident dictates the note,
19 but then I sign the note.
20          This note was written by Chris
21 Patel, who currently is a PGY-5. He's actually our
22 education chief resident, he's a very good
23 resident. But then I go over this note and make
24 sure it's -- I agree with the body of it, but he



Page 22

1  dictated it.
2      Q.  Okay.  And -- but you were the attending?
3      A.  I am the attending.
4      Q.  Okay.  Is this the document that either
5  UIC or you on behalf of UIC would ordinarily and
6  regularly maintain in the usual course of providing
7  medical treatment to a patient?
8      A.  The medical record stays with the
9  University, yes.
10      Q.  Okay.  Is this true for all your
11  orthopedic notes?
12      A.  What?
13      Q.  That you create a note like this.
14      A.  Well, I work at the University of
15  Illinois, I also have -- work with residents at
16  Weiss and I also work at NorthShore University.
17  So there is always a note in the electronic record,
18  but they're not always the same.  For example, This
19  system is Cerner, NorthShore uses EPIC, so they're
20  not exactly the same.
21      Q.  So specific to UIC?
22      A.  Yes.
23      Q.  Okay.  Generally, are these notes
24  generally created at or around the time of the visit

Page 23

1  with the patient?
2      A.  Usually the same day as the visit.
3      Q.  And do they generally contain all of the
4  observations made during the patient visit?
5      A.  If that's -- that's difficult to say.
6  They contain pertinent data, all the observations
7  is -- that would be --
8      Q.  Very long?
9      A.  -- like the rise and fall of Rome.
10      Q.  Okay.  So when it says "signed
11  information" at the top and your name -- I'm looking
12  on 160, "signed information, Mejia, Alfonso"?
13      A.  Yeah.
14      Q.  So that's your verification of the
15  contents that you agree with --
16      A.  Yes.
17      Q.  Okay, perfect.  So looking at this, this
18  visit was on March 30th of 2017.  Do you recall how
19  Mr. Weaver came to see you on this date?
20      A.  No.
21      Q.  Okay.  Would it help if I gave you a
22  minute to look over the report?
23      A.  I don't understand the question how he
24  came to see me.  Like I said, I don't schedule

Page 24

1  patients, and so basically he would appear on my
2  schedule and I see everyone on the schedule, but
3  I don't initiate his coming to the clinic.
4      Q.  Okay.  Can you tell me about the
5  examination of Mr. Weaver on March 30th with respect
6  to his left pinky finger?
7      A.  So his left small finger was tender, both
8  at the tip and middle of it.  The DIP joint is the
9  tip -- closest to the tip and the PIP joint is the
10  joint in the middle.  He had at the DIP about 30
11  degrees of motion and the PIP was stuck in flexion
12  about 20 degrees, but had almost no motion.  His
13  sensation was intact and there was good blood flow
14  to the finger.
15      Q.  Okay.  And did he report to you that
16  there was previously a dislocation at the PIP
17  joint?
18      A.  He said he had sustained it during
19  basketball.
20      Q.  Okay.  So in the surgical history note,
21  is that something that you rely on the patient to
22  share with you or do you get that information from
23  somewhere else?
24      A.  You said surgical history note?

Page 25

1      Q.  I'm looking at the bottom of 160, it says
2  "past surgical history".
3      A.  Yes, we rely on the patient.
4      Q.  Okay.  Does this type -- does the
5  dislocation of the PIP joint in your experience
6  always require or often require surgery to repair?
7      A.  Almost nothing in medicine is always.  As
8  far as how often it requires repair, I would say a
9  significant number require surgery.
10      Q.  Okay.
11      A.  By the way, where it says "past surgical
12  history", there's a typo, it says "left small finger
13  DIP reduction repair", that's PIP, so that's a typo,
14  that should be PIP instead of DIP.
15      Q.  Okay.  How often have you performed this
16  procedure, the PIP reduction and repair?
17      A.  I don't know, I probably do -- they come
18  in waves.  Probably do like half a dozen a year, so
19  probably -- over the course of my career, probably
20  about 120, something like that.  That's a rough
21  estimate.
22      Q.  Okay.  And how often have you seen a
23  dislocation of this nature?
24      A.  Probably three times that, you know.



Page 26

1  Q. Three times that, okay.
2  A. Yeah.
3  Q. So it looks like on the next page there
4  was also a note about imaging towards the bottom of
5  161?
6  A. Yes.
7  Q. So is it fair to say that the X-rays were
8  taken on this date, 3-30?
9  A. Yes.
10  Q. Okay. Did you review the X-rays?
11  A. Yes.
12  Q. Can you tell us about your observations?
13  A. So there was arthritis of the PIP joint,
14  there were some suture anchors in place in the base
15  of the middle phalanx and this note says it's
16  malunion of the volar plate as appreciated, but
17  malunion would imply that it's a fracture and I
18  think that there can be some overgrowth of bone
19  there. I did take a look at his X-rays just so I
20  could refresh my mind, I saw the X-ray from this
21  date earlier today.
22  Q. Okay. And so can we -- can you explain
23  "suture anchor" to me?
24  A. So sometimes you want to anchor a soft

Page 27

1  tissue to a bone whether it be to a volar plate
2  like this nature or a ligament, and there's small
3  screws that you can screw into the bone that have
4  an eyelet at the trailing end and have suture that
5  then you can use to attach soft tissue to the
6  bone.
7  Q. Okay. And is it common that you need to
8  use those suture anchors in fingers?
9  A. Well, you said "need to". There's a lot
10  of different ways to do things.
11  Q. Okay.
12  A. So there's advantages and disadvantages
13  to everything. I tend to -- I don't do this surgery
14  with suture anchors. That's not because there's
15  something wrong with a suture anchor, but it's my
16  preference -- because he does have two suture
17  anchors, by the way, and they're small. And that
18  is a small amount of real estate and you can
19  actually fracture into the joint or fracture a
20  bone. So I prefer to drill with a needle and
21  attach through the bone on top, tying it on top.
22  So it's a similar mechanism, but I don't use suture
23  anchors for this, I do do them routinely for other
24  things.

Page 28

1  Q. Okay. Can you explain the malunion, you
2  said that might be a reference to bony material?
3  A. So when you look at the joint, you know,
4  joints should lie like spoons in a drawer, nestled.
5  And when you look at the middle phalanx which is
6  the middle bone in the finger closer to the tip as
7  far as this joint -- excuse me.
8      (After a brief interruption, the
9      deposition was resumed as follows:)
10  THE WITNESS: A. so the middle phalanx is
11  closer to the PIP and the proximal phalanx is up
12  on the other side of the joint. The proximal
13  phalanx is sort of like the end of a sphere and
14  that's cupped by the base of the middle phalanx.
15  If you look at his X-ray from that day, this seems
16  to be opened up more, it's more flattened, the
17  curvature is a little bit less deep and that can be
18  from the way it's healing, the injury or just that
19  he grew a little extra bone spur that makes it look
20  like that.
21  MS. SANFELIPPO: Q. Okay. And what were your
22  conclusions from your reading of the image?
23  A. Well, the principle thing I'm looking
24  for on the image is to see if the joint is reduced,

Page 29

1  which it is. One reason he can have stiffness is if
2  the joint is not reduced. If it's not reduced, it's
3  going to be stepped off and then he can't glide
4  around, he'll hinge, so that leads to a lot of
5  stiffness. So I was trying to see if that was the
6  problem. If that was the problem, that's something
7  we can try to address. If that is not the problem
8  and he's as stiff as he is, there's some releases we
9  can do, but it's unlikely he's going to get much
10  motion in his joint.
11  Q. Okay. Can you tell me what your diagnosis
12  was on this visit?
13  A. So for the left small finger, he was
14  status post dislocation with some arthritis and a
15  stiff -- post-traumatic stiffness. So we discussed
16  with him that he really had two options, he can try
17  some therapy to see if that would improve motion or
18  we felt the most reliable thing as far as if he had
19  a lot of pain would be to fuse it. Fusing does two
20  things, one, if he's having pain when it's attempted
21  to move, it can take that away, and also it can
22  place it in a more functional position.
23      If I recall his X-ray, he's pretty
24  extended, he's pretty straight and that's not a



Page 30

1  great position for fusion or for stiffness of that
2  finger. We tend to put in a little bit of arc, you
3  know, your resting posture is an arcade. So
4  starting from the index finger and working your way
5  to the small finger, if you do fuse it, you place
6  it in increasing amounts of flexion because that
7  reproduces more of a normal grip.
8     Q. Okay. Can you walk me through what
9  observations factored into your diagnosis of
10  post-traumatic arthritis?
11     A. The way the X-ray looked. You'll have
12  some degree of loss of joint space coupled with the
13  fact that we know he had a dislocation.
14     Q. Any other observations?
15     A. Not really.
16     Q. Okay. How common is it for a 42-year-old
17  to have that form of arthritis in his finger?
18     A. Age has nothing to do with this, this is
19  post-traumatic, so it has to do with his injury,
20  it's not degenerative joint disease --
21     Q. Okay.
22     A. -- which is wear-and-tear arthritis of
23  old age.
24     Q. Is it common for people to have that sort

Page 31

1  of arthritis after a trauma?
2     A. Anytime you have an injury to a joint,
3  you can have arthritis and that's variable and
4  sometimes it's symptomatic and sometimes it's not.
5     Q. Can you explain that?
6     A. For example, if you look at distal radius
7  fractures, fractures of the wrist, oftentimes they
8  go into the joint. When a fracture goes into the
9  joint, it will disrupt the cartilage and so
10  oftentimes it's -- even if it's relatively well
11  aligned on X-ray, there can be a little bit of
12  unevenness, the cartilage will wear unevenly which
13  is what arthritis is.
14     But in the wrist, even though a large
15  number of people -- and the fingers to some extent
16  would be the same -- a large number of people can
17  have changes you can see on X-ray, they're not
18  necessarily painful. Certainly not as much as they
19  would be in a knee or hip because these are weight-
20  bearing joints.
21     Q. Okay. So, ultimately, I believe was it
22  Mr. Weaver that chose to proceed with therapy?
23     A. I think we've been focusing on his left
24  small finger, but I think he had -- his right index

Page 32

1  finger was bothering him, so we proceeded with
2  focusing on treating that because that was a more
3  addressable problem.
4     Q. There was a cyst on the right finger --
5     A. Yes.
6     Q. -- correct. And I believe you removed
7  it?
8     A. Yes.
9     MS. SANFELIPPO: Okay. Then why don't we move
10  on to the next -- I'm going to hand you what I'll
11  ask the Court Reporter to mark as Exhibit 3.
12     (Deposition Exhibit Number 3 was
13     marked for identification as
14     requested.)
15     MS. SANFELIPPO: Q. Okay. Should be page
16  152.
17     A. Uh-huh.
18     Q. Okay. Is this -- is this an orthopedic
19  note prepared based on a visit that Wendell Weaver
20  had with you on December 14th of 2017?
21     A. Yes.
22     Q. Okay. Can you tell me about your
23  examination of Mr. Weaver on this date?
24     A. Well, he was here mostly for a post-op

Page 33

1  for having the index finger mass excision and that
2  was doing well. As far as his left small finger,
3  we felt that he had arthritis, it was unlikely we
4  could increase his motion and we recommended a
5  fusion and he didn't want to do that. So we gave
6  him a follow-up as-needed appointment as far as the
7  fusion.
8     Q. I'm sorry, what page are you looking at?
9     A. 153.
10     Q. Okay. And there's also a note for
11  imaging. Do you know if new X-rays were taken on
12  this date or did you review old ones?
13     A. This sounds like it's the old ones.
14     Q. Okay. So why did you -- can we go over
15  what caused you to suggest that treatment plan on
16  this date?
17     A. As far as fusion?
18     Q. Yes.
19     A. He has arthritis of his joint and the PIP
20  joint doesn't do well as far as -- if the complaint
21  is stiffness, for some joints, you can do some
22  releases, you can release scar tissue, you can
23  release capsule. That's true of the neighboring
24  joint, the MCP joint which is the knuckle joint,



Page 34

1  that does very well with that, the PIP doesn't.
2  So if he doesn't have motion, he has
3  a painful joint and we can't improve motion, the way
4  to get rid of that pain would be to fuse it in a
5  more functional position.
6  Q. Okay. Then I just want to make sure
7  there's nothing else that I want to ask you on this
8  page.
9  Is there anything in your notes to
10  suggest that there was a change in his condition
11  between this date and the last note that we just
12  discussed, that was about nine months older?
13  A. As far as his finger?
14  Q. Yes.
15  A. No, I don't think so.
16  MS. SANFELIPPO: Okay. Okay. Then I'm going
17  to move on to the next one. I'm going to ask the
18  Court Reporter to mark this as Exhibit 4.
19  (Deposition Exhibit Number 4 was
20  marked for identification as
21  requested.)
22  MS. SANFELIPPO: Q. Okay. This should be page
23  144. Starting off, is this an orthopedic note that
24  you prepared based on a visit with Wendell Weaver

Page 35

1  on November 1st of 2018?
2  A. No, this is a nursing note.
3  Q. Oh, I'm sorry. Can you flip to page 146,
4  it's in that packet that I handed you.
5  MR. MARUNA: I don't think you've got 144 and
6  145.
7  MS. SANFELIPPO: I'm not sure why she made the
8  copies this way. Okay -- so you have 144, 145,
9  here's 146, 147, 148. And here's these as well.
10  So that should be -- so that should be all part of
11  the same exhibit.
12  THE WITNESS: Okay.
13  MS. SANFELIPPO: It should be one, two, three,
14  four, five pages.
15  MR. STALEY: So 43 through 48?
16  MS. SANFELIPPO: No, actually, 43 will be
17  another exhibit.
18  MR. MARUNA: Okay, 144 through 148 is Exhibit
19  4?
20  MS. SANFELIPPO: Yes.
21  Q. So if you could look at page 146. Is
22  this your orthopedic note?
23  A. Yes.
24  Q. Okay. Can you tell me about your

Page 36

1  examination of Mr. Weaver on this date?
2  A. So he still had a very stiff finger. He
3  had good motion at the knuckle, the MCP joint, but
4  he doesn't have very good motion and we discussed --
5  he was still having pain and stiffness and certainly
6  a stiff joint is a painful joint. We had talked
7  about therapy, we had talked about fusion. He
8  didn't want those. He wanted to try to attempt to
9  obtain some motion, so we talked about attempting
10  the capsular release and tenolysis or freeing up
11  the tendons surrounding. But we explained to him
12  that the amount of motion gained might be so limited
13  that we might need to proceed with articular fusion.
14  So certainly the most reliable thing for him would
15  be a fusion and that's what we discussed several
16  times.
17  Q. Okay.
18  A. But, obviously, he has autonomy, if he
19  doesn't want to have a fusion and he wants to try
20  something short of that, we can try the tenolysis,
21  but we discussed with him that he'll be lucky if he
22  gets a lot of motion here.
23  Q. Okay. Going back to the observations,
24  the physical examination section, you noted mild

Page 37

1  swelling over the MCP joint on the left finger,
2  page 147.
3  A. Uh-huh.
4  Q. Can you explain that?
5  A. He has -- the rest of the finger is stiff,
6  this joint may take up more stress than usual than
7  a normal hand.
8  Q. Okay. Just so to explain it in laymen's
9  terms, because one joint can't do much, the other
10  one is overcompensating, is that fair?
11  A. To some extent.
12  Q. Okay. And then did the rest of the
13  physical examination change much from the last
14  time you had seen him about a year prior to your
15  knowledge?
16  A. It doesn't seem so. The tip of his finger
17  seems more stiff than previously, so I think the
18  finger is stiffer than it was before.
19  Q. All right. What about the range of
20  motion, what did you observe?
21  A. The range of motion, that's what I mean
22  by stiffer, the range of motion is less and that's
23  what means he's stiffer.
24  Q. So what was your diagnosis on this date?



Page 38

1    A.  He has degenerative changes and post-
2    traumatic stiffness after a finger dislocation.
3    Q.  Okay.  So that was the same as it was
4    previously or did it change at all?
5    A.  No, it's the same.
6    Q.  Okay.  I don't believe there was any
7    images reviewed at this session with Mr. Weaver, so
8    can you just summarize for me what observations
9    factored into the diagnosis?
10    A.  Well, we know his history, we know he
11   dislocated his finger.  It's been stiff now for
12   years, so we've offered him fusion and he doesn't
13   want fusion, but he continues to say it's painful,
14   so we're offering an attempt at loosening it up,
15   although it's not likely to be that effective.
16    Q.  Okay.  So you did ultimately, though,
17   schedule a surgery for Mr. Weaver?
18    A.  It was attempted to schedule it says here,
19   I'm not sure if we were -- I'm not sure why it says
20   "tentative".  Tentative date is December 7th
21   scheduled for day of surgery.
22    MS. SANFELIPPO:  Okay.  I think we're all set
23   with that exhibit then.  I accidentally already
24   gave you the last one, it's 143 -- it should be

Page 39

1    after the last page.
2    THE WITNESS:  I have 144, 145, 146, 147 and
3    148.
4    MR. STALEY:  Is that the end of the last
5    exhibit that starts with 146?
6    MS. SANFELIPPO:  Do you guys have --
7    MR. MARUNA:  Yeah, I have it.
8    MS. SANFELIPPO:  So she can just mark it as an
9    exhibit.
10    (Deposition Exhibit Numbers 5 and 6
11    were marked for identification as
12    requested.)
13    MS. SANFELIPPO:  Q.  Okay.  Now, I know this
14   isn't your note exactly, it's an RN note, but are
15   you familiar with this document at all?
16    A.  I've never seen this specifically, but
17   I can tell what it is, Lorna is our surgical
18   scheduler.
19    Q.  Okay.  And what does the note say?
20    A.  "This writer received a message from
21   Stateville stating that the capsular release is
22   denied for this patient, to please cancel the
23   surgery.  He would be treated on-site."
24    Q.  Do you have any knowledge as to whether

Page 40

1    or what sort of on-site treatment Mr. Weaver was to
2    receive?
3    A.  No.
4    Q.  Okay.  Were you contacted directly about
5    the fact that the surgery was scheduled -- that you
6    had scheduled was cancelled?
7    A.  They would have -- it would have appeared
8    on surgical scheduling as him being cancelled, but
9    I did not see this particular sentence before.
10    Q.  Okay.  Can you recall any other instances
11   of inmates that you had scheduled to undergo
12   surgery, that that surgery had subsequently been
13   cancelled?
14    A.  Yes.
15    Q.  Do you know about how many?
16    A.  No.
17    Q.  Okay.  Did you at the end of all of your
18   treatments with Mr. Weaver send copies of your notes
19   back with him to the prison?
20    A.  There's a form that comes with them that
21   we fill out as far as what our intentions and plan
22   is.  So, for example, from the previous visit, it
23   would have been that we were planning on doing this
24   particular surgery.  It's a form that gets filled

Page 41

1    out and then handed back to them and the guards
2    take it back.
3    Q.  Okay.  So, ultimately, did you -- I know
4    that we talked about patient autonomy and Mr. Weaver
5    was not interested in having his finger fused, but
6    would you have proceeded with the release had there
7    been no way it would help him in any way?
8    MR. MARUNA:  Objection, form of the question,
9    vague.
10    THE WITNESS:  A.  So as we discussed in the
11   note, the expectation of gains here is pretty
12   limited for capsular release, especially for a
13   small finger.  This is a bad joint as far as doing
14   a capsular release and it's a bad finger.  When we
15   have rest every day, the small finger is in a
16   pre-flexed posture, you're not moving it, it's easy
17   to bypass it.
18    So, for example, I would be -- the
19   PIP is always going to be a problem.  I was more
20   confident that he's going to get significant motion
21   of an index finger, it's easier to focus on using
22   that and manipulating it than the pinky that it
23   really to some extent sort of like be ignored in
24   most manipulation.  So expectations for me for a



Page 42

1   capsular release with him were pretty limited.
2   MS. SANFELIPPO: Okay. Then I think I'm all
3   done with my questions, if anyone else has any.
4   MR. MARUNA: Yeah, I'm going to have just --
5   actually when I say a few, I actually do mean a few
6   for the first time in my life.
7        I introduced myself earlier, I
8   represent the late Dr. Obasi and Dr. Martija in
9   this case. Thank you for your time again today,
10  Doctor.
11          EXAMINATION
12  BY MR. MARUNA:
13  Q.   You used the term post-traumatic
14  arthritis. I just want to be clear, what causes
15  post-traumatic arthritis in a finger dislocation?
16  A.   It can be any number of things, it can be
17  the initial injury, it can be a step-off if there's
18  a fracture associated with it, it can be
19  inflammation or infection if it's an open
20  dislocation.
21  Q.   And the idea is once that occurs, then
22  you're going to develop some sort of arthritis in
23  the joint, correct?
24  A.   Once what occurs?

Page 43

1   Q.   Sure. Once there's trauma to the joint,
2   there's going to be development of post-traumatic
3   arthritis, correct?
4   A.   Not always. It's certainly more
5   frequently once you've had injury, but not everyone
6   who has a dislocation is going to get arthritis.
7   Q.   This patient, though, does demonstrate
8   post-traumatic arthritis, correct?
9   A.   Yes.
10  Q.   It's not degenerative arthritis or DJD,
11  correct?
12  A.   That's correct.
13  Q.   Now, I just want to be clear on a couple
14  questions here. These may seem very basic, so just
15  bear with me here.
16       We discussed X-rays inside the
17  hospital. When you as the orthopedic surgeon put
18  an order in for an X-ray, do you wheel the patient
19  down to imaging and stick him in the X-ray
20  machine?
21  A.   No.
22  Q.   Does someone else do that?
23  A.   Most of my patients are ambulatory, so
24  no one is being wheeled, they're walking over.

Page 44

1   Specifically with a prisoner, when they come in, if
2   we are getting new X-rays, the guards escort them
3   over.
4   Q.   My point is, I guess, as the physician
5   ordering the imaging, you don't actually carry out
6   the logistics of securing the image, someone else
7   down the line in the medical system here at UIC
8   does that, correct?
9   A.   For the most part. So if I'm ordering a
10  formal X-ray, yes. We also have a fluoroscan in
11  our office which, obviously, we have it because
12  we're orthopedics and most offices wouldn't. In
13  the fluoroscan, I am taking the image myself.
14  Q.   Let's assume a regular plain X-ray of a
15  finger, for example.
16  A.   I'm ordering it and they're going to
17  X-ray, and I'm not putting them in the machine.
18  Q.   And your expectation then as the doctor
19  would be that your order is carried out, correct?
20  A.   Yes.
21  Q.   And if there's something wrong with
22  securing that X-ray, you would expect someone to
23  notify you there was a problem, correct?
24  A.   Yes.

Page 45

1   Q.   You don't walk down to the X-ray and say,
2   hey, guys, did you X-ray Patient Smith today, do
3   you?
4   A.   The way you phrased the question, if I'm
5   in the clinic and I just sent you to X-ray and you
6   haven't come back, I will go over and ask what's
7   the problem, why haven't you returned to my office.
8   Because I'm sending you to X-ray -- I'm sending you
9   to X-ray one of two ways, I'm sending you to X-ray
10  and you need to return so I can see the X-ray that
11  way, or I'm sending you for X-rays on the way out,
12  and that means you're going to X-ray and then you're
13  leaving.
14       So, for example, if I'm treating
15  some kind of wear-and-tear arthritis and I want --
16  I've decided to do surgery, we're going to do
17  surgery regardless, but I want new X-rays for the
18  surgical date, I might complete the surgical packet,
19  send you to X-ray to get X-rays on the way out that
20  then will be available for me in the computer on
21  the day of surgery. But if I'm treating a fracture,
22  generally I'm sending you to X-ray and waiting for
23  you to come back. If you don't come back, then I'll
24  go find out what happened because sometimes people



Page 46

1    have misunderstood and left from X-ray.
2        Q.  But the expectation is when you put in
3    an order for an X-ray, you expect the people in
4    the imaging department to provide that X-ray,
5    correct?
6        A.  Yes.
7        Q.  And I also want to ask about medications
8    as well.
9            When you place an order for a
10   medication for a patient, let's assume they're
11   in-patient in this case, that they're in the
12   hospital, do you physically hand the medication to
13   the patient or does someone in the pharmacy or
14   medical technician handle that?
15       A.  I don't give anyone medication directly.
16       Q.  And, again, your expectation would be when
17   you put in a medical order, that it's carried out,
18   correct?
19       A.  Yes.
20       MR. MARUNA:  Nothing further.  Thank you for
21   your time.
22       MR. STALEY:  I just have this one question.
23
24

Page 47

1                    EXAMINATION
2    BY MR. STALEY:
3        Q.  The capsular release that was -- surgery
4    that was scheduled, that wasn't a medically
5    necessary treatment, was it?
6        A.  Well, if it wasn't medically necessary,
7    we wouldn't do anything.  We're giving him an
8    option like we talked about, he's having pain, he
9    wants more motion, we can't really resolve these
10   two because of this, so I do think it is medically
11   necessary.
12       Q.  There were alternative treatments
13   available that you could have done, though?
14       A.  The fusion.
15       MR. STALEY:  All right.  Nothing further.
16       MR. PERERA:  No questions.
17       MS. SANFELIPPO:  Thank you very much, Doctor.
18       THE WITNESS:  Waive signature.
19                    * * * * *
20
21
22
23
24

Page 48

1    STATE OF ILLINOIS   )
                         ) SS
2    COUNTY OF COOK      )
3
4        I, PATRICIA S. MANN, CSR, RPR, a certified
     shorthand reporter in the State of Illinois, do
5    hereby certify that ALFONSO MEJIA, M.D., was by me
6    first duly sworn to testify to the truth, and that
7    the above matter was recorded stenographically by me
8    and reduced to writing by me.
9        I FURTHER CERTIFY that the foregoing transcript
10   of the said matter is a true, correct and complete
11   transcript of the testimony given by the said
12   witness at the time and place specified herein
13   before.
14       I FURTHER CERTIFY that I am not a relative or
15   employee of any of the parties, nor a relative or
16   employee of the attorneys of record or financially
17   interested directly or indirectly in this action.
18       IN WITNESS WHEREOF, I have hereunto set my hand
19   and affixed my seal of office at Chicago, Illinois,
20   this 20th day of April, 2019.
21
22
23   _____
     Certified Shorthand Reporter
24       License No. 084-001853



13 (Pages 46 to 48)

**A**

able 11:14 14:24
Absolutely 18:13
  20:3
Academy 12:17
accidentally 38:23
action 48:17
Adams 2:7
address 29:7
addressable 32:3
adequately 5:11
adult 18:21
advantages 27:12
affiliated 10:13,16
affixed 48:19
afternoon 4:6
age 30:18,23
agree 21:24 23:15
akin 12:21
al 1:6
Alfonso 1:9 4:1,8
  23:12 48:5
aligned 31:11
allow 5:6
alternative 18:9
  47:12
ambulatory 43:23
American 12:17
amount 27:18
  36:12
amounts 30:6
anchor 26:23,24
  27:15
anchors 26:14 27:8
  27:14,17,23
anesthesia 16:24
anesthetize 16:7,16
anesthetized 17:6
ankle 4:22
answer 5:7
answering 5:18
Anytime 31:2
appear 24:1
APPEARANCES
  2:1

appeared 2:5,10,16
  2:22 40:7
apply 12:10
appointed 4:11
appointment 33:6
appointments
  19:12
appreciated 26:16
April 1:17 48:20
arc 30:2
arcade 30:3
arthritis 26:13
  29:14 30:10,17,22
  31:1,3,13 33:3,19
  42:14,15,22 43:3
  43:6,8,10 45:15
articular 36:13
assaulted 4:24
associated 42:18
assume 44:14 46:10
as-needed 33:6
attach 27:5,21
attempt 15:15 16:8
  36:8 38:14
attempted 29:20
  38:18
attempting 36:9
attending 22:2,3
ATTORNEY 2:12
attorneys 48:16
autonomy 36:18
  41:4
available 15:7,8
  45:20 47:13
Avenue 1:16 2:19
avoid 5:10

**B**

back 15:1,6 36:23
  40:19 41:1,2 45:6
  45:23,23
bad 41:13,14
Baldwin 2:16
base 26:14 28:14
based 12:24 21:1
  21:15 32:19 34:24

basic 11:24 43:14
basically 8:24 17:1
  24:1
basketball 24:19
bear 43:15
bearing 31:20
Becerra 2:22
behalf 2:5,10,16,22
  22:5
believe 31:21 32:6
  38:6
bit 9:24 12:15 17:3
  18:7 28:17 30:2
  31:11
blood 13:23 24:13
board 6:23 7:1 9:13
body 21:24
bone 26:18 27:1,3,6
  27:20,21 28:6,19
bones 8:11,22
  18:20
bony 28:2
bothering 32:1
bottom 25:1 26:4
break 5:17,19
brief 28:8
broke 4:22
broken 18:21
Brown 9:23
bypass 41:17

**C**

C 2:21
called 1:10
cancel 39:22
cancelled 40:6,8,13
capsular 36:10
  39:21 41:12,14
  42:1 47:3
capsule 33:23
care 8:10,11,18,20
  8:21 11:16 12:13
  13:6 14:8
career 17:23 25:19
carried 44:19 46:17
carry 44:5

cartilage 31:9,12
case 42:9 46:11
cases 4:21
CASSIDAY 2:7
cast 18:22,24
caused 33:15
causes 42:14
Cerner 22:19
certainly 31:18
  36:5,14 43:4
certified 6:23 48:3
  48:23
certify 48:5,9,14
cetera 8:22
change 34:10 37:13
  38:4
changed 10:18 12:4
  12:15
changes 31:17 38:1
charge 7:6
chart 5:23 20:23
  21:4
cheat 17:2
Chicago 1:17 2:3,8
  2:13,19 6:14,22
  48:19
chief 21:22
choose 18:11
chose 31:22
Chris 21:20
Christina 2:4 4:10
circumstances 18:1
City 4:23
Civil 1:11
Clark 2:2
classroom 7:22
clean 5:4
clear 5:15 42:14
  43:13
clinic 6:2 7:19
  19:10,11,17 24:3
  45:5
clinical 12:1
closed 15:16,16,19
  15:23 16:2,13
  17:7,13 18:18,19

closer 28:6,11
closest 24:9
clubs 8:5
college 6:13 12:21
come 15:1 18:10
  19:9,10,11 25:17
  44:1 45:6,23,23
comes 40:20
coming 19:22 24:3
Committee 12:18
common 17:15
  27:7 30:16,24
complained 14:12
complaint 14:1
  33:20
complete 45:18
  48:10
component 7:23
components 8:20
  10:15,16
computer 15:4,8
  45:20
concentrations
  12:21
conclusions 28:22
condition 34:10
confident 41:20
contacted 40:4
contain 23:3,6
contents 23:15
contingent 8:14
continues 38:13
Cook 1:15 48:2
copies 35:8 40:18
copy 6:8
core 7:24 12:2
correct 32:6 42:23
  43:3,8,11,12 44:8
  44:19,23 46:5,18
  48:10
corresponding
  13:22
Council 12:16
County 1:15 48:2
couple 19:8 43:13
coupled 30:12



course 22:6 25:19
Court 1:1 4:11 5:8
    5:11 32:11 34:18
Courts 1:12
create 22:13
created 22:24
csanfelippo@fox...
    2:3
CSR 1:14,23 48:3
cupped 28:14
current 6:6 7:2
currently 21:21
Curriculum 12:18
curvature 28:17
cutting 15:21,24
cyst 32:4
c.v 6:6,6

**D**

D 3:1
data 14:5 23:6
date 23:19 26:8,21
    32:23 33:12,16
    34:11 36:1 37:24
    38:20 45:18
day 11:17 13:7 23:2
    28:15 38:21 41:15
    45:21 48:20
dealing 11:18
December 32:20
    38:20
decided 45:16
dedicated 8:5
deep 28:17
Defendant 1:10
    2:22
Defendants 1:7
    2:10,16
degenerative 30:20
    38:1 43:10
degree 30:12
degrees 24:11,12
demonstrate 43:7
denied 39:22
department 7:4
    46:4

depending 13:24
depends 15:13,14
    15:14 16:4 17:5
    18:5 20:14
deposed 4:13
deposition 1:9 3:7
    5:22 21:7 28:9
    32:12 34:19 39:10
depositions 1:13
designated 15:9
desk 19:15
determine 16:2
develop 42:22
development 43:2
diagnosing 13:14
    16:10
diagnosis 29:11
    30:9 37:24 38:9
dictated 22:1
dictates 21:18
died 4:24
difference 15:19
different 10:1,2,8
    11:8 13:24 14:6
    27:10
difficult 16:19
    20:17 23:5
DIP 24:8,10 25:13
    25:14
DIRECT 4:4
directly 15:23 40:4
    46:15 48:17
director 7:5
disadvantages
    27:12
discussed 29:15
    34:12 36:4,15,21
    41:10 43:16
disease 30:20
dislocated 17:5
    38:11
dislocation 13:5
    14:12,20 15:11,13
    16:15,15 24:16
    25:5,23 29:14
    30:13 38:2 42:15

42:20 43:6
dislocations 11:12
    11:16,19,22,23
    13:6,11
displaced 18:20
disrupt 31:9
distal 31:6
District 1:1,1,12
divided 10:12
DIVISION 1:2
DJD 43:10
doctor 42:10 44:18
    47:17
document 22:4
    39:15
documents 5:21
doing 33:2 40:23
    41:13
dozen 25:18
Dr 1:6 2:11,11 42:8
    42:8
drawer 28:4
drill 27:20
duly 4:2 48:6

**E**

E 3:1
earlier 26:21 42:7
early 12:8
easier 41:21
EASTERN 1:2
easy 41:16
education 6:5 7:6
    12:16,17 21:22
EDWARD 2:18
effect 20:1
effective 38:15
effectively 18:18
either 17:12 22:4
electronic 22:17
eligible 9:12
emergency 7:21
    10:16 13:1 16:21
employee 48:15,16
entire 11:17
EPIC 22:19

equivalent 18:13
escort 44:2
especially 41:12
estate 27:18
estimate 17:23
    25:21
et 1:6 8:22
exactly 22:20 39:14
examination 1:10
    3:2 4:4 13:21 14:4
    14:13,19 24:5
    32:23 36:1,24
    37:13 42:11 47:1
examine 21:17
examined 4:2
examiner 7:1
examining 14:11
example 9:22 10:9
    10:13 12:8 14:8
    16:14 17:15 18:19
    20:15 22:18 31:6
    40:22 41:18 44:15
    45:14
excision 33:1
excuse 28:7
exhibit 3:7 6:10
    21:6,7,11 32:11
    32:12 34:18,19
    35:11,17,18 38:23
    39:5,9,10
Exhibits 3:6
expect 44:22 46:3
expectation 41:11
    44:18 46:2,16
expectations 41:24
experience 6:5 7:18
    11:8,21 12:10
    13:3,9,10 25:5
experiential 7:18
explain 8:7 26:22
    28:1 31:5 37:4,8
explained 36:11
extended 29:24
extent 12:4 31:15
    37:11 41:23
extra 28:19

extracted 17:18,19
extremity 15:24
eyelet 27:4
E-270 1:16

**F**

F 2:9
face 18:17
facial 9:1
fact 8:1 19:24 30:13
    40:5
factored 30:9 38:9
fair 18:8 26:7 37:10
fall 23:9
familiar 20:21
    39:15
far 25:8 28:7 29:18
    33:2,6,17,20
    34:13 40:21 41:13
fashion 17:21
feel 5:17 20:4,9
fellow 7:8
fellowship 6:21
    9:22,23
felt 29:18 33:3
figure 18:9
fill 10:3 40:21
filled 40:24
financially 48:16
find 45:24
finger 16:6,7 24:6,7
    24:14 25:12 28:6
    29:13 30:2,4,5,19
    31:24 32:1,4 33:1
    33:2 34:13 36:2
    37:1,5,16,18 38:2
    38:11 41:5,13,14
    41:15,21 42:15
    44:15
fingers 27:8 31:15
finish 5:6,18 6:18
    9:11
firm 4:11
first 4:2 6:23 11:24
    13:17 42:6 48:6
five 9:18,18,19 11:2



35:14
flattened 28:16
flexion 24:11 30:6
flip 35:3
flippant 14:7
floor 2:13,19 7:20
flow 24:13
fluid 16:17
fluoroscan 44:10
    44:13
focus 10:2 41:21
focusing 31:23 32:2
followed 20:5
follows 4:3 28:9
follow-up 20:10
    33:6
forearm 18:20,21
foregoing 48:9
forgive 18:6
form 20:6 30:17
    40:20,24 41:8
formal 44:10
found 6:1
four 8:1,2 11:2
    35:14
fourth 11:5 12:6,20
FOX 2:2
fracture 9:1 18:20
    19:2 26:17 27:19
    27:19 31:8 42:18
    45:21
fractures 11:15,19
    31:7,7
free 5:17
freeing 36:10
frequently 19:21
    43:5
functional 29:22
    34:5
further 46:20 47:15
    48:9,14
fuse 29:19 30:5
    34:4
fused 41:5
Fusing 29:19
fusion 30:1 33:5,7

33:17 36:7,13,15
    36:19 38:12,13
    47:14

**G**

gained 9:4 36:12
gains 41:11
general 2:12 8:21
    10:19 12:3 16:24
generally 19:8 20:5
    22:23,24 23:3
    45:22
gentleman 4:23
getting 15:22 44:2
give 10:6 11:10
    46:15
given 4:18 48:11
giving 47:7
glide 29:3
go 5:3 8:2 9:13
    11:24 12:9 20:19
    21:23 31:8 33:14
    45:6,24
goes 31:8
going 5:5 9:7,9 11:7
    12:9 13:20,21,22
    14:2,3,4 21:10
    29:3,9 32:10
    34:16,17 36:23
    41:19,20 42:4,22
    43:2,6 44:16
    45:12,16
good 4:6 21:22
    24:13 36:3,4
graduate 9:6
graduated 6:16
graduation 6:17
great 7:2 30:1
grew 28:19
grip 30:7
guards 41:1 44:2
guess 13:8 18:8
    44:4
guys 39:6 45:2

**H**

half 25:18
hand 6:21 8:5,11
    8:13,14,19,20
    17:15 21:6,10
    32:10 37:7 46:12
    48:18
handed 6:5 35:4
    41:1
handle 46:14
happened 45:24
happens 15:11
Head 7:4
healing 28:18
help 5:7 23:21 41:7
heme 13:1
hereunto 48:18
hey 45:2
he'll 16:23 29:4
    36:21
hinge 29:4
hip 31:19
history 13:20 14:3
    14:8 24:20,24
    25:2,12 38:10
hospital 12:24
    43:17 46:12
hour 1:18
hours 8:1

**I**

idea 42:21
identification 21:8
    32:13 34:20 39:11
identified 15:11
IDOC 19:5
ignored 41:23
Illinois 1:1,16,17
    2:3,8,12,13,19
    6:13,20 22:15
    48:1,4,19
image 15:7,10
    28:22,24 44:6,13
images 38:7
imaging 13:23 14:5
    14:10,21 26:4
    33:11 43:19 44:5

46:4
immediately 15:6
implemental 12:19
imply 26:17
impossible 18:18
impression 20:20
improve 29:17 34:3
include 8:12
included 7:12
includes 7:7
increase 33:4
increasing 30:6
independent 20:24
    21:1
index 30:4 31:24
    33:1 41:21
indirectly 48:17
infection 42:19
inflammation
    42:19
information 23:11
    23:12 24:22
initial 42:17
initially 19:19
initiate 24:3
inject 16:17
injuries 18:6
injury 18:5 28:18
    30:19 31:2 42:17
    43:5
inmate 20:1,9,11
    20:22
inmates 19:5,9 20:5
    40:11
inside 43:16
instances 40:10
Institute 6:22
intact 24:13
integral 11:15
integrated 10:10
integrative 9:22
intensive 12:13
intentions 40:21
interactions 19:4
interacts 19:17
interested 41:5

48:17
intern 10:10
internal 9:9
internship 10:20
interposed 17:14
    17:16
interruption 28:8
Introduce 13:18
introduced 42:7
involved 12:16
in-patient 46:11

**J**

J 2:18
JAMES 2:9
jerking 17:3
jmaruna@cassid...
    2:8
job 6:5 7:23
John 2:16
Join 20:13
joint 15:14,22 16:4
    16:17 17:18 24:8
    24:9,10,17 25:5
    26:13 27:19 28:3
    28:7,12,24 29:2
    29:10 30:12,20
    31:2,8,9 33:19,20
    33:24,24,24 34:3
    36:3,6,6 37:1,6,9
    41:13 42:23 43:1
joints 8:11,22 11:3
    28:4 31:20 33:21
Jose 2:22
journal 8:4
junior 11:3,4,7

**K**

killer's 5:1
kind 15:13 45:15
Kleinert 6:22
knee 31:19
know 5:13,17 10:20
    11:10 16:15 19:2
    19:6,8,14 25:17
    25:24 28:3 30:3



30:13 33:11 38:10
38:10 39:13 40:15
41:3
knowledge 19:17
37:15 39:24
knuckle 33:24 36:3
KOZEL 2:18

**L**

lady 4:22
Lamb 2:16
large 31:14,16
late 42:8
LAW 2:18
lawyer 5:13
laymen's 37:8
leads 29:4
leaving 45:13
lecture 7:24 8:3
left 24:6,7 25:12
29:13 31:23 33:2
37:1 46:1
LEGAL 1:23
let's 16:14 44:14
46:10
License 1:14,24
48:24
lidocaine 16:17
lie 28:4
life 42:6
ligament 27:2
limited 36:12 41:12
42:1
line 18:23 44:7
little 9:24 12:15
17:3 18:7 28:17
28:19 30:2 31:11
locally 16:7,16
logistics 44:6
long 9:17 18:24
23:8
longer 9:24
look 23:22 26:19
28:3,5,15,19 31:6
35:21
looked 30:11

looking 21:4,11
23:11,17 25:1
28:23 33:8
looks 26:3
loosening 38:14
Lorna 39:17
loss 30:12
lot 5:8 6:2 8:12
27:9 29:4,19
36:22
Louisville 6:21
lucky 36:21
L.L.P 2:2,7

**M**

M 2:4
machine 43:20
44:17
MAGNA 1:23
mailed 5:24 6:1
maintain 22:6
malunion 26:16,17
28:1
manage 18:23
manipulate 15:22
manipulating
15:24 41:22
manipulation
41:24
Mann 1:14,23 48:3
Marcaine 16:18
March 23:18 24:5
mark 6:9 21:6
32:11 34:18 39:8
marked 21:8,11
32:13 34:20 39:11
Martija 1:6 2:11
42:8
Maruna 2:9 3:4
20:6,12 35:5,18
39:7 41:8 42:4,12
46:20
mass 33:1
material 6:2 28:2
matter 4:12 17:16
48:7,10

MCP 33:24 36:3
37:1
mean 20:7 37:21
42:5
means 37:23 45:12
mechanism 27:22
med 11:20,24
medical 6:13 7:8
9:6 12:22 22:7,8
44:7 46:14,17
medically 47:4,6,10
medical-related
5:14
medication 46:10
46:12,15
medications 46:7
medicine 6:14 7:13
7:17 9:10 12:3
25:7
Mejia 1:9 4:1,8
23:12 48:5
message 39:20
middle 24:8,10
26:15 28:5,6,10
28:14
mild 36:24
mind 26:20
mine 10:5
minute 23:22
misunderstood
46:1
monitor 15:4
months 10:11,11
34:12
month-long 12:7
motion 24:11,12
29:10,17 33:4
34:2,3 36:3,4,9,12
36:22 37:20,21,22
41:20 47:9
move 29:21 32:9
34:17
moving 15:24
41:16
murder 5:1
muscle 16:24

muscles 8:11
muscular 16:19
17:5
musculoskeletal
8:10 10:17
M-e-j-i-a 4:9
M.D 1:9 4:1 48:5

**N**

N 3:1
name 4:7,8,8,10
23:11
nature 25:23 27:2
necessarily 31:18
necessary 47:5,6,11
necessity 19:2
neck 8:24
need 5:16 12:9
15:17 16:23 17:6
17:19,20 19:21
27:7,9 36:13
45:10
needed 8:16 16:3
needle 27:20
needs 15:16 17:18
18:17
neighboring 33:23
nerves 8:12
nestled 28:4
neurology 12:13
neurosurgeon 8:17
never 39:16
new 33:11 44:2
45:17
Nicholas 2:15,16
nine 34:12
nonsurgical 12:23
18:11,15
normal 30:7 37:7
North 2:2
NORTHERN 1:1
NorthShore 22:16
22:19
notary 1:14
note 21:14,18,19,20
21:23 22:13,17

24:20,24 26:4,15
32:19 33:10 34:11
34:23 35:2,22
39:14,14,19 41:11
noted 36:24
notes 6:2 22:11,23
34:9 40:18
notice 1:11
notify 44:23
November 35:1
nstaley@atg.stat...
2:14
number 21:7 25:9
31:15,16 32:12
34:19 42:16
Numbers 39:10
nursing 35:2

**O**

Obasi 2:11 42:8
Objection 20:6
41:8
objections 20:12
observations 23:4,6
26:12 30:9,14
36:23 38:8
observe 37:20
obtain 36:9
obviously 18:15
36:18 44:11
OB-gyny 12:4
occasionally 8:4
occupational 20:17
occurs 42:21,24
offered 38:12
offering 38:14
office 2:12 15:9,16
16:21 44:11 45:7
48:19
offices 2:18 44:12
oftentimes 8:16
16:18 31:7,10
Oh 35:3
okay 4:10,18,21 5:2
5:21 6:4,8,11,12
6:16 7:2,15,22 8:7



8:23 9:3,14 11:12
11:20 13:3,8,13
13:19,24 14:11
16:6,12 17:9,22
18:14 19:4,16,24
19:24 20:4 21:5
21:14 22:2,4,10
22:23 23:10,17,21
24:4,15,20 25:4
25:10,15,22 26:1
26:10,22 27:7,11
28:1,21 29:11
30:8,16,21 31:21
32:9,15,18,22
33:10,14 34:6,16
34:16,22 35:8,12
35:18,24 36:17,23
37:8,12 38:3,6,16
38:22 39:13,19
40:4,10,17 41:3
42:2
old 30:23 33:12,13
older 34:12
once 19:19 42:21
42:24 43:1,5
oncology 10:21
ones 8:6 33:12,13
on-site 14:22 39:23
40:1
open 15:18,20,21
17:10,20 42:19
opened 28:16
operating 15:17
17:7
option 17:9 18:10
18:12,12 47:8
options 18:10 29:16
order 11:13 13:22
43:18 44:19 46:3
46:9,17
ordering 44:5,9,16
ordinarily 22:5
Orthopaedic 12:17
orthopedic 7:5 8:8
8:16,21 9:16
22:11 32:18 34:23

35:22 43:17
orthopedics 6:19
8:13 9:18 10:11
11:15 12:8,9,10
13:4 44:12
overcompensating
37:10
overgrowth 26:18
overpower 17:1
oversee 7:8 8:3

P
packet 35:4 45:18
PACS 15:5
page 3:2,6 21:12
26:3 32:15 33:8
34:8,22 35:3,21
37:2 39:1
pages 6:1 35:14
pain 29:19,20 34:4
36:5 47:8
painful 31:18 34:3
36:6 38:13
part 10:2 35:10
44:9
participate 8:6
particular 40:9,24
parties 48:15
Patel 21:21
patient 13:14,17
14:1,12,14 19:20
22:7 23:1,4 24:21
25:3 39:22 41:4
43:7,18 45:2
46:10,13
patients 7:19,20,20
14:9 20:18,19
24:1 43:23
patient's 14:7
Patricia 1:13,23
48:3
pediatric 10:21
pediatrics 9:10
11:6 12:3
people 30:24 31:15
31:16 45:24 46:3

perception 20:15
PERERA 2:21
20:13 47:16
perfect 23:17
performed 17:22
25:15
person 17:6 19:12
pertaining 1:12
pertinent 23:6
Pfister 2:17
PGY-2 10:22 11:1
PGY-5 10:22 21:21
phalanx 26:15 28:5
28:10,11,13,14
pharmacy 46:13
phrase 19:1
phrased 45:4
physical 13:21 14:3
14:9,13,19 20:18
36:24 37:13
physically 46:12
physician 4:16 7:10
8:9 44:4
pinky 24:6 41:22
PIP 24:9,11,16 25:5
25:13,14,16 26:13
28:11 33:19 34:1
41:19
place 8:5 26:14
29:22 30:5 46:9
48:12
plain 44:14
Plaintiff 1:4 2:5
plan 20:2 33:15
40:21
planning 40:23
plans 20:5
plastic 8:17 10:14
plate 26:16 27:1
please 4:6 5:6,9,13
5:17 39:22
point 9:12 44:4
position 29:22 30:1
34:5
possible 17:13
post 29:14 38:1

posture 30:3 41:16
post-op 32:24
post-traumatic
29:15 30:10,19
42:13,15 43:2,8
practice 9:8,12
11:18
practicing 7:10,14
7:17
prefer 27:20
preference 27:16
preferred 18:16
preparation 5:22
prepared 21:14
32:19 34:24
pretty 29:23,24
41:11 42:1
previous 40:22
previously 24:16
37:17 38:4
pre-flexed 41:16
principle 28:23
prior 11:20 13:9
37:14
prison 40:19
prisoner 4:12 20:18
44:1
prisons 19:18
probably 19:7
25:17,18,19,19,24
problem 21:5 29:6
29:6,7 32:3 41:19
44:23 45:7
procedure 1:11
25:16
proceed 31:22
36:13
proceeded 32:1
41:6
process 9:13 12:11
13:14,24
professions 7:16
program 7:5
programs 9:20,21
provide 5:9 46:4
providing 5:7 22:6

proximal 28:11,12
psychiatry 9:10
12:3
public 1:15
pull 17:17
pulling 17:4
pursuant 1:10,11
put 30:2 43:17 46:2
46:17
putting 44:17
P-A-C-S 15:5
p.m 1:18 8:2

Q
quantify 20:16,20
question 5:6,18
18:6 23:23 41:8
45:4 46:22
questions 5:5 42:3
43:14 47:16
quickly 5:4

R
radiology 10:17
13:1
radius 31:6
Randolph 2:13
Randy 2:16
range 37:19,21,22
read 14:24
reading 28:22
real 27:18
really 6:18 10:6
29:16 30:15 41:23
47:9
reason 8:13 29:1
recall 23:18 29:23
40:10
receive 9:15 40:2
received 39:20
recertified 6:24
recollection 20:24
21:1
recommend 19:20
20:8
recommended 33:4


MAGNA
LEGAL SERVICES

record 4:7 5:4,15
  22:8,17 48:16
recorded 48:7
redesigned 12:19
reduce 17:13,18,19
reduced 28:24 29:2
  29:2 48:8
reduction 15:16,17
  15:18,20,20,21,23
  16:2,8,13 17:7,10
  25:13,16
reference 28:2
refresh 26:20
regardless 9:7
  45:17
regular 44:14
regularly 22:6
rehabilitation
  10:17
relative 48:14,15
relatively 31:10
relaxed 16:23
release 33:22,23
  36:10 39:21 41:6
  41:12,14 42:1
  47:3
releases 29:8 33:22
reliable 29:18
  36:14
rely 24:21 25:3
remember 12:14
  13:5
removed 32:6
repair 25:6,8,13,16
repeat 11:1
report 23:22 24:15
Reported 1:22
reporter 5:8,11
  32:11 34:18 48:4
  48:23
represent 4:11 42:8
reproduces 30:7
requested 21:9
  32:14 34:21 39:12
require 18:6 25:6,6
  25:9

requires 25:8
research 9:21
residency 6:19 7:6
  9:3,8,11,11,15,17
  10:1,4,9,24 11:14
  11:20 13:9
resident 10:19 11:9
  21:18,22,23
residents 7:7 10:13
  21:18 22:15
resolve 47:9
resort 18:2,16
respect 24:5
responses 5:10,12
rest 37:5,12 41:15
resting 30:3
result 18:11
results 15:1 18:19
resumed 28:9
return 45:10
returned 6:22 45:7
review 5:21 26:10
  33:12
reviewed 38:7
rid 34:4
right 5:19 14:16,24
  15:3 31:24 32:4
  37:19 47:15
rise 23:9
RN 39:14
Rome 23:9
room 1:16 7:21
  10:16 13:1,16
  15:17 16:21 17:8
rotate 7:9 10:8
rotated 10:20 13:4
rotations 10:3,23
  11:1,7,11 12:2,7
  13:10
ROTHSCHILD
  2:2
rough 25:20
routinely 27:23
RPR 1:14,23 48:3
rules 1:11 5:3
run 10:3,4,5,10,24

RUWAN 2:21
ruwan.perera@c...
  2:20

**S**

S 1:13,23 2:15 48:3
Sanfelippo 2:4 3:3
  4:5,10 20:8,21
  21:5,10 28:21
  32:9,15 34:16,22
  35:7,13,16,20
  38:22 39:6,8,13
  42:2 47:17
saw 13:4 21:2 26:20
says 6:12 23:10
  25:1,11,12 26:15
  38:18,19
scanned 5:23
scar 33:22
SCHADE 2:7
schedule 23:24
  24:2,2 38:17,18
scheduled 38:21
  40:5,6,11 47:4
scheduler 39:18
schedules 19:12
scheduling 19:15
  19:22 40:8
school 6:13 9:7
  11:21,24 12:20
science 12:1
screw 27:3
screws 27:3
seal 48:19
second 12:1 13:19
section 36:24
securing 44:6,22
sedation 16:20,23
see 7:19,19,20 15:3
  15:10 19:2,9,21
  19:21,23 21:16,17
  21:17 23:19,24
  24:2 28:24 29:5
  29:17 31:17 40:9
  45:10
seeing 19:20

seen 25:22 37:14
  39:16
send 40:18 45:19
sending 45:8,8,9,11
  45:22
senior 11:3,4,8
sensation 24:13
sent 15:6 45:5
sentence 40:9
series 5:5 7:24
SERVICES 1:23
session 38:7
set 38:22 48:18
severity 15:15
share 24:22
short 36:20
shorthand 48:4,23
shortly 16:9
shoulder 16:14,15
side 28:12
sign 21:19
signature 47:18
signed 23:10,12
significant 25:9
  41:20
similar 5:10 11:9
  27:22
single 11:17 13:7
sit 12:18
sits 8:9
six 9:20,21 10:11
  10:11
skin 15:22 16:1
small 7:4 25:12
  27:2,17,18 29:13
  30:5 31:24 33:2
  41:13,15
smattered 11:6
Smith 45:2
soft 26:24 27:5
soon 15:7
sorry 33:8 35:3
sort 7:22 9:14
  11:13,21 12:21
  20:1 28:13 30:24
  40:1 41:23 42:22

sounds 33:13
South 1:16 2:19
space 30:12
specialized 11:13
specialties 10:9
specialty 9:4,5 10:2
  10:11
specific 11:10,12
  13:3 22:21
specifically 11:23
  20:7 39:16 44:1
specifics 10:7 12:14
specified 48:12
spell 4:7
sphere 28:13
spoons 28:4
sports 7:8 11:5
spur 28:19
SS 48:1
Staley 2:15 3:5
  35:15 39:4 46:22
  47:2,15
start 14:2,9
started 6:4
starting 8:2 30:4
  34:23
starts 39:5
state 1:15 4:6 48:1
  48:4
States 1:1,12 9:9
Stateville 39:21
stating 39:21
status 29:14
stays 22:8
stenographically
  48:7
step 14:18 16:3
stepped 29:3
step-off 42:17
stick 43:19
stiff 29:8,15 36:2,6
  37:5,17 38:11
stiffer 37:18,22,23
stiffness 19:1 29:1
  29:5,15 30:1
  33:21 36:5 38:2



stop 8:24
straight 29:24
Street 2:2,7,13
stress 37:6
strong 20:24
stronger 17:2
structure 11:9
structured 10:24
structures 8:14
stuck 17:17 24:11
students 7:8 12:22
studies 13:22
subsequently 6:20
  40:12
subspecializes 8:19
subspecialties 11:4
subspecialty 8:13
  8:15 12:7
substandard 18:19
sued 4:23
suggest 33:15 34:10
Suite 2:2,7
summarize 38:8
support 14:4
supporting 13:22
  14:5
sure 5:4,15 13:12
  21:24 34:6 35:7
  38:19,19 43:1
surgeon 8:8,12,17
  8:17 43:17
surgeons 8:21
surgery 6:21 7:5,19
  8:19 9:16 10:12
  10:14,14,15,19,21
  10:21 12:3,18
  16:3,13 17:23
  18:1,6,10,17,22
  19:3 25:6,9 27:13
  38:17,21 39:23
  40:5,12,12,24
  45:16,17,21 47:3
surgical 10:15,21
  12:23 18:12 24:20
  24:24 25:2,11
  39:17 40:8 45:18

45:18
surrounding 36:11
suspecting 14:20
sustained 24:18
suture 26:14,23
  27:4,8,14,15,16
  27:22
swelling 37:1
sworn 4:2 48:6
symptomatic 31:4
system 8:10 15:5,7
  22:19 44:7

**T**

take 5:19 8:5,11,18
  8:21 13:6,20 14:8
  14:8,13,21,22
  26:19 29:21 37:6
  41:2
taken 1:13 15:6
  26:8 33:11
takes 8:10
talked 36:6,7,9
  41:4 47:8
talking 6:4 16:4
  20:14
teach 7:13
teaches 7:17
technician 46:14
tell 10:4 21:2 24:4
  26:12 29:11 32:22
  35:24 39:17
tend 11:1 27:13
  30:2
tended 12:6
tender 24:7
tendons 8:22 36:11
tends 8:12 11:6
  12:2
tenolysis 36:10,20
tentative 38:20,20
term 5:12 42:13
terms 37:9
testified 4:3
testify 48:6
testimony 4:19

48:11
Thank 5:2 42:9
  46:20 47:17
theirs 9:24
therapy 20:17,18
  20:19 29:17 31:22
  36:7
thing 13:17,19
  28:23 29:18 36:14
things 8:18 10:13
  10:22 12:12,13
  13:1 18:17 27:10
  27:24 29:20 42:16
think 6:9 17:12
  26:18 31:23,24
  34:15 35:5 37:17
  38:22 42:2 47:10
third 12:2 17:9
three 12:22 25:24
  26:1 35:13
tight 17:14
tightly 8:14
time 5:16 6:23
  10:18 12:5 14:6
  19:19 21:2 22:24
  37:14 42:6,9
  46:21 48:12
times 4:15,17 5:3
  17:22,24,24 25:24
  26:1 36:16
tip 24:8,9,9 28:6
  37:16
tiring 17:3
tissue 17:14,16 27:1
  27:5 33:22
title 7:3,12
today 26:21 42:9
  45:2
today's 5:22
tone 16:24
top 23:11 27:21,21
totally 18:8
touch 11:5
track 12:23,23
tracks 12:21,22
trailing 27:4

training 6:19 9:14
  11:13,17
transcribe 5:12
transcript 48:9,11
trauma 9:23 10:14
  11:3 14:9 31:1
  43:1
traumatic 38:2
treat 11:14 18:18
  18:22
treated 18:22 39:23
treating 4:16 32:2
  45:14,21
treatment 20:2,4,9
  20:10 22:7 33:15
  40:1 47:5
treatments 40:18
  47:12
trial 4:18 5:1
true 22:10 33:23
  48:10
truth 48:6
try 5:9 16:20 29:7
  29:16 36:8,19,20
trying 13:8 18:9
  29:5
twice 4:20 6:24
two 10:12 11:24
  12:1 27:16 29:16
  29:19 35:13 45:9
  47:10
tying 27:21
type 9:1 25:4
typical 13:14
typically 18:2
typo 25:12,13

**U**

Uh-huh 32:17 37:3
uh-huhs 5:10
UIC 7:3 22:5,5,21
  44:7
ultimately 31:21
  38:16 41:3
unconscious 14:7
undergo 16:24

40:11
understand 13:8
  23:23
unevenly 31:12
unevenness 31:12
unit 12:13
United 1:1,12 9:8
universally 9:19
University 6:13,20
  12:19 22:9,14,16
use 5:12 27:5,8,22
uses 22:19
usual 22:6 37:6
Usually 23:2

**V**

vague 18:7 20:6
  41:9
value 18:17
variable 31:3
vascular 10:14,20
verbal 5:9
verification 23:14
Vice 7:4
view 15:8
visit 21:15 22:24
  23:2,4,18 29:12
  32:19 34:24 40:22
volar 26:16 27:1
vs 1:5

**W**

Wabash 2:19
wait 15:1
waiting 45:22
Waive 47:18
walk 6:9 13:13,16
  17:10 30:8 45:1
walking 43:24
want 5:15 21:5
  26:24 33:5 34:6,7
  36:8,19 38:13
  42:14 43:13 45:15
  45:17 46:7
wanted 36:8
wants 36:19 47:9



wasn't 47:4,6
waves 25:18
way 10:9 25:11
  27:17 28:18 30:4
  30:11 34:3 35:8
  41:7,7 45:4,11,11
  45:19
ways 27:10 45:9
wear 31:12
wear-and-tear
  30:22 45:15
Weaver 1:3 4:12
  20:22 21:15 23:19
  24:5 31:22 32:19
  32:23 34:24 36:1
  38:7,17 40:1,18
  41:4
Wednesday 1:17
  8:1
week 19:8
weight 31:19
Weiss 22:16
Wendell 1:3 4:12
  20:22 21:15 32:19
  34:24
went 6:12
West 2:7,13
we'll 15:15
we're 11:16,18 16:4
  20:14 38:14,22
  44:12 45:16 47:7
we've 31:23 38:12
wheel 43:18
wheeled 43:24
WHEREOF 48:18
witness 4:24 20:7
  20:14 28:10 35:12
  39:2 41:10 47:18
  48:12,18
Wolcott 1:16
work 5:14 6:17,18
  11:2,3 13:23 15:2
  22:14,15,16
working 30:4
wouldn't 44:12
  47:7

wrist 31:7,14
writer 39:20
writing 48:8
written 21:20
wrong 5:12,14
  27:15 44:21

**X**

X 3:1
X-ray 14:21 19:2
  26:20 28:15 29:23
  30:11 31:11,17
  43:18,19 44:10,14
  44:17,22 45:1,2,5
  45:8,9,9,10,12,19
  45:22 46:1,3,4
X-rays 14:22 15:6,9
  26:7,10,19 33:11
  43:16 44:2 45:11
  45:17,19

**Y**

Yeah 23:13 26:2
  39:7 42:4
year 4:17 9:21 10:1
  10:10,23 11:2,2,5
  12:2,6,20 19:7
  25:18 37:14
years 9:18,19,19,20
  9:21 10:6 11:24
  12:1 38:12

**0**

084-001853 1:14,24
  48:24

**1**

1 3:8
1st 35:1
10,000 17:24
100 2:13 19:7,7
12,000 17:24
120 25:20
13th 2:13
14th 32:20
143 38:24

144 34:23 35:5,8,18
  39:2
145 35:6,8 39:2
146 35:3,9,21 39:2
  39:5
147 35:9 37:2 39:2
148 35:9,18 39:3
152 32:16
153 33:9
16-cv-09400 1:5
160 21:12 23:12
  25:1
161 26:5
1990 6:16
1996 6:22

**2**

2 3:9 21:6,7,11
20 10:6 24:12
20th 48:20
200 19:7
2017 23:18 32:20
2018 35:1
2019 1:17 48:20
21 3:9
222 2:7
25th 2:19
2900 2:7

**3**

3 1:17 3:10 32:11
  32:12
3-30 26:8
3:15 1:18
30 24:10
30th 23:18 24:5
312 2:4,9,14,20
32 3:10
321 2:2
333 2:19
34 3:11
39 3:12,13

**4**

4 3:3,11 34:18,19
  35:19

4:00 8:2
42 3:4
42-year-old 30:16
43 35:15,16
47 3:5
48 35:15

**5**

5 3:12 39:10
541-0151 2:4

**6**

6 3:8,13 39:10
60601 2:13
60604 2:19
60606 2:8
60654 2:3
641-3100 2:9

**7**

7th 38:20
714-3588 2:14

**8**

8:00 8:2
800 2:2
822-5612 2:20
835 1:16

**9**

99 6:23





EXHIBIT
Meja #1

# CURRIVULUM VITAE
## ALFONSO MEJIA, MD-MPH

**WORK ADDRESS**
University of Illinois at Chicago
Department of Orthopaedics (M/C 844)
835 South Wolcott – Suite 270
Chicago, IL 60612-7342
Phone 312-996-7161; Fax 312-996-9025

**PERSONAL**
Birth date: February 3, 1964
Citizenship: United States

**PROFESSIONAL TRAINING**
Kleinert Hand and Microsurgery Fellowship
Hand Surgery Fellowship
Thomas Wolff, MD, Fellowship Director
August 1, 1995 to September 30, 1996

University of Illinois Orthopaedic Surgery Program
Orthopaedic Surgery Residency
Riad Barmada, MD, Chairman
July 1, 1990 to June 30, 1995

**EDUCATION**
University of Illinois College of Medicine, Chicago, Illinois
M.D. Degree, June 1990

University of Illinois School of Public Health, Chicago, Illinois
M.P.H. in Epidemiology, September 1990

University of Michigan
Ann Arbor, Michigan
B.S. in Cellular and Molecular Biology, Microbiology, May 1986

**BOARD CERTIFICATION**
Recertification Combined Orthopaedic Surgery & Certificate of Added
Qualification in Hand Surgery  September  2017

Recertification Combined Orthopaedic Surgery & Certificate of Added
Qualification in Hand Surgery  September  2009

Certificate of Added Qualification in Hand Surgery; August 2000
Board Certified in Orthopaedic Surgery; July 1999
Diplomate of the National Board of Medical Examiners; 1991

**ACADEMIC AFFILIATIONS**

Associate Professor of Clinical Orthopedic Surgery
University of Illinois at Chicago
August 2014 to Present

Assistant Professor of Clinical Orthopedic Surgery
University of Illinois at Chicago
January 2002 to August 2014

Assistant Clinical Professor of Orthopedic Surgery
University of Illinois at Chicago
June 1998 to December 2001

Senior Attending Physician, Cook County Hospital, Department of Surgery,
Division of Orthopaedic Surgery, March 1998 to October 2000; September 2005
to September 2010

**PRESENTATIONS**

Edit

Alfonso Mejia, Gautam Malhotra, James Heaberlin, Mohammed Saad Malik,
Sapan H. Shah, Dan Rybalko. Local Flaps of the Hand. AAOS Orthopaedic Video
Theater. 2018

Hand and Elbow Injuries. Complex Distal Radius Fractures-New Innovations, 19th
Annual Chicago Trauma Symposium, August 17, 2018.

AAOS Annual Meeting Medical Students' Program, Friday, March 9, 2018, Morial
Convention Center, New Orleans, LA.

AAOS Annual Meeting, March 2018, Morial Convention Center, New Orleans, LA.

The Anesthetic Effectiveness of J-Tip Needle Free Injection System Prior to
Trigger Finger Injection: A Double Blinded, Randomized Clinical Trial
Kush P, Kyle McGillis, Mejia A
72nd ASSH Annual Meeting
San Francisco September 7-9, 2017

Complex Distal Radius Fractures – New Innovations
MEJIA, A
18TH Annual Chicago Trauma Symposium
July 7th 2017

Influence of Carpal Tunnel Pressure on Finger Kinematics: A Biomechanical
Study. *Farid Amirouche*, *Giovanni F. Solitro*, *Olivia Wang*, *Livia Bänninger*, *Kyle
MacGillis*, *Mark Gonzalez*, *Alfonso Mejia*
Orthopedic Research Society 2017 Annual meeting.

In Vivo Finger Abduction Comparison of Flexed and Extended Wrist and
Metacarpophalngeal Joints
ePoster presentation

Macgillis K, Le J, Rybalko D, Mejia A
71st Annual Meeting of the ASSH
September 29 October 1 2016
Austin Texas

Carpal Disaster: Damage Control and Solutions An Update
Mejia, A
17th Annual Chicago Trauma Symposium
Chicago, Illinois
August 18th, 2016

Shifting patterns of childhood injury: identifying those at risk as a step toward the
next wave of intervention Danikowicz R, Beck E Mejia A. American Orthopaedic
Association National Conference Seattle WA. June 2016

Hand Surgery Emergent and Urgent Conditions for the Primary Care Physician.
Presentation A Mejia. 2016 Midwest Clinical Conference Chicago
May 21 2016

Predictors of Radial Nerve Position on the Humerus: An MRI-Based Anatomical
Study Poster Presentation Wang O, Mejia A. American Association for Hand
Surgery Annual Meeting Jan 2016 Scottsdale Arizona.

Communicating with the Linguistically Different Patient: effective strategies and
techniques to optimize care Podium Presentation. Bridging the Gap Emerging
Health Issues in Underrepresented Minorities Mejia A. Chicago, Illinois
September 21, 2015

Child Abuse: An Orthopedic Approach. University of Illinois Orthopedic Surgery
Grand Rounds August 9, 2015

Anatomical MRI Study of the Radial Nerve Aranda C, Wang O, Moretti V, Mejia,
A, Mason B National Medical Association Annual Meeting Detroit MI
August 1 2015

Hand Embryology: Processes and Aberrations University of Illinois Orthopedic
Surgery Grand Rounds July 25, 2015

Assessment of Tendon Graft Rings for A2 and A4 Hand Pulley Reconstruction
Soulii L, Gonzalez M, Mejia A, Amirouche F, Solitro GF, Weisburger M

Podium Presentation
ASSH 70th Annual Meeting
Seattle, WA
September 11, 2015

Total Knee Arthroplasty in the Medicaid Population
Mossad D, Schwartz B, Schwartz A, Moretti V and and Mejia A
AAOS Annual Meeting
Las Vegas, Nevada

March 24-28, 2015

Orthopedics-Foot Disorders
Geriatric Updates and Board Review 2014
Mejia, A
University of Illinois at Chicago
Saturday October, 25,2014

Carpal Disaster: Damage Control and Solutions Mejia, A
16th Annual Chicago Trauma Symposium Chicago, Illinois
September 4th, 2014

Sub-Acute Scapholunate Injuries: Reconstruction Mejia, A
16th Annual Chicago Trauma Symposium Chicago, Illinois
September 4th, 2014

Flexor and Extensor Tendon Injuries of the Hand
University of Illinois Orthopedic Surgery Residency Lecture Mejia, A
University of Illinois Wednesday July 23, 2014 Chicago, Illinois

Radiation Exposure to the Orthopaedic surgeon and Efficacy of a Novel
Radiation Attenuation Product. Mayekar E and Mejia A. Southern Orthopaedic
Association Annual Meeting Beaver Creek Colorado. July 19, 2014

Tendon Transfers for Radial Nerve Palsy Mejia, A. University of Illinois
Orthopedic Surgery Grand Rounds. April 26, 2014

Distribution and Growth of Orthopedic Residency Positions in the United States
Moretti V, Mejia A, Mid America Orthopedic Association 32nd Annual Meeting
San Antonio, Texas, April 23-27, 2014

Flexor Tendon Reconstruction: an Update A Mejia. University of Illinois
Orthopedic Surgery Grand Rounds April 5, 2014.

Informed Consent a Case-Based Perspective. University of Illinois Orthopedic
Surgery Residency Program, March 19, 2014.

Evaluation of A2 and A4 hand pulley reconstruction using tendon graft rings.
Amirouche F, Soulii L, Gonzalez M, Solitro G, Mejia A, Weisburger M.
OMTEC, Chicago, IL, 2013.

Metacarpal & Phalangeal Fractures-New Plating Techniques Mejia, A
15th Annual Chicago Trauma Symposium August 1, 2013.

Olecranon Fracture Fixation Mejia, A. 15th Annual Chicago Trauma Symposium
August 1, 2013.

Radial Head Replacement in Complex Radial Head Fractures Mejia, A
15th Annual Chicago Trauma Symposium. August 1, 2013.

The Effect on Pullout Strength after Reinsertion of Non Self Tapping Screws in

Synthetic Bone. Ozoude G, Amirouche F, Mejia A. University of Illinois Senior Resident Thesis Presentation. University of Illinois at Chicago. June 22, 2013

Best Practices: Patient Safety and Quality Improvement Education for Orthopedic Resident, Mejia A. Council of Orthopedic Residency Directors Meeting American Orthopedic Association Annual Meeting Denver, Colorado. June 15, 2013

Distal Radius Fractures. Mejia A. Iowa Orthopaedic Society Spring Meeting Des Moines, Iowa April 12, 2013

Culturally Competent Care an Orthopaedist's Responsibility Iowa Orthopaedic Society. Mejia A. Spring Meeting Des Moines, Iowa April 12, 2013

Advances in Treatment of Dupuytren's Disease and In Dermal Substitution Mejia A. Orthopaedic Technologist Association of Illinois Fall Meeting Chicago, Illinois. October 27, 2012

Culturally Competent Care: An Orthopedic Responsibility. Grand Rounds Mejia A. University of Arkansas Department of Orthopedic Surgery Little Rock, Arkansas. September 26, 2012

Biomechanics of the Boutonniere Deformity. Grau L, Baydoun H, Chen K, Gonzalez , Mejia A, Amirouche F Annual Meeting of ASSH, Chicago IL. September 2-8, 2012

Metacarpal & Phalangeal Fractures- Latest Techniques and Pearls. Alfonso Mejia 14th Annual Chicago Trauma Symposium August 2, 2012

Carpal Scaphoid Fractures-Key Concepts Mark Gonzalez & Alfonso Mejia 14th Annual Chicago Trauma Symposium, August 2, 2012

Triangular Fibrocartilage Injuries: Focus on Foveal Detachment Mejia A. University of Illinois at Chicago, Grand Rounds April 7, 2012

Deactivation of Image-Averaging Increases Clarity in Dynamic Fluoroscopy Smiresh Shah and Alfonso Mejia Combined Meeting of the American and Australian Hand Societies Kauai, Hawaii March 22-25, 2012

Lead Free Attenuation Garment Smiresh Shah and Alfonso Mejia Combined Meeting of the American and Australian Hand Societies Kauai, Hawaii March 22-25, 2012

Falls Across the Continuum of Palliative Care American Association of Hospice and Palliative Care Annual Meeting M Malec, S Levine, A Mejia. Denver, CO March 8, 2012

Effective Communication for All Your Patients Instructional Course, AAOS Annual Meeting McLaurin, Mejia, Bolanos, Peterson. San Francisco, CA February 9, 2012

Radiation Attenuation to Surgeon's Hands Mejia, A, Shah S, Chen K
Scientific Exhibit, AAOS Annual Meeting San Francisco, CA
February, 2012

Flexor Tendon Injuries A Mejia Orthopedic Surgery Grand Rounds, University of
Illinois at Chicago December 3, 2011

Distal Radio-Ulnar Joint Prosthesis for Painful Ulnar Impingement after Ulnar
Head Resection: An Initial Experience Mejia A. Chicago Hand Society Chicago,
Illinois January 19, 2011.

Musculoskeletal Trauma: A Sports Perspective Mejia A, Hutchinson M
M2 CPC Medical Student Lecture, University of Illinois College of Medicine
September 30, 2010

Care of the Burned Hand Alfonso Mejia, MD-MPH. Orthopedic Surgery Grand
Rounds, University of Illinois at Chicago September 11, 2010

Informed Consent: A Case Based Approach Alfonso Mejia, MD-MPH and Paul
Price JD Stroger Hospital of Cook County, Department of Surgery Meeting
Chicago, Illinois, May 27, 2010

Informed Consent in Orthopaedic Surgery Instructional Course Lecture
Mejia A, Gonzalez M, Goldstein W, and Price P AAOS 2010 Annual
Meeting March 10-15 New Orleans, LA

The mechanics of Locking Plates in Midshaft Femur Fractures, Choi, K. W.,
Amirouche, F., Paik, C, Gonzalez, M., Mejia, A., ORS Annual meeting, 56th
Annual Meeting of the Orthopaedic Research Society, March 6 - 9 2010, New
Orleans, Louisiana, USA.

Informed Consent in Orthopedic Surgery Mejia A Grand Rapids Orthopedic
Surgery Residency Program, Grand Rounds Grand Rapids, Michigan
November 4, 2009

Distal Radius Fractures Evaluation and Treatment Mejia A. Grand Rapids
Orthopedic Surgery Residency Program, Grand Rounds Grand Rapids, Michigan
November 4, 2009

Cubital Tunnel Release: A Novel Technique Shah S, Baydoun H, Mejia A, and
Gonzalez M. Poster Presentation at AAOS 2010 Annual Meeting New Orleans,
LA

Musculoskeletal Trauma: A Sports Perspective Mejia A, Hutchinson M

M2 CPC Medical Student Lecture, University of Illinois College of Medicine
October 2, 2009

Distal Radius Fractures Mejia A. 11th Annual Chicago Trauma Symposium July 30, 2009

Carpal Tunnel Syndrome Evaluation and Treatment. Mejia A. Workers Compensation Meeting ATI Bolingbrook, Illinois, February 18, 2009

Informed Consent in Orthopaedic Surgery Mejia A. University of Illinois Orthopaedic Surgery Saturday Morning Conference Grand Rounds January 31, 2009

Functional Capacity Evaluation Mejia A. University of Illinois Orthopaedic Surgery Saturday Morning Conference Grand Rounds November 15, 2008

Avoiding Complications in Hand Surgery Mejia A. Illinois Association of Orthopaedic Surgeons, Fall Meeting Chicago, Illinois. September 27, 2008

Hand Surgery in a County Population: Hand Infections Mejia A. National Medical Association, Annual Meeting, Atlanta, Georgia July 28, 2008

Flexor Tendon Injuries Mejia A. National Medical Association, Annual Meeting, Atlanta, Georgia July 28, 2008

Triangular Fibrocartilage Injuries Mejia A. University of Illinois Orthopaedic Surgery Saturday Morning Conference Grand Rounds. January 5, 2008

Splinting and Casting of the Hand and Wrist Mejia A Orthopaedic Technologist Association of Illinois Fall Meeting Chicago, Illinois. November 17 2007

Proximal Inter-phalangeal Joint Injuries Mejia A. University of Illinois Orthopaedic Surgery Saturday Morning Conference Grand Rounds September 8, 2007

Tendon Injuries Review for Part I of Orthopedics Boards Alfonso Mejia, MD-MPH Osler Institute Review. July 22, 2006 Naperville, Illinois

Hand Fractures Review for Part I of Orthopedics Boards. Alfonso Mejia, MD-MPH Osler Institute Review. July 22, 2006 Naperville, Illinois

Carpal Injuires Review for Part I of Orthopedics Boards. Alfonso Mejia, MD-MPH Osler Institute Review. July 22, 2006 Naperville, Illinois.

Common Conditions in Hand Surgery. Mejia A. Cermak Health Services Grand Rounds January 17, 2006

Musculoskeletal Infections in Pediatric Patients Mejia A. Pediatric Grand Rounds, Illinois Masonic Hospital December 7, 2005

Fragment Specific Fracture Fixation of Distal Radius Fractures Trimed Distal Radius Course Mejia A Valencia, Spain. November 4, 2005

Shock for the Tactical Officer.

Mejia A
TEMS training day for SSERT
Country Club Hills PD, Illinois
September 27, 2004

Hydration for the Tactical Officer Mejia A
TEMS conference of ITOA
Oakbrook, Illinois
May 2004

Biological Weapons: a Primer for Tactical Emergency Medical Support Mejia
A. Illinois Tactical Officers Association Annual Meeting Oakbrook, Illinois.
November 23, 2003.

Injuries of the Upper Extremity Mejia A. Midwest Clinical Conference, Berkheiser
Lecture, Chicago Medical Society Chicago, Illinois. March 2003

Cold Injury for the Tactical Officer.Mejia A. TEMS training day, Tinley Park Police
Department Tinley Park, Illinois. December 16, 2002

Complex Hand Fractures. Mark Gonzalez MD, J Fernandez MD, Alfonso Mejia MD
American Society for Surgery of the Hand. Cancun, Mexico January 2002

Common Hand Problems. Mejia A. Midwest Clinical Conference, Berkheiser
Lecture, Chicago Medical Society February 2001

Agee Endoscopic Carpal Tunnel Release Course. Alfonso Mejia MD and Mark
Gonzalez MD Rosemont, Illinois

Hand Fractures Instructional Course. Mark Gonzalez MD, Alfonso Mejia MD, and
Norman Weinzweig MD

Annual Meeting of The American Hand Association. Scottsdale, Arizona
January 1998

Treatment of Distal Radius Fractures with the Ulson Device. Alfonso Mejia MD,
Amit Gupta MD, Thomas Wolff MD, and Louis Scheker MD Presented at Kleinert
Hand Research Meeting, September 1996

Exhaled Pentane as a Marker for Free Flap Loss in a Rat Model Alfonso Mejia
MD and Mark Gonzalez MD. University of Illinois Orthopaedic Surgery Senior
Thesis June 1995

Posterior Iliopsoas Transfer for Hip Dysplasia in Myeolomeningocele
Alfonso Mejia MD and Edward Abraham MD. Annual Meeting of the
American Academy of Orthopaedic Surgeons New Orleans, Louisiana
February 1994

**PUBLICATIONS:**

Mejia A., Bhimani AD, Macrinici V, Ghelani S, Huang EY, Khan NI, Saw TA, Orthopedics. 2018 Sep 17:1-6. Delving Deeper Into Informed Consent: Legal and Ethical Dilemmas of Emergency Consent, Surrogate Consent, and Intraoperative Consultation.

Mejia A, Solitro G, Gonzalez M. Parekh A, Gonzalez E, Amirouche F. Pullout Strength After Multiple Reinsertions in Radial Bone Fixation. Hand (N.Y). 2018, September.

Mejia A, MacGillis KJ, Heaberlin. Clinical Decision Making for a Soft Tissue Hand Mass: When and How to Biopsy. J. Hand Surg. Am.2018, June 13.

Mejia A, Solitro G, Gonzalez E, et al. (2018) Pullout Strength After Multiple Reinsertions in Radial Bone Fixation. Hand (New York, N.Y.).

Mejia A, Mayekar EM, Bayrak A, Shah S. Radiation Exposure to the Orthopaedic Surgeon and Efficacy of a Novel Radiation Attenuation Product. J. Surg Orthopaedic Advance 2017. Winter;26(6):246-249.

Radiation Exposure to the Orhopaedic Surgeon and Efficacy of a Novel Radiation Attenuation Product. Journal of Surgical Orthopaedic Advances. Bayrak A, Shah S, Mayekar E, Mejia A. 2016

Hand Compression Neuropathy: An Assessment Guide
MacGillis K, Mejia A, Siemionov M. Journal of Family Practice. Vol65 No 7 p462-471 July 2016

Comparison of Potential Nerve Scar Agents in the Rat Model
Mossad D, Shah S, Amirouche F, Solitro G, Helder C, Mejia A, Gonzalez M, Kerns J. Journal of Reconstructive Microsurgery Open May 2016

Falling Across the Palliative Care Continuum: Assessment, Prevention, and Management of Consequences. Monica Malec, Stacie Levine, and Alfonso Mejia Journal of Pain and Symptom Management, Volume 43, Issue 2 (Fevruary, 2012), p.357.

Ligamentous and Capsular Injuries to the Metacarpophalangeal Joints of the Hand. Smiresh Shah MD, Fernando Techy MD, Alfonso Mejia, MD-MPH, and Mark Gonzalez MD-MEng. Journal of Surgical Orthopaedic Advances Fall 2012 Volume 21 Number 3, September 2012, p141-146

**BOOK REVIEW:**

AAOS, AEMT: Advanced Emergency Care and Transportation of the Sick and Injured, Third Edition, May 15, 2018.

AAOS, Nancy Caroline's Emergency Care in the Streets, 8th Edition. August 15, 2017

MESPLIE, Hand and Wrist Rehabilitation: Theoretical Aspects and Practical Consequences, Doody Publishing, January 27, 2016

TRAIL, Disorders of the Hand - Volume 1: Hand Injuries, Doody Publishing, January 21, 2016

CHUNG, Essentials of Hand Surgery, Doody Publishing, January 21, 2016.

Cheema, Complex Injurie of the Hand, Doody Publishing, August 2014

Ultrasound-guided Management of Hand Fractures, Orthopedics, Karina Paulius, Pirko Maguina, and Alfonso Mejia Volume 31 Number 12 December 2008

Upper Extremity Dog Bite Wounds and Infections. J Surg Orthop Adv (US), Winter 2005 14(4) p181-184. Bach G, Shah NA, Mejia A, *et al*

Surgical Management of Hand and Upper Extremity Infections in Children. *The Growing Hand,* Harcourt Brace Press, 2000. Chapter 99 by Alfonso Mejia MD, Amit Gupta MD, Edward Mah MD

Isolation of the Beta-Subunit of the Chloroplast H+ Translocating ATPase of Spinach Thylokoids. Ingrid Apel BS, Alfonso Mejia, Wayne Frasch PhD. Proceedings of the VII International Congress on Photosynthesis: Vol III, No 1, 1987

**ADMINISTRATIVE**

International Paramedic Registry
United States of America Advisory Committee
American Academy of Orthopedic Surgeons Representative
August 2017 to Present

AAOS Board of Counselors
Illinois Representative
March 2017 to present

American Association of Latino Orthopaedic Surgeons (AALOS) President
2017 - present

American Association of Latino Orthopaedic Surgeons (AALOS) – Secretary
2013 – 2017

AOA
Annual Meeting Abstract Review Committee
2015 to 2016

President
Illinois Association of Orthopedic Surgeons
December 2014 to December 2016

AAOS Council on Education
Mastery Model for Attending Education

Chair Work Group
December 2015 to present

AAOS, Diversity Advisory Board Liaison to the Council on Education
March 2014 to 2018

Council of Orthopaedic Residency Directors
Nominating Committee
Member
2013 to 2014

M3/M4 Curriculum Committee
University of Illinois at Chicago
January 2013

AAOS, Washington Health Policy Fellows Selection Committee,
2013

President-Elect
Illinois Association of Orthopedic Surgeons
2012-2013

Committee on CME
Chicago Medical Society
2012-2013

Committee on Public Health
Chicago Medical Society
2012-2013

Committee on Advocacy
Chicago Medical Society
2012-2013

Alternate Delegate
Illinois State Medical Society
2012-2013

Alternate Councilor
Chicago Medical Society
2012-2014

Vice Head, Department of Orthopedic Surgery
University of Illinois at Chicago
June 2011 to present

Vice President, Illinois Association of Orthopedic Surgeons, 2011-2012

AAOS, Washington Health Policy Fellows Selection Committee,
2011

University of Illinois Faculty Advancement Committee Orthopedic Department Liaison, 2011 to Present

Secretary, Illinois Association of Orthopaedic Surgeons, October 2010 to 2011

Diversity Advisory Board Liaison to the Council on Advocacy, AAOS, June 2010 to March 2014

Advisory Committee, Orthopaedic Surgery Department, University of Illinois at Chicago, November 2009 to Present

Curriculum Committee, College of Medicine, University of Illinois at Chicago, September 2009-Present

Regional Representative, Illinois Association of Orthopaedic Surgeons, September 2008 to September 2010

Program Director, University of Illinois Orthopaedic Surgery Residency, March 2007 to Present

Committee on Public Health, Chicago Medical Society, 2007 – 2009

Committee on Continuing Medical Education, Chicago Medical Society, 2007 – 2009

University of Illinois, Committee on Continuing Medical Education, August 2007 – Present

American Academy of Orthopedic Surgeons, Exhibits Committee Member, 2006 to 2010

General Surgery Internal Review, University of Illinois GME, December, 2005

Associate Program Director, University of Illinois Orthopedic Surgery Residency, January 2002 to February 2007

University of Illinois, Committee, Graduate Medical Education, January 2002 to Present

University of Illinois Residency Selection Committee, September 1998 to Present

Pharmacy and Therapeutic Committee at St. Francis Hospital, Blue Island, IL, January 1998 to December 2001

Surgery Quality of Care Committee at St. Francis Hospital, Blue Island, IL, January 1998 to December 2001

Executive Committee, Pronger-Smith Medical Care, January 2000 to December 2001

**LANGUAGES**
Spanish (fluent)

**VOLUNTEER WORK**
Shriners Silver Service (April 1994, 1995, 1997, 1998). Worked as member of a pediatric orthopaedic surgery team in Buga, Columbia providing free medical care to disabled children

Uzbekistan (May 1995). Evaluated orthopaedic surgery department at the Tashme II Hospital in Tashkent Uzbekistan as a member of a joint team from the University of Illinois and USAID

Galens Medical Society, (September 1986 to June 1987). Founder and President. A medical student service organization modeled after a similar organization at the University of Michigan devoted to raising funds and awareness for disabled and disadvantaged children

University of Michigan Hospitals (1985). Volunteer on the Hydrotherapy Unit,

University of Michigan Hospitals (1984). Volunteer on Orthopaedic Surgery floor

Amigos de las Americas (May to August 1983). Assistant Project Director. Worked directly with Peruvian Ministry of Public Health in the implementation of a dental hygiene and eyeglass distribution program in Huaraz, Peru

Amigos de las Americas (May to August 1982). Route Leader. Directed, supplied and coordinated a team of volunteers in a rabies control program in Santo Domingo de los Colorados, Ecuador

Amigos de las Americas (May to August 1981). Volunteer. Worked in child inoculation program in Santo Domingo, Dominican Republic

Amigos de las Americas (May to August 1980). Volunteer. Worked in community hygiene program in rural area of Oaxaca, Mexico

**AWARDS**
Departmental Faculty of the Year (Teaching)

University of Illinois Department of Orthopedic Surgery 2013

Top Doctor in Hand Surgery, Regional; Castle and Connolly, 2011-2014

Intern of the Year, University of Illinois Department of Surgery, 1990

United Way and University of Illinois College of Medicine at Urbana-Champaign Service Award (for work on Galens Medical Society), 1987

Amigos de las Americas Service Award 1981, 1982, 1983

National Merit Scholar Finalist, 1982

Ecuador Ministry of Public Health Recognition Award (for work on rabies control program in the state of Pichincha, Ecuador), 1982

## PROFESSIONAL AFFILIATIONS

American Society of Hand Surgery July 2015 to Present

American Association of Hand Surgery 2014 to present

Mid America Orthopedic Association 2014 to present

Chicago Hand Society, January 2011 to present

American Orthopaedic Association, June 2010 to present

Illinois Association of Orthopaedic Surgeons, 2006 to present

American Academy of Orthopedic Surgeons, Fellow, 1999 to present

Illinois State Medical Society, Member, 1996 to present

Chicago Medical Society, Member, 1996 to present

American Academy of Orthopaedic Surgeons, Candidate Member, 1991 to 1999

## LAW ENFORCEMENT

CONTOMS certification
U.S. Park Police
Alexandria, Virginia
October 15-19, 2012

Basic SWAT School
Instructor, Tactical Emergency Medical Support
June to August 2012
South Suburban Emergency Response Team
NEMRT Accredited

Basic SWAT School
Instructor, Tactical Emergency Medical Support
July to September 2011
South Suburban Emergency Response Team
NEMRT Accredited

Basic SWAT School
Swat Officer Certification
July to September 2010
South Suburban Emergency Response Team
NEMRT Accredited

South Suburban Emergency Response Team
Member February 2000 to Present

Tinley Park Police Department
Reserve Police Officer
November 2001 to Present

HK TEMS Course Basic
Chantilly Virginia
April 16-20 2001

HK TEMS Course Advanced
Chantilly Virginia
November 11-15, 2003

Law Enforcement Officer
Part Time
Illinois Law Enforcement Training and Standards Board Certificate
February 22, 2003

STAR Program
NMERT
Crestwood Illinois
March 09 2002 to March 09 2003

Illinois Tactical Officers Association Member
November 2000 to Present

Posen Police Department
Reserve Officer
Rank Corporal
July 28th, 2015 to Present

Lynwood Police Department
Reserve Officer

Rank Patrolman
Assigned to SSERT as TEMS Physician
January 2013 to September 2014

Tinley Park Police Department
Part Time Reserve Officer
March 2002 to 2013

Calumet Park Police Department
Part Time Auxiliary Police Officer
March 2000 to February 2002



**UNIVERSITY OF ILLINOIS**
Hospital & Health Sciences System
Changing medicine. For good.

| | |
|---|---|
| Patient Name: WEAVER, WENDELL | MRN: 31391055 |
| Sex:MALE    DOB: 7/20/1976 | Age: 42 years |
| Discharge Date n/a | Financial Number: n/a |

---

*Orthopedic Notes*

Result Type:
Result Date:
Result Status:
Performed Information:
Signed Information:

Orthopedic Note
3/30/2017 00:00 CDT
Auth (Verified)
Mejia MD,Alfonso (3/30/2017 16:52 CDT)
Mejia MD,Alfonso (4/20/2017 13:56 CDT)

**Clinic Progress Note- ATTENDING:.Alfonso Mejia, MD**

                    University of Illinois Hospital & Health Science Systems

CLINIC NOTE                          PATIENT:  WEAVER, WENDELL

DICT:   KUSHAL PATEL, MD             MRN:  031391055
ATTNG:  ALFONSO MEJIA, MD            DATE OF SERVICE:  03/30/2017

DATE OF BIRTH:  07/20/1976

CHIEF COMPLAINT:  Left small finger and right index finger pain.

HISTORY OF PRESENT ILLNESS:  This is a 40-year-old male, who is here for
evaluation of his right index finger pain when bending it and left small
finger stiffness.

In regard to his left small finger stiffness, he sustained a basketball
injury, where he jammed his finger.  It was dislocated at the PIP joint,
however, it took 3 weeks for it to be imaged and then intervention via surgery
was taking place.  The injury occurred on August 5, 2015, and surgery was
August 29, 2015.  He had a couple of sessions of occupational therapy and then
he has continued to have stiffness without improvement as well as pain at the
DIP and PIP joint.

In regard to his right index finger, he has pain at the distal aspect of his
digit.  He just woke up and could not bend it at the DIP without pain.  Denies
any numbness or tingling in the right index finger.

PAST MEDICAL HISTORY:  Hypertension, hyperlipidemia.

PAST SURGICAL HISTORY:  Left small finger PIP reduction and repair of volar
plate.

University of Illinois Hospital & Health Sciences System

                    Page 160 of 354

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
CST



**160**



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
———— Changing medicine. For good. ————

Patient Name: WEAVER, WENDELL    MRN: 31391055
Sex: MALE    DOB: 7/20/1976    Age: 42 years
Discharge Date n/a    Financial Number: n/a

## Orthopedic Notes

MEDICATIONS: Amlodipine, carvedilol, hydrochlorothiazide, Zocor, and Pepcid.

ALLERGIES: No known drug allergies.

SOCIAL HISTORY: Denies alcohol, tobacco, illicit drug use. Patient is incarcerated.

FAMILY HISTORY: Noncontributory.

REVIEW OF SYSTEMS: Constitutional: Denies sleeping, weight gain, or fatigue. Eyes: No eye pain, visual changes, or double vision. Head, ear, nose, and throat: Denies any ear pain, drainage, sinus infection, hearing loss or change. Cardiovascular: Denies any chest pain, palpitations, heart murmurs, or fainting. Respiratory: Denies shortness of breath, wheezing, or persistent cough. Gastrointestinal: Denies any abdominal pain, nausea, vomiting, or diarrhea. Genitourinary: Denies any blood in urine, dysuria, or urinary frequency. Skin: Denies any rashes, lesions, or bumps. Hematologic: Denies any easy bruisability, bleeding disorders, or sickle cell. Psych: Denies any anxiety, depression, hallucinations. Allergic: Denies any food allergies, abnormal reactions, or rashes.

PHYSICAL EXAMINATION: Alert and oriented x3, in no acute distress. Nonlabored respiration. Cooperative. Normal affect. He has a regular rate and rhythm palpable by radial pulse. Brisk capillary refill in all digits. He has full range of motion of his wrist and no pain. He has pain of his right index finger over the DIP joint. A cyst is palpable over the dorsal DIP. He has tenderness to palpation and limits his DIP flexion. Left small finger reveals tenderness to palpation at the DIP and PIP joint. He has DIP motion from 0-30 degrees. PIP is stuck in flexion of about 20 degrees with almost zero motion. Sensation is intact to light touch over each digit. Brisk capillary refill is noted.

IMAGING: X-ray imaging of the right index finger today shows some degenerative changes of the DIP with osteophyte formation. A small soft tissue mass is appreciated over the PIP joint. No bony tumors noted. X-ray imaging of the left small finger reveals advanced degenerative changes at the PIP joint and DIP joint. There is a suture anchor at the proximal aspect of the middle phalanx. A malunion of the volar plate is appreciated.

ASSESSMENT/PLAN: This is a 40-year-old male with 2 issues:

University of Illinois Hospital & Health Sciences System

Report Request ID: 37278769
Print Date/Time: 1/8/2019 15:04
CST

Page 161 of 354

161



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
——— Changing medicine. For good. ———

Patient Name: WEAVER, WENDELL          MRN: 31391055
Sex: MALE          DOB: 7/20/1976          Age: 42 years
Discharge Date n/a          Financial Number: n/a

*Orthopedic Notes*

1. He has left small finger posttraumatic arthritis of the proximal
   interphalangeal joint and after a likely proximal interphalangeal dorsal
   dislocation as well as distal interphalangeal joint arthritis. He has 2
   options, which include occupational therapy and a proximal
   interphalangeal plus-minus distal interphalangeal fusion depending on the
   severity of his pain. We discussed the pros and cons and the patient
   wished to pursue a course of occupational therapy to see if he can
   improve his range of motion at the proximal interphalangeal and distal
   interphalangeal.

2. For the right index finger, we discussed options of leaving it alone or
   excising this likely mucous cyst. The patient wished to proceed with the
   excision of mucous cyst as this affects his activities of daily living
   and causes him significant pain and discomfort. The patient consented to
   the excision of right index finger distal interphalangeal mucous cyst.
   Risks, benefits, and alternatives were discussed with the patient.

3. The patient was not given the surgical date, however, it was written down
   in the paperwork to be April 14, 2017. This will be an outpatient
   surgery. The patient understood and agreed with the plan. Dr. Mejia saw
   and evaluated the patient and agrees with the above-mentioned plan.

DD:  03/30/2017 16:52:48
DT:  03/30/2017 17:25:11
KP/MedQ
JOB:  113523/736790290

I was present with resident during the history and exam. I discussed the case with the resident and agree with the findings and plan as
documented in the resident's note.

University of Illinois Hospital & Health Sciences System

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
CST

Page 162 of 354

162



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
—— Changing medicine. For good. ——

Patient Name: WEAVER, WENDELL          MRN: 31391055
Sex:MALE          DOB: 7/20/1976          Age: 42 years
Discharge Date n/a          Financial Number: n/a

---

## Orthopedic Notes

Result Type:
Result Date:
Result Status:
Performed Information:
Signed Information:

Orthopedic Note
12/14/2017 00:00 CST
Auth (Verified)
Mejia MD,Alfonso (12/14/2017 13:04 CST)
Mejia MD,Alfonso (12/21/2017 16:08 CST)

Clinic Progress Note- ATTENDING:.Alfonso Mejia, MD

University of Illinois Hospital & Health Science Systems

CLINIC NOTE                          PATIENT: WEAVER, WENDELL

DICT:   KARINA KATCHKO, MD           MRN: 031391055
ATTNG:  ALFONSO MEJIA, MD            DATE OF SERVICE:  12/14/2017

DATE OF BIRTH:  07/20/1976

CHIEF COMPLAINT:  Followup of right index finger dorsal mass excision.  As
well as left small finger pain.

HISTORY OF PRESENT ILLNESS:  Mr. Wendell Weaver is a 41-year-old male who is
here for followup of a right index finger mass removal performed on
04/14/2017.  The official pathology report came back saying that the
fibrocartilaginous tissue was consistent with an osteophyte.  The patient
reports that he has minimal issues with his right index finger, he feels that
it is doing well.

His main concern at this time is that he has left small finger pain.  The
patient reports that in 2015, he dislocated the PIP of this finger, and they
were unable to perform a closed reduction, so he underwent an open reduction
and pinning of his PIP dislocation, at Saint Joseph's Hospital.  The patient
reports ever since this time, he has had small finger pain primarily at the
site of the PIP itself as well as at the MCP joint.

REVIEW OF SYSTEMS:  Negative for nausea, vomiting, fever, chills.

PHYSICAL EXAMINATION:  Patient is alert and oriented x3, in no acute distress.
He has nonlabored respirations.  He appears his stated age.  He is slightly
overweight.  The patient has some tenderness to palpation at the dorsoulnar

University of Illinois Hospital & Health Sciences System

Page 152 of 354

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
CST



EXHIBIT
5

152



| | |
|---|---|
| **UNIVERSITY OF ILLINOIS** Hospital & Health Sciences System ——— Changing medicine. For good. ——— | Patient Name: WEAVER, WENDELL    MRN: 31391055 |
| | Sex: MALE    DOB: 7/20/1976    Age: 42 years |
| | Discharge Date n/a    Financial Number: n/a |

---

## *Orthopedic Notes*

aspect of his MCP of the small finger. He does not have any tenderness to palpation at the PIP joint itself, or the A1 pulley. He is unable to make a full fist, given the stiffness at his PIP joint. Some subtle left small finger extensor tendon subluxation is appreciated during range of motion. His sensation is intact to light touch in the median, radial, and ulnar nerve root distributions. His AIN, PIN, and ulnar motor nerve functions are intact.

IMAGING: X-rays were reviewed during the clinic today, they demonstrate some significant posttraumatic arthritis of the PIP joint.

ASSESSMENT AND PLAN: Mr. Wendell Weaver is a 41-year-old male, here for followup of right index finger dorsal mass excision as well as for left small finger pain, status post a PIP dislocation and open reduction.

The patient, at this time, we feel that he has significant arthritis of the PIP joint, and that there is unlikely anything that could be done to help him regain full range of motion of this finger. We recommend that he have a fusion of this PIP joint at some point. The patient is not sure that he would like to schedule something like this, as it would mean a permanent loss of range of motion at this joint.

He can follow up with us on an as-needed basis if he decides he would like to have the fusion.

The patient vocalized an understanding of the above assessment and plan. All his questions were answered during his visit today.

Dr. Mejia was present for the evaluation of this patient and agrees with the above plan.


DD: 12/14/2017 13:04:07
DT: 12/14/2017 13:43:01
KK/MedQ
JOB: 432911/769218868
329~wEśQ

I was present with resident during the history and exam. I discussed the case with the resident and agree with the findings and plan as documented in the resident's note.



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
—— Changing medicine. For good. ——

Patient Name: WEAVER, WENDELL          MRN: 31391055
Sex:MALE          DOB: 7/20/1976          Age: 42 years
Discharge Date  n/a          Financial Number:  n/a

*Orthopedic Notes*

Alfonso Mejia, MD, MPH

*Electronically Signed on 12/21/17 04:08 PM*

Mejia MD, Alfonso

University of Illinois Hospital & Health Sciences System

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
CST

Page 154 of 354

154

 UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
— Changing medicine. For good. —

Patient Name: WEAVER, WENDELL          MRN: 31391055
Sex: MALE          DOB: 7/20/1976          Age: 42 years
Discharge Date  n/a                    Financial Number:  n/a

---

## Orthopedic Notes

Result Type:                          Orthopedic Note
Result Date:                          11/1/2018 10:07 CDT
Result Status:                        Auth (Verified)
Performed Information:                Sabella RN, Dulce (11/27/2018 10:24 CST)
Signed Information:                   Sabella RN, Dulce (11/27/2018 10:24 CST)

RN meet with patient face to face. Surgery Folder was given guards and faxed to Barbara Johnson at 312-996-1207

The folder includes; *Preparing for Surgery: Taking Your Medication,* and a copy of the *Preparing for Surgery: Taking Your Medication.* RN advised patient to stop any aspirin/aspirin products, NSAIDS, and/or anit-coagulants one week prior to surgery. A copy of the *Pre-Surgery/ Pre-Procedure Shower Instructions* and bottle of Scrub Stat 4% soap were provided to the guards. See under patient education for additional handout given to the patient.

In addition, Barbara Johnson was given a Medical Clearance form for inmate to be evaluated by facility MD. All materials above were faxed to Barbara Johnson including post-op appointment.

Faxed medical clearance form, clinical notes and itineraray to Barb Johnson.

Surgery:  12/07/2018 Left small finger capsilar release and tenolysis 26445

Dx:  **Left small finger PIP joint stifness M24.521, M79.645**

Attending Physician: Dr. Mejia

APEC appt: 11/19/2018 115pm

Clearances:  **Medical clearance needed**

pre-op testing ordered: n/a

Total Face to Face time: **10min**

PCP at Statesville

Patient telephone: **815-727-3607**

**Dulce Sabella RN**
**Staff Nurse**
University of Illinois Hospital & Health Sciences System
Department of Orthopedics

University of Illinois Hospital & Health Sciences System

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
CST

Page 144 of 354


EXHIBIT
4

144



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
Changing medicine. For good.

Patient Name: WEAVER, WENDELL    MRN: 31391055
Sex: MALE        DOB: 7/20/1976      Age: 42 years
Discharge Date  n/a              Financial Number: n/a

*Orthopedic Notes*

**Office:** 312-413-3224
**Fax:** 312-996-1207

*Electronically Signed on 11/27/18 10:24 AM*

Sabella RN, Dulce

University of Illinois Hospital & Health Sciences System

Report Request ID: 37278769
Print Date/Time: 1/8/2019 15:04
CST

Page 145 of 354

145



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
———— Changing medicine. For good ————

Patient Name: WEAVER, WENDELL          MRN: 31391055
Sex:MALE          DOB: 7/20/1976          Age:  42 years
Discharge Date  n/a          Financial Number:  n/a

---

## Orthopedic Notes

Result Type:                Orthopedic Note
Result Date:                11/9/2018 11:59 CST
Result Status:              Auth (Verified)
Performed Information:      Collinet RN,Lorna (11/9/2018 12:25 CST)
Signed Information:        Collinet RN,Lorna (11/9/2018 12:25 CST)

This writer received a message from Stateville, stating that the capsular release was denied for this patient.
To please cancel the surgery.  He would be treated onsite.
Gedminas, Amanda [mailto:Amanda.Gedminas@illinois.gov]

| Wendell, Weaver | 3139105 5 | 7/20/1976 | 815-727-3L02 *INMATE | Left small finger capsular release and tenolysis | A M | | | | 9G |
|---|---|---|---|---|---|---|---|---|---|

*Electronically Signed on 11/09/18 12:25 PM*

---

*Collinet RN, Lorna*

---



University of Illinois Hospital & Health Sciences System

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
                              CST

Page 143 of 354

**143**

 UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
———— Changing medicine. For good. ————

Patient Name: WEAVER, WENDELL          MRN: 31391055
Sex: MALE          DOB: 7/20/1976          Age: 42 years
Discharge Date n/a          Financial Number: n/a

---

## Orthopedic Notes

Result Type:
Result Date:
Result Status:
Performed Information:

Signed Information:

Orthopedic Note
11/1/2018 00:00 CDT
Modified
Mejia MD,Alfonso (12/11/2018 10:40 CST); Mejia MD,
Alfonso (11/2/2018 08:34 CDT)
Mejia MD,Alfonso (12/11/2018 10:40 CST); Mejia MD,
Alfonso (12/11/2018 10:39 CST)

**Addendum by Mejia MD, Alfonso on December 11, 2018 10:40 AM**
\*Insert Addendum Here:
I was present with resident during the history and exam. I discussed the case with the resident and agree with the findings and plan as documented in the resident's note.

*Electronically Signed on 12/11/18 10:40 AM*

---
*Mejia MD, Alfonso*

**Clinic Progress Note- ATTENDING:.Alfonso Mejia, MD**

                University of Illinois Hospital & Health Science Systems

CLINIC NOTE                          PATIENT:  WEAVER, WENDELL

DICT:   ARASH REZAEI, MD             MRN:  031391055
ATTNG:  ALFONSO MEJIA, MD            DATE OF SERVICE:  11/01/2018

DATE OF BIRTH:  07/20/1976

CHIEF COMPLAINT:  Left small finger pain.

HISTORY OF PRESENT ILLNESS:  Mr. Wendell is a 42-year-old male, presents to
our office for the followup of left small finger pain.  The patient was last
seen in our office on 12/14/2017.  The patient reports he had an injury to the
left small finger in 2015 for which he underwent an open reduction and
internal fixation with pin placement.  Since the day of the surgery, he has
not been able to fully bend his left small finger.  He has not been able to
make a full fist.  He has some difficulty with daily activities including
lifting objects, pushing, and pulling.  The patient endorses he has had
physical therapy for the same issue, but he believes physical therapy did not
help relieve the symptoms significantly.

University of Illinois Hospital & Health Sciences System

Page 146 of 354

Report Request ID: 37278769
Print Date/Time: 1/8/2019 15:04
CST



EXHIBIT
6

146



UNIVERSITY OF ILLINOIS
Hospital & Health Sciences System
——— Changing medicine, for good. ———

| | |
|---|---|
| Patient Name: WEAVER, WENDELL | MRN: 31391055 |
| Sex:MALE DOB: 7/20/1976 | Age: 42 years |
| Discharge Date n/a | Financial Number: n/a |

---

### Orthopedic Notes

PAST MEDICAL HISTORY: Hypertension, hyperlipidemia, and cardiac arrhythmia.

MEDICATIONS: Losartan and flecainide.

ALLERGIES: No known drug allergies.

PAST SURGICAL HISTORY: Left small finger PIP, ORIF in 2015.

SOCIAL HISTORY: The patient denied tobacco, alcohol, and drug use.

REVIEW OF SYSTEMS: The patient denies fever, chills, nausea, vomiting, diarrhea, constipation, chest pain, shortness of breath, headache, visual changes, hearing loss, easy bleeding, easy bruising, heat or cold intolerance, hematuria hemoptysis, and hematochezia.

PHYSICAL EXAMINATION: General: The patient is alert and oriented x3, not in acute distress, cooperative with the examiner. Mood and affect are appropriate. HEENT: Head is normocephalic, atraumatic. Neck: Supple. No lymphadenopathy. Chest: Nontender to palpation. Nonlabored breathing. Heart: Regular rate and rhythm based on peripheral pulses. Abdomen: Soft, nontender, and nondistended. Musculoskeletal: Exam of the left upper extremity indicates there is mild swelling over the MCP joint of the left small finger. There is some tenderness to palpation at the dorsoulnar aspect of the MCP joint of the small finger. He has mild tenderness to palpation at the PIP joint and at the A1 pulley. He is not able to make a full fist given the stiffness at his PIP joint. The PIP joint range of motion is almost 0. The DIP joint range of motion is about 5 degrees. The MCP joint is about 0-80 degrees. There is some subtle left small finger extensor tendon subluxation appreciated during the range of motion. Sensation is intact to light touch in the median, radial, and ulnar nerve distribution. His AIN, PIN, and ulnar motor nerve functions are intact. Radial pulses are 2+ bilateral and symmetric.

ASSESSMENT AND PLAN: Mr. Wendell is a 42-year-old male who presents to our office for the followup of left small finger pain and stiffness. We explained several options for the patient including continue conservative management with physical therapy and over-the-counter pain medications with range of motion exercises. Also, possible surgery for capsular release and tenolysis of the PIP joints were explained for the patient. Risks and benefits of the surgery including infection, bleeding, damage to the surrounding structures,



| UNIVERSITY OF ILLINOIS<br>Hospital & Health Sciences System<br>——— Changing medicine. For good. ——— | Patient Name: WEAVER, WENDELL<br>Sex: MALE    DOB: 7/20/1976<br>Discharge Date  n/a | MRN: 31391055<br>Age:  42 years<br>Financial Number:  n/a |

## Orthopedic Notes

persistent pain, I explained for the patient in detail. We explained for the patient that after the surgery, the range of motion might be so limited that we might need to go ahead and do articular fusion. The patient at this point is not interested in articular fusion. He decided to go with the surgery option. Package was filled for the patient. A tentative date of December 7th scheduled for the date of surgery. The patient voiced understanding of the above treatment plan. Dr. Mejia formulated the above treatment plan and was present during the evaluation of this patient.


DD:   11/02/2018 08:34:40
DT:   11/02/2018 09:29:32
AR/MedQ
JOB:   938170/812495353

*Insert Addendum Here:
I was present with resident during the history and exam. I discussed the case with the resident and agree with the findings and plan as documented in the resident's note.

*Electronically Signed on 12/11/18 10:39 AM*

*Mejia MD, Alfonso*

University of Illinois Hospital & Health Sciences System

Page 148 of 354

Report Request ID:  37278769
Print Date/Time:  1/8/2019 15:04
                              CST

148

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender's Grievance**

| 1st Lvl rec: | | | 2nd Lvl rec: |
|---|---|---|---|

| Date: 9-27-21 | Offender (please print): WENDELL WEAVER | ID #: R47387 | Race (optional): UNIMPORTANT |
|---|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |
|---|---|

**Nature of grievance:**

- [ ] Personal Property
- [ ] Mail Handling
- [X] Medical Treatment
- [ ] ADA Disability Accommodation
- [X] Staff Conduct
- [ ] Dietary
- [ ] HIPAA
- [ ] Restoration of Sentence Credit
- [ ] Transfer Denial by Facility
- [ ] Other (specify):
- [ ] Disciplinary Report

RECEIVED
STATEVILLE C.C.
OCT 8 – 2021
GRIEVANCE DEPARTMENT
BY:

Date of report _____ Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor
Chief Administrative Officer, only if EMERGENCY grievance
Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

THE ABOVE OFFENDER CAN'T SLEEP DUE TO HIS "SLEEP APNEA" AND U.I.C. PRESCRIBE FOR HIM TO GET A MACHINE TO HELP WITH THIS, BUT STATEVILLE COLLEGE UNIT DENIED THE REQUEST, FOR WHAT EVER REASON(S)? IT'S EFFECTING MY BLOOD PRESSURE AS WELL HEADACHE'S, etc. SECONDLY, MY RIGHT KNEE IS GIVING OUT AND SWELLING UP AND HURTING VERY BAD "24" HOURS A DAY, AND STATEVILLE MEDICAL UNIT STAFF KNOWS (DR. MANTER) (DR. TUCCO) (DR. BRUCKNER) KNOWS I NEED A SURGERY ⟩ (CDR. B) (CPR. A)

[X] Continued on reverse

**Relief Requested:**

GET ME THE SLEEP APNEA MACHINE AND FOLLOW U.I.C. ORDER(S) GET ME MY KNEE, SHOULDER, ARM SURGERY AS SOON AS POSSIBLE BEFORE IT GET WORSER W/ TIME TAKE MY PINKY FINGER JUST DID, AND NOW IT HURT'S ALL DAY EVERYDAY FOR NO REASONS AT ALL? AND IT'S NOTHING THE HOSPITAL CAN DO FOR IT

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.
- [X] Check if this is NOT an emergency grievance.

| Offender's Signature | R47387 ID# | 9-27-21 Date |
|---|---|---|

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)** Date Received: _____ [ ] Send directly to Grievance Officer

[ ] Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Response:

| Print Counselor's Name | Sign Counselor's Name | Date |
|---|---|---|

Note to offender: If you disagree with the counselor's response, it is your responsibility to forward grievance with counselor's response to the grievance officer.

**EMERGENCY REVIEW:** Date Received: _____

Is this determined to be of an emergency nature:

- [ ] Yes, expedite emergency grievance
- [ ] No, an emergency is not substantiated. Offender should submit this grievance according to standard grievance procedure

| Chief Administrative Officer's Signature | Date |
|---|---|

Assigned Grievance #/Institution: _____

Housing Unit: _____ Bed #: _____

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender's Grievance**

1st Lvl rec: _____  2nd Lvl rec: _____

too REPAIR THE PROBLEM BECAUSE THEY HAVE MY
X RAYS, M R I, AND MEDICAL RECORDS, ETC. BUT
DOING NOTHING ABOUT THIS? SAME WITH MY RIGHT
SHOULDER ARM / ELBOW? I WAS JUST SENT OUT FOR
MY LEFT PINKY, NOW THEY (U.I.C) IS SAYING IT'S TOO
LATE FOR THEM TOO FIX MY FINGER BECAUSE IT TOOK
TOO LONG FOR THIS 3RD SURGERY I'M TRYING TOO
AVOID THIS FROM HAPPENING WITH MY SHOULDER, KNEE,
ARM; I'M CONSISTANTLY IN SEVERE PAIN (24 HOURS A DAY)
(PLEASE HELP)

P.S.

I ALSO TALKED TOO WARDEN OSBOURNE ON
MULTIPLE OCCASSION ABOUT THIS AND OTHER
MEDICAL ISSUE(S) I'M HAVING AND HE DOES NOTHING BUT
LIE AND SPITS ME? I NEED HELP!

Assigned Grievance #Institution:                                    Housing Unit CHOUSE    Bed # "TOP"
                                                                                                      BUNK

1st Lvl rec                          ILLINOIS DEPARTMENT OF CORRECTIONS              2nd Lvl rec
                                             Offender's Grievance

| Date: 09-01-2020 | Offender (please print): WENDELL WEAVER | ID #: R47387 | Race (optional): Black |
|---|---|---|---|
| Present Facility: STATEVILLE C.C. | | Facility where grievance issue occurred: STATEV ILLE C.C. | |

RECEIVED
STATEVILLE C.C.
SEP 1 0 2020
GRIEVANCE DEPARTMENT
BY: _____

**Nature of grievance:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Disciplinary Report
- [ ] Mail Handling
- [ ] Dietary
- [ ] Other (specify): _____
- [x] Medical Treatment
- [ ] HIPAA
- [ ] ADA Disability Accommodation
- [ ] Restoration of Sentence Credit

Date of report _____     Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor

Chief Administrative Officer, only if EMERGENCY grievance

Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

(RIGHT)
I HAVE BEEN COMPLAINING ABOUT THE PAIN IN MY KNEE
FOR YEAR(S) NOW! I HAVE A BULLET LODGED IN MY KNEE
SINCE THE YEAR (2000) WHEN I GOT SHOT, I CAME TOO
STATEVILLE C.C. IN THE YEAR "2005". I WASN'T HAVING
TROUBLE WITH THIS PARTICULAR KNEE UNTIL ABOUT "4" YEARS
AGO, BUT MORE IMPORTANTLY, IT GOT WORSTER ABOUT 2 YEAR'S
AGO WHILE PLAYING BASKETBALL / AND RUNNING; IT "POPPED"

- [x] Continued on reverse

**Relief Requested:**

GET AN "M.R.I" TOO SEE WHAT'S THE REAL PROBLEM
W/ MY RIGHT KNEE? FIND THE SOLUTION TOO CURE
THIS "CHRONIC PAIN" /AND OR REMOVE THE BULLET IF IT'S
THE CAUSE OF THIS PAIN? MOVE ME ON "2" GALLERY TO PRESER
THE LEFE OF MY KNEE; AND FROM ENDURING CONSTANT PAIN W/
CLIMBING STAIR

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.
- [x] Check if this is NOT an emergency grievance.

Wendell Weaver                    R47387                 9-1-2020
Offender's Signature                ID#                    Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**    Date Received: _____    [ ] Send directly to Grievance Officer

- [ ] Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 10277, Springfield, IL 62794-0277

**Response:**

_____

Print Counselor's Name          Sign Counselor's Name                Date

Note to offender: If you disagree with the counselor's response, it is your responsibility to forward grievance with counselor's response to the grievance officer.

**EMERGENCY REVIEW:**    Date Received: _____

Is this determined to be of an emergency nature?

- [ ] Yes, expedite emergency grievance
- [ ] No, an emergency is not substantiated. Offender should submit this grievance according to standard grievance procedure

_____          _____
Chief Administrative Officer's Signature        Date

Housing Unit: _____ Bed #: _____

Assigned Grievance #/Institution: _____

ILLINOIS DEPARTMENT OF CORRECTIONS
Offender's Grievance

2nd Lvl rec: _____

1st Lvl rec: _____

And it's been "popping" every since, and is in
constant pain — Especially while going up and
down all these stair(s) on "6" gallery! I need
to be on "2" gallery where there are NO stair(s)
too get back and forth too the shower area, kiosk,
video(s) visit(s) legal call(s) etc, But more
importantly, get this bullet taken out
— my knee, or get an "M.R.I" too see why
my knee is in "Excruciating" pain 24 hours
a day — even with taking the Tylenol-3' I'm
taking for my finger injury ...... The medical
director has already review my X-ray and
diagnosed my problem as "dengenerate" of
the "knee" and it's getting worster by the
day — which is another reason too put me on
"2 gallery" so I won't have too climb up and
down these stair(s) too "rush" the "deteriation"
of my knee! I haven't been seen in 2
month(s) regarding this knee problem,
and they always "rescheduling" me
every time I'm scheduled too see my
doctor regarding my knee problem, Like
they just kicking the can down the
street — prolonging my pain & suffering!
can someone please do somthing about
this soon.
                                    THANKS

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender's Grievance**

1st Lvl rec | | | | 2nd Lvl rec:

| Date: 08-20-2021 | Offender (please print): WENDELL WEAVER | ID #: R47387 | Race (optional): Black |

Present Facility: STATEVILLE C.C.

Facility where grievance issue occurred: STATEVILLE C.C.

**Nature of grievance:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Disciplinary Report

- [ ] Mail Handling
- [ ] Dietary
- [ ] Other (specify):

- [x] Medical Treatment
- [ ] HIPAA

Date of report

- [x] ADA Disability Accommodation
- [ ] Restoration of Sentence Credit

RECEIVED
STATEVILLE C.C.
AUG 28 2021
GRIEVANCE DEPARTMENT

RECEIVED
STATEVILLE C.C.
SEP 17 2021

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and place in the designated locked receptacle marked "grievance":

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

THE ABOVE OFFENDER IS DEALING WITH A HOST OF MEDICAL PROBLEMS, SUCH AS "EXTREME HIGH BLOOD PRESSURE" "259/144" HEART PROBLEM/IRREGULAR HEART BEATS ETC, TORN ROTATOR CUFF IN HIS SHOULDER(S) TORN BICEPS/DELTOID ARM, BULLET(S) IN ARM AND KNEE, TORN TENDON(S) AND MUNISMICKS IN RIGHT KNEE, AND STATEVILLE MEDICAL DEPARTMENT IS MOVING AT THERE OWN PACE, WITH TENDING TOO THESE ISSUE(S)

- [x] Continued on reverse

**Relief Requested:**

TOO GET "SINGLE MAN" STATUS - DUE TOO MY FAILING HEALTH AND VUNERABILITY TO BEEF WITH CELL MATES ETC, AND GET ME SOME- MEDICAL TREATMENT ON THE ABOVE MAIN MEDICAL ISSUE(S)

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.
- [ ] Check if this is NOT an emergency grievance.

| Offender's Signature | ID# R47387 | Date 8-20-2021 |

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)** Date Received: _____ [x] Send directly to Grievance Officer

- [ ] Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Response:

| Print Counselor's Name | Sign Counselor's Name | Date |

Note to offender: If you disagree with the counselor's response, it is your responsibility to forward grievance with counselor's response to the grievance officer.

**EMERGENCY REVIEW:** Date Received: 9/2/21

Is this determined to be of an emergency nature?

- [ ] Yes, expedite emergency grievance
- [x] No, an emergency is not substantiated. Offender should submit this grievance according to standard grievance procedure

| Chief Administrative Officer's Signature | | Date 9/2/21 |

Distribution: Master File; Offender

Page 1 of 2

DOC 0046 (Rev. 01/2020)

Housing Unit: _____    Bed #: _____

Assigned Grievance #/Institution: _____

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender's Grievance**

1st Lvl rec: _____    2nd Lvl rec: _____

SO I DON'T FEEL COMFORTABLE WITH A CELL MATE
I CAN'T PROTECT MY SELF, I FEEL VUNERABLE, SO
I WELL LIKE TOO BE IN THE CELL BY MY SELF AND
NOT DEAL WITH THE "STRESS" OF A CELL MATE
WHICH IN TURN CAN RUN MY "BLOOD PRESSURE" ETC
UP AND CAUSE MY HEALTH TO DETERIATING EVEN FASTER/
MORE, PLEASE HELP!

signed Grievance #/Institution: _____

Housing Unit: __CHOUSE__  Bed #: __(__

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender's Grievance**

1st Lvl rec:                                    2nd Lvl rec:

ate: AUG 24 2021

Offender (please print): WENDELL WEAVER

ID #: R47387

Race (optional): BLACK

resent Facility: STATEVILLE C.C.

Facility where grievance issue occurred: STATEVILLE C.C.

RECEIVED
AUG 2 8 2021

ature of grievance:

- ☐ Personal Property
- ☑ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Disciplinary Report

- ☐ Mail Handling
- ☐ Dietary
- ☐ Other (specify): _____

- ☑ Medical Treatment
- ☐ HIPAA

- ☐ ADA Disability Accommodation
- ☐ Restoration of ___

RECEIVED
SEP 17 2021
GRIEVANCE DEPARTMENT
BY: ____

Date of report _____     Facility where issu___

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

omplete: Attach a copy of any pertinent document (such as a Disciplinary Report, Search Record, etc.) and place in the designated cked receptacle marked "grievance".

    Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board
    Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor
    Chief Administrative Officer, only if EMERGENCY grievance
    Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs,
    issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

ummary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for ch person involved):

THE ABOVE OFFENDER HAS WENT OUT ON SEVERAL MEDICAL WRITS TOO U.I.C OUTSIDE HOSPITAL And CANE RACK And STILL HAVENT SEEN A "MEDICAL DIRECTOR" SPECIFICALLY ABOUT My SHOULDER(S) And KNEE(S), WHERE I WENT OUT FOR M.R.I.'S? I SEEN DR. MENTER THE MEDICAL DIRECTOR ALMOST (6) MONTH- AGO, IF NOT LONGER; AND SHE SPECIFICALLY TOLD ME My SHOULDEE (RIGHT) AND My KNEE THE RIGHT HAS TORN TENDONS ROTATOR
☐ Continued on reverse

elief Requested:

SEND ME TOO HAVE My SURGERIES ON My SHOULDER(S) AND KNEE(S) AND My RIGHT ARM/ELBOW IF NEED BE, SEE THE MEDICAL DIRECTOR too FIND OUT WHAT'S THE HOLD UP AND problem W/ My ISSUE(S) AND GET STRONGER PAIN MEDICINE FOR My PAIN!

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

☑ Check if this is NOT an emergency grievance.

_Offender's Signature_     ID#: R47387     Date: AUG 24, 2021

(Continue on reverse side if necessary)

ounselor's Response (if applicable)   Date Received: _____   ☐ Send directly to Grievance Officer

☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

esponse: _____

_____

_____

_____

_____

_____

_____

Print Counselor's Name          Sign Counselor's Name          Date

ote to offender: If you disagree with the counselor's response, it is your responsibility to forward grievance with counselor's response to the grievance officer.

MERGENCY REVIEW:   Date Received: 9/2/21

this determined to be of an emergency nature:

☐ Yes, expedite emergency grievance
☐ No, an emergency is not substantiated. Offender should submit this grievance according to standard grievance procedure

_Chief Administrative Officer's Signature_     1W     9/2/21
                                                        Date

stribution: Master File; Offender          Page 1 of 2

Assigned Grievance #/Institution: _____

Housing Unit: _____ Bed #: _____

ILLINOIS DEPARTMENT OF CORRECTIONS
Offender's Grievance

1st Lvl rec: _____                                        2nd Lvl rec: _____

CUFFS, ETC, SHE SAID MY RIGHT KNEE HAS
A TORN (MENISCUS.) AND PROMISE TOO
SEND ME BACK OUT BECAUSE BOTH REQUIRED
SURGERY.? BUT TOO NO AVAIL P I HAVE TALK
TOO WARDEN OSBOURNE AND WARDEN GOMEZ
PERSONALY AND THEY DID NOTHING FOR ME OR
ABOUT THIS DELAY IN TREATMENT NO MATTER
HOW MUCH PAIN I TOLD BOTH OF THEM I WAS
IN, AND HOW LONG IT BEEN SINCE I SEEN
THE MEDICAL DOCTOR, I'AM IN EXCRUCIATING
PAIN AS I WRITE THIS GRIEVANCE AND NO ONE,
AND I MEAN NO ONE IS DOING NOTHING FOR ME!
DO MY SHOULDER AND KNEE NEED TOO FALL
OFF TOO GET SOME HELP AROUND HERE, I CAN
BARELY WALK AND MOVE MY ARM AND SHOULDER
AT TIMES! PLEASE HELP, I BEEN DEALING
WITH THESE "INJURIES", MY RIGHT KNEE, AND
LEFT ONE AND MY SHOULDER(S) FOR YEARS
NOW, AND BEEN COMPLAINING THE WHOLE TIME,
AND FINALLY GOT THE X-RAYS — MRI — AND
SHOWS THE DAMAGE AND INJURIES, AND THEY (MEDICAL)
STILL NOT DOING NOTHING FOR ME? AND THE
WARDEN(S) GOMEZ AND OBBOLIEN TURNING A
BLIND EYE TOO MY COMPLAINTS, SO I NEED
SOMEONE ELSE TOO PLEASE STOP IN, THE GRIEVANCE
OFFICER WONT DO NOTHING AS WELL, ALL THE WAY
TOO SPRINGFIELD, ETC.        (THANKS)

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 09/10/2020 | Date of Review: 10/26/2021 | Grievance # (optional): 1626 |
| Offender: Wendell Weaver | | ID#: R47387 |

**Nature of Grievance:**

Medical Concerns

2744 1336 1193 851 1473 1329 737 761 573

---

**Facts Reviewed:**

Facts Reviewed: Grievant claims on various grievances dating back to 9/10/20 about numerous medical and staff conduct issues.

The following staff met with the grievant in person on 10/25/21 in the Healthcare Unit Conference Room to discuss the grievances and the grievant's issues: Assistant Warden Osborne, Dr. Henze, Michelle Smith, DON, Shirley Glenn, ADA Coordinator, Monaka Williams, Grievance Officer, Amy Gomez, Grievance Officer, and Anna McBee, Grievance Officer.

Grievant claims in his grievances that he wants a CPAP machine, his left pinky is still messed up, he has right knee pain and wants an MRI, has High Blood Pressure and wants a single man cell, has issues catching his breath, has side effects from the Moderna vaccine, wants to be checked for myocarditis, wants to see a cardiologist, wants blood pressure medications, wants surgery on his shoulder and knees and claims several denials of blood pressure checks by medical staff.

OVER

---

**Recommendation:**

Grievance is Mixed. Staff Conduct is Denied. All medical issues are Affirmed; however, issues are being addressed or have been addressed.

Anna McBee

| Print Grievance Officer's Name | Grievance Officer's Signature |
|---|---|

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

---

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 11/2/21 | ☑ I concur ☐ I do not concur ☐ Remand | |
| Action Taken: | | |

Chief Administrative Officer's Signature          MO          11/3/21
                                                                Date

---

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

| Offender's Signature | R47387 | 11/10/21 |
|---|---|---|
| | ID# | Date |

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE (Continued)**

Grievance Officer finds that grievant recognizes that several of his medical issues are from 2015/2018 and are untimely; however, he states he is still having issues. Per Dr. Henze and medical file review, Grievant did have a sleep study conducted several years ago and it was recommended he receive a mouth guard. Grievant indicated the mouth guard did not work. According to grievant's chart, grievant did not meet criteria for a CPAP machine. Grievant was supposed to receive an alternate treatment for his pinky finger. A 3rd surgery for his pinky finger was not optional. Grievant cant do physical therapy. Grievant did have an MRI of his knee and the HCU is currently waiting on an appointment with an orthopedic doctor. The procedure for such appointment was explained to the grievant. The HCU does not make those appointments. The facility who will be treating the grievant makes the appointment with the HCU. Grievant was told that due to COVID appointments are taking longer to schedule. Grievant is taking blood pressure medications as a watch/take. The watch/take was explained to him to ensure he understood it was not done as a punishment, but so Doctor Henze can better monitor his condition. Grievant received a CT of bell and abdomen with no remarkable results. Grievant is monitored by the healthcare unit for any side effects from the Moderna vaccine. Grievant did receive an MRI of his heart a week ago and once results are reported he will be seen to go over the results. Dr. Henze indicated she is waiting for ortho to schedule an appointment for his shoulder. Grievant was educated on his conditions and talked to about a proper diet and his age being a contributing factor to some of his concerns. The Healthcare Unit will follow-up with all pending appointments. Assistant Warden Osborne indicated to the grievant if had any issues with celling to contact his assigned counselor.

Grievant seemed to be receptive of the above information and recommendations for all of his medical concerns in the above listed grievances.

This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.

J.B. Pritzker
Governor



Rob Jeffreys
Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Name: _Weaver, Wendell_                                    _11/22/21_
                                                            Date
ID#: _R47387_

Facility: _Stateville_

This is in response to your grievance received on _11/16/21_. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: _9/18/20 - 9/27/21_ Grievance Number: _1626_ Griev Loc: _Stateville_

☐ Transfer denied by the Facility _____

☐ Dietary _____

☐ Personal Property _____

☐ Mailroom/Publications _____

☐ Assignment (job, cell) _____

☐ Commissary / Trust Fund _____

☐ Conditions (cell conditions, cleaning supplies, etc.) _____

☐ Disciplinary Report: Dated: _____ Incident # _____

☐ Other _Cpap machine, rt. knee, Rt. shoulder, lft pinky, HBP, shortness of breath 8/12_
_Vaccine reaction 3/27/21, HBP meds_

**Based on a review of all available information, this office has determined your grievance to be:**

☐ Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____

☐ Denied, in accordance with DR504F, this is an administrative decision.

☒ Denied, this office finds the issue was appropriately addressed by the facility Administration.

☐ Other: _____

☐ Denied as the facility is following the procedures outlined in DR525.

☐ Denied as procedures were followed in accordance with DR 420 for removal/denial from/for an assignment.

☐ Denied as this office finds no violation of the grievant's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offense cited in the report was committed.

FOR THE BOARD: _Debbie Knauer_          CONCURRED: _Rob Jeffreys p.edw_
                Debbie Knauer                              Rob Jeffreys
            Administrative Review Board                     Director

CC: Warden, _Stateville_ Correctional Center
_Weaver_, ID# _R47387_

Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.

www.illinois.gov/idoc

Blank

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE**

| | | |
|---|---|---|
| Date: SEPT 12, 2017 | Offender: (Please Print) WENDELL WEAVEE | ID#: R47387 |
| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE O.C. | |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☒ Medical Treatment
- ☐ HIPAA
- ☐ ADA Disability Accommodation
- ☐ Other (specify):

RECEIVED
STATEVILLE C.C.
SEP 22 2017

☐ Disciplinary Report: _____
       Date of Report          Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

    **Counselor**, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
    **Grievance Officer**, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
    **Chief Administrative Officer**, only if EMERGENCY grievance.
    **Administrative Review Board**, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON SEPTEMBER 07, 2017 THE ABOVE OFFENDER PUT HIS NAME ON THE SICK CALL LIST. THE NEXT DAY "LYDIA" CAME OVER TOO SEE ME. and I TOLD HER THAT MY "FINGER" (LEFT PINKY) THE "SURGERY FINGER" HAS BEEN BOTHER ME IN (EXTREME PAIN) I TOLD HER I NEED PAIN MEDS and SHE TOLD ME I'm SCHEDULE TO SEE THE "MEDICAL DIRECTOR" OBASI FOR TUESDAY SEPT 12, 2017 BUT TO "NO AVAIL" THEY DIDN'T CALL /OR SEE ME, I ALSO TOLD HER ABOUT MY LOWER BACK PAIN, and

Relief Requested: GET ME TO A (OUTSIDE) DOCTOR FOR M.R.I. AND SEND ME SOME PAIN MEDICATION AND SEE WHY I GOT KICKED OUT OF "PHYSICAL THERAPY" FOR LEGAL CALLS, VISTS, LIBRARY ?

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

    [signature] Offender's Signature         R47387     ID#     9, 12, 17     Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 9, 16, 17     ☐ Send directly to Grievance Officer     ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of this grievance has been forwarded to the H.C.U. for review and response, the original to the Grievance Office. You don't have to send your copy to either the H.C.U. or Grievance office. You will receive a final response from the Grievance Office when the H.C.U. responds to same.

S. Butler     Print Counselor's Name     T. Butler- Winkes 9/16/17     Counselor's Signature     Date of Response

---

**EMERGENCY REVIEW**

Date Received: 9 / 14 / 17     Is this determined to be of an emergency nature?

- ☐ Yes; expedite emergency grievance
- ☒ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

[signature] Chief Administrative Officer's Signature     9 / 14 / 17     Date

Distribution: Master File; Offender     Page 1     DOC 0046 (8/2012)

Printed on Recycled Paper

**OFFENDER'S GRIEVANCE** (Continued)

(→ PAIN EXCRUCIATING)

(BOTH) SHOULDERS, ELBOWS PAINS ON MY LEFT ARM, AND FINALLY MY KNEE(S) BOTH OF THEM ARE HURTING... SHE TOLD ME TO EXPLAIN EVERYTHING TO THE MEDICAL DIRECTOR, BUT HOW CAN I IF SHE DIDN'T MAKE ME AN APPOINTMENT? SHE TOLD ME I HAVE ONE COMING UP TODAY, BUT I DIDN'T GO. I NEED TO SEE SOMEBODY BECAUSE, I'AM IN PAIN, ESPECIALLY MY PINKY FINGER, PLEASE CALL ME, SOON AND SEND ME SOME MEDICATION FOR PAIN. SHE ALSO TOLD ME "HOSEA" THE PHYSICAL THERAPIST KICK ME OUT BECAUSE, I HAD LEGAL CALLS, VISTS (THANKS) ETC. ON THE DAYS HE SCHEDULE, P.P. NOT TO MENTION (LAW-LIBRARY) PLUS MY FINGER IS IN SO MUCH PAIN I CAN'T DO PHYSICAL THERAPY FOR THAT ANYHOW)! (THE FINGERS, KNEES & LOWER BACK) & (ELBOW) (SHOULDERS) NEED MEDICAL TREATMENT / AND M.R.I'S TOO SEE WHAT'S THE REAL PROBLEM!

TODAY IS SEPTEMBER (THURSDAY) 14, 2017, I GOT MY GRIEVANCE BACK SAYING IT'S NOT AN EMERGENCY SO THEY SENT IT BACK, TO WIT FROM THE ORIGINAL GRIEVANCE ABOVE, I DID SEE THE MEDICAL DIRECTOR YESTERDAY (WEDNESDAY SEPT 13, 2017, AND EXPLAIN MY (PAIN) AND EVERYTHING I EXPLAIN TO "LYDIA" AND HE STILL DIDN'T GIVE ME NOTHING FOR PAIN? HE ORDERED SOME MORE KNEE BRACES / NOT BRACES BUT SOME CLOTH KNEE STABILIZERS I GUESS, WHICH DON'T DO NOTHING FOR THE PAIN IN MY KNEES, (NO PAIN MEDS) PLUS MY FINGER IS / AND HAS BEEN IN EXCRUCIATING PAIN SINCE MY SURGERY BACK IN (2015) MY LOWER (SHOULDERS) BACK IS KILLING ME AND MY ELBOW HE ORDERED SOME (MUSCLE RUB) AND TOLD ME TOO USE THAT, AND HE'LL SEE ME IN (6) MONTHS I'LL BE DEAD IN SIX MONTHS W/ THE PAIN I'M IN, PLEASE DO SOMETHING ABOUT THIS. HE ALSO ORDER ME AN BACK STABILIZER, BUT THIS NOT GOING TO DO NOTHING FOR PAIN... — THANKS —

P.S. I HAVENT HAD NO PAIN MEDS FOR MY FINGER, SINCE THE POST SURGERY? A FEW WEEKS AFTER THE FACT, BACK IN 2015.

Distribution: Master File, Offender    DOC 0046 (8/2012)

KNEE, SHOULDER

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 10-17-17 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |
|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Mail Handling
- [ ] Restoration of Good Time
- [ ] ADA Disability Accommodation
- [x] Staff Conduct
- [ ] Dietary
- [x] Medical Treatment
- [ ] HIPAA
- [ ] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Other (specify):

- [ ] Disciplinary Report: ___/___/___
  Date of Report / Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

RECEIVED
NOV 28 2017
GRIEVANCE OFFICER
BY

RECEIVED
STATEVILLE C.C.
NOV 09 2017
MEDICAL DEPARTMENT
BY 324

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): ON TODAY'S DATE

THE ABOVE OFFENDER SAW DR. OBAISI, FOR A FOLLOW UP "I GUESS OR FOR AN UNREALTED ISSUE, WHEN THE ABOVE OFFENDER TOLD HIM THE "MUSCLE RUB", KNEE CLOTH STABILIZER" and BACK (9-13-17) HEGAVE ME) SUPPORT WASN'T HELPING MY PAIN/and SITUATIONS, MY SHOULDER'S ARE POPPING /and IS 'BONE ON BONE" Same, WITH MY KNEE'S THEY ARE POPPING MAKING NOISE'S. BOTH HAS BEEN DOING THIS FOR some YEARS NOW, and EVERY TIME I TELL DR. OBAISI, HE DOES NOTHING! HE GAVE ME some TYLYNOLS, FOR PAIN IN MY SWEGEGH FINGER THAT HAS

**Relief Requested:** GIVE ME STRONG PAIN MEDS, GET ME TO A BONE (WHAT?) (WHERE?) SPECIALIST /AND or M, R, I TO SEE THE REAL PROBLEM WITH MY SHOULDER(S), KNEE(S), ELBOW, AND LOWER BACK PAIN →

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _(signature)_ Offender's Signature | R47387 ID# | 10, 17, 17 Date |
|---|---|---|

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 11/16/17

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of this grievance has been forwarded to the HCU for review and response and a copy to the Grievance Office. There is no need to send your copy to the Grievance Office or HCU. You will receive a final response from the Grievance Office when the HCU replies.

| T. Butler-Winters Print Counselor's Name | _(signature)_ Counselor's Signature | 11/25/17 Date of Response |
|---|---|---|

---

**EMERGENCY REVIEW**

Date Received: 11/14/17

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| _(signature)_ Chief Administrative Officer's Signature | 11/14/17 Date |
|---|---|

Distribution: Master File; Offender          Page 1          DOC 0046 (8/2012)

Printed on Recycled Paper

BEING KILLING ME TO SAY THE LEAST, THE SHOULDERS "ARE" POPPING "BONE ON BONE PAIN" THE LOWER BACK PAIN and THE POPPING "BONE ON BONE" KNEE(S) PAIN, WHICH DOES (NOTHING FOR THE PAIN) my ELBOW "LEFT ARM" IS ALSO PAINING, THE TYLENOLE ARE NOT HELPING, I NEED TO SEE A BONE DOCTOR TO SEE WHY IS MY BONES POPPING and IN SO MUCH PAIN, MY BLOOD PRESSURE CHECKS HAS BEEN HIGH DUE TO THIS EXTREME PAIN I'm IN! PLEASE DO SOMETHING ABOUT THIS, I TELL THE MED TECH's THIS EVERYTIME THEY CHECK my BLOOD PRESSURE (WHICH IS EVERY DAY) BUT TO NO AVAIL. PLEASE HELP ME, DR. OBAISI TOLD ME THAT'S ALL THE MEDI-- CINE HE WAS GOING TO GIVE ME AND HAVE A NICE DAY! and THERE NOTHING ELSE THAT CAN BE DONE FOR MY SURGERY PINKEY FINGER / NOR THE PAIN.


                        (AND A) "BED"
    RELIEF REQUEST : NEW MATTRESS, MAY
COULD HELP MY LOWER BACK PAIN.

BL24

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO COMMITTED PERSON'S GRIEVANCE

### Grievance Officer's Report

Date Received: 11/28/17      Date of Review: 1/25/18      Grievance # 324

Committed Person: Wendell Weaver      ID #: R47387

Nature of Grievance: Medical Treatment

**Facts Reviewed:** Grievant claims on a grievance dated 10/17/17 that he was seen by Dr. Obalsi on 10/17/17. Offender claims that he told Dr. Obalsi the muscle rub, knee cloth stabilizer and back support were not helping his pain. Offender also claims that his knees and sholders are 'popping.' Offender claims that he was prescribed Tylenol for pain in his finger on which he had surgery. Offender also claims that he is experiencing pain in his lower back, left elbow, high blood pressure and needs to see a bone specialist.

**Grievance Officer finds** according to Health Care Unit staff "After reviewing offender's medical record. He has been seen regarding his issues several times. He was seen by Dr. Obasisi on 12/13/17 blood work (came back within normal limits) ordered and medication change. Follow up in 2 weeks. He was seen by Dr. Sood 12/27/17 no change in medication, referred to UIC. He does have an approved appointment to UIC Ortho.

*This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.*

**Recommendation:**      **Denied as grievant appears to be receiving medical care at this time.**

David Mansfield, CCII
_____
Print Grievance Officer's Name      Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

### Chief Administrative Officer's Response

Date Received: 1/26/18      ☑ I concur      ☐ I do not concur      ☐ Remand

Comments:

_____
Chief Administrative Officer's Signature      1/26/18
     Date

### Committed Person's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____
Committed Person's Signature      R47387      2/14/18
     ID#      Date

Blank

ILLINOIS DEPARTMENT OF CORRECTIONS

## OFFENDER'S GRIEVANCE

| Date: Dec. 18, 2017 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |
|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☑ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☑ Medical Treatment
- ☐ HIPAA
- ☐ ADA Disability Accommodation
- ☐ Other (specify): _____

☐ Disciplinary Report: ___ / ___ / ___
Date of Report      Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

STATEVILLE C.C.
JAN 2 2018
~~TREATMENT~~
BY: _____

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON DECEMBER 01, 2017, I SEEN DR. WILLIAMS ABOUT my
SHOULDER(S), KNEE(S), FINGER, LOWER BACK PAIN, and
LEFT ELBOW PAIN... IN REVIEWING my CHART(S) X-RAYS
ETC. SHE INFORMED ME, I HAD SOMETHING CALLED "BONE
SPURS" and THIS COULD BE A REASON FOR MY PAIN. I
NEVER WAS TOLD BY "NO ONE" — MEDICAL PERSONAL —
ABOUT THIS. DR. OBAISI NEVER, EVER MENTION THIS TOO
ME (AFTER YEARS OF ME COMPLAINING ABOUT ALL THIS
PAIN I HAVE BEEN IN. SO SHE RECOMMENDED me BACK

Relief Requested: HELP ME, FIND OUT WHATS WRONG, AND HAVING ALL
THIS PAIN, and see IF THESE "BONE SPURS" THE PROBLEM THRU
and M.R.I OR WHATEVER TO DETERMINED the PROBLEM(S).

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ Offender's Signature     R47387     12 / 18 / 17
                         ID#           Date

(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

Date Received: 2 / 7 / 18    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of this grievance has been forwarded to the HCU for review and response and the original to the Grievance office. There is no need to send your copy to the Grievance Office or HCU you will receive a final response from Grievance Office when HCU respond to send

T. Butler-Winters _____ Print Counselor's Name     J. Butler w _____ Counselor's Signature     2 / 7 / 18 Date of Response

---

### EMERGENCY REVIEW

Date Received: 1 / 24 / 18    Is this determined to be of an emergency nature?
- ☐ Yes; expedite emergency grievance
- ☑ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Randy Pfister _____ Chief Administrative Officer's Signature     1 / 24 / 18 Date

Distribution: Master File; Offender        Page 1        DOC 0046 (8/2012)

Printed on Recycled Paper

Back to the MEDICAL DIRECTOR DR. OBAISI, ON DECEMBER 13, 2017 I SEEN DR. OBAISI and EXPLAIN my EXCRUCIATING PAIN IN. MY SHOULDER(S) KNEES, and lower BACK, FINGER and LEFT ELBOW. PLUS WHAT DR. WILLIAMS TOLD ME ABOUT THE "BONE SPURS" HE TOLD me I WAS GOING BACK OUT TO U.I.C. FOR MY FINGER, BUT he can't DO NOTHING FOR MY OTHER CONDITIONS. I EVEN SHOWED HIM HOW I COULD BARELY RAISE MY ARM(S) to "CHEST LEVEL" and HOW MUCH PAIN I WAS IN And HOW LONG I BEEN DEALING WITH THESE PROBLEMS. He ASK me. HOW LONG, I TOLD HIM, IT'S ON THE "MED-ICAL CHART'S" DATING BACK AT LEAST 6-7 YEARS AGO.... SO HE GAVE ME some MORE PILLS (INDOME-THACIN) and TOLD me TO HAVE A "NICE DAY". BEFORE I LEFT HIS OFFICE, I ASK HIM WHEN I GO TO U.I.C (APPOINTMENT) CAN HE PUT IN THAT. THEY SEE ME FOR MY OTHER ISSUES(S) HE SAID HE COULD'NT DO THAT BECAUSE WEX-FORD HAVEN'T APPROVED ME FOR THAT / OR THEM ISSUES SO I SAID CAN I TALK TO THEM ABOUT MY OTHER ISSUE(S); HE SAID "BROTHER THIS IS A FREE COUNTRY" And SAID YOU CAN LEAVE NOW. ON DECEMBER 14, 2017, I WENT TO U.I.C. FOR MY "FINGER" and THE DR. THERE TOLD ME, HE CAN'T DO NOTHING FOR THE (MY) FINGER MOBILITY / BUT FOR THE PAIN, and THIS NOT 100% TO STOP MY PAIN BUT IT MAY HELP, HE COULD "FUSE THE BONES TOGETHER" BUT IT WOULD NOT GUARANTEE THE PAIN WOULD SUBSIDE. THIS MIGHT BE SOMETHING I HAVE TO LIVE WITH..... THEN I TOLD THEM ABOUT MY OTHER ISSUE(S) SHOULDER(S) THE "POPPING" I BEEN EXPERIENCE, MY KNEE(S) THE POPPING AND PAIN I'M IN, MY LEFT ELBOW And HOW IT HURTS, HOW I'M UNABLE TO SLEEP, and MY LOWER BACK PAIN, THE SAME THING I BEEN COMPLAINING DO DR. OBAISI ABOUT. THE POPPING THE DR. AT U.I.C. SAID COULD BE SERIOUS, SO SHE PUT IN A REFERRALL TO SEE Another BONE DOCTOR FOR my (AND SENT IT TO STATEVILLE) SHOULDER(S) and KNEE(S). ELBOW, THEY DID'NT mention my LOWER BACK PAIN ... I'm WORRIED THAT MY SHOULDER(S) (FOR) KNEE(S) BEEN OUT OF WACK, SO LONG I MAY NEED A (HAVE) SURGERY / OR "PREMANATELY DAMAGE WHICH MAY EFFECT MY (MY) "RANGE [and MOBILITY" DUE TO DR. OBAISI DELAY IN TREAT-MENT LIKE MY FINGER DID ! CAN SOMEBODY PLEASE HELP ME and DO SOMETHING ABOUT THIS.. (PLEASE)        RESPECTFULLY,
                                                    Wendell Weaver
                                                    - THANKS -

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: Jan 29, 2018 | Offender: (Please Print) WENDELL WEAVER | ID#: 1247387 |
|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] HIPAA
- [ ] ADA Disability Accommodation
- [ ] Other (specify)

- [ ] Disciplinary Report: ____/____/____  Date of Report _____   Facility where issued _____

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

RECEIVED
STATEVILLE C.C.
FEB 20 2018
GRIEVANCE DEPARTMENT
BY: _____

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name of identifying information for each person involved):

ON DECEMBER 27 OR THE 28TH OF 2017, THE ABOVE OFFENDER WAS SEEN BY "MEDICAL DIRECTOR DR. E. FROM a FOLLOW UP at U.I.C. HOSPITAL VISIT, and WAS TOLD BY THE OFFENDER WHAT THE DR.S (DOCTORS) at U.I.C. SAID IN REGARDS TO MY FINGER, SHOULDER(S) and KNEE(S) ABOUT THEY "RECOMMEND" "APPROVED" + SEND ONE OF THEY "BONE SPECILIST" / BONE DOCTOR IN REGARDING MY CRONIC PAIN and POPPING IN MY SHOULDER(S) KNEE(S) LEFT ELBOW, THEY SENT STATEVILLE A →

**Relief Requested:** FIND OUT WHY I'M IN SO MUCH PAIN and WHY MY KNEE(S) SWELLING UP? and POPPING STUFF WITH MY SHOULDER(S) and ELBOW, and LOWER BACK.

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_(signature)_ Wendell _____  # 1247387 ~~ID#~~ 1, 29, 18
Offender's Signature                                    ID#        Date

(Continue on reverse side if necessary)

---

**Counselor's Response** (if applicable)

| Date Received: ____/____/____ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response ____/____/____ |
|---|---|---|

---

**EMERGENCY REVIEW**

Date Received: 2/22/18

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_(signature)_ Walter Nichols _____  2/22/18
Chief Administrative Officer's Signature                        Date

Distribution: Master File; Offender                Page 1                DOC 0046 (Rev. 3/2005)

RETURNED FOR SUCH ON THAT SAME DAY
I RETURNED ON DECEMBER 14th 2017 WHICH
DR. E DISCUSS WITH ME, and SAID ME WAS
GOING TO PUT IN HIS REFERRAL TOO WEXFORD
TO SEE IF THEY WOULD APPROVE ME. I GOT A
GRIEVANCE BACK YESTERDAY, SAYING I'm APPROVED
TO SEE U.I.C. BONE SPECIALIST, BUT THAT WAS
IT. SEE, GRIEVANCE # 324 DATED 1-25-18 I'm
IN EXCRUCIATING PAIN AS I WRITE THIS GRIEVANCE
and HAVE BEEN FOR THE PAST THREE (3) YEARS OR
LONGER, I KNOW SOMETHING IS WRONG WITH
my SHOULDER(s) and KNEE(s) DUE TOO THE
PAIN and POPPING SOUND/s. CAN SOME ONE
PLEASE TELL ME WHY I HAVEN'T RECEIVED
ANY HELP IN THIS REGARD? EVERY TIME
I WALK FOR A LONG PERIOD OF TIME OR
STAND ON MY FEET MY KNEE(s) SWELL UP.
MY ARMS CAN'T GO ABOVE MY CHEST LEVEL,
IT'S HARD FOR ME TOO WASH UP AND USE
THE RESTROOM, OR EVEN SLEEP, MY LOWER
BACK IS KILLING ME. THE MED's THEY HAVE
GIVING ME DOES NOTHING FOR THE PAIN
PLEASE HELP ME.

                                    — THANKS —
P.S. I'm AFRAID
my SHOULDER(s) and
KNEE(s) BACK, IBONS WILL NEED
SURGERY DUE TO THE NEGLECT THE
MEDICAL DEPARTMENT BEEN INFLICTING
ON ME, WITH IGNORING my COMPLAINTS and PAIN.

OFFENDER'S GRIEVANCE

| Date: 3-9-2018 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |
|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ ADA Disability Accommodation
☒ Staff Conduct ☐ Dietary ☒ Medical Treatment ☐ HIPAA
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator ☐ Other (specify):

☐ Disciplinary Report: ___/___/___
Date of Report          Facility where issued

RECEIVED
STATEVILLE...
APR 06 2018
GRIEVANCE DEPARTMENT
BY _____

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

RECEIVED
STATEVILLE C.C.
MAR 19 2018
BY _____

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

IN JanuaRy 2018, THE ABOVE OFFENDER HURT HIS RIGHT arm [ FORE-ARM — AND - RIGHT BICEP ] DURING a BASKETBALL GAME. DR. WILLIAMS SEEN THE OFFENDER A FEW HOURS LaTER and nOTICE THE CROOKED FORE arm and BICEP MUSCLE LOOKED DEFORMED, SO HE SENT THE OFFENDER oUT TOO ST. JOSEPH HOSPITAL in JOLIET, THEY DID X-RAYS ON THE BONES and SAID THEY WERE NEGATIVE And SENT mE BACK TOO STATEVILLE, NOT CHECKING THE MUSCLES OF THE SEE IF ANY MUSCLE HAD

**Relief Requested:** PAIN MEDS FOR my ARM— And - SEND ME TOO SEE WHY my ARM - BICEP IS HURTING And PeRfoRm, my SHOULDER'S, KNEE(S) LOWER BACK PaIN - LEFT ELBOW - And NEW BLOOD PRESSURE MEDS, and WHAT'S HIGH!

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ (signature)          R47387    3 , 19 , 18
Offender's Signature          ID#          Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 4 , 19 , 18    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: a copy of this grievance has been forwarded to the H.C.U for review and response and the original to the grievance office. You don't need to send your copy to the H.C.U or grievance office. You will recieve a final response when the H.C.U responds to same.

I. Butler-Winters          J. Butler          4 , 19 , 18
Print Counselor's Name          Counselor's Signature          Date of Response

RECEIVED

---

**EMERGENCY REVIEW**

FEB 13 2019

ADMINISTRATIVE REVIEW BOARD

Date Received: 4 / 4 / 18    Is this determined to be of an emergency nature?
☐ Yes, expedite emergency grievance
☒ No, an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____ (signature)          5 / 8 / 18
Chief Administrative Officer's Signature          Date

---

TORE(S) TEARS, ETC. OVER THE FOLLOWING MONTH'S MY
SYMPTOMS NEVER IMPROVED and my ARM - BICEP
CONTINUE TO HURT, ESPECIALLY WHILE BENDING,
SO I PAID $5 DOLLARS TO SEE A DR. AGAIN, MIS.
WILLIAMS, IS WHO I SAW ON FEB 20, 2018, SHE
EXAMINED MY ARM AGAIN NOTICING THE DEFORMITY
And REFER ME TOO (PHYSICAL THERAPY) BUT TOO
NO-AVAIL   TODAY IS 3-19-18 And I STILL HAVEN'T
BEEN CALL TOO PHYSICAL THERAPY. MY ARM And BICEP
CONTINUES TO HURT AS WELL AS MY SHOULDER(S)
KNEE(S) LOWER BACK, AND LEFT ELBOW. ON MARCH
15, 2018 I SEEN DR. E THE MEDICAL DIRECTOR and
HE EXAMINED MY ARM, BUT SAID MY OTHER ISSUES
IS NOT WHAT I'M THERE FOR, HE SEEN THE DEFOR-
-MITY OF MY ARM AS WELL, And SAID HE'S GOING TOO
PUT ME IN and THAT WAS IT, SO I TOLD HIM ABOUT
MY BLOOD PRESSURE MEDICINE NOT WORKING NO MORE
And CHEST PAINS, MY BLOOD PRESSURE WAS 180/108 -
I BEEN HAVING HEADACHES - DIZZINESS - BLURRY
VISION ETC, SO HE GAVE ME AN EKG and SAID
EVERYTHING WAS NORMAL and GAVE ME A
CLONIDINE BLOOD PRESSURE PILL TO REDUCE MY
BLOOD PRESSURE, WHICH TOOK IT TOO 140/90 And
ORDER CHECKS, THIS IS TRUE (4) DAYS LATER And
NO ONE CAME TO CHECK MY BLOOD PRESSURE, I'M
STILL FEELING THOSE SYMPTOMS I SPOKE ON EARLIER
SOMEONE PLEASE TO SOMETHING I DON'T WANT TOO
HAVE A STROKE NOR HEART ATTACK.
                                    THANK-YOU.

ILLINOIS DEPARTMENT OF CORRECTIONS

**RESPONSE TO COMMITTED PERSON'S GRIEVANCE**

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 4/30/18 | Date of Review: 1/11/19 | Grievance # 2864 |
| Committed Person: Wendell Weaver | | ID #: R47387 |
| Nature of Grievance: Medical Treatment | | |

**Facts Reviewed:** Grievant claims on a grievance written 3/9/18 that he wants proper care for an injury to his arms from playing basketball.

Grievance Officer finds that per Medical Staff, "After reviewing the offender's medical record Offender Wendell seen in HCU 3/15/18 new order for ultrasound of right bicep, blood pressure daily x5 days, and EKG. Offender informed to call med tech with any issues. 5/2/18 ultrasound done. 6/5/18 seen Dr. Okezie referred to UIC orthopedic for right bicep with blood pressure daily x 2 weeks. Physical Therapy pending. Offender follows UIC cardio. If offender has any more issues he should follow the proper sick call procedures including the copay."

*This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.*

**RECEIVED**

**FEB 2 2 2019**

**ADMINISTRATIVE REVIEW BOARD**

**Recommendation:** Grievance is MOOT as grievant appears to be receiving medical care at this time.

Anna McBee, CCII

Print Grievance Officer's Name            Grievance Officer's Signature

(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 1-28-19 | ☑ I concur    ☐ I do not concur    ☐ Remand | |
| Comments: | | |

Chief Administrative Officer's Signature                    1-28-19
                                                              Date

| Committed Person's Appeal To The Director | | |
|---|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Committed Person's Signature            R47387        1-20-19
                                          ID#              Date

Blank

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE**

| Date: 07-05-2018 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |
|---|---|---|

| Present Facility: STATEVILLE D.C. | Facility where grievance issue occurred: STATEVILLE C C. |
|---|---|

RECEIVED
STATEVILLE C.C.
2018
GRIEVANCE DEPARTMENT
1699

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify):

- [ ] Disciplinary Report: ___/___/___
  Date of Report / Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

IN EARLY JANUARY 2018 THE ABOVE OFFENDER INJURED
HIS RIGHT ARM / BICEP MUSCLE (TORE) DURING A BASKET BALL
GAME, A FEW MONTHS AGO, THE ABOVE OFFENDER HAD AN
"ULTRA SOUND" WHICH CONFIRM THE ABOVE INJURY
DR. O SAID THE ABOVE OFFENDER WILL BE GOING TO SEE
AN OUTSIDE DOCTOR, BECAUSE OF THIS INJURY, PAIN, THIS
OFFENDER IS SUFFERING FROM, THIS INJURY IS AFFECTING
THE OFFENDER DAY 2 DAY ACTIVITIES, SUCH AS BRUSHING
HIS TEETH, WASHING HIS BODY "WASHING", HIS CLOTHES, GROOMING →

Relief Requested: GET ME TO THE OUTSIDE HOSPITAL A.S.A.P.
"ARM / muscle" BECAUSE MY SITUATION IS GETTING WORSTER and WORSTER
TO THE POINT MY ARM IS STARTING TO GIVE OUT ON ME? PAINING

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| [signature] Offender's Signature | R47387 ID# | 07, 05, 2018 Date |
|---|---|---|

(Continue on reverse side if necessary.)

---

**Counselor's Response (if applicable)**

| Date Received: 7, 15, 18 | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: A copy of this grievance has been forwarded to the HCU for review and response and the original grievance has been forwarded to the grievance office. There is no need to send your copy to the grievance officer or HCU. You will receive a final response when the HCU responds.

| M/es Print Counselor's Name | [signature] Counselor's Signature | 7, 17, 18 Date of Response |
|---|---|---|

---

**EMERGENCY REVIEW**

| Date Received: ≥ 7/11/18 | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

| [signature] Chief Administrative Officer's Signature | 7/11/18 Date |
|---|---|

Distribution: Master File; Offender          Page 1          DOC 0046 (8/2012)

Printed on Recycled Paper

ELTHETA. BECAUSE ITS ARM CACES OUT, And FRERD OUT And EVERYTIME HE BEND HIS ARM IT "HURT'S" EVEN WRITING HIS GRIEVANCE ~~HERE~~ "HURTS LIKE HELL"! I'm CONCERN WITH THIS "DELAY" IN SENDING ME TOO THE HOSPITAL MAY LEAD TO PERMANATELY DAMAGING MY ARM/MUSCL (TISSUE). And I HAVE TOO DEAL WITH THIS FOR THE REST OF MY LIFE... DR. O TOLD ME I WAS SCHEDULE TOO GO OUT FOR SURGERY. MY QUESTION IS WHEN? BEFORE IT'S TOO LATE, And MY ARM BECOME USE-
- LESS! PLEASE FIND OUT WAS GOING ON WITH THIS SITUATION.

THANK YOU IN ADVANCE

Distribution: Master File; Offender

Printed on Recycled Paper

DOC 0046 (8/2012)

**OFFENDER'S GRIEVANCE**

| Date: 07-06-2018 | Offender: (Please Print) LUENDELL WEAVER | | ID#: R47387 |
|---|---|---|---|

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ ADA Disability Accommodation
☑ Staff Conduct    ☐ Dietary    ☒ Medical Treatment    ☐ HIPAA
☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator    ☑ Other (specify): _____
     STATEVILLE C.C.

☐ Disciplinary Report: _____
       Date of Report          Facility where issued

JUL 17 2018

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

     **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     **Chief Administrative Officer,** only if EMERGENCY grievance.
     **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
     administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
     Administrative Officer.

JUL 26 2018

**Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):**

ON today's DATE THE ABOVE OFFENDER WAS GIVEN AN APPOINTMENT TO SEE PHYSICAL THERAPIST "HOSEA" FROM A REFFERAL FROM DR. WILLIAMS BACK IN FEBRUARY 2018 (5) month's AGO FOR MY INJURED RIGHT ARM (BICEP), ETC. FROM THE (JANUARY) 2018 BASKETBALL GAME, (SEE 7-05-2018 GRIEVANCE) DR. WILL-IAMS REFERRED THIS TREATMENT BEFORE MY "ULTRA-SOUND" WAS TAKEN BACK IN MAY (OR JUNE) (H) I SAW DR. O AFTER HE REVIEWED THE ULTRASOUND, but

**Relief Requested:** GET ANOTHER PHYSICAL THERAPIST TO HELP AND ASSIST "HOSEA" - BECAUSE (5) months DELAY CAN BE FATAL / CRUCIAL BECAUSE OF HIS BACK LOG - GET ME OUT TO THE PT. BECAUSE IT'S BEEN →

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _wendell brown_ | R47387 | 07/06/18 |
|---|---|---|
| Offender's Signature | ID# | Date |

*(Continue on reverse side if necessary)*

---

**Counselor's Response (if applicable)**

Date Received: 7 / 31 / 18    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of your grievance has been forwarded to the HCU for review and response and the original has been forwarded to the Grievance Office. Do not send your copy to the HCU or the Grievance Officer. You will receive a final response when the HCU responds.

| Mles | M. Sey | 7, 31, 18 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: 7 / 24 / 18    Is this determined to be of an emergency nature?
     ☐ Yes; expedite emergency grievance
     ☑ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Walter Nicho (DW) | 7, 24, 18 |
|---|---|
| Chief Administrative Officer's Signature | Date |

Distribution: Master File; Offender        Page 1        DOC 0046 (8/2012)

Printed on Recycled Paper

Recommended I see an outside doctor, for the ultra assessment(s). So the referral Dr. Williams suggested be premature, since she didn't see the ultrasound so she couldn't possibly know the severity of this injury, so I really want to include my arm weaker than it's already, it's like putting me to work after the injuries, this injury may need surgery, so why would she suggest physical therapy before, seeing what the outside Dr./or hospital will suggest. Physical therapist "Mosca" said he's backed up with over 80 guys and that's why it took him so long too, call me over (5) months to be looking to be waiting for physical therapy, will need another physical therapist these plans can really hurt one chance of getting there mobility back, and improving there chances and surgery of gaining success, in physical therapy, please look into this matter as soon as possible.

— thanks —

Elule elements: it's already been (6) months since this all, and I am in pain, and my arm support and hurt everytime I bend it, physical therapy is the only way this will be solved partially, please check into this for me, why I haven't been out yet, too see if physical therapy is needed, because Dr. O who said the ultra— sound imaging right, recommend this course of treatment, Dr. Williams suggested before the "ultra—sound"!

**RESPONSE TO COMMITTED PERSON'S GRIEVANCE**

| Grievance Officer's Report |
|---|

Date Received: 4/30/18      Date of Review: 1/11/19      Grievance # 2864

Committed Person: Wendell Weaver      ID #: R47387

Nature of Grievance: Medical Treatment

**Facts Reviewed:** Grievant claims on a grievance written 3/9/18 that he wants proper care for an injury to his arms from playing basketball.

Grievance Officer finds that per Medical Staff, "After reviewing the offender's medical record Offender Wendell seen in HCU 3/15/18 new order for ultrasound of right bicep, blood pressure daily x5 days, and EKG. Offender informed to call med tech with any issues. 5/2/18 ultrasound done. 6/5/18 seen Dr. Okezie referred to UIC orthopedic for right bicep with blood pressure daily x 2 weeks. Physical Therapy pending. Offender follows UIC cardio. If offender has any more issues he should follow the proper sick call procedures including the copay."

*This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.*

**Recommendation:**      Grievance is MOOT as grievant appears to be receiving medical care at this time.

Anne McBee, CCII
Print Grievance Officer's Name      Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

Date Received: 1-28-19      ☑ I concur    ☐ I do not concur      ☐ Remand

Comments:

Chief Administrative Officer's Signature      1-28-19   Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Committed Person's Signature      R47387    1-20-19
                                     ID#      Date

Blank

FINGER

**OFFENDER'S GRIEVANCE**

B1624

| Date: DEC 02, 2018 | Offender: (Please Print) WENDELL WEAVER | | ID#: R47387 |
|---|---|---|---|
| Present Facility: STATEVILLE C.C. | | Facility where grievance issue occurred: STATEVILLE C.C. | |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Mail Handling
- ☐ Restoration of Good Time
- ☐ ADA Disability Accommodation
- ☒ Staff Conduct
- ☐ Dietary
- ☒ Medical Treatment
- ☐ HIPAA STATEVILLE C.C.
- ☐ Transfer Denial by Facility
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Other (specify) DEC 17 2018
- ☐ Disciplinary Report: ___/___/___

   Date of Report

7443

Facility where issued GRIEVANCE DEPARTMENT

BY

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.

Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.

Chief Administrative Officer, only if EMERGENCY grievance.

Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

THE ABOVE OFFENDER HAS BEEN SCHEDULE TO SEE THE
MEDICAL DIRECTOR ON FOUR DIFFERENT OCCASSIONS
SINCE I CAME BACK FROM MY U.I.C. MEDICAL
WRIT FROM THE OUTSIDE HOSPITAL, BUT TO NO
AVAIL. I'M ALWAYS GETTING RESCHEDULE. U.I.C.
DOCTOR'S PROSCRIBE NEW MEDICINES AND RECOMM
-ENDATIONS, EVEN AN SURGERY ON MY LEFT PINKY
FINGER FOR THE PAIN & LIMITED MOBILITY BUT DO
NO AVAIL, UIC EVEN GAVE ME THE SOLUTION 2nd →

Relief Requested: SEND ME BACK OUT FOR MY SURGERY ON MY FINGER,
FOLLOW U.I.C. DOCTORS ORDERS AND RECOMMENDATION(S)
KEEP AND SEND A JOURNAL OF MY BLOOD PRESSURE 2 U.I.C.

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| [signature] Offender's Signature | R47387 ID# | 12,02,18 Date |
|---|---|---|

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

| Date Received: 1, 11, 19 | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: A copy of your grievance has been forwarded to the HCU by the Grievance Office for review and response by the Medical staff. You will receive a final response when the HCU responds to same.

| C. Franklin cct Print Counselor's Name | [signature] Counselor's Signature | 1,18,19 Date of Response |
|---|---|---|

**EMERGENCY REVIEW**

STATEVILLE C.C.

DEC 24 2018

| Date Received: 12,19,18 | RECEIVED JAN 11 2019 Is this determined to be of an emergency nature? | ☐ Yes; expedite emergency grievance ☒ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|
| [signature] Walter Nich Chief Administrative Officer's Signature | | 12,19,18 Date |

Distribution: Master File; Offender                    Page 1                    DOC 0046 (8/2012)

INSTRUCTION THE NIGHT BEFORE THE SURGERY BUT I STILL HAVEN'T BEEN BACK OUT ? I'AM IN PAIN - PLUS U.I.C. WANTED ME TO BE TREATED FOR MY "SLEEP APNEA" WHICH IS AFFECTING MY "HEART CONDITION" BUT TO NO AVAIL ! THEY U.I.C. EVEN SAID THIS CONDITION CAN EFFECT MY BLOOD PRESSURE, THAT'S WHY IT'S SO HIGH, FINALLY I HAVE BEEN TO U.I.C. CARDIOLOGIST 4 TIMES AND EACH TIME THEY WANTED TO SEE MY DAILY BLOOD PRESSURE CHECKS - JOURNALS - BUT TO NO AVAIL, PLEASE FOLLOW U.I.C. ORDER(S) I ALSO RAN OUT OF MY BLOOD PRESSURE MEDS (NORVAS)

THEY STILL HAVEN'T REORDER THEM   THINGS "2 WEEKS AGO" PLUS I WAS SCHEDULE TO GO OUT FOR MY TORN BICEPS IN RIGHT ARM BUT WENT TO U.I.C. FOR IT, BUT THEY SEEN ME, FOR MY FINGER INSTEAD, SO I STILL DIDN'T SEE NO ONE FOR MY TORN BICEP, PLUS MY KNEE(S) AND SHOULDER(S) BOTH ARE STILL IN EXCRUCIATING PAIN - AFTER GETTING THE STEROID / OR WHATEVER THE NAME OF THE SHOT THEY GAVE ME IN MY SHOULDER(S) (?) U.I.C A WHILE BACK. I BEEN HAVING HEADACHE(S) AGAIN I THINK THIS HAS SOMETHING TOO DUE WITH MY PAIN (AND HIGH PRESSURE), PLEASE CALL ME.

(THANKS AGAIN)

(EXHIBIT 14)
FINGER

ILLINOIS DEPARTMENT OF CORRECTIONS

**RESPONSE TO OFFENDER'S GRIEVANCE**

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 01/11/2019 | Date of Review: 08/17/2020 | Grievance # (optional): 7443 |
| Offender: Wendell Weaver | | ID#: R47387 |

**Nature of Grievance:**

Medical Treatment

**Facts Reviewed:**

Facts Reviewed: Grievant claims on a grievance written 12/2/18 that he has not seen the doctor since he came back from UIC Medical Writ. He wants to be seen, sent back out for his surgery on his finger, and his medical journal sent to UIC.

Grievance Officer finds that per D. Williams, Assistant Warden, with information supplied by Medical Staff/Medical Records: "Inmate saw the medical director on 12/21/2018. Orders made. Alternate treatment plan to treat finger onsite on 11/6/18. Inmate prescribed pain medication on 12/20/2018. Prescribed pain mediation on 12/20/2018. Pain medication increased on 12/21/18. Referral submitted on 12/21/2018 for CPAP machine. Per note dated 1/25/19 CPAP machine not warranted. Blood pressure monitored in HTN clinic.. Went to RNSC on 12/12/2018 for missing medication. Order resubmitted to pharmacy on 12/12/2018 for Norvasc. Approved to go to UIC ortho on 12/26/2018 to have shoulder and knee evaluated. Seen on 2/15/2019 by UIC ortho for RUE torn tendon CT of right shoulder completed on 11/25/19. Inmate ordered PT for right knee and ordered and renewed pain medications. No documentation of seeking medical care for headaches. (con't next page)

**Recommendation:**

Grievance is MOOT.

Anna McBee

Print Grievance Officer's Name                     Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|
| Date Received: 9-3-2020   ☒ I concur   ☐ I do not concur   ☐ Remand |
| Action Taken: |

Chief Administrative Officer's Signature          9-27-2020
                                                  Date

| Offender's Appeal To The Director |
|---|
| I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.) |

Offender's Signature          R47387          9-16-2020
                              ID#              Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE** (Continued)

Medical Concerns are to be directed to the cell house Nurse who will evaluate offender for treatment or refer him if appropriate. Alternatively, the offender may send a "Medical Request Slip" to Health Care requesting medical services.

This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.

B1624

**OFFENDER'S GRIEVANCE**

| Date: DEC 12, 2018 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |

| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation D
- [ ] HIPAA
- [ ] Other (specify)

STATEVILLE C.C.

DEC 17 2018

7446

GRIEVANCE DEPARTMENT
BY:

- [ ] Disciplinary Report: _____ / _____ / _____
  Date of Report          Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON TODAYS DATE THE ABOVE OFFENDER WAS SEEN AT SICK CALL ABOUT THE PAIN IN MY LEFT PINKY FINGER — AND WAS INFORMED THE RECOMMENDED 3RD SURGERY BY U.I.C, WAS DENIED BY "COLLEGE" THE MEDICAL PERSONEL AT STATEVILLE FOR UNKNOWN REASONS. I BEEN COMPLAINING ABOUT THIS PAIN, LACK MOBILITY AND MOVEMENT SINCE MY LAST SURGERY BACK IN 2016 ALSO THE DOCTORS AT U.I.C. TOLD ME THIS SURGERY WOULD BENEFIT ME. CO JEFFERSON

Relief Requested: SEND ME BACK TO U.I.C. FOR THIS 3RD SURGERY, TO END THIS PAIN AND GET MY MOBILITY BACK, AND MOVEMENT . . . . . .

[x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Wendell Weaver | E47387 | 12, 12, 18 |
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 1 , 11 , 19

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of your grievance has been forwarded to the HCU by the Grievance Office for review and response by the Medical staff. You will receive a final response when the HCU responds to same.

| C. FRANKLIN cci | C. Franklin | 1, 18, 19 |
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: 12 , 19 , 18

Is this determined to be of an emergency nature?

- [ ] Yes, expedite emergency grievance
- [x] No, an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Walter Nich (pw) | 12, 19, 18 |
| Chief Administrative Officer's Signature | Date |

STATEVILLE C.C.
JAN 11 2019
GRIEVANCE

Distribution: Master File; Offender          Page 1          DOC 0046 (8/2012)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS

**OFFENDER'S GRIEVANCE (Continued)**

AND C.O. QUARALS WAS ALSO IN THE ROOM WITH
ME WHEN THE DOCTORS TOLD ME THIS AND SENT
THE RECOMMENDATION(S) BACK TO STATEVILLE, BUT TOO
NO AVAIL! NOW I'M STILL IN PAIN, AND LACK
OF MOBILITY, AND I GUESS THE MEDICAL PERSONNEL
DOESN'T CARE! PLEASE DO SOMETHING ABOUT THIS
PLEASE........ I HAVE TOLD MY COUNSELOR MR.
SHERMAN ABOUT THIS AND MY PAIN AND — THANKS —
STILL NOTHING HAPPEN, I DON'T KNOW WHAT
ELSE TO DO?

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

B624

| | Grievance Officer's Report | |
|---|---|---|

**Date Received:** 12/17/2018    **Date of Review:** 04/09/2019    **Grievance #** (optional): 7446

**Offender:** Wendell Weaver    **ID#:** R47387

**Nature of Grievance:**

Medical Treatment

**Facts Reviewed:**

Facts Reviewed: Grievant claims on a grievance written 12/12/18 that he wants to return to UIC for the pain in his finger.

Per Medical Staff, "Inmate was seen at UIC for ORIF right 5th finger. Inmate received blood pressure pills (Norvasc & Coreg on 3/7/18, HCTZ on 3/13 and Minoxidil on 3/18). Collegial approval for cardio follow up, MRI of C Spine and neurosurgery. The inmate's medical issues are being addressed. Inmate's CPAP machine was denied. Inmate had an MRI of right elbow and PT was recommended."

This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.

**Recommendation:**

Grievance is MOOT.

Anna McBee

_____
**Print Grievance Officer's Name**          **Grievance Officer's Signature**
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| | Chief Administrative Officer's Response | |
|---|---|---|

**Date Received:** 4-12-19    ☒ I concur    ☐ I do not concur    ☐ Remand

**Action Taken:**

S. Miller (DW)
_____
Chief Administrative Officer's Signature          4-12-19
                                                    Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

_____      R47387      5-4-19
Offender's Signature            ID#          Date

Blank

STATE OF ILLINOIS
DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

OCT 0 6 2020

| Date: 9-28-2020 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |
| GRIEVANCE DEPARTMENT | | |
| Present Facility: STATEVILLE C.C. | Facility where grievance issue occurred: STATEVILLE C.C. |

RECEIVED
STATEVILLE C.C.
JAN 15 2021
GRIEVANCE DEPARTMENT
BY:

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☑ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Other (specify):
- ☐ Restoration of Good Time
- ☑ Medical Treatment
- ☐ ADA Disability Accommodation
- ☐ HIPAA

☐ Disciplinary Report: _____ / _____ / _____
　　　　　　　　　　　　　　Date of Report　　　　　　　　　　　　　　Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
　Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
　Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
　Chief Administrative Officer, only if EMERGENCY grievance.
　Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from
　another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information
for each person involved):

THE ABOVE OFFENDER WAS ISSUED THRU "THE MAIL"
BECAUSE STATEVILLE MEDICAL UNIT KEEP RESCHEDU-
-LING my APPOINTMENT TOO SEE THE DOCTOR, "A LOW
BUNK / LOW GALLERY" PERMIT, AND BE MOVED TOO
A LOWER GALLERY BUT TOO THE BULLET IN my KNEE /
AND ARM MOVING / AND GIVING ME UNBEARABLE PAIN
AND THE MEDICINE THEY GIVING ME IS NOT HELP
— BIG AT ALL, SO I TALKED TO SGT. CLARK AND
LT. HARRIS AND THEY BUT "BLEW" ME OFF ABOUT

Relief Requested: GET ME IN TOO SEE A DOCTOR A.S.A.P. GET
ME SOME STRONGER PAIN MEDS, BUT MOST IMPORTANTLY
PUT ME BACK IN "C-HOUSE" WHERE I BEEN FOR THE LAST YEAR

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

☐ Check if this is NOT an emergency grievance.

　Wendell Weaver
　Offender's Signature　　　R47387　　　9, 28, 2020
　　　　　　　　　　　　　　ID#　　　　　　Date

RECEIVE
STATEVILLE
DEC 15 2020
GRIEVANCE DEPARTMENT
BY:

(Continue on reverse side if necessary)

| **Counselor's Response** (if applicable) | |
| Date Received: _____ / _____ / _____ | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
| Response: | |

Print Counselor's Name　　　　Counselor's Signature　　　　Date of Response

| **EMERGENCY REVIEW** | |
| Date Received: 11 / 4 / 2020 | Is this determined to be of an emergency nature? ☐ Yes; expedite emergency grievance<br>☑ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
| Daniel Gomez (DG)<br>Chief Administrative Officer's Signature | 11 , 4 , 2020<br>Date |

MOVING ME DOWN STAIRS And RESPECTING MY
PERMIT(S) SO THE NEXT DAY I SPOKE TOO THE
ACTING SGT OF C-HOUSE ON SEPT 24, 2020, And
TOLD HIM ABOUT MY PERMITS, HE CAN PLACEMENT
MS. MARKS ABOUT SOME LAW SUIT(S) I SUPPOSELY
SAID TOO HIM, And MS. MARKS TOLD HIM SHE GO
SOMETHING FOR ME, And TOLD HIM DON TELL ME
SHE GOT SOMETHING FOR ME AND TO PACK UP
SHE MOVING ME TOO "E-HOUSE" CELL 123, WHEN
C-HOUSE HAD OPEN CELLS ON 4 GALLERY AND
2 GALLERY! SHE MOVED ME TOO A "HIGH AGGRESSION
HOUSE, WHEN MY AGGRESSION LEVEL IS SUPER LOW²
WHAT OTHER REASON WOULD SHE DO THIS, But
AS PUNISHMENT? THIS E-HOUSE CELL IS
NASTY And HAVE "BLACK MOLD" ON THE BACK WALL
THE WATER DON'T WORK, And ROACHES And ANT (S)
₃ INSECTS IS ALL OVER THE PLACE! ALL
BECAUSE I WANTED TOO MOVE ON A LOWER
GALLERY DUE TO MY MEDICAL PERMITS?
THIS IS "UNFAIR" AND A VIOLATION OF MY
CONSTITUTIONAL RIGHTS — RETALIATION —
FOR ME WANTING STATEVILLE SECURITY
TOO FOLLOW THE MEDICAL DOCTOR'S ORDER
TOO HELP ALLEVIATE SOME OF THIS PAIN
IM EXPERIENCING? SOMEONE NEEDS TOO
STOP THIS UNETICAL BEHAVIOR AROUND
HERE AND START HOLDING THESE PEOPLE (S)
ACCOUNTABLE...

ILLINOIS DEPARTMENT OF CORRECTIONS

KNEE /RETALEAION RESPONSE TO OFFENDER'S GRIEVANCE                    C246

| Grievance Officer's Report | | |
|---|---|---|

**Date Received:** 01/15/2021   **Date of Review:** 07/10/2021   **Grievance # (optional):** 2821

**Offender:** Wendell Weaver                    **ID#:** R47387

**Nature of Grievance:**

Medical - Medical Treatment
Classification - Cell Placement

**Facts Reviewed:**

Grievant claims on a grievance written on 9/25/2020 that he was placed in E house by placement out of retaliation and that he would like stronger pain medication.

Grievance officer finds per ~~Lucecita Galinda, HCUA,~~ Lilybeth Segarra, Director of Nursing

"Inmate is back in C-house, C246

He has seen the doctor; will see a doctor in AM.

On strong pain medication Tramadol"

Medical concerns are to be directed to the cell house Nurse who will evaluate offender for treatment or refer him if appropriate. Alternatively, the offender may send a "Medical Request" slip to Health Care requesting medical services."

This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.

**Recommendation:**

Grievance is mixed. Medical is moot; classification is denied.

A. Gomez CCII

Print Grievance Officer's Name                    Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|

**Date Received:** 7/27/21   ☑ I concur   ☐ I do not concur   ☐ Remand

**Action Taken:**

Chief Administrative Officer's Signature                    7/27/21
                                                            Date

| Offender's Appeal To The Director | | |
|---|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

Offender's Signature          R47387          8/3/2021
                              ID#             Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE (Continued)**



ILLINOIS DEPARTMENT OF CORRECTIONS
OFFENDER'S GRIEVANCE

| | | |
|---|---|---|
| Date: OCT 01, 2020 | Offender: (Please Print) WENDELL WEAVER | ID#: R47387 |

Present Facility: STATEVILLE C.C.   Facility where grievance issue occurred: STATEVILLE O.C.

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Other (specify):
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA

- [ ] Disciplinary Report: ___/___/___    Facility where issued
  Date of Report

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON THE ABOVE DATE, THE ABOVE OFFENDER WAS SEEN BY A "FEMALE" DOCTOR TODAY AFTER BEING RESCHEDULE ABOUT 6 TIMES. I TOLD HER ABOUT THE "EXCRUTIATING" PAIN I BEEN IN FOR THE PAST YEAR OR SO! AND THAT THE TYLENOLS - 3's THEY BEEN GIVING ME WAS STARTING TOO MAKE ME SICK AND WAS "INEFFECTIVE" TOWARD MY PAIN! I TOLD HER ABOUT MY "CRONIC" KNEE PAIN AND THAT I BELIEVE MY PROBLEM IS A "TORN ACL / OR TENDON" DUE TOO THE POP / SNAP SOUND IT MADE DURING A BASKET BALL GAME A FEW YEARS →

Relief Requested: GIVE ME TRAMADOL(S) MEDICATION / OR SOMETHING "EQUIVALANT" FOR MY POINTY FINGER PAIN, KNEE, SHOULDER / ELBOW PAIN AND GIVE ME MEDICATION FOR MY NERVE FUNGUS SEND ME OUT FOR MY M.R.I ON MY KNEE, SHOULDER & ELBOW 3 MY 3RD SURGERY!

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.
- [ ] Check if this is NOT an emergency grievance.

| | | |
|---|---|---|
| _Wendell Weaver_ | R47387 | 10, 01, 2020 |
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

RECEIVED
DEC 9 2020
STATEVILLE C.C.
GRIEVANCE DEPARTMENT

---

**Counselor's Response (if applicable)**

Date Received: ___/___/___

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response:

Print Counselor's Name | Counselor's Signature | Date of Response

---

**EMERGENCY REVIEW**

Date Received: 11 - 4 - , 2020   Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_David Gomez_   11, 4, 2020
Chief Administrative Officer's Signature   Date

Distribution: Master File; Offender   Page 1   DOC 0046 (1/2016)
Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

EARLIER, "SHE TOLD ME SHE CAN'T MAKE MY LIFE &
PAIN FREE" AND EITHER I TAKE THE TYLENOL 3'S.
OR GET REGULAR TYLENOL'S, ETC. I TOLD HER THE OTHER
PAIN MEDICINE I WAS GETTING WAS MORE HELPFUL
OR "BENEFICIAL" (THE TRAMADOLS) BUT SHE SAID I CAN'T
GET THEM (NO MORE) AND OFFER SOMETHING WEAKER
THAN I WAS ALREADY ON (SOME REGULAR TYLENOL)
VERSUS (TYLENOLS 3); AND LEFT IT AT (TAKE IT
OR LEAVE IT) I ALSO TOLD HER ABOUT MY "NAIL"
(FUNGUS) ON MY TOE NAILS SPREADING TO MY FINGER
NAILS, AND SHE KNEW THAT OFF AS UNIMPORTANT
(MY NAILS ARE HURTING AS WELL DUE TOO THIS IN-
-FECTION) I HAD THIS FOR ABOUT 7-8 YEARS
NOW, WITH LITTLE TOO NO MEDICINE AT ALL,
SO IT'S GETTING WORSTER.) I BROUGHT UP
MY 3RD SURGERY - ON MY PINKY FINGER - THAT
WAS DENIED BY COLLEGIATE (AND SPRINGFIELD) SHE
SAID SHE DID'NT WANT TOO HEAR IT, AND IT'S UN-
IMPORTANT! SAME WITH MY M.R. I ON MY (RT.)
RIGHT SHOULDER AND ELBOW, AND MY KNEE, THAT
I KEEP COMPLAINING ABOUT — SHE SAID
THERE 'NOTHING" SHE CAN DO FOR ME RIGHT
NOW? I TOLD HER, I WAS IN "EXCRUCIATING
PAIN 10-20 TIMES AND SHE SAID, IT'S
"NOTHING" SHE COULD DO FOR ME AND
THEN TOLD ME TOO LEAVE, WITHOUT
TELLING WAS SHE GOING TOO CONTINUE
TOO GIVE ME [NEW MEDICATION] FOR MY
PAIN (OR DO ANY THING FOR MY NAIL
FUNGUS, OR MY ELBOW AND SHOULDER,
AND KNEE, SO I'M JUST IN LIMBO AND
PAIN WONDERING WHAT'S GOING TOO
HAPPEN? CAN SOMEONE DO SOMETHING
ABOUT THIS PLEASE — I'M HURTING
RIGHT NOW) !
        I ALSO TOLD HER ABOUT THE "MRI" I WENT FOR
ON MY ARM AND SHOULDER, BUT DR. HENZIE (THE MEDICAL
DIRECTOR) WAS GOING TOO PUT ME IN FOR SEDATION
AND SEND ME BACK, BUT TO NO AVAIL) BECAUSE
I HAVE (CLASTIFOBIA) AND I COULD'NT STAY IN
THERE! (THE MACHINE) ! THAT WAS ALMOST (2) YEAR
AGO, OR CLOSE TOO IT? SAME W/ MY 3RD. SURGERY ON
MY PINKY FINGER TOO REMOVE THE BUILD UP ON THE BONE!

I HAVE TALKED PERSONALLY TO ASST. WARDEN WILLIAMS, WARDEN "GOMEZ" AND HIS ASST. MS. HUNTER/TARR, BUT TO NO-AVAIL. I TALKED TOO ALL OF THEM ABOUT THE PAIN I'M IN, THE LACK OF MEDICAL TREATMENT THE RESCHEDULING OVER AND OVER AGAIN — THE "EXCRUCIATING PAIN — MY PINKY FINGER, MY RIGHT KNEE (I BARELY CAN STAND ON) MY SHOULDER (RIGHT) AND RIGHT ELBOW AND DEFORMITY OF MY RIGHT BICEP) ? I SHOWED THEM MY "INJURY" MY (SWOLE KNEE) MY DEFORMED RIGHT MUSCLE MY THICK DISCOLORED TOENAILS, TOO SHOW AND PROVE TOO THEM I'M NOT JOKING OR PLAYING GAMES W/ THE MEDICAL STAFF HERE! I TALKED TO SEVERAL NURSES MEN AND WOMEN, ONE NAME (TINA) TOLD ME TOO WRITE A GRIEVANCE BECAUSE THE MEDICAL SUPERIORS ARE BOGGISH/AND WRONG HOW THEY ARE TREATING US! I'M COMPLAINING TOO EVERY NURSE, COUNSELOR, AND STAFF MEMBER AND IT'S CONSISTANTLY FALLING ON DEAF EARS! I EVEN TALKED TOO E-HOUSE COUNSELOR (SCOTT) AND HE SAID HE CAN'T DO NOTHING ABOUT IT (YESTERDAY (SEPT 30, 2020) — THE PLACEMENT OFFICER (MS. MARKS) MOVE ME TOO E-HOUSE (THE WORST/BEST CELL HOUSE IN STATEVILLE) BECAUSE I ASK TOO MOVE TO TO PEOPLE ASK, HER TOO MOVE ME DOWN STAIRS IN (C-HOUSE) A BIG TIER HOUSE THEN (C-HOUSE WHEN SHE HAD CELLS OPEN DOWN STAIRS IN (C-HOUSE) BUT SHE MOVED ME TOO E-HOUSE WHICH IS FULL OF MOLD AND ROACHES) SHE DOING THIS OUT OF "SPITE", THAT I'M TRYING TOO GET "MEDICAL TREATMENT"? THE CELL I'M IN E-123 IS FULL OF MOLD I EVEN TALKED TOO SEVERAL LT. AND SGT. FOR BLEACH AND CLEANING MATERIAL. LT. MILSAP GAVE ME BLEACH, AND SEEN (SHOW) THE MOLD HIS SELF, LT. NORMAN ALSO SEEN THE MOLD, I ALSO SHOWED THIS ONE NURSE (FEMALE) I'LL GET HER NAME LATER AND SHOWED AND TOLD HER ABOUT THE MOLD BUT TOO NO-AVAIL. — PLACEMENT OFFICER MARKS, JEOPORDIZING MY HEALTH W/ MOVING ME IN THIS NASTY (CELL) HOUSE —E-HOUSE —AND IN THIS MOLDED, ROACH INFECTED CELL — ALL BECAUSE I WAS TRYING TOO GET MY PROPER MEDICAL TREATMENT, I TOLD WARDEN GOMEZ WROTE GRIEVANCE(S) AND NOTHING HAPPEN, IT JUST

ILLINOIS DEPARTMENT OF CORRECTIONS

## OFFENDER'S GRIEVANCE

| Date: | Offender: (Please Print) | | ID#: |
|---|---|---|---|

| Present Facility: | Facility where grievance issue occurred: |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ ADA Disability Accommodation

☐ Staff Conduct    ☐ Dietary    ☐ Medical Treatment    ☐ HIPAA

☐ Transfer Denial by Facility    ☐ Other (specify): _____

☐ Disciplinary Report: ____/____/____      _____
           Date of Report                Facility where issued

     Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

     **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     **Chief Administrative Officer,** only if EMERGENCY grievance.
     **Administrative Review Board,** only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from
     another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Relief Requested: _____

_____

_____

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

☐ Check if this is NOT an emergency grievance.

_____    _____    ____/____/____
Offender's Signature          ID#            Date

(Continue on reverse side if necessary)

### Counselor's Response (if applicable)

| Date Received: ____/____/____ | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

_____

_____

_____

_____      _____    ____/____/____
Print Counselor's Name          Counselor's Signature        Date of Response

### EMERGENCY REVIEW

| Date Received: ____/____/____ | Is this determined to be of an emergency nature? | ☐ Yes; expedite emergency grievance ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

_____                  ____/____/____
Chief Administrative Officer's Signature        Date

Distribution: Master File; Offender            Page 1                DOC 0046 (1/2018)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 12/09/2020 | Date of Review: 04/21/2021 | Grievance # (optional): 2829 |
| Offender: Wendell Weaver | | ID#: R47387 |

Nature of Grievance:

Medical - Medical Treatment

**Facts Reviewed:**

Grievant claims on a grievance written on 10/1/2020 that the Tylenol 3 is not helping with his pain. Grievant also states he would like another MRI for his shoulder and treatment for his nail fungus.

Grievance officer finds per Lilybeth Segarro, Director of Nursing:
"Inmate is now on Tramadol and Naproxen. Inmate is currently housed in C-house.

For MRI, inmate wrote that when Dr. Henze explained the procedure, he rejected because "I have claustrophobia and I couldn't stay in there! (the machine)"

No meds for nail fungus"

Medical concerns are to be directed to the cell house Nurse who will evaluate offender for treatment or refer him if appropriate. Alternatively, the offender may send a "Medical Request" slip to Health Care requesting medical services."

This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON's/RN's recommendation / diagnosis.

**Recommendation:**

Grievance is moot.

A. Gomez CCII

Print Grievance Officer's Name    Grievance Officer's Signature
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 4/30/21 | ☑ I concur ☐ I do not concur ☐ Remand | |

Action Taken:

David Gomez
Chief Administrative Officer's Signature                4/30/21
Date

| Offender's Appeal To The Director | |
|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

Offender's Signature          R47387          5/21/2021
ID#          Date

Blank

2-8-22 by CK 138 pages
date        Initials   No.

STATEVILLE CC and E-mailed

**IN THE**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

WENDELL E. WEAVER )
                    # R47387 )
**Plaintiff**          )
                       )
            v.         )        Case No. 21 C 5148
                       )
MARLENE HENZIE, etal., )
                       )
**Defendant**

## PROOF/CERTIFICATE OF SERVICE

TO: U.S. DISTRICT                    TO: _____
COURT NORTHERN DISTRICT              _____
CLERK OFFICE. 219 S.                 _____
DEARBORN ST CHI, IL 60601            _____


TO: _____                  TO: _____
_____                      _____
_____                      _____
_____                      _____


**PLEASE TAKE NOTICE that on** FEB 08 **, 20** 22 **I have placed the documents listed below in the institutional mail at** STATEVILLE **Correctional Center, properly addressed to the parties listed above for mailing though the United States Postal Service:** 16830 S. BROADWAY ST. PO. BOX 112
JOLIET, IL 60434


**Pursuant to 28 USC 1746, 18 USC 1621 or 735ilcs 5/1-109, I declare, under the penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.**

**DATE:** 2-08-2022                /s/ _Wendell E. Weaver_

                                  NAME WENDELL E WEAVER

                                  IDOC# R47387